FILED

2014 APR 28  PM 3: 34

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

1  RICHARD H. CLOSE (Bar No. 50298)
   rclose@gilchristrutter.com
2  THOMAS W. CASPARIAN (Bar No. 169763)
   tcasparian@gilchristrutter.com
3  KEVIN M. YOPP (Bar No. 218204)
   kyopp@gilchristrutter.com
4  GILCHRIST & RUTTER
   Professional Corporation
5  1299 Ocean Avenue, Suite 900
   Santa Monica, California 90401-1000
6  Telephone: (310) 393-4000
   Facsimile: (310) 394-4700
7
   MATTHEW W. CLOSE (Bar No. 188570)
8  mclose@omm.com
   DIMITRI D. PORTNOI (Bar No. 282871)
9  dportnoi@omm.com
   O'MELVENY & MYERS LLP
10 400 South Hope Street
   Los Angeles, CA 90071-2899
11 Telephone: (213) 430-6000
   Facsimile: (213) 430-6407
12
   Attorneys for Plaintiff
13 Colony Cove Properties, LLC

14              UNITED STATES DISTRICT COURT

15            CENTRAL DISTRICT OF CALIFORNIA

   CV14-03242- PSG(PJWx)

16

17 COLONY COVE PROPERTIES, LLC,        Case No.
   a Delaware limited liability company;
18                                      **COMPLAINT FOR**
          Plaintiff,
19                                      1. **Violation of the Takings Clause of**
              v.                           **the Fifth Amendment**
20                                         **(Under 42 U.S.C. § 1983)**
   CITY OF CARSON, a municipal
21 corporation; CITY OF CARSON          2. **Violation of the Due Process**
   MOBILEHOME PARK RENTAL                  **Clause of the Fourteenth**
22 REVIEW BOARD, a public                  **Amendment**
   administrative body; and DOES 1 to 10,  **(Under 42 U.S.C. § 1983)**
23 inclusive;
                                        3. **Declaratory Relief**
24        Defendants.
                                        **AND DEMAND FOR JURY TRIAL**
25

26

27

28

                          COMPLAINT

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

Plaintiff Colony Cove Properties, LLC ("Colony Cove") for its Complaint against the City of Carson and the City of Carson Mobilehome Park Rental Review Board (sometimes collectively, the "City") alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, 2201, 2202, and 42 U.S.C. § 1983.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the City is located within this district, and a substantial part of the events and/or omissions giving rise to Colony Cove's claims occurred in this district.

## NATURE OF THE ACTION

3. The City's rent control restrictions have been applied against Colony Cove in a manner that exceeds the limits of state authority under the U.S. Constitution.

4. In 2006, Colony Cove bought a 404-space mobilehome park in the City. At that time, Colony Cove had a reasonable expectation that it could profit even under the then-existing rent control law. Thereafter, the City changed the rules for determining allowable rents. Specifically, the City stopped considering a park owner's bona fide, third-party debt service expense incurred in connection with the purchase of the mobilehome park in an arms-length market transaction. Based on this change, the City then set rents at unreasonably low levels. This forced Colony Cove to operate at a loss for over five years (sometimes at a loss exceeding $1 million per year). During this five-year timeframe, Colony Cove suffered losses of approximately $4 million.

5. In 2012, for the first time in five years, the City finally permitted Colony Cove to earn a profit after forcing it to suffer losses year-after-year. The profit Colony Cove recovered in that year, however, was only approximately $180,000, and represented a return of approximately 1% on Colony Cove's equity investment. This return was far less than comparable real-estate investments were

1  making, even in comparable, rent-controlled jurisdictions.   One percent of an equity

2  investment is also far less than any reasonable investor would have expected when

3  purchasing Colony Cove in 2006.  These restrictions, therefore, do not permit

4  Colony Cove to make a reasonable profit.  Far from it.  By altering the manner in

5  which it treated bona fide debt service expenses, the City has essentially forced

6  Colony Cove to shoulder an affordable housing burden that should be borne by the

7  City taxpayers as a whole.[1]

8       6.     This Section 1983 action seeks to have the City's rent control law

9  declared unconstitutional, as-applied to Colony Cove, because it constitutes an

10  unlawful and/or an uncompensated taking of Colony Cove's property.  This action

11  also seeks damages and/or just compensation from the City for the unlawful and

12  unconstitutional application of its rent control law and for violating Colony Cove's

13  due process rights, and/or an injunction against the City enjoining it from applying

14  its rent control law to Colony Cove.

15  **PARTIES**

16       7.     Colony Cove is a Delaware limited liability company and the owner of

17  Colony Cove Mobile Estates, a luxury mobilehome park located at 17700 S. Avalon

18  Boulevard, Carson, California 90746 (the "Park").  Constructed in 1975, the Park is

19  one of the most luxurious mobilehome parks in the City of Carson, providing its

20  residents with amenities including a large, central clubhouse-style building with a

21  kitchen, banquet room/auditorium, swimming pool, Jacuzzi, billiards/card room,

22  library/television room, exercise room, indoor spa and a laundry room.  A

23  recreational vehicle storage area is available, and the residents may rent spaces at an

24

25  [1] In fact, Colony Cove residents are paying approximately half the rent they would

26  otherwise be paying if Colony Cove were permitted to charge market rate rents
(average rent at Colony Cove is approximately $500 when market rents would be in

27  excess of $1,000).  Colony Cove could profit and earn a reasonable return (and

28  would have) even with below-market rents.

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1   additional cost.  A pet exercise run is provided for residents' use.  Gated security

2   services are provided on a 24-hour basis.  Water, sewer, and trash collections

3   services are also provided for the residents.  The Park has 404 spaces (also known as

4   lots or pads) available for mobilehomes, 403 of which are rented to residents.  One

5   space is provided for the Park's manager.

6        8.    Defendant City of Carson is a municipal corporation located within the

7   State of California and in the County of Los Angeles.

8        9.    Defendant City of Carson Mobilehome Park Rental Review Board (the

9   "Board") is a public administrative body created by the City's Mobilehome Space

10  Rent Control Ordinance to hear and determine applications of property owners for

11  rent adjustments.

12       10.    Colony Cove is unaware of the true names, involvement, or capacities,

13  whether individual, corporate, associate, or otherwise, of Defendants Does 1 to 10

14  (the "Doe Defendants"), and therefore sues them by such fictitious names.  Colony

15  Cove is informed and believes, and based upon such information and belief alleges

16  that each of the Doe Defendants is responsible for the actions described herein, has

17  conspired with the other Defendants herein, was the agent, servant, employee, or

18  alter ego of the remaining Defendants, or is otherwise responsible for the

19  complained of actions.  Colony Cove will amend this Complaint when it learns the

20  true names, involvement, and capacities of the Doe Defendants.

21                      **FACTUAL BACKGROUND**

22      **A.**    **The City of Carson's Rent Control Law.**

23       11.    In 1979, the City enacted a rent control ordinance, thereafter amended

24  from time to time, known as the Mobilehome Space Rent Control Ordinance (the

25  "Ordinance").  Among other things, the Ordinance created the Board, which was

26  delegated the authority to receive, hear, and determine applications for rent

27  increases.  No review of the decision of the Board is permitted by any other

28  administrative body.  Review is permissible under California law only by pursuing a

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1   writ of administrative mandate upon a showing that the Board's decision was not

2   supported by substantial evidence with substantial deference to the Board's

3   determinations.

4         12.    In addition to the Ordinance, the City has adopted Guidelines for

5   Implementation of the Mobilehome Space Rent Control Ordinance (the

6   "Guidelines" and collectively with the Ordinance, the "Rent Control Law"), which

7   bind the Board's procedures and decision in acting upon applications for rent

8   increases by owners of mobilehome parks. The Guidelines are also published to

9   advise property owners and the public how the Board and City will implement the

10   Ordinance and apply the Rent Control Law. The Board may not depart from these

11   Guidelines, which have the force of law. Even if the Guidelines did not have the

12   force of law and even if the Board reserved the power to depart from the Guidelines,

13   the Guidelines are still designed and intended to, and in fact do, set the reasonable

14   expectations of investors and park owners in the City. That is why the Guidelines

15   were adopted and published externally.

16         13.    Mobilehome parks are the only properties in the City subject to any

17   rent control law. No other rental property types (e.g., apartments, houses, and

18   condominiums) in the City face any rent control measures.

19         14.    The City's Rent Control Law does not permit an automatic increase

20   based on a set formula. Instead, the Rent Control Law requires a park owner to

21   prepare and submit a rent increase application – at great time and expense – to

22   obtain any rent increase, no matter how small. The Board may then grant such

23   increases "as it determines to be fair, just and reasonable." In making its decision

24   on a general rent increase, the Board must consider eleven factors articulated by the

25   Ordinance, as well as any other relevant factors, and treat no one factor as

26   dispositive.

27         15.    Section IV of the Guidelines also permits park owners to file another

28   separate rent increase application if a rent increase is necessary because the park

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1  cannot earn a "fair return" without an increase greater than that permitted by

2  application of the general rent increase factors in the Ordinance.

3      16.    This fair return application requires an applicant to submit all the

4  information required by a general rent increase application, and further requires the

5  applicant to submit:  (1) an appraisal of the park at the time of purchase; (2)

6  information about down payments, equity, and refinancing; (3) information

7  regarding capital improvements; (4) information about the rate of return being

8  earned by the applicant's park; and (5) information about the rates of return being

9  earned by comparable mobilehome parks in jurisdictions with rent control and

10  without rent control.  Both the appraiser and any expert providing an opinion on

11  rates of return must also be present at the hearing for testimony and questioning.

12      17.    At the time it purchased the Park, and still to this day, Colony Cove has

13  been reasonably informed and understands from its diligence that, prior to Colony

14  Cove's acquisition of the Park, the City always (or virtually always) considered a

15  park owner's debt service when disposing of fair return rent applications.  This was

16  the Plaintiff's reasonable and informed understanding at the time it purchased the

17  Park based on how other owners rent applications had been analyzed as well as

18  judicial decisions in the state considering the City's Rent Control Law.

19      18.    For example, the Guidelines in effect at the time Colony Cove

20  purchased the Park provide that debt service is an allowable expense, even if

21  incurred after the adoption of the relevant rent-control regulations, if it is "[d]ebt

22  [s]ervice necessarily incurred to operate the park … if the financing arrangements

23  were prudent and consistent with customary business practice."  Guidelines,

24  § II(A)(2), subds. (d) & (e).  Even debt service incurred to purchase a park is

25  allowable if "the purchase price paid was reasonable in light of rents allowed under

26  the Ordnance and involved prudent and customary financing practices."  *Id.*

27  § II(A)(2), subd. (f).

28

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

**B.      Colony Cove Purchases the Park with a Reasonable Expectation That Its Debt Service Would Be Considered by the City When Setting Rent Levels.**

19.      Non-party Grossman Properties developed the Park in 1976 and owned it for thirty years.  Colony Cove has no connection to Grossman Properties.  On or about April 4, 2006, Colony Cove purchased the Park for approximately $23,050,000 from Grossman Properties.   The seller of Colony Cove had listed the Park for sale at a price exceeding $28 million.  Grossman Properties received other offers for the Park that were around the same price as the $23,050,000 purchase price that Colony Cove paid.  The purchase price that Colony Cove paid represented fair market value of the Park and was commercially reasonable.

20.      Colony Cove's purchase included a down payment of $5,050,000, which represented Colony Cove's initial equity investment in the Park.

21.      The remaining approximately $18 million was financed with a reputable lender, G.E. Capital, using common and commercially reasonable financing terms, including but not limited to the interest rate and the loan-to-value ratio.  Colony Cove is informed and believes, and based thereon alleges, that G.E. Capital could not have made the $18 million (approx.) loan to Colony Cove unless G.E. Capital had concluded that the $23 million (approx.) purchase price was reasonable and not unfair.  The loan and financing terms from G.E. Capital were prudent and consistent with customary business and financing practice, as the members of Colony Cove have substantial experience in the ownership and operation of mobilehome parks.  The City does not dispute the amount of the G.E. Capital loan or Colony Cove's debt service under that loan.

22.      Under the City's Rent Control Law as it existed at the time Colony Cove purchased the Park in April 2006, Colony Cove was entitled to include debt service as an allowable expense, and had a commercially reasonable expectation that its debt service expenses would be included as an allowable expense when the

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1  Board set rents.  That reasonable belief was based in part on the terms of the

2  Ordinance and Guidelines and also based on how the Board had analyzed and

3  calculated rents previously in the City.  Colony Cove could not reasonably foresee

4  or predict that the Board would suddenly deem  its debt service on the $18 million

5  (approx.) purchase money loan from G.E. Capital to be unreasonable or irrelevant in

6  connection with fixing rents.

7  **C.      On September, 28, 2007, Colony Cove Submitted General and Fair**

8  **Return Rent Increase Applications.**

9  23.      On or about September 28, 2007, Colony Cove submitted both a

10  general and a fair return rent increase application to the City (collectively, the "Year

11  1 Applications").  Colony Cove submitted all of the required information, including

12  the additional documentation required for a fair return application.

13  24.      Together, the Year 1 Applications demonstrated that Colony Cove

14  operated at a loss totaling $1,082,191 for its first year of ownership  and would

15  continue to do so unless Colony Cove received relief in the form of the requested

16  rent increase.  This loss is based on actual expenditures by Colony Cove, which the

17  City does not dispute that Colony Cove made.[2]

18  25.      Colony Cove presented evidence that various quantitative

19  methodologies, performed by different experts, all arrived at the same conclusion –

20  a rent increase of approximately $200 per space per month is necessary for Colony

21  Cove to earn a fair return on its investment.

22  26.      In sharp contrast to the approximately $200 figure presented by Colony

23  Cove, City staff prepared a report recommending that the Board grant a $15.65 per

---

[2] While the City did not dispute that these were actual expenditures made by Colony
Cove, as part of the rent setting process, the City excluded actual expenses that it
believes should not be considered when setting rents (in addition to refusing to
consider debt service).  While Colony Cove disagrees with some of the City's
expense exclusions, even accepting the City's expense exclusions, Colony Cove still
operated at a loss of $311,972.

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1   space, per month rent increase.  To arrive at this figure, the Board decided to ignore

2   and disregard Colony Cove's debt service.  By ignoring Colony Cove's debt service,

3   the Board ensured that Colony Cove would be forced to operate the Park at

4   substantial cash losses.

5       27.    The Board apparently concluded that debt service amounts could be

6   manipulated and therefore should be ignored, despite the fact that there was no

7   evidence that Colony Cove and G.E. Capital conspired to or did manipulate the debt

8   service in this case.

9       28.    Because the Board had not previously ignored third-party, purchase

10  money debt service to Colony Cove's informed belief, Colony Cove at all times

11  reasonably expected that the Board would decide rent increases by determining a

12  fair rate of return and by consideration of the factors set forth in the Ordinance and

13  the Guidelines including debt service expenses obtained in a commercially prudent

14  fashion.  The abandonment of debt service as a relevant factor in determining rents

15  was a circumstance Colony Cove could not have reasonably expected and operated

16  as a change in law.

17      29.    Despite the evidence that Colony Cove was operating at a loss and that

18  a rent increase of approximately $200 per space per month was necessary for

19  Colony Cove to earn a fair return, the City only approved a $36.74 per space rent

20  increase.  Even with this increase Colony Cove continued to incur a six-figure loss

21  yearly.

22      30.    The City reached this result by refusing to consider Colony Cove's debt

23  service and could not have reached it had debt service been properly considered.

24  **D.    The Year 2 Applications and Rent Board Decision.**

25      31.    On or about September 28, 2008, Colony Cove submitted both a

26  general and a fair return rent increase application to the City based on income and

27  expense data from its second full year of ownership (collectively, the "Year 2

28  Applications").  Colony Cove again submitted all of the required information,

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1 including the additional documentation required for a fair return application.

2 Together, the Year 2 Applications demonstrated that Colony Cove continued to

3 operate at a loss. This time the annual loss totaled $812,177 according to Colony

4 Cove's books.

5      32.    The City again excluded a substantial amount of Colony Cove's

6 expenses. After the City's expense exclusions, however, Colony Cove lost even

7 more money the second year of ownership than it did the first year – a loss of

8 $455,571 for Year 2.

9      33.    In written submissions and through testimony at the hearing, Colony

10 Cove presented evidence that, using the City's view of Colony Cove's expenses, a

11 rent increase of approximately $250 was necessary to achieve a fair return.

12      34.    Dr. Baar again advocated the MNOI analysis, because it "permit[s] an

13 equal rate of growth ... regardless of [the owner's] particular purchase and financing

14 arrangements."

15      35.    The Board again refused to consider any of the evidence contained in

16 the fair return application and ignored Colony Cove's debt service payments.

17      36.    Despite the undisputed evidence that Colony Cove again operated at a

18 substantial loss, the Board only approved a $25.02 per month, per space rent

19 increase based on the Year 2 Applications. This rent increase was lower than the

20 previous year's increase even though, according to the City's calculations, Colony

21 Cove lost more money. That increase forced Colony Cove to continue incurring a

22 substantial loss. Once again, the City refused to consider Colony Cove's debt

23 service.

24     **E.**    **The Year 3 Applications and Rent Board Decision.**

25      37.    On or about September 29, 2009, Colony Cove submitted both a

26 general and a fair return rent increase application to the City based on income and

27 expense data from its third full year of ownership (collectively, the "Year 3

28

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1 Applications"). Colony Cove again submitted all of the required information,
2 including the additional documentation required for a fair return application.

3      38.    Together, the Year 3 Applications demonstrated that Colony Cove
4 continued to operate at a loss. As in Year 2, the Year 3 annual loss again exceeded
5 $800,000 according to Colony Cove's calculations.

6      39.    The City again excluded a substantial amount of Colony Cove's
7 expenses totaling over $600,000. Even accepting these exclusions, however,
8 Colony Cove again operated at loss of approximately $200,000.

9      40.    City Staff recommended a $4.19 per space, per month rent increase
10 based on the consumer price index ("CPI"). A CPI adjustment does not consider
11 Colony Cove's investment returns, much less compare them to like investments.
12 The methodology merely takes existing rents and adjusts them based on the increase
13 in the CPI. In other words, the City Staff's recommendation did not even purport to
14 take into account Colony Cove's investment and returns or the circumstances
15 common to mobilehome parks in the area. The City Staff's approach also ignored
16 the debt service payments that Colony Cove was actually paying to G.E. Capital.

17      41.    The Board accepted Staff's recommendation and made a final decision
18 increasing Colony Cove's rents by $4.19 per month, per space. That increase forced
19 Colony Cove to continue incurring a substantial loss. Once again, the City refused
20 to consider Colony Cove's debt service.

21     **F.**    **The Year 4 Applications and Rent Board Decision.**

22      42.    On or about September 29, 2010, Colony Cove submitted both a
23 general and a fair return rent increase application to the City based on income and
24 expense data from its fourth full year of ownership (collectively, the "Year 4
25 Applications"). Colony Cove again submitted all of the required information,
26 including the additional documentation required for a fair return application.

27
28

43.     Together, the Year 4 Applications demonstrated that Colony Cove continued to operate at a loss.  The Year 4 annual loss exceeded $1,000,000 according to Colony Cove's books.

44.     City Staff  recommended a $17.83 per space, per month rent increase but once again excluded factors specific to Colony Cove and the Park, including debt service.  All legitimate methodologies submitted by qualified experts suggested that a $200 to $300 rent increase was necessary.

45.     The Board accepted Staff's recommendation and made a final decision increasing Colony Cove's rents by $17.83 per month, per space.  That increase forced Colony Cove to continue incurring a substantial loss.  Once again, the City refused to consider Colony Cove's debt service.

G.     **The Year 5 Applications and Rent Board Decision.**

46.     On or about March 2, 2012, Colony Cove submitted general and fair return rent increase applications to the City based on 2011 expenses.  Colony Cove again suffered a six-figure loss.  On October 10, 2012, the City passed a resolution regarding Colony Cove's rent increase application.  Instead of increasing rents by approximately $300 as required by governing law and the City's rent control scheme, the City awarded Colony Cove a *temporary* rent increase of only $11.20.

47.     The City continued to ignore Colony Cove's investment and refused to compare Colony Cove's returns to returns on comparable real estate investments.

48.     Although Colony Cove eventually earned a small profit in 2012, that profit was well below what Colony Cove could have earned with reasonable, below-market rents.

H.     **Federal and State Litigation Between Colony Cove and the City.**

49.     On or about October 27, 2008, Colony Cove filed a complaint in this Court against the City asserting facial and as-applied takings and due process claims, a claim for declaratory relief, and a pendent state claim seeking a writ of

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1    administrative mandate under California law.  *See Colony Cove Props. v. City of*

2    *Carson*, C.D. Cal. Case No. CV 08-7065 PA (JWJx) (Docket No. 1).

3           50.    The City moved to dismiss the Complaint.

4           51.    On or about November 24, 2009, the Court granted the City's motion.

5    *See id.* (Docket No. 28).  The Court held that the facial claims (and declaratory relief

6    claims based on them) were barred by the statute of limitations because the City's

7    rent control guidelines did not restart the limitations period on the original rent

8    control ordinance.  None of those claims are asserted in this action.

9           52.    With respect to the as-applied takings claim, the Court held that the

10   claim was not ripe under *Williamson County Regional Planning Commission v.*

11   *Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), because Colony Cove had not

12   yet pursued an action in state court.  In order to satisfy *Williamson County*, this

13   Court held, Colony Cove must first seek, and be denied, compensation through the

14   procedures the state has provided for doing so.  Until that time, any federal takings

15   claim has not ripened.  In the context of a rent-control ordinance, this Court held

16   that Colony Cove must first seek an adjustment under *Kavanau v. Santa Monica*

17   *Rent Control Board*, 16 Cal. 4th 761 (1997).

18          53.    The Court also dismissed Colony Cove's as-applied substantive due

19   process claim and declined to exercise supplemental jurisdiction over Colony

20   Cove's pendent writ claim.

21          54.    Colony Cove timely appealed the Court's ruling on the federal claims

22   to the United States Court of Appeals for the Ninth Circuit, while filing a state writ

23   claim in Los Angeles Superior Court to ripen its federal claims consistent with this

24   Court's dismissal order.   The state court action raised only state law claims.

25          55.    Colony Cove filed the state writ claim, *Colony Cove Properties, LLC v.*

26   *City of Carson*, LASC Case No. BS124253, which pertained to the Year 1

27   Applications, on or about December 23, 2009.  Colony Cove also filed a writ claim

28   in state court pertaining  to the Year 2 Applications, *Colony Cove Properties, LLC v.*

1  *City of Carson*, LASC Case No. BS124776, on or about February 3, 2010.  Colony

2  Cove contended in its petitions, inter alia, that the methodology the City employed

3  to determine the rents Colony Cove could charge was unfair and contrary to

4  California law because, among other things, at a minimum the Board should have

5  permitted rent increases based on the full rate of inflation according to the CPI,

6  instead of a fraction thereof, and that the Board had failed properly to consider the

7  fair-return application.  In both of these writ petitions, Colony Cove expressly

8  reserved all of its rights to return and file a federal claim in federal court under

9  *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 (1964),

10  stating: "Under *England* and its progeny, [Colony Cove] hereby reserves any and all

11  federal claims arising from the facts alleged herein for litigation in federal court and

12  gives notice to all parties and the Court that any resolution of state-law issues herein

13  shall not constitute a binding resolution of parallel or related federal issues and shall

14  have no claim or issue preclusion for [Colony Cove's] federal claims."

15      56.    The City filed, and the Superior Court granted, a motion to strike

16  Colony Cove's *England* reservation.

17      57.    On or about July 26, 2010, the Superior Court denied Colony Cove's

18  writ based on the City's decision on the Year 1 Applications.  The Superior Court

19  applied an extremely deferential standard of review mandated by California law and

20  concluded that the City "may choose to regulate pursuant to any fairly constructed

21  formula."  The Superior Court upheld the use of the Board's analysis, noting that

22  "the landlord cannot insist that a fair return must be calculated on the basis of what

23  it paid for the mobile home park."

24      58.    Colony Cove and the City acknowledged that the same trial judge was

25  going to make the same ruling on the City's decision on the Year 2 Applications, so

26  they stipulated to judgment in favor of the City in that case.

27      59.    Colony Cove appealed the two judgments, where they were

28  consolidated by the California Court of Appeal.

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

60.     Colony Cove also timely filed writ petitions based on the City's decisions involving the Year 3, Year 4, and Year 5 Applications.  Colony Cove also made *England* reservations in these cases.  These cases were stayed pending the outcome of the appeal involving Years 1 and 2.

61.     On or about March 28, 2011, the Ninth Circuit affirmed this Court's judgment in its entirety.  *See Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948 (9th Cir. 2011).  The United States Supreme Court then denied Colony Cove's petition for a writ of certiorari.

62.     On or about October 21, 2013, the California Court of Appeal issued its decision.  Based on substantial evidence review of the Board's findings, the Court of Appeal affirmed the trial court's denial of the writs for Years 1 and 2.  The Court of Appeal concluded that the Board's use of an "approach [that] does not focus on how much the owner chose to pay for a rent-controlled property or how the purchase was financed."  "The MNOI approach … does not take land acquisition cost, including debt service, into account."  Citing prior precedent applying California law, the Court of Appeal further noted that the approach used by the Board "rather than designating a particular rate of return as fair" simply "preserve[s]  prior [net operating income] levels."  The principal benefit to this approach, the Court of Appeal concluded, was administrability.  Determining an actual fair rate of return "may … be problematic to administer, because an owner's equity can be greatly affected by individual differences in methods and costs of financing."  The Court of Appeal also adopted the hypothetical that debt service arrangements *could* be manipulated for the purposes of obtaining large rent increases.  But like the Board before it, the Court of Appeal found no manipulation on the part of Colony Cove.

63.     The Court of Appeal, nonetheless, concluded that based on existing state law precedent, the Board could under state law disregard purchase price and debt service, even if both were negotiated in arms-length, market-based, and fair

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1  transactions.  The Court of Appeal thus adopted the Board's position that California

2  law did not prevent the City from disregarding debt service entirely.

3       64.    The Court of Appeal, however, reversed the Superior Court's striking

4  of the *England* reservation.  The Court of Appeal noted that this Court had

5  dismissed the federal Takings claim under *Williamson County*.  "Having received a

6  clear message from the district court, [Colony Cove] … included the *England*

7  reservations in order to advise the court and [the City and the Board] that it had no

8  intention of resolving its federal constitutional claims in state court, but would resort

9  to federal court resolution of such claims when the matters were ripe."  Colony

10 Cove's *England* reservation, though not necessary to preserve Colony Cove's rights

11 to return to federal court to adjudicate federal claims, was "helpful to both the court

12 and the opposing party" by indicating that Colony Cove "wishe[d] to limit the state

13 court action to state issues."  Striking the reservation would create a risk of

14 "unnecessary confusion and duplication, as the litigant [such as Colony Cove] may

15 feel compelled to raise federal issues in the state action although he or she intends to

16 litigate the matters in federal court."

17      65.    The California Court of Appeal thus confirmed explicitly that Colony

18 Cove's action was premised solely on California law.  Colony Cove sought, in its

19 petition for a writ of administrative mandamus, an increase in the permissible rent it

20 may charge.  It premised its claim on the fact that the Board's method for setting

21 rents in the Park and refusal to permit a full measure of CPI in setting rent increases,

22 all violated California law and the City's own Ordinance and Guidelines.  The Court

23 of Appeal, in restoring the *England* reservation recognized that no federal issues had

24 been litigated.  In particular, Colony Cove never asserted in the state court action,

25 and the Court of Appeal decision never reached, the question of whether a total

26 disregard of reasonable, arms-length purchase price and debt service violates the

27 Fifth and Fourteenth Amendments of the U.S. Constitution.  Nor did the Court of

28

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1   Appeal determine whether the Board's disregard of debt service disrupted Colony
2   Cove's reasonable, investment-backed expectations.[3]

3       66.    Colony Cove filed a petition for review with the California Supreme
4   Court, which was denied.  The Year 1 and 2 judgments became final on January 28,
5   2014.

6       67.    Based on the rulings in the Year 1 and 2 case,  Colony Cove and the
7   City have agreed in principle that the same result would obtain from the California
8   courts in the Year 3-5 writ petitions.  Although the petitions are contested, the
9   parties have agreed in principle to stipulate to judgment in those cases for efficiency.

10      68.    Accordingly, all state court remedies have been exhausted, and Colony
11  Cove's claims are ripe for adjudication in federal court.

12      69.    Colony Cove expects that the City will argue that Colony Cove's
13  federal claims are now precluded under 28 U.S.C. § 1738 and  *San Remo Hotel, L.P.*
14  *v. City and County of San Francisco*, 545 U.S. 323 (2005), by the parties' litigation
15  of Colony Cove's rights under California law.  Colony Cove believes the argument
16  is incorrect for at least two reasons.  First, under California law, for issue preclusion
17  to apply, the issue decided must be "identical with the one now presented."  *See San*
18  *Remo*, 545 U.S. at 335 n.14.  In the state court litigation, the issue was whether,
19  under state law, the City and the Board could exclude Colony Cove's debt service
20  when setting rents. The California courts answered that question in the affirmative.
21  In this case, the issue is whether application of a state rule that permits exclusion of
22  debt service by the City and the Board such that it forced Colony Cove to lose
23  money repeatedly constitutes a taking under the Fifth Amendment.  Second, the

24  _____

25  [3] Demonstrating the exclusion of federal issues, the Court of Appeal's decision cited
26  no federal cases (other than to describe the procedural background of this litigation's
    history in federal court and in the section restoring Colony Cove's *England*
27  reservation).  Nor did the decision ever speak of, or analyze, "investment-backed
28  expectations," a hallmark of federal takings law.

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1   California courts applied a very deferential standard of review (the substantial
2   evidence test) when under governing U.S. Supreme Court case law, the more
3   stringent independent judgment test must be applied to cases involving a property
4   owner's constitutional rights.

**FIRST CLAIM FOR RELIEF**

**(Violation of the Takings Clause of the Fifth Amendment**
**Under 42 U.S.C. § 1983 – As-Applied Takings Claim)**

8   70.   Colony Cove repeats and realleges each and every allegation contained
9   in paragraphs 1 to 69, and incorporates them herein by reference.

10   71.   By denying Colony Cove the ability to make any profit from its
11   investment in the Park, the City and the Board have effected a temporary and
12   categorical taking by prohibiting, for some or all of the Years relevant in this
13   litigation, all economically beneficial use of the land.  Under California law, Colony
14   Cove is not permitted to close the Park and use it for another economic purpose, nor
15   is Colony Cove permitted to evict the Park's current tenants, nor is Colony Cove
16   permitted to charge a rent that would result in any profit, much less a fair return on
17   investment.  As a consequence, Colony Cove is forced to operate the Park at a loss.
18   Such government imposition on a landowner's prerogative to make economic use of
19   its land constitutes a violation of the Fifth and Fourteenth Amendments to the U.S.
20   Constitution under *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992).

21   72.   Even if something less than all economically viable use had been
22   destroyed by the City and the Board's conduct denying reasonable increases in rent
23   described herein, that conduct constitutes an unconstitutional taking under *Penn*
24   *Central Transportation Co. v. New York City*, 438 U.S. 104 (1978).  The City's
25   overly-restrictive rents have had a significant economic impact on Colony Cove,
26   both in terms of a substantial loss of property value and forced operating losses
27   exceeding $4 million.  The City also directly  interfered with Colony Cove's
28   legitimate, investment-backed expectation that it could profit with reasonable rent

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1  levels and that its debt service would be considered when the City and the Board set

2  rents. By forcing Colony Cove to operate at a loss year-after-year solely to serve the

3  government's interest in subsidizing housing, the City's conduct was tantamount to

4  a physical, government takeover of the Park.

5        73.    As a result of the City's unconstitutional actions, Colony Cove is

6  entitled to just compensation and/or damages in an amount to be proven at trial.

7  Colony Cove is also entitled to an award of attorneys' fees under 42 U.S.C.

8  § 1988(b).

9  **SECOND CLAIM FOR RELIEF**

10 **(Violation of the Due Process Clause of the Fourteenth Amendment**

11 **Under 42 U.S.C. § 1983)**

12       74.    Colony Cove repeats and realleges each and every allegation contained

13 in paragraphs 1 to 73, and incorporates them herein by reference.

14       75.    California law permits judicial review of administrative bodies, such as

15 the Board, only by seeking a writ of administrative mandamus. The standard of

16 review a California court applies when deciding a writ action is the substantial

17 evidence standard. Substantial evidence review does not permit a California court

18 to exercise its independent judgment; rather a court asks whether a reasonable mind

19 *might* accept the evidence before the administrative body as adequate to support the

20 conclusion. A California court is bound to consider the facts in the light most

21 favorable to the administrative decision, giving that decision every reasonable

22 inference and resolving all conflicts in the decision's favor.

23       76.    In *Ohio Valley Water Co. v. Ben Avon Borough*, 253 U.S. 287 (1920),

24 the Supreme Court held that where a property owner claims a taking of its property,

25 judicial review of the administrative action by a state court must be de novo or else

26 the property owner's due process rights are violated. *See id.* at 289 ("In all such

27 cases, if the owner claims confiscation of his property will result, the state must

28 provide a fair opportunity for submitting that issue to a judicial tribunal for

18
COMPLAINT

1  determination upon its own independent judgment as to both law and facts;

2  otherwise the order is void because in conflict with the due process clause,

3  Fourteenth Amendment."). In other words, due process is denied whenever a taking

4  occurs and the property owner is denied the opportunity to seek the independent

5  judgment of a court.

6       77.    No California court has exercised its independent judgment of any of

7  the Board's decisions in this case. The review of the Board's decision denying

8  Colony Cove a reasonable rent increase has been deferential; far too deferential for

9  the vindication of these important constitutional rights.

10       78.    In fact, cities know that they can game the system under California law

11  because merely having a single putative expert testify is sufficient to support the

12  administrative decision – whatever it is. *See MHC Operating Ltd. P'ship v. City of*

13  *San Jose*, 106 Cal. App. 4th 206, 225 (2003) ("Dr. Baar's testimony alone

14  constitutes substantial evidence...").

15       79.    As a result of the California courts' deferential review to the City's

16  decisions described herein, Colony Cove has been harmed. Colony Cove therefore

17  requests that this Court engage in independent review of the administrative records

18  for each of the petitions described herein and award damages against the City based

19  on the appropriate, nonconfiscatory rent-levels set by the Court. In the alternative,

20  Colony Cove requests that the Court issue an injunction commanding the City to

21  permit Colony Cove to charge rents at appropriate, nonconfiscatory levels in an

22  amount to be proved at trial.

23       80.    Colony Cove is also entitled to an award of attorneys' fees under 42

24  U.S.C. § 1988(b).

25                        **THIRD CLAIM FOR RELIEF**

26                          **(Declaratory Relief)**

27       81.    Colony Cove repeats and realleges each and every allegation contained

28  in paragraphs 1 to 80, and incorporates them herein by reference.

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

82.     An actual controversy has arisen and now exists between Colony Cove and the City relative to the validity and constitutionality of the City's Rent Control Law and whether it constitutes a taking as applied to Colony Cove.

83.     A judicial declaration is necessary and appropriate at this time to settle the parties' disputes concerning the validity and constitutionality of the City's Rent Control Law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A.     A declaration that the City's Rent Control Law, as applied to Colony Cove, is unconstitutional, invalid, and/or constitutes an uncompensated taking in violation of the Takings Clause of the Fifth Amendment of the United States Constitution.

B.     An injunction against the City and the Board preventing enforcement of the City's Rent Control Law against Colony Cove.

C.     Damages and/or just compensation in an amount to be proven at trial, as well as and alternatively nominal damages.

D.     An injunction commanding the City to allow Colony Cove to charge rents in an amount to be proven at trial.

E.     An award of attorneys' fees and costs.

F.     Such other and further relief as the Court deems just and proper.

DATED: April 28, 2014                    GILCHRIST & RUTTER
                                         Professional Corporation
                                                    &
                                         O'MELVENY & MYERS LLP

                                         By:
                                             Kevin M. Yopp
                                             Attorneys for Plaintiff
                                             Colony Cove Properties, LLC

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

## DEMAND FOR JURY TRIAL

Colony Cove hereby demands a jury trial on all issues to the extent permitted by law.

DATED: April 28, 2014

GILCHRIST & RUTTER
Professional Corporation
&
O'MELVENY & MYERS LLP

By: _____

Kevin M. Yopp
Attorneys for Plaintiff
Colony Cove Properties. LLC

COMPLAINT

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ Philip S. Gutierrez _____ and to
Magistrate Judge _____ Patrick J. Walsh _____ .

The case number on all documents filed with the Court should read as follows:

## 2:14-cv-03242-PSG(PJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of
California, the assigned Magistrate Judge has been designated to hear discovery-related
motions. All discovery-related motions should be noticed on the calendar of the Magistrate
Judge.

Clerk, U. S. District Court

_____ April 28, 2014 _____
Date

By _ APEDRO _____
Deputy Clerk

## ATTENTION

*A copy of this Notice must be served on all parties served with the Summons and Complaint (or, in cases
removed from state court, on all parties served with the Notice of Removal) by the party who filed the
Complaint (or Notice of Removal).*

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### CENTRL DISTRICT OF CALIFORNIA

COLONY COVE PROPERTIES, LLC, a Delaware
limited liability company
_____
*Plaintiff(s)*

v.

CITY OF CARSON, a municipal corporation; CITY
OF CARSON MOBILEHOME PARK RENTAL
REVIEW BOARD, a public administrative body; and
DOES 1 to 10, inclusive
_____
*Defendant(s)*

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No.

CV14-03242-PSG-(PJWx)

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you
are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ.
P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of
the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney,
whose name and address are:
Kevin M. Yopp (Bar No. 218204)
kyopp@gilchristrutter.com
Gilchrist & Rutter
1299 Ocean Avenue, Suite 900
Santa Monica, CA 90401
Telephone: (310) 393-4000

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint.
You also must file your answer or motion with the court.

CLERK OF COURT

Date: ____APR 2 8 2014____        ANDRES PEDRO
                                  _____
                                  *Signature of Clerk or Deputy Clerk*

1202

[398219.1/4541.038]


American LegalNet, Inc.
www.FormsWorkFlow.com

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| COLONY COVE PROPERTIES, LLC | CITY OF CARSON, a municipal corporation; CITY OF CARSON MOBILEHOME PARK RENTAL REVIEW BOARD, a public administrative body; and DOES 1 to 50, inclusive |

| (b) County of Residence of First Listed Plaintiff Los Angeles *(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant Los Angeles *(IN U.S. PLAINTIFF CASES ONLY)* |
|---|---|

| (c) Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. | Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. |
|---|---|
| Kevin M. Yopp, Esq. (Bar No. 218204) kyopp@gilchristrutter.com Gilchrist & Rutter 1299 Ocean Avenue, Suite 900, Santa Monica, CA 90401 Telephone: (310) 393-4000; Facsimile: (310) 394-4700 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No    ☒ MONEY DEMANDED IN COMPLAINT: $ To be proven at trial.

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. § 1983 Fifth Amendment As-Applied Taking

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 160 Stockholders' Suits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 195 Contract Product Liability | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 196 Franchise | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | **REAL PROPERTY** | ☐ 360 Other Personal Injury | ☒ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 210 Land Condemnation | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 220 Foreclosure | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 230 Rent Lease & Ejectment | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

| FOR OFFICE USE ONLY: Case Number: | CV14-03242 |
|---|---|

CV-71 (11/13)    CIVIL COVER SHEET    Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| ☐ Yes  ☒ No | ☐ Los Angeles | | Western |
| If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | | Western |
| | ☐ Orange | | Southern |
| | ☐ Riverside or San Bernardino | | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF?<br><br>Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT?<br><br>Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| ☐ Yes  ☒ No | ☐ Los Angeles | ☐ Los Angeles | Western |
| If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A.<br>Los Angeles County | B.<br>Ventura, Santa Barbara, or San Luis Obispo Counties | C.<br>Orange County | D.<br>Riverside or San Bernardino Counties | E.<br>Outside the Central District of California | F.<br>Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

**C.1. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Western Division |

American LegalNet, Inc.
www.FormsWorkFlow.com

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

IX(a). **IDENTICAL CASES**: Has this action been previously filed **in this court** and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

IX(b). **RELATED CASES**: Have any cases been previously filed **in this court** that are related to the present case?   ☐ NO   ☒ YES

If yes, list case number(s):   CV 08-7065 PA (JWJx) _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☒ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, **and** one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**   _Kevin M. Yopp_   DATE: April 28, 2014

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

American LegalNet, Inc.
www.FormsWorkFlow.com