William W. Wynder, Bar No. 84753
wwynder@awattorneys.com
Sunny K. Soltani, Bar No. 209774
ssoltani@awattorneys.com
Jeff M. Malawy, Bar No. 252428
jmalawy@awattorneys.com
Kathryn C. Phelan, Bar No. 210486
kphelan@awattorneys.com
ALESHIRE & WYNDER, LLP
18881 Von Karman Avenue, Suite 1700
Irvine, CA 92612

Telephone:  (949) 223-1170
Facsimile:  (949) 223-1180

Attorneys for Defendants,
CITY OF CARSON, a municipal corporation; CITY
OF CARSON MOBILEHOME PARK RENTAL
REVIEW BOARD, a public administrative body

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLONY COVE PROPERTIES, LLC, a Delaware limited liability company,, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF CARSON, a municipal corporation; CITY OF CARSON MOBILEHOME PARK RENTAL REVIEW BOARD, a public administrative body; and DOES 1 to 10, inclusive,, <br><br> Defendants. | Case No. CV14-03242 PSG (PJWx) <br><br> **NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT [F.R.C.P. 12(b)(1) AND 12(b)(6)]; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> [Filed concurrently with: Request for Judicial Notice; Declaration of Jeff M. Malawy; [Proposed] Order] <br><br> Date:         August 11, 2014 <br> Time:         1:30 p.m. <br> Courtroom:  880 - Roybal <br> Judge:        Hon. Philip S. Gutierrez |

TO  PLAINTIFF  COLONY  COVE  PROPERTIES, LLC, AND  TO  ITS

ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that on August 11, 2014, at 1:30 p.m., or as soon

thereafter as counsel may be heard in Courtroom 880 of the Edward R. Roybal

United States Courthouse, located at 255 E. Temple St., Los Angeles, California

90012, Defendants, CITY OF CARSON and CITY OF CARSON MOBILEHOME PARK RENTAL REVIEW BOARD (collectively, the "City"), will and do hereby move the court for an order dismissing, with prejudice, all claims for relief in the Complaint filed by Plaintiff, Colony Cove Properties, LLC ("Colony Cove"), on April 28, 2014 ("Complaint").  This motion is made pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6), on the following grounds:

<u>Failure to Allege Facts Sufficient to State a Claim</u> - All claims in the Complaint must be dismissed because, as a matter of law, they fail to allege facts sufficient to state a claim against the City.  FRCP 12(b)(6).

<u>Ripeness</u> – The taking claims in the Complaint must be dismissed because they are not ripe for federal adjudication as Colony Cove has not exhausted its California state court remedies.  FRCP 12(b)(1).

<u>*Res Judicata*</u> - Colony Cove's claims must be dismissed because they are barred by the doctrines of issue preclusion and/or claim preclusion, as Colony Cove has already litigated the issues involved to a final judgment in the California state courts.  FRCP 12(b)(6).

<u>*Rooker-Feldman* Doctrine</u> - Pursuant to the *Rooker-Feldman* doctrine, this Court does not have subject matter jurisdiction to hear Colony Cove's second claim for relief for a purported violation of the Due Process Clause of the Fourteenth Amendment.  FRCP 12(b)(1).

<u>*Younger* Abstention</u> - If any of Colony Cove's claims are not dismissed, this Court is required to abstain from hearing them under *Younger v. Harris*, 401 U.S. 37 (1971) because this action would have the practical effect of mooting and interfering with Colony Cove's pending state court proceedings that arise from the same facts and circumstances.  FRCP 12(b)(1).  Under *Younger*, Colony Cove's claims here must be stayed until resolution of the pending state court proceedings.

<u>*Pullman* Abstention</u> - In the alternative, if any of Colony Cove's claims are not dismissed and the Court does not abstain under *Younger*, the Court should abstain

MOTION TO DISMISS COMPLAINT [F.R.C.P. 12(b)(1), 12(b)(6)]

1  from hearing the claims pursuant to *Railroad Comm'n of Texas v. Pullman Co.*, 312

2  U.S. 496, 500 (1941) because the federal constitutional issues here could be mooted

3  by resolution of Colony Cove's pending state court proceedings that arise from the

4  same facts and circumstances.   FRCP 12(b)(1).   Under *Pullman*, Colony Cove's

5  claims here should be stayed until resolution of the pending state court proceedings.

6      This motion is made following the conference of counsel pursuant to Local

7  Rule 7-3 which took place on June 4, 2014.  This motion is based upon this Notice,

8  the Memorandum of Points and Authorities filed herewith, the City's Request for

9  Judicial Notice, the Declaration of Jeff M. Malawy, upon all pleadings, papers, and

10  records on file in this action, and upon such further argument as may be received by

11  the court at the time of the hearing.

12      The City respectfully requests that this motion to dismiss all claims for relief

13  pursuant to FRCP Rules 12(b)(1) and 12(b)(6) be granted.

14

15  Dated: June 11, 2014                    WILLIAM W. WYNDER
                                           SUNNY K. SOLTANI
16                                          JEFF M. MALAWY
                                           KATHRYN C. PHELAN
17                                          ALESHIRE & WYNDER, LLP

18

19                                   By: _____ -for-
                                         William W. Wynder
20                                       Attorneys for Defendants
                                         CITY OF CARSON, a municipal
21                                       corporation; CITY OF CARSON
                                         MOBILEHOME PARK RENTAL
22                                       REVIEW BOARD, a public
                                         administrative body
23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION & SUMMARY OF THE ARGUMENT .......................... 1

II.  STATEMENT OF RELEVANT FACTS ........................................ 4

   A.   THE RATIONALE FOR MOBILEHOME PARK RENT STABILIZATION. ......................................................... 4

   B.   THE CITY'S ORDINANCE AND NON-BINDING GUIDELINES. .......................................................... 5

       1.   The Ordinance. .................................................. 5

       2.   The Non-Binding Guidelines For Implementing The Ordinance. .................................................... 5

   C.   COLONY COVE'S PURCHASE OF THE PARK. ...................... 7

   D.   THE BOARD'S DECISION ON COLONY COVE'S YEAR 1 APPLICATION, AND THE RELATED LITIGATION. ........................................................ 8

   E.   THE BOARD'S DECISION ON COLONY COVE'S YEAR 2 APPLICATION, AND THE RELATED LITIGATION. ........................................................ 9

   F.   THE CALIFORNIA COURT OF APPEAL HOLDS THE BOARD PROVIDED COLONY COVE A FAIR RETURN IN THE YEAR 1 AND YEAR 2 CASES ................................ 9

   G.   THE BOARD'S DECISIONS ON COLONY COVE'S YEARS 3, 4, AND 5 APPLICATIONS, AND THE RELATED LITIGATION ............................................. 10

III. ARGUMENT ......................................................... 11

   A.   COLONY COVE'S TAKING CLAIM IS UNRIPE. ................... 11

   B.   THE COMPLAINT FAILS TO STATE A TAKING CLAIM. .......................................................... 12

       1.   As A Matter of Law, There Is No Lucas Taking. ....... 12

       2.   As A Matter of Law, There Is No Penn Central Taking. ...................................................... 14

           a.   Colony Cove Has Not Alleged An Economic Impact Of The Severity Necessary For A Taking, And The California Courts Have Already Determined In A Final Decision That

MOTION TO DISMISS COMPLAINT [F.R.C.P. 12(b)(1), 12(b)(6)]

01007/0504/169187.08

**TABLE OF CONTENTS (cont.)**

**Page**

the Board's Year 1 and Year 2 Decisions Have
No Significant Economic Impact. ................................... 14

b.   The Ninth Circuit Has Already Held As A
Matter Of Law That When Colony Cove
Bought The Park, Colony Cove Could Not
Have Expected That Its Debt Service Costs
Would Necessarily Be Considered By The
Board. ................................................................................ 17

c.   The Character of the Governmental Action
Does Not Support A Penn Central Taking
Claim. ............................................................................... 18

C.   ANY TAKING CLAIM BASED ON THE BOARD'S
YEARS 1 AND 2 DECISIONS IS BARRED BY RES
JUDICATA. ................................................................................ 19

D.   THE SECOND CLAIM MAKES NO ALLEGATIONS
AGAINST THE CITY AND MUST BE DISMISSED FOR
FAILURE TO STATE A CLAIM. ............................................. 21

E.   THE SECOND CLAIM IS BARRED BY ROOKER-
FELDMAN. ................................................................................ 22

F.   IF ANY CLAIMS ARE NOT DISMISSED, THE COURT
MUST ABSTAIN FROM CONSIDERING THEM UNTIL
RESOLUTION OF THE PENDING YEARS 3-5 CASES. ....... 23

1.   The Court Must Stay Any Claims That Are Not
Dismissed Pursuant To Younger v. Harris. ....................... 23

2.   Pullman Abstention Is Also Appropriate For Any
Claims That Are Not Dismissed. ......................................... 24

G.   THE PLAINTIFF'S REQUEST FOR DECLARATORY
AND INJUNCTIVE RELIEF SHOULD BE DISMISSED
AS DAMAGES PROVIDE AN ADEQUATE REMEDY ............ 25

IV.   CONCLUSION. ............................................................................... 25

01007/0504/169187.08

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Adam Bros. Farming, Inc. v. County of Santa Barbara,*
    604 F.3d 1142 (9th Cir. 2010) .................................................. 19, 21

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................ 22

*Canatella v. State of California,,*
    404 F.3d 1113 (9th Cir. 2005) .................................................. 23

*Carson Harbor Village v. City of Carson,*
    353 F.3d 824 (9th Cir. 2004) .................................................. 1, 3

*Carson Harbor Village, Ltd. v. City of Carson,*
    37 F.3d 468 (9th Cir. 1994) ( ................................................ passim

*Chandler v. State Farm Mut. Auto Ins. Co.,*
    598 F.3d 1115 (9th Cir. 2010) .................................................. 12

*Colony Cove Properties, LLC v. City of Carson, et al.,*
    640 F.3d 948 (9th Cir. 2011) ................................................ passim

*Daum v. Planit Solutions,*
    619 F. Supp. 2d 652 (D. Minn. 2009) ......................................... 25

*Duquesne Light Co. v. Barasch,*
    488 U.S. 299 (1989) ................................................................ 21

*Garneau v. City of Seattle,*
    147 F.3d 802 (9th Cir. 1998) .................................................. 14, 15

*Gilbertson v. Albright,*
    381 F.3d 965 (9th Cir. 2004) .................................................. 23, 24

*Guggenheim v. City of Goleta,*
    638 F.3d 1111 (9th Cir. 2010) ................................................ passim

*Hadacheck v. Sebastian,*
    239 U.S. 394 (1915) ................................................................ 15

*Lingle v. Chevron U.S.A.,*
    544 U.S. 528 (2005) ........................................................ 12, 14, 19

*Los Angeles Memorial Coliseum Com. v. NFL,*
    634 F.2d 1197 (9th Cir. 1980) .................................................. 25

*Lucas v. South Carolina Coastal Council,*
    505 U.S. 1003 (1992) .............................................................. 12

01007/0504/169187.08

**<u>TABLE OF AUTHORITIES (cont.)</u>**

<u>Page</u>

*MHC Fin. L.P. v. City of San Rafael,*
  714 F.3d 1118 (9th Cir. 2013).........................................................14, 15, 19

*MHC v. City of San Jose,*
  420 F.3d 1022 (9th Cir. 2005).........................................................19, 20, 21

*Middlesex v. Garden State Bar Ass'n,*
  457 U.S. 423 (1982) .......................................................................23

*Mission Oaks Mobilehome Park v. City of Hollister,*
  989 F. 2d 359 (9th Cir. 1993),........................................................23

*Noel v. Hall,*
  341 F.3d 1148 (9th Cir. 2003).........................................................22

*Palomar v. City of San Marcos,*
  989 F.2d 362 (9th Cir. 1993)...........................................................22

*Pearl Inv. Co. v. San Francisco,*
  774 F.2d 1460 (9th Cir. 1985).........................................................24

*QBAS Co. v. C. Walters Intercoastal Corp.,,*
  2010 U.S. Dist. LEXIS 143945 (C.D. Cal. 2010)............................25

*Railroad Comm'n of Texas v. Pullman Co.,*
  312 U.S. 496 (1941) ...................................................................2, 24

*Roberts v. Corrothers,*
  812 F.2d 1173 (9th Cir. 1987).........................................................12

*Rooke v. Scotts Valley,*
  664 F. Supp. 1342 (N.D. Cal. 1987) ..............................................24

*San Remo Hotel v. City and County of San Francisco,*
  364 F.3d 1088, 109 (9th Cir. 2004).........................................passim

*San Remo Hotel v. City and County of San Francisco,*
  545 U.S. 323 (2005) ................................................................passim

*San Remo I,*
  145 F.3d at 1104...............................................................................24

*Santa Fe Land Improvement Co. v. Chula Vista,*
  596 F.2d 838 (9th Cir. 1979)......................................................24, 25

*Sprewell v. Golden State Warriors,*
  266 F.3d at 979, 988 (9th Cir. 2001).............................................5, 14

-iv-

MOTION TO DISMISS COMPLAINT [F.R.C.P. 12(b)(1), 12(b)(6)]

01007/0504/169187.08

## TABLE OF AUTHORITIES (cont.)

**Page**

*Village of Euclid v. Ambler Realty Co.,*
272 U.S. 365 (1926) .................................................................... 15

*William C. Haas Co., Inc. v. City & County of S.F.,*
605 F.2d 1117 (9th Cir. 1979) .................................................... 15

*WMX Techs. v. Miller,*
104 F.3d 1133, 1136 (9th Cir. 1997) ........................................... 1

*Yee v. City of Escondido,*
503 U.S. 519 (1992) ...................................................................... 4

*Younger v. Harris,*
401 U.S. 37 (1971) ................................................................. 2, 23

### STATE CASES

*Carson Harbor Village, Ltd. v. City of Carson Mobilehome Park Rental Review Board,*
70 Cal. App. 4th 281 (1999) .................................................... 3, 7

*Carson Mobilehome Park Owners Ass'n. v. City of Carson,*
35 Cal. 3d 184 (1983) ............................................................. 1, 5

*Colony Cove Properties, LLC v. City of Carson,*
187 Cal. App. 4th 1487 (2010) ..................................................... 3

*Colony Cove Properties, LLC v. City of Carson,*
220 Cal. App. 4th 840 ......................................................... passim

*Galland v. City of Clovis,*
24 Cal. 4th 1003 (2001) ............................................................... 4

*Kavanau v. Santa Monica Rent Control Bd.,*
16 Cal. 4th 761 (1997) ............................................................... 21

*Los Altos El Granada Investors v. City of Capitola,*
139 Cal. App. 4th 629(2006), abrogated .................................... 24

*Lucido v. Superior Court,*
51 Cal. 3d 335 (1990) ................................................................ 16

### FEDERAL STATUTES

28 U.S.C. § 1257 ............................................................................ 22

28 U.S.C. § 1738 ........................................................... 13, 15, 19

FRCP 8(a)(2) ................................................................................... 22

1

## **TABLE OF AUTHORITIES (cont.)**

2                                                                     **Page**

3

## **STATE STATUTES**

4   Cal. Civil Code § 798.56(g) ........................................................... 13

5   Cal. Gov. Code § 66427.5 ........................................................ 12, 13

6   Cal. Gov. Code §§ 65863.7 and 66427.4 ........................................ 13

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS COMPLAINT [F.R.C.P. 12(b)(1), 12(b)(6)]

01007/0504/169187.08

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION & SUMMARY OF THE ARGUMENT

*"And it's one, two, three strikes you're out, at the old ball game."*[1]

This lawsuit is, in the immortal words of that legendary baseball philosopher, Mr. Peter "Yogi" Berra, *"déjà vu all over again."* Plaintiff, Colony Cove Properties, LLC ("Colony Cove") attempts, for at least the ***third time*** now, to mount a federal challenge to the City of Carson's ("City") Mobilehome Space Rent Control Ordinance ("Ordinance") and its implementation by the City's Mobilehome Park Rental Review Board ("Board").

Plaintiff does so, notwithstanding the fact that the Ordinance has explicitly been upheld as constitutional by the California Supreme Court. *Carson Mobilehome Park Owners Ass'n. v. City of Carson* ("*Carson Owners*"), 35 Cal. 3d 184 (1983). Even more troubling, Plaintiff does so, notwithstanding the fact that the Ninth Circuit has, on no fewer than three separate occasions, considered the Carson Ordinance and rejected federal taking claims asserted by this park owner against the City. *See, e.g., Carson Harbor Village, Ltd. v. City of Carson,* 37 F.3d 468 (9th Cir. 1994) ("*CHV I*"), *rev'd on other grounds, WMX Techs. v. Miller,* 104 F.3d 1133, 1136 (9th Cir. 1997); *Carson Harbor Village v. City of Carson,* 353 F.3d 824 (9th Cir. 2004); *Colony Cove Properties, LLC v. City of Carson, et al.* ("*Colony Cove I*"), 640 F.3d 948 (9th Cir. 2011).[2] This lawsuit is, in reality, *"déjà vu all over again."*

Mr. Goldstein owns two Carson mobilehome parks, one of which is known as Colony Cove Mobile Estates (the "Park"). He purchased this Park April 4, 2006.

---

[1]   *"Take Me Out to the Ball Game"* is a 1908 Tin Pan Alley song by Jack Norworth and Albert Von Tilzer which has become the unofficial anthem of North American baseball.

[2]   Colony Cove, and its sister park Carson Harbor Village ("CHV") (literally across the street from each other), are owned through a series of shell business entities by one James Goldstein. Request for Judicial Notice ("RJN"), Exhs. S, & T. In fact, in other court pleadings filed by Goldstein and his attorneys, they have conceded that the owners of Colony Cove and CHV are "nearly identical", having the "same general partner," Mr. Goldstein. RJN, Exh. R, p. 2, line 23, through p. 3, line 1.

MOTION TO DISMISS COMPLAINT [F.R.C.P. 12(b)(1), 12(b)(6)]

The Park has been subject to Carson's Ordinance since the same was enacted in 1979.  Mr. Goldstein is a sophisticated real estate investor who is well-versed in the Ordinance, having owned a sister-park, Carson Harbor Village, since 1983, and having applied for rent increases in that park virtually every year since he acquired it.

This Complaint challenges two administrative decisions of the Board; the first in 2008 to grant (not deny, but grant) an approximately 9% rent increase, or $36.74, rather than the outrageous $618.15 rent increase Colony Cove had requested.  The second, a 2009 decision to grant (again, not deny, but grant) Mr. Goldstein an approximately 6% rent increase, or $25.02, rather than the $250 he had requested.

The California trial and appellate courts have already held that these two administrative decisions afforded Mr. Goldstein a constitutional fair return. Additionally, the Complaint challenges three more Board decisions in 2010, 2011, and 2012 each of which also granted rent increases (just not in the amounts Mr. Goldstein wanted).  These three cases remain pending in state trial courts.[3]

Seeking "friendly pastures," Mr. Goldstein tries to attack these five administrative decisions in Federal Court as purported compensable federal takings. However, as will be demonstrated, yet again, Colony Cove simply has not (and cannot) allege facts sufficient to state any claim against the City, nor can Mr. Goldstein re-litigate in this Court the adverse findings of the state courts.

*First*, the California courts have already decided, as a matter of fact, that the Board's 2008 and 2009 decisions had no substantial adverse economic impact on Colony Cove.  And, the Ninth Circuit (barely three years ago) has held that, at the time he purchased the Park, Mr. Goldstein could not have expected that his purchase

---

[3]  Colony Cove sued the City over each separate administrative award in Los Angeles County Superior Court, and the 2010, 2011, and 2012 lawsuits are all currently pending in that court.  Colony Cove's claims are, therefore, unripe because Colony Cove has yet to exhaust its state court remedies on the 2010, 2011, and 2012 Board decisions. *Colony Cove I*, 640 F.3d at 958-59.  If not dismissed as unripe, this Court must abstain on these claims under *Younger v. Harris*, 401 U.S. 37 (1971) and/or *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 500 (1941).

money debt service would automatically be accounted for by the Board in any rent increase. Therefore no *Penn Central* taking can be stated.

**Second**, in October 2009, the City approved Mr. Goldstein's application to convert this Park to condominium spaces, which (once he completes the California Department of Real Estate process and begins to sell lots) will eliminate the City's rent control in the Park. This approved conversion forecloses any purported *Lucas* taking, because the Park indisputably retains economically viable uses.

**Third**, any challenge to the 2008 or 2009 Board decisions is barred by *res judicata* because the California courts have already concluded, as a matter of fact and law, that these two rent increases afforded Colony Cove a constitutional fair return.

**Fourth**, the attempted Due Process claim makes no allegations against the City at all. Rather, it purports to attack the legal standard used by the California courts to decide Colony Cove's state court challenges to the 2008 and 2009 Board decisions. Mr. Goldstein's remedy for any such purported error was through a petition seeking a *writ of certiorari* to the United States Supreme Court. The Federal District Courts do not sit as courts of appeal of decisions of the California courts.

One simple indisputable fact remains today as it has for well over a decade; Mr. Goldstein is determined, if he can, to "destroy" the Carson Ordinance. His history of vexatious litigation against the City and its Ordinance is legendary.[4] It is

---

[4] *See, e.g., Carson Harbor Village, Ltd. v. City of Carson*, 37 F.3d 468 (9th Cir. 1994); *Carson Harbor Village, Ltd. v. Carson Mobilehome Park Rental Review Board*, 70 Cal. App. 4th 281 (1999); *Carson Harbor Village, Ltd. v. City of Carson*, 353 F.3d 824 (9th Cir. 2004); *Colony Cove Properties, LLC v. City of Carson*, Cal. 2nd App. Dist. No. B208994 (Dec. 8, 2009); *Carson Harbor Village, Ltd. v. City of Carson*, Cal. 2nd App. Dist. No. B211777 (March 30, 2010); *Colony Cove Properties, LLC v. City of Carson*, 187 Cal. App. 4th 1487 (2010); *Colony Cove Properties, LLC v. City of Carson*, 640 F.3d 948 (9th Cir. 2011); *Colony Cove Properties, LLC v. City of Carson*, Cal. 2nd App. Dist. No. B234985 (March 19, 2013); *Colony Cove Properties, LLC v. City of Carson*, 220 Cal. App. 4th 840 (2013); *Colony Cove Properties, LLC v. Carson*, Los Angeles County Superior Court No. BS127863 (pending); *Colony Cove Properties, LLC v. Carson*, LA County Superior Court No. BS132471 (pending); *Colony Cove Properties, LLC v. Carson*, LA County Superior Court No. BS140908 (pending); *Carson Harbor Village, Ltd. v. Carson*, Los Angeles County Superior Court No. BC381581 (pending).

1 now time for this Court to tell Mr. Goldstein that three strikes, sir, and you are out!

2 The pending motion should be granted without leave to amend.

3 **II.     STATEMENT OF RELEVANT FACTS**

4 **A.     THE RATIONALE FOR MOBILEHOME PARK RENT
        STABILIZATION.**

5      Carson is one of approximately one hundred jurisdictions in California that

6 have adopted an ordinance controlling the rents of mobilehome park spaces.   The

7 widespread adoption of mobilehome park space rent regulations is the result of the

8 special nature of space rentals in mobilehome parks.    The tenants own their

9 "mobilehomes" but rent the spaces on which their homes sit.

10      Since the advent of mobilehome space rent control ordinances, both the United

11 States and California Supreme Courts have noted the unique character of

12 mobilehome park space rentals.  In 2001, the California Supreme Court explained:

13      "The term 'mobile home' is somewhat misleading. ***Mobile homes are
        largely immobile as a practical matter, because the cost of moving one
14      is often a significant fraction of the value of the mobile home itself***.
        They are generally placed permanently in parks; once in place, only
15      about 1 in every 100 mobile homes is ever moved." *Yee v. City of
        Escondido*, 503 U.S. 519, 523 (1992).  Thus, unlike the usual tenant, the
16      mobilehome owner generally makes a substantial investment in the
        home and its appurtenances - typically a greater investment in his or her
17      space than the mobilehome park owner. [cite omitted] ***The immobility
        of the mobilehome, the investment of the mobilehome owner, and
18      restriction on mobilehome spaces, has sometimes led to what has been
        perceived as an economic imbalance of power in favor of mobilehome
19      park owners***.

20 *Galland v. City of Clovis*, 24 Cal. 4th 1003, 1009-10 (2001) [emphasis added].

21      An *en banc* panel of the Ninth Circuit explained the concept succinctly:

22 "Because the owner of the mobile home cannot readily move it to get a lower rent,

23 the owner of the land has the owner of the mobile home over a barrel." *Guggenheim*

24 *v. City of Goleta*, 638 F.3d 1111, 1114 (9th Cir. 2010).

25      This unique relationship creates a need for regulation of rents to prevent

26 excessive rent increases imposed on captive tenants.  Both the Federal and California

27 courts have upheld mobilehome rent control ordinances as constitutional, including

28 Carson's Ordinance specifically.   *Yee v. City of Escondido*, 503 U.S. 519 (1992);

1  *Guggenheim*, 638 F.3d 1111 (9th Cir. 2010); *Carson Owners*, 35 Cal. 3d 184 (1983);

2  *Colony Cove I*, 640 F.3d 948 (9th Cir. 2011); *CHV I*, 37 F.3d 468 (9th Cir. 1994).

3  **B.     THE CITY'S ORDINANCE AND NON-BINDING GUIDELINES.**

4            **1.     *The Ordinance.***

5         The City enacted the Ordinance in 1979 to stabilize rents in its 23 mobilehome

6  parks.  Complaint, ¶ 11.  Under the Ordinance, the City's Mobilehome Park Rental

7  Review Board ("Board") hears and determines rent adjustment applications.  *Id*;

8  RJN, Exh. A [§§ 4702, 4704].[5]  The Board is authorized to "grant such rent increases

9  as it determines to be fair, just and reasonable."  RJN, Exh. A [§ 4704(g)].  "A rent

10 increase is fair, just and reasonable if it protects Homeowners from excessive rent

11 increases and allows a fair return on investment to the Park Owner."  *Id*.

12        The Ordinance states that, in making its determinations, the Board "shall

13 consider the following [11 enumerated] factors and any Guidelines adopted by the

14 City Council, as well as *any other relevant factors*, in making its determination and

15 expressly cautions that ***no one (1) factor shall be determinative*."  *Id*.  [emphasis

16 added].  The 11 factors include changes in the Consumer Price Index ("CPI"), the

17 rent for comparable mobilehome spaces in Carson, changes in reasonable operating

18 and maintenance expenses, and the amount and quality of services provided by the

19 applicant to the affected tenant (among others).  *Id*. [§ 4704(g)(1)-(11)].

20        **2.     *The Non-Binding Guidelines For Implementing The***

21            ***Ordinance.***

22        The City Council has also adopted non-binding and uncodified Guidelines for

23 Implementation of the Mobilehome Space Rent Control Ordinance (the

24 "Guidelines").  RJN, Exhs. B, C.  The Guidelines provide that a park owner who

---

25 [5]  This Court need not accept as true allegations in the Complaint that contradict

26 facts that may be judicially noticed.  *Sprewell v. Golden State Warriors*, 266 F.3d
   979, 988 (9th Cir. 2001).  And the Court is "not required to accept as true conclusory

27 allegations which are contradicted by documents referred to in the complaint, and
   [does] not necessarily assume the truth of legal conclusions merely because they are

28 cast in the form of factual allegations."  *Colony Cove I*, 640 F.3d at 955.

1    believes a factor-based increase will not provide a fair return can submit additional

2    evidence with their rent increase application, including the return being earned by the

3    park and the returns being earned by other comparable mobilehome parks, as well as

4    whatever other relevant evidence a park owner wants to submit.  RJN, Exh. B [§ IV].

5    The Board considers such evidence as "other relevant factors" along with the 11

6    enumerated factors listed in the Ordinance.  RJN, Exh. A [§ 4704(g)].

7         Further, the Guidelines provide that "in evaluating a rent increase application,

8    the Board may consider, in addition to the factors specified in § 4704(g) of the

9    Ordinance, a 'gross profits maintenance [GPM] analysis,' which compares the gross

10   profit level expected from the last rent increase granted to the park prior to the

11   current application ('target profit') to the gross profit shown by the current

12   application." RJN, Exh. B [§ II(B)].  The GPM analysis is "an aid to assist the Board

13   in applying the factors in the Ordinance," and is "to be considered together with the

14   factors in § 4704(g), other relevant evidence presented and the purposes of the

15   Ordinance."  *Id.*   The Guidelines expressly state that the GPM analysis is "not

16   intended to create any entitlement to any particular rent increase."  *Id.*

17        In October 2006, the Guidelines were amended to provide that the Board "***may***

18   also consider, a 'maintenance of net operating income [MNOI] analysis,' which

19   compares the net operating income (NOI) level expected from the last rent increase

20   granted to a park owner and prior to any pending rent increase application (the so

21   called 'target NOI') to the NOI demonstrated in any pending rent increase

22   application."  RJN, Exh. C [§ II(C)].  The MNOI analysis "is intended to provide

23   ***another method*** to estimate whether any applicant for a rent increase is earning a

24   constitutional fair return, as established by the immediately prior rent increase, with

25   appropriate adjustment(s) to reflect changes in the CPI, and is a methodology

26   approved by the courts in which changes in debt service expenses are not to be

27   considered in the analysis".  *Id.* at § II(C)(2).

28        The Ordinance treats the Guidelines just like any of the other eleven non-

1    exclusive factors—they are only for the Board's **consideration**, and their terms are

2    **not binding** on the Board.  RJN, Exh. A [§ 4704(g)].  The Guidelines clearly state

3    that they are intended only "to assist" the Board in implementing the Ordinance, and

4    that "the provisions of the Ordinance are controlling."  RJN, Exh. B, Preamble at pg.

5    3 of 16; *see also, Carson Harbor Village, Ltd. v. City of Carson Mobilehome Park*

6    *Rental Review Board*, 70 Cal. App. 4th 281, 290 (1999) [finding the Guidelines

7    merely "provide broad policy statements for effectuating the Ordinance."].

8         For these reasons, in prior litigation between Colony Cove and the City, the

9    Ninth Circuit held the Guidelines do not have the force of law.  *Colony Cove I*, 640

10   F.3d at 957.  The Board is free to disregard the GPM or MNOI methodologies, or

11   anything else in the Guidelines for that matter.  The Board may use **any methodology**

12   **or set of factors it chooses**—whether listed in the Guidelines or not—to determine an

13   appropriate rent increase, **as long as** the increase is "fair, just and reasonable."  RJN,

14   Exh. A [§ 4704(g)].  Accordingly, any amendment to the Guidelines does not alter

15   the effect of the Ordinance on park owners.  *Colony Cove I*, 640 F.3d at 957.

16   **C.    COLONY COVE'S PURCHASE OF THE PARK.**

17        This Park contains 404 mobilehome spaces.  Complaint, ¶ 4.  Mr. Goldstein

18   purchased the Park at the apex of the real estate bubble on April 4, 2006 for

19   $23,050,000.  *Id.*, ¶ 19.  He financed approximately $18,000,000 of the purchase

20   price, resulting in very large annual debt service expenses.  *Id.* at ¶ 21.

21        As explained in the section above, at the time of this purchase the Ordinance

22   did not require that debt service expenses be accounted for in any rent increase

23   granted to a park owner (nor has the Ordinance ever so required).  Indeed, on several

24   occasions prior to Mr. Goldstein's purchase, the Board had utilized the MNOI

25   methodology (which ignores debt service expenses) to award rent increases.  *See*,

26   *e.g.*, RJN, Exh. O [Board Resolution Nos. 2004-230, 2004-227, 2004-226].  Of

27   course, the Board could always disregard debt service -- the October 2006

28   amendment of the Guidelines recognizing the MNOI methodology did not alter the

1    effect of the Ordinance on Colony Cove. *Colony Cove I*, 640 F.3d at 957.

2    **D.   THE BOARD'S DECISION ON COLONY COVE'S YEAR 1**
3    **APPLICATION, AND THE RELATED LITIGATION.**

4    On September 28, 2007, Mr. Goldstein submitted a rent increase application
5    under the Ordinance based on income and expenses from its first year of ownership
6    ("Year 1"). Complaint, ¶ 23. The application requested an outrageous $618.15 rent
7    increase. RJN, Exh. D, pg. 1. Such an increase would have ***more than doubled*** the
8    rents being charged in the Park, where the average rent at the time was $414.25. *Id.*
9    at § 1.b. The Board elected, after considering all of the evidence taken as a
10   whole(including a GPM analysis) to utilize the MNOI methodology to grant Colony
11   Cove a $36.74 rent increase, which it found would permit Colony Cove to receive a
12   fair return as required by the Ordinance. *Id.* at § 4.a.; Complaint, ¶ 29.

13   Colony Cove filed a federal lawsuit alleging facial and as-applied federal
14   takings and substantive due process challenges to the Ordinance and the Board's
15   Year 1 decision. Complaint, ¶ 49. The District Court held all of the facial claims
16   were barred by the statute of limitations because the Ordinance was adopted in 1979.
17   Complaint, ¶ 51. The Ninth Circuit affirmed, holding that the 2006 amendment to
18   the Guidelines did not restart the statute of limitations because the Guidelines have
19   no force of law and therefore the 2006 amendment did not alter the effect of the
20   Ordinance on Colony Cove at all. *Colony Cove I*, 640 F.3d at 957.

21   The District Court dismissed the as-applied taking claim as unripe because
22   Colony Cove had not exhausted its state law remedies. Complaint, ¶ 52. The Ninth
23   Circuit affirmed. *Colony Cove I*, 640 F.3d at 958-59. Colony Cove's claim was
24   dismissed because it had not yet filed a state writ action and been denied relief in
25   state court (the state "*Kavanau*" remedy). *Id.*[6]

26

27   [6]   The Ninth Circuit also affirmed dismissal of all Colony Cove's various other
28   claims raised in *Colony Cove I*, which are not relevant here.

1    On December 23, 2009, Colony Cove filed a state court writ action seeking to

2    overturn the Board's Year 1 decision ("Year 1 Case").  The Year 1 Case alleged the

3    Board's $36.74 rent increase was insufficient to provide Colony Cove a fair return,

4    and at least a $200 increase was necessary for a fair return.  RJN, Exh. E, ¶¶ 64, 68,

5    69, 71, 78; RJN, Exh. F, pp. 7-18; *Colony Cove Properties, LLC v. City of Carson*,

6    220 Cal. App. 4th 840, 863 [163 Cal. Rptr. 3d 499, 515-516] ("*Colony Cove II*").

7    The Superior Court denied Colony Cove's writ.  Complaint, ¶ 57.

8    **E.   THE BOARD'S DECISION ON COLONY COVE'S YEAR 2
         APPLICATION, AND THE RELATED LITIGATION.**

9    On September 28, 2008, Mr. Goldstein submitted another rent increase

10   application under the Ordinance based on income and expenses from its second year

11   of ownership ("Year 2").  Complaint, ¶ 31.  The application this time claimed a $250

12   rent increase was necessary for a fair return.  *Id.* at ¶33.  The Board again used the

13   MNOI methodology to award Colony Cove a $25.02 rent increase.  *Id.* at ¶ 36; RJN,

14   Exh. G, pp. 6, 10; *Colony Cove II*, 220 Cal. App. 4th at 861.

15   Colony Cove filed a state court writ action seeking to overturn the Board's

16   Year 2 decision ("Year 2 Case").  The Year 2 Case alleged the Board's $25.02 rent

17   increase was insufficient to provide Colony Cove a fair return, and that at least a

18   $250 increase was necessary for a fair return.  RJN, Exh. H, ¶¶ 24-29, 49, 53, 66;

19   *Colony Cove II*, 220 Cal. App. 4th at 863.

20   The City and Colony Cove stipulated to a trial court judgment in favor of the

21   City in the Year 2 Case.  Complaint, ¶ 58.

22   **F.   THE CALIFORNIA COURT OF APPEAL HOLDS THE BOARD
         PROVIDED COLONY COVE A FAIR RETURN IN THE YEAR 1
         AND YEAR 2 CASES.**

23

24   Colony Cove appealed the Year 1 and Year 2 judgments.  *Id.* at ¶ 59.  On

25   October 21, 2013, the Court of Appeal affirmed both judgments.  *Colony Cove II*,

26   220 Cal. App. 4th 840.  The Court of Appeal explained that "[t]o avoid becoming

27   unconstitutionally confiscatory, a rent control regulation system must be applied so

28   as to provide investors a 'fair return.'"  *Id.* at 866.  "Determining whether a particular

-9-

1   rent control determination or scheme is confiscatory depends on 'the overall **result** of
2   the rent-setting process, **not the method employed** . . . ." *Id.* at 867-68.

3       The Court confirmed that utilization of an MNOI methodology that
4   disregarded debt service expenses "does not render [the Board's decision]
5   constitutionally invalid." *Id.* at 869.  It correctly found that "inequities . . . would
6   result from permitting a party that financed its purchase of rent-controlled property to
7   obtain higher rents than a party that paid all cash". *Id.* at 871.   The Court
8   "discern[ed] no rational basis for tying rents to the vagaries of individual owners'
9   financing arrangements." *Id.*

10      Based on the evidence presented to the Board in the Year 1 Case, the Court of
11  Appeal held "the Board could reasonably conclude that **maintaining the Park's net**
12  **operating income would result in a fair return to [Colony Cove]**.  At the time of the
13  year 1 rent increase, City staff calculated that the Park's net operating income had
14  been reduced to $944,029 due to a legitimate increase in operating expenses.  **By**
15  **increasing rental income by $177,675 per year, the Board returned the operation to**
16  **the same financial footing it was on at the time of the purchase.**" *Id.* at 871-72.

17      The *Colony Cove II* court also noted the City had approved Colony Cove's
18  application to subdivide the park into individually saleable units (RJN, Exh. P), and
19  that therefore "**[Colony Cove] cannot reasonably be heard to complain that it has**
20  **been forced by the Board's decision to operate a losing investment**." *Id.* at 873.
21  The court reached the same conclusions for the Year 2 Case. *Id.* at 877.

22      The California Supreme Court denied Colony Cove's petition for review.
23  Complaint, ¶ 66.  Colony Cove did not file a petition seeking a *writ of certiorari* to
24  the United States Supreme Court.

25  **G.    THE BOARD'S DECISIONS ON COLONY COVE'S YEARS 3, 4,**
        **AND 5 APPLICATIONS, AND THE RELATED LITIGATION**
26

27      From 2009 to 2012, Mr. Goldstein applied to the Board for rent increases
28  based on his third, fourth, and fifth years of ownership.  Complaint, ¶¶ 37-48.  In

1  each application, he sought a $200 to $300 rent increase.  The Board granted rent

2  increases based on formulas that did not account for Colony Cove's debt service

3  expenses.  (The MNOI methodology was utilized in Years 4 and 5, and in Year 3 the

4  Board simply increased rents by the increase in the CPI.)  *Id.*; RJN, Exhs. I, K, M.

5          Colony Cove filed three state court writ actions, seeking to overturn each of

6  the Board's Year 3, 4, and 5 decisions ("Years 3-5 Cases").  Each of the Years 3-5

7  Cases alleged the rent increase granted by the Board was insufficient to provide

8  Colony Cove a fair return, and that at least a $200-300 increase was necessary for a

9  fair return.  RJN, Exh. J, ¶ 7; Exh. L, ¶¶ 3-4; Exh. N, ¶¶ 3-5; Complaint, ¶ 60.

10         Colony Cove filed this federal action in April 2014, alleging three claims for

11 relief: (1) the Board's decisions in Years 1-5 effect an as-applied taking under the

12 Fifth Amendment, (2) the California state courts apply a standard of review in taking

13 claims that violates due process, and (3) declaratory relief that the Ordinance

14 constitutes an as-applied taking.  Complaint, ¶¶ 70-83.  The Complaint also requests

15 an injunction ordering the City to permit "nonconfiscatory" rents.  *Id.* at ¶ 79.

16 **III.   ARGUMENT**

17      **A.   COLONY COVE'S TAKING CLAIM IS UNRIPE.**

18         Under Fifth Amendment takings jurisprudence, "[t]here is no constitutional

19 injury until the plaintiff has availed himself of the state's procedures for obtaining

20 compensation for the injury, ***and been denied compensation.***"  *Colony Cove I*, 640

21 F.3d at 958 [emphasis added].  Takings challenges to local rent board decisions in

22 California are unripe for federal adjudication until the plaintiff has filed a petition for

23 writ of mandamus in state court and been denied just compensation.  *Id.*

24         Colony Cove's taking claim is based on the Board's decisions in Years 1

25 through 5.  Complaint, ¶ 71, line 12; ¶ 72, lines 22-23.  But Colony Cove has not

26 alleged that it has been denied compensation by the state courts for the alleged injury

27 caused by each of those Board decisions.  Specifically, it has not alleged a final state

28 court judgment has been issued denying compensation in any of the Years 3-5 Cases.

1   The taking claim must be dismissed as unripe. *Colony Cove I*, 640 F.3d at 958-59.

2       The Complaint alleges the City has "agreed in principle" to stipulate to

3 judgment in the Years 3-5 Cases. Complaint, ¶ 67. But the City has not stipulated to

4 judgment, and the cases are still pending in state court. Declaration of Jeff M.

5 Malawy, ¶¶ 3, 4.[7] Colony Cove filed the Complaint in the middle of negotiations for

6 such a stipulation, which was never agreed upon. *Id.* at Exhs. A-D.

7       **B.**   **THE COMPLAINT FAILS TO STATE A TAKING CLAIM.**

8         *1.*   ***As A Matter of Law, There Is No* Lucas *Taking.***

9       For a compensable taking under *Lucas v. South Carolina Coastal Council*, 505

10 U.S. 1003 (1992), a government regulation must have deprived a plaintiff of "***all***

11 economically productive or beneficial uses." *Lucas*, 505 U.S. at 1030; *see also*,

12 *Lingle v. Chevron U.S.A.*, 544 U.S. 528, 539 (2005) [a *Lucas* taking requires "the

13 **complete elimination** of the property's value"] [emphasis added]. The plaintiff in

14 *Lucas* had proven at trial that the subject regulation prohibited any and all

15 development on his beachfront property, rendering it "valueless." *Id.* at 1020.

16 Colony Cove has not and cannot allege it can make the same showing.

17       Colony Cove alleges California law prevents it from making any economically

18 beneficial use of the Park because state law prohibits it from closing the Park or

19 evicting its tenants. Complaint, ¶ 71. These are incorrect legal conclusions that are

20 not entitled to a presumption of truthfulness. *Colony Cove I*, 640 F.3d at 955, 957.

21       Colony Cove's argument fails on several levels. The City has already

22 approved a land use entitlement authorizing Colony Cove to subdivide the Park into

23 individually saleable spaces. RJN, Exh. P; *Colony Cove I*, 640 F.3d at 954. Such

24 subdivisions are expressly allowed by the California Subdivision Map Act. Cal.

25

26 [7]  Ripeness is an issue of the court's subject matter jurisdiction. *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). The Court may

27 therefore consider extrinsic evidence, and must not give a presumption of truthfulness to Colony Cove's allegations concerning ripeness. *Roberts v.*

28 *Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

1   Gov. Code § 66427.5.  After the subdivision, *which the City has already approved*,

2   the effect of the Ordinance on the Park will be extinguished upon the sale of the first

3   condominium space.  *Colony Cove I*, 640 F.3d at 959.  Because of this, the California

4   courts have already held that "[Colony Cove] cannot reasonably be heard to

5   complain that it has been forced by the Board's decision to operate a losing

6   investment."  *Colony Cove II*, 220 Cal. App. 4th at 873.

7         As for Colony Cove's allegation that it cannot close the Park, the California

8   Planning and Zoning Law and Subdivision Map Act, and the Carson Municipal

9   Code, expressly provide for closures of mobilehome parks and conversions to other

10  uses.  *See*, Cal. Gov. Code §§ 65863.7 and 66427.4; RJN, Exh. Q [§ 9128.21].

11        Colony Cove alleges it cannot evict existing tenants, but the California

12  Mobilehome Residency law expressly allows park owners to evict existing tenants in

13  the event Colony Cove chooses to close the park.  Cal. Civil Code § 798.56(g).

14        Colony Cove's *Lucas* claim also fails under the doctrine of issue preclusion.

15  As more fully discussed in the Section III.B.2.a., *infra*, state court decisions must be

16  given preclusive effect in federal court.  28 U.S.C. § 1738; *San Remo Hotel v. City*

17  *and County of San Francisco*, 545 U.S. 323, 336-37 (2005) ("*San Remo II*").

18        The state court in *Colony Cove II*, 220 Cal. App. 4th at 871-72, 877, looking at

19  the same underlying facts alleged here for Years 1 and 2, held that Colony Cove was

20  receiving a fair return.  And in fact, after the Board's Year 2 rent increase, the state

21  court found Colony Cove would receive $1,019,021 in net operating income,

22  "maintaining approximately the same net operating income and capitalization rate as

23  when the property was purchased."  *Id.* at 877.  Based on this, a finding of fact and

24  law has already been made in state court that Colony Cove is receiving a fair return,

25  including over a million dollars per year in net operating income.  *Id.* at 877.

26        Even accounting for debt service expenses, the *Colony Cove II* court held

27  Colony Cove would make a profit with the Board's Year 1 increase, considering the

28  effects of appreciation of the real property.  *Id.* at 873 & n. 34.

1    Lastly, Colony Cove's own allegations defeat its *Lucas* claim.  Colony Cove

2 alleges that in 2012, the City "permitted Colony Cove to earn a profit" of $180,000,

3 representing a 1% return on equity.  Complaint, ¶ 5; *see Sprewell*, 266 F.3d at 989

4 ["a plaintiff can plead himself out of court by alleging facts which show that he has

5 no claim, even though he was not required to allege those facts"].

6    As a matter of law, Colony Cove cannot allege the Ordinance prevents it from

7 receiving ***any economic benefit at all*** from the Park property.  Colony Cove is

8 receiving a fair return.  Should Colony Cove feel that is insufficient, it may close the

9 park, evict the tenants, and change it to another use.  Indeed, the City has already

10 approved the Park's subdivision to saleable spaces.  The *Lucas* taking claim fails.

11         **2.   *As A Matter of Law, There Is No* Penn Central *Taking.*__**

12    Colony Cove's *Penn Central* taking claim is as meritless as its *Lucas* claim.

13 The federal and state courts have already held the necessary elements of a *Penn*

14 *Central* taking are not present here.  A *Penn Central* taking occurs when the burden

15 of the government regulation is so severe that it is "functionally equivalent to the

16 classic taking in which government directly appropriates private property or ousts the

17 owner from his domain."  *Lingle*, 544 U.S. at 538; *MHC Fin. L.P. v. City of San*

18 *Rafael*, 714 F.3d 1118, 1127 (9th Cir. 2013) ("*San Rafael*").

19    To determine the severity of the regulatory burden, *Penn Central* directed

20 courts to consider the following factors: (1) the economic impact of the regulation;

21 (2) the property owner's distinct, investment-backed expectations; and (3) the

22 character of the governmental action.  *San Rafael*, 714 F.3d at 1127; *Guggenheim*,

23 638 F.3d at 1120; *Garneau v. City of Seattle*, 147 F.3d 802, 807 (9th Cir. 1998).

24         *a.*   *Colony Cove Has Not Alleged An Economic Impact Of The*

25         *Severity Necessary For A Taking, And The California*

       *Courts Have Already Determined In A Final Decision That*

26       *the Board's Year 1 and Year 2 Decisions Have No*

27       *Significant Economic Impact.*

28    The first factor of *Penn Central* supports a taking only if the "diminution in

-14-

1   value is so severe that the [regulation] has essentially appropriated [the plaintiff's]

2   property for public use." *Garneau*, 147 F.3d at 807-808.  The plaintiff bears the

3   burden to show the detrimental economic impact. *Id.*

4        It is well settled that even a substantial decrease in value does not necessarily

5   result in a taking, especially if the other factors are missing.  In *San Rafael*, the Ninth

6   Circuit held that even if the city's rent control ordinance had resulted in an 81%

7   diminution in value, that would not have been a sufficient economic loss or

8   interference with the plaintiff's mobilehome park property.  714 F.3d at 1127-28.  To

9   support this finding, the court cited long-standing Supreme Court and Ninth Circuit

10  precedent: (1) a 75% diminution in value was not a taking in *Village of Euclid v.*

11  *Ambler Realty Co.*, 272 U.S. 365, 384 (1926); (2) a 92.5% diminution in value was

12  not a taking in *Hadacheck v. Sebastian*, 239 U.S. 394, 405 (1915); and (3) a

13  reduction in value from  $2,000,000 to $100,000 was not a taking in *William C. Haas*

14  *Co., Inc. v. City & County of S.F.*, 605 F.2d 1117, 1120 (9th Cir. 1979). *Id.*

15       Colony Cove alleges that it has suffered a significant economic impact in

16  "terms of a substantial loss of property value and forced operating losses exceeding

17  $4 million."  Complaint, ¶ 72.  Colony Cove is simply attempting to re-litigate what

18  has already been decided against it by the California courts.

19       Federal courts are required to give full faith and credit to state court decisions,

20  giving them the same preclusive effect as the state courts would.  28 U.S.C. § 1738;

21  *San Remo II*, 545 U.S. at 336.  Additionally, an *England* reservation cannot avoid the

22  "preclusive effect of the state-court judgment" required under the full faith and credit

23  requirements of 28 U.S.C. § 1738 if the issue in question was actually litigated and

24  decided in a final state court judgment. *San Remo II*, 545 U.S. at 338, 341.

25       California courts will find issue preclusion (collateral estoppel) where (1) the

26  issue sought to be precluded from re-litigation is identical to that argued and decided

27  in the former proceeding; (2) there was a final decision on the merits; and (3) the

28  precluded party was a party to the prior adjudication. *San Remo Hotel v. San*

-15-

1  Francisco ("*San Remo I*"), 364 F.3d 1088, 1096 (9th Cir. 2004); *Lucido v. Superior*
2  *Court*, 51 Cal. 3d 335, 341 (1990).   The "identical issue" requirement does not
3  require the "ultimate issues or dispositions" to be the same, just that the "identical
4  factual allegations are at stake." *Lucido*, 51 Cal. 3d at 342.

5         It is clear upon review of Colony Cove's Complaint and the California Court
6  of Appeal decision in *Colony Cove II* is that the fair return issue decided by the State
7  court and the economic impact prong of the *Penn Central* test rely on identical facts
8  and this Court will be required to resolve the same exact questions that have already
9  been asked and answered by the California Court of Appeal in painstaking detail.

10        Here, Colony Cove alleges a significant economic impact because: (1) a $200
11  rent increase was necessary in Year 1 for Colony Cove to earn a fair return but the
12  Board only granted an increase of $36.74; (2) that a $250 increase was necessary in
13  Year 2 to earn a fair return but the Board only granted a $25.02 increase; and (3) the
14  Board failed to provide a fair return because it improperly excluded Colony Cove's
15  debt service expenses in Years 1 and 2.  Complaint, ¶¶ 25-36, 72.

16        Colony Cove made the exact same arguments in the Year 1 and Year 2 Cases
17  in state court, using the same exact factual allegations.  *Colony Cove II*, 220 Cal.
18  App. 4th at 863, 865, 876; RJN, Exh. E, ¶¶ 64, 68, 69, 71, 78; RJN, Exh. F, pp. 7-18;
19  RJN, Exh. H, ¶¶ 24-29, 49, 53, 66.  The California Court of Appeal found Colony
20  Cove contended the following in its petitions to the State court:  "a minimum rent
21  increase of $200 was necessary for appellant to earn a fair return in Year 1;" "the
22  minimum necessary rent increase in Year 2 was $250;" and "the Board was obliged
23  to apply a formula that ensured gross profits and a positive cash flow, taking its *debt*
24  *service* into account." *Id.*

25        After a comprehensive review of the record and law, the California Court of
26  Appeal held the Board's Year 1 and Year 2 decisions "***result in a fair return to***
27  ***[Colony Cove]***". *Colony Cove II*, 220 Cal. 4th at 871-72, 877.

28        Further, there is no detrimental economic impact from the Ordinance because,

as the *Colony Cove II* court found, the owner of the Park prior to Colony Cove was not only earning a fair return under the Ordinance, but a return that was to be envied. *Colony Cove II*, 220 Cal. App. 4th at 876 [in the year prior to Colony Cove's purchase, the former owner earned over $1.1 million in net operating income, had a gross profit of over $700,000, and based on the final sales price the property was appreciating at an average rate of $1.7 million per year].

The California courts have already held in a final judgment that "*[Colony Cove] cannot reasonably be heard to complain that it has been forced by the Board's decision to operate a losing investment.*" *Id.* at 873 [emphasis added]. Colony Cove is precluded from re-litigating that it is incurring a substantial economic impact from the Ordinance. The issue has already been argued, considered and decided against Colony Cove in a final decision under identical facts in state court. *San Remo I*, 364 F.3d at 1096.

        *b.*    <u>The Ninth Circuit Has Already Held As A Matter Of Law That When Colony Cove Bought The Park, Colony Cove Could Not Have Expected That Its Debt Service Costs Would Necessarily Be Considered By The Board.</u>

Colony Cove is also precluded from claiming that the Ordinance has interfered with its distinct investment-backed expectations -- the "primary factor" of *Penn Central*. *Guggenheim*, 638 F.3d at 1120.

In *Guggenheim*, the Ninth Circuit held that if a mobilehome park is subject to a rent control ordinance at the time the park owner purchases the park, the park owner cannot have an investment-backed expectation to obtain rents higher than those allowed under the rent control ordinance. *Id.* at 1120-1121. The Court held this lack of "reasonable investment-backed expectation" to be "fatal" to the Guggenheim's *Penn Central* takings claim. *Id.* at 1120-1121.

Just as in *Guggenheim*, Colony Cove's lack of any reasonable investment-backed expectation that its debt service would necessarily be considered by the Board is fatal to Colony Cove's *Penn Central* claim. Colony Cove purchased the

1   Park subject to the Ordinance in April 2006.  Complaint, ¶ 19, 11.  In *Colony Cove I*,

2   the Ninth Circuit held as a matter of law that the Ordinance applied to Colony Cove

3   in Years 1 and 2 was the same law that existed at the time Colony Cove purchased

4   the Park.  *Colony Cove I*, 640 F.3d at 957.

5          The Ninth Circuit completely rejected all of Colony Cove's legal and factual

6   arguments that the October 2006 amendment to the Guidelines somehow amended

7   the Ordinance or altered the rules governing the Board's consideration of rent

8   increases under the Ordinance.  *Id.*   The Ninth Circuit held the October 2006

9   amendment to the Guidelines, which recognized the MNOI methodology, did ***not***

10  alter the effect of the Ordinance on Colony Cove at all.  *Id.*

11         In other words, at all times both before and after Colony Cove purchased the

12  Park in April 2006, the Board could apply the MNOI method, which does not

13  consider debt service expenses, to grant a rent increase under the Ordinance.  *Id.* at

14  961 ["Neither prior nor subsequent to Colony Cove's purchase of the Park did the

15  1979 Ordinance or the Guidelines require the Board to employ any particular

16  methodology in conducting its review of rental increase applications."].  Indeed, on

17  several occasions prior to Colony Cove's purchase, the Board had utilized the MNOI

18  method to award rent increases.  *See, e.g.*, RJN, Exh. O [Board Resolution Nos.

19  2004-230, 2004-227, 2004-226].

20         As a matter of law and by issue preclusion, Colony Cove could have no

21  investment-backed expectation at the time it purchased the Park that its debt service

22  expenses would be accounted for by the Board because the Ordinance did not (and

23  never has) required the same.  Therefore, the Board's decisions could not have

24  interfered with any of Colony Cove's alleged investment-backed expectations.  The

25  second prong of *Penn Central* does not support a taking here.

26         c.   *The Character of the Governmental Action Does Not*
          *Support A* Penn Central *Taking Claim.*

27

28         The third factor to consider under the *Penn Central* test is the "character of the

-18-

1  governmental action."  However, courts have not found this factor applicable in rent

2  control cases.  *San Rafael*, 714 F.3d at 1128.  This factor asks whether the regulation

3  amounts to a physical invasion or merely adjusts the benefit and burdens of

4  economic life.  If the regulation amounts to a physical invasion a taking is more

5  likely.  *Lingle*, 544 U.S. at 539.  As the Ordinance clearly falls more in the latter

6  category and does not bear any relationship to a physical invasion, it does not support

7  a taking here.  *San Rafael*, 714 F.3d at 1128.

8      **C.    ANY TAKING CLAIM BASED ON THE BOARD'S YEARS 1**

9            **AND 2 DECISIONS IS BARRED BY *RES JUDICATA.***

10     Judicial proceedings of any state "have the same full faith and credit in every

11  court within the United States . . . as they have by law or usage in the courts of such

12  State."  28 U.S.C. § 1738; *see*, *San Remo II*, 545 U.S. at 347-48.  *Res judicata*

13  precludes a party that has proceeded on federal claims in state court from re-litigating

14  those claims in federal court.  *San Remo II*, 545 U.S. at 346-48.  "When applying res

15  judicata to a state court decision, we give the same preclusive effect to that judgment

16  as another court of that State would give, meaning that we apply res judicata as

17  adopted by that state."  *Adam Bros. Farming, Inc. v. County of Santa Barbara*, 604

18  F.3d 1142, 1148 (9th Cir. 2010).  "Under California law, res judicata precludes a

19  party from relitigating (1) the same claim, (2) against the same party, (3) when that

20  claim proceeded to a final judgment on the merits in a prior action."  *Id*. at 1148-49.

21     Under California law, a claim is the "same claim" if it is derived from the

22  same "primary right," which is "the right to be free from a particular injury,

23  regardless of the legal theory on which liability for the injury is based."  *Id*. at 1149.

24  "A party may bring only one cause of action to vindicate a primary right.  Claims not

25  raised in this single cause of action may not be raised at a later date."  *MHC v. City of*

26  *San Jose*, 420 F.3d 1022 (9th Cir. 2005) ("*MHC*").

27     In *MHC*, the California courts denied a mobilehome park owner's writ action

28  challenging a rent decision under the San Jose rent control ordinance.  The California

1 courts held the rent decision "does not deprive MHC of a fair return." *Id.* at 1028.
2 The park owner then filed a federal district court action alleging three different
3 theories of Fifth Amendment taking claims. *Id.* at 1028-29 [Counts VII.A., VII.B.,
4 and VIII]. The district court dismissed the claims. *Id.*

5 The Ninth Circuit affirmed dismissal of all three theories of federal taking
6 claims, holding they were barred by *res judicata* due to the prior state court "fair
7 return" litigation. The Court found "MHC's claims in federal and state court all
8 involve a single primary right: the right to receive a fair return on its investment [in
9 the park]. They all stem from a single injury MHC claims to suffer." *Id.* at 1031.
10 "MHC's claims all relate to a single Ordinance and the City's application of that
11 Ordinance to MHC's petition for a rent increase." *Id.* at 1031-1032. MHC's
12 "[d]ifferent theories of recovery are not separate primary rights." *Id.* at 1032.

13 "MHC has already litigated its right to a fair return in state court. ...
14 Additional theories of recovery based on MHC's right to a fair return may not be
15 asserted in federal court." *Id.* Because the claims in federal court "depended on
16 issues identical to those that had previously been resolved in the state-court action",
17 the Ninth Circuit held it "cannot consider MHC's claims without rejecting the
18 California courts' conclusion that MHC will receive a fair return . . . ." *Id.*

19 The situation is exactly the same here. The California courts have held the
20 Board's Years 1 and 2 decisions provided Colony Cove a fair return. *Colony Cove*
21 *II*, 220 Cal. App. 4th at 871-872, 877. Colony Cove then filed its Complaint in
22 federal court, alleging at least two different theories of Fifth Amendment taking
23 claims. Complaint, ¶¶ 71, 72. All of these claims stem from the same injuries
24 Colony Cove claims to suffer: interference with the right to receive a fair return and
25 have its debt service expenses accounted for. *See*, Complaint, ¶¶ 25-36, 71-72;
26 *Colony Cove II*, 220 Cal. App. 4th at 863, 865, 876.

27 Colony Cove's different theories of recovery here (*Lucas*, *Penn Central*) are
28 not separate primary rights. *MHC*, 420 F.3d at 1032. These additional theories of

1   recovery "may not be asserted in federal court" when Colony Cove "has already
2   litigated its right to a fair return in state court." *Id.*  Colony Cove's taking claims
3   presented here based on the Years 1 and 2 Board decisions depend on issues identical
4   to those previously resolved in state court, and are based on the same facts.  They are
5   therefore barred by *res judicata*.  *Id.*; *see also*, *Adam Bros.*, 604 F.3d at 1149
6   [holding federal court takings claim barred by res judicata because based on "same
7   underlying factual circumstances as the claims [plaintiff] raised in state court."].

8       The *England* reservations in Colony Cove's state court writ petitions do not
9   prevent the *res judicata* bar.  The United States Supreme Court has held that *England*
10  does not "negate the preclusive effect of the state-court judgment with respect to any
11  and all federal issues that might arise in the future federal litigation." *San Remo II*,
12  545 U.S. at 338.  Colony Cove cannot "ask the state court to resolve the same federal
13  issues they asked it to reserve." *Id.* at 341.

14      Here, Colony Cove asked the state court to resolve whether the Board's Year 1
15  and Year 2 decisions provided a fair return or were confiscatory, and whether its debt
16  service expenses must be accounted for. *Colony Cove II*, 220 Cal. App. 4th at 863,
17  865, 876.  Colony Cove now asks this federal court to decide taking claims that
18  depend on those same issues.  Complaint, ¶¶ 25-36, 71-72.  This Court cannot do so.[8]

19      **D.   THE SECOND CLAIM MAKES NO ALLEGATIONS AGAINST**
20          **THE CITY AND MUST BE DISMISSED FOR FAILURE TO**
            **STATE A CLAIM.**
21      Colony Cove's Second Claim seeks money damages from the City based on
22  the California state courts' alleged error in using the wrong standard of review to
23  consider Colony Cove's Year 1 through Year 5 Cases.  Complaint, ¶¶ 75-79.  This

24  _____

25  [8]   In addition, the fair return standard used by California courts is derived from
    federal takings and due process case law.  *See, e.g.*, *Kavanau v. Santa Monica Rent*
26  *Control Bd.*, 16 Cal. 4th 761, 771-772, 776 (1997); *Duquesne Light Co. v. Barasch*,
    488 U.S. 299, 308 (1989); *Colony Cove I*, 640 F.3d at 960.  Therefore, the California
27  court's fair return decision in *Colony Cove II* was an "equivalent determination" of
    federal takings doctrine, and plaintiffs are therefore barred from re-litigating any
28  takings issues by the doctrine of issue preclusion. *San Remo I*, 364 F.3d at 1090.

MOTION TO DISMISS COMPLAINT [F.R.C.P. 12(b)(1), 12(b)(6)]

1  claim fails to allege how the City is liable for any misconduct or how any judgment

2  against the City could provide a remedy.  As such, this claim should be dismissed.

3  *See*, Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  To survive

4  a motion to dismiss, a claim must show on its face the plaintiff is entitled to relief

5  **and** the plaintiff has pled facts that allow the court to infer that the defendant is liable

6  for the misconduct alleged.  *Iqbal*, 556 U.S. at 678.

7  **E.     THE SECOND CLAIM IS BARRED BY *ROOKER-FELDMAN.***

8         Under the *Rooker-Feldman* doctrine, a federal district court does not have

9  subject matter jurisdiction to hear a direct appeal from the final judgment of a state

10  court.  *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003).  A state court litigant who

11  has lost in a state's court of last resort has only one option for further appeal -- a

12  petition for discretionary review by the United States Supreme Court.  *See*, 28 U.S.C.

13  § 1257.  The doctrine was described by the court in *Noel* as follows:

14         A party disappointed by a decision of a state court may seek
        reversal of that decision by appealing to a higher state court.  A
15         party disappointed by a decision of the highest state court in
        which a decision may be had may seek reversal of that decision by
16         appealing to the United States Supreme Court. ***In neither case***
17         ***may the disappointed party appeal to a federal district court,***
        ***even if a federal question is present or if there is diversity of***
18         ***citizenship between the parties.***
19

20  (*Id.* at 1155 [emphasis added].)

21         Colony Cove's Second Claim is barred by *Rooker-Feldman*.   As discussed

22  above, the entire claim is premised on the allegation that the California courts in the

23  Years 1-5 Cases used an improper standard of review to consider their taking claim.

24  Complaint, ¶ 75-79.  Colony Cove is expressly requesting that this Court overturn

25  the California Court of Appeal's *Colony Cove II* decision and conduct an

26  independent review of the evidence.  Complaint, ¶ 79.  The Second Claim must

27  therefore be dismissed.  *Palomar v. City of San Marcos*, 989 F.2d 362, 365 (9th Cir.

28  1993) ["the proper forum for review of the state-court's judgment is the United

1 | States Supreme Court, and not the United States District Court."].

2 | **F.**   **IF ANY CLAIMS ARE NOT DISMISSED, THE COURT MUST**
3 | **ABSTAIN FROM CONSIDERING THEM UNTIL RESOLUTION**
    | **OF THE PENDING YEARS 3-5 CASES.**

4 | ***1.***   ***The Court Must Stay Any Claims That Are Not Dismissed***
5 | ***Pursuant To*** Younger v. Harris.

6 | A federal court must abstain under *Younger v. Harris*, 401 U.S. 37 (1971)
7 | when: (1) a state proceeding is ongoing and was initiated before the federal action,
8 | (2) the state proceeding implicates important state interests, (3) the state proceeding
9 | provides an opportunity for the plaintiff to litigate his federal claims, and (4) a
10 | decision in the federal court action would have the practical effect of enjoining the
11 | state proceeding. *Gilbertson v. Albright*, 381 F.3d 965, 978 (9th Cir. 2004). When
12 | these elements are met, abstention is ***mandatory***. *Canatella v. State of California*,
13 | 404 F.3d 1113, 1117 (9th Cir. 2005).

14 | The *Younger* doctrine represents a strong policy against federal courts
15 | interfering with pending state court proceedings (*Middlesex v. Garden State Bar*
16 | *Ass'n*, 457 U.S. 423, 431 (1982)), and that federal courts should "avoid unwarranted
17 | determinations of federal constitutional law." *Gilbertson*, 381 F.3d at 975.

18 | All of *Younger*'s requirements are present here. First, the Years 3-5 Cases are
19 | ongoing in state court, each of which was filed prior to the filing of the Complaint.
20 | RJN, Exhs J, L, N; Complaint ¶ 67. Second, the Years 3-5 Cases implicate important
21 | state interests. *Mission Oaks Mobilehome Park v. City of Hollister*, 989 F. 2d 359,
22 | 361 (9th Cir. 1993), *overruled on other grounds, Green v. City of Tucson*, 255 F.3d
23 | 1086 (9th Cir. 2001) [finding "California has a substantial interest in enforcing and
24 | considering the constitutionality of mobilehome park rent control ordinances"].

25 | Third, Colony Cove's constitutional claims may be brought in the State court.
26 | *Mission Oaks*, 989 F.2d at 361. This is true even if Colony Cove has chosen not to
27 | raise any federal claims in the pending state actions. *Gilbertson*, 381 F.3d at 983.

28 | And the fourth prong is met because a determination by this Court that any of

MOTION TO DISMISS COMPLAINT [F.R.C.P. 12(b)(1), 12(b)(6)]

1   the Board's Years 3-5 decisions effected a taking would have the practical effect of a

2   declaration establishing that Colony Cove was denied a fair rate of return by the

3   Board and that the application of the Ordinance effected a confiscatory taking under

4   state law.   That is precisely the type of interference that was found adequate to

5   warrant *Younger* abstention in *Gilbertson*. *Id.* at 980; *see also*, *Los Altos El Granada*

6   *Investors v. City of Capitola*, 139 Cal. App. 4th 629, 653-654 (2006), *abrogated on*

7   *other grounds by Colony Cove II*, 220 Cal. App. 4th at 878.

8         This Court **must** stay any claims that are not dismissed until resolution of the

9   Years 3-5 Cases in state court.  *Gilbertson*, 381 F.3d at 984.

10          **2.**     **_Pullman Abstention Is Also Appropriate For Any Claims That_**

11                  **_Are Not Dismissed._**

12         A federal court may abstain under *Railroad Comm'n of Texas v. Pullman*, 312

13   U.S. 496 (1941) when: (1) the federal plaintiff's complaint requires resolution of a

14   sensitive question of federal constitutional law; (2) the constitutional question could

15   be mooted or narrowed by a definitive ruling on the state law issues; and (3) the

16   possibly determinative issue of state law is unclear. *San Remo I*, 145 F.3d at 1104.

17         Land use planning is a sensitive area of social policy that meets the first

18   requirement of *Pullman*.  *San Remo I*, 145 F.3d at 1105; *Rooke v. Scotts Valley*, 664

19   F. Supp. 1342 (N.D. Cal. 1987).

20         Second, a decision in Colony Cove's favor in the  Years 3-5 Cases in state

21   court could moot or narrow all of Colony Cove's claims in this federal action.  If

22   Colony Cove prevailed in any of the Years 3-5 Cases, a large rent increase from the

23   Board would likely result, which could effectively eliminate any basis for a federal

24   taking claim or due process claim.  *Pearl Inv. Co. v. San Francisco*, 774 F.2d 1460,

25   1464 (9th Cir. 1985); *Santa Fe Land Improvement Co. v. Chula Vista*, 596 F.2d 838,

26   840 (9th Cir. 1979).  At the very least, it would narrow the damages claim.

27         Finally, the issue of state law is unclear.  Although the state courts have ruled

28   on Years 1 and 2, different evidence for different expense years was before the Board

1  for Years 3, 4 and 5. *Santa Fe Land Co.*, 596 F.2d at 841. The Court should stay

2  any claims that are not dismissed until resolution of the Years 3-5 Cases.

3  **G.  THE PLAINTIFF'S REQUEST FOR DECLARATORY AND
      INJUNCTIVE RELIEF SHOULD BE DISMISSED AS DAMAGES
4      PROVIDE AN ADEQUATE REMEDY.**

5  Colony Cove's third claim seeks a declaration that the Ordinance is

6  unconstitutional and amounts to taking. Complaint, ¶ 82. A court has discretion to

7  dismiss a claim for declaratory relief that simply seeks to establish a party's right to

8  damages where there are other claims that provide for damages. *Daum v. Planit*

9  *Solutions*, 619 F. Supp. 2d 652, 657 (D. Minn. 2009). Colony Cove seeks monetary

10  damages on the basis that the City's Ordinance is unconstitutional and amounts to a

11  taking. Complaint, ¶¶ 71-73. The claim for declaratory relief must be stricken.

12  Similarly, Colony Cove seeks an injunction against the City and Board

13  preventing enforcement of the Ordinance. Complaint, ¶ 79. It is settled law that

14  monetary harm alone cannot support the irreparable harm element necessary for an

15  injunction. *Los Angeles Memorial Coliseum Com. v. NFL*, 634 F.2d 1197, 1202 (9th

16  Cir. 1980); *QBAS Co. v. C. Walters Intercoastal Corp.*, 2010 U.S. Dist. LEXIS

17  143945, at 31 (C.D. Cal. 2010). As Colony Cove has made no allegations other than

18  monetary damage, no injunction can issue. *Id.*

19  **IV.  CONCLUSION.**

20  This Court must dismiss with prejudice all Claims for Relief in the Complaint.

21  Dated: June 11, 2014                    ALESHIRE & WYNDER, LLP

22

23                                          By: _____

24                                          William W. Wynder
                                            Attorneys for Defendants
25                                          CITY OF CARSON; CITY OF
                                            CARSON MOBILEHOME PARK
                                            RENTAL REVIEW BOARD
26

27

28

-25-
MOTION TO DISMISS COMPLAINT [F.R.C.P. 12(b)(1), 12(b)(6)]

1

### CERTIFICATE OF SERVICE

2

Colony Cove Properties, LLC v. City of Carson, et al.

3

U.S. District Court, Central District

Case No. CV14-03242 PSG

4

5

    I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 18881 Von Karman Avenue, Suite 1700, Irvine, CA 92612.

6

7

    On June 11, 2014, I served the within document(s) described as: on the interested parties in this action as stated below:

8

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT [F.R.C.P. 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

9

10

11

    ☐ (BY MAIL) By placing a true copy of the foregoing document(s) in a sealed envelope addressed as set forth above.  I placed each such envelope for collection and mailing following ordinary business practices.  I am readily familiar with this Firm's practice for collection and processing of correspondence for mailing. Under that practice, the correspondence would be deposited with the United States Postal Service on that same day, with postage thereon fully prepaid at Irvine, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

12

13

14

15

16

    ☒ (CM/ECF NOTICE OF ELECTRONIC FILING: I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

17

18

19

    ☐ (BY E-MAIL) By transmitting a true copy of the foregoing document(s) to the e-mail addresses set forth above.

20

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on June 11, 2014, at Irvine, California.

21

22

    Sandra D. McLeod

23

    (Type or print name)           (Signature)

24

25

26

27

28

1

1

<u>SERVICE LIST</u>

2

3    Richard H. Close, Esq.                    ***Attorneys for Plaintiff***
     Thomas W. Casparian, Esq.
4    Kevin M. Yopp, Esq.                       *Colony Cove Properties, LLC*
     GILCHRIST & RUTTER
5    1299 Ocean Avenue, Suite 900
     Santa Monica, CA 90401
6    Tel: (310) 393-4000
     Fax: (310) 394-4700
7    rclose@gilchristrutter.com
     tcasparian@gilchristrutter.com
8    kyopp@gilchristrutter.com

9                                              ***Attorneys for Plaintiff***

10   Dimitri D Portnoi, Esq.                   *Colony Cove Properties, LLC*
     Matthew W. Close, Esq.
11   O'Melveny and Myers LLP
     400 South Hope Street
12   Los Angeles, CA 90071-2899
     Tel: (213)-430-6000
13   Fax: (213)-430-6407
     dportnoi@omm.com
14   mclose@omm.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

01007/0504/169627          CERTIFICATE OF SERVICE