UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3242 PSG (PJWx) | Date | June 23, 2015 |
|---|---|---|---|
| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):** Order GRANTING IN PART and DENYING IN PART Defendants' motion to dismiss

Pending before the Court is Defendants City of Carson (the "City") and City of Carson Mobilehome Park Rental Review Board's (the "Board") (together, "Defendants") motion to dismiss Plaintiff's First Amended Complaint ("FAC"). Dkt. # 53. The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. After considering the papers submitted by the Parties, the Court GRANTS IN PART and DENIES IN PART Defendants' motion.

I.   Background

This case involves constitutional challenges to the Board's application to the City's Mobilehome Space Rent Control Ordinance (the "Ordinance"). Specifically, Plaintiff Colony Cove Properties, LLC ("Colony Cove" or "Plaintiff") alleges that the Board's decisions denying it rent increases for the amount requested – and, thus, forcing it to operate at a loss – constitute an as-applied taking in violation of the Fifth Amendment of the United States. *First Amended Complaint* ("FAC") ¶¶ 62-68. Plaintiff seeks damages and attorneys' fees for this alleged violation. *Id.* ¶ 68. Additionally, Plaintiff requests a judicial declaration that the Ordinance, as applied to Colony Cove's rent increase applications, is unconstitutional. *See id.* ¶¶ 69-71.

   A.   Factual Background

The City enacted the Ordinance in 1979 to regulate rent in mobilehome parks. *FAC* ¶ 11. The Ordinance established the Board, an entity charged with hearing and determining rent adjustment applications. *Id.*; Carson, Cal. Mun. Code § 4702(a). Under the Ordinance, the Board "shall grant such rent increases as it determines to be fair, just and reasonable." Carson, Cal. Mun. Code § 4704(g); *Compl.* ¶ 14. "A rent increase is fair, just and reasonable if it protects Homeowners from excessive rent increases and allows a fair return on investment to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3242 PSG (PJWx) | Date | June 23, 2015 |
|---|---|---|---|
| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* | | |

Park Owner." Carson, Cal. Mun. Code § 4704(g). Plaintiff alleges that review of the Board's decisions is permissible under California law "only by pursuing a writ of administrative mandate upon a showing that the Board's decision was not supported by substantial evidence with substantial deference to the Board's determinations." *FAC* ¶ 11.

When evaluating rent adjustment applications the Board "shall" consider eleven factors enumerated in the Ordinance "and any Guidelines adopted by the City Council, as well as any other relevant factors" with "no one (1) factor" being "determinative." Carson, Cal. Mun. Code § 4704(g). The eleven factors listed include: changes in the Consumer Price Index ("CPI"), the "rent lawfully charged for comparable mobilehome spaces," "[c]hanges in reasonable operating and maintenance expenses" and the "amount and quality of services provided by the applicant to the affected tenant." *Id.*

In addition to adopting the Ordinance, the City adopted "Guidelines for Implementation of the Mobilehouse Space Rent Control Ordinance" (the "Guidelines"). *FAC* ¶ 12. The Guidelines were revised in 1998 in order to make them consistent with the Ordinance. *See* Dkt. # 13-1, *Ex. B* ("Guidelines"). Plaintiff states in the FAC that the Guidelines "have the force of law" and are designed and intended to "set the reasonable expectations of investors and park owners in the City." *FAC* ¶ 12. The Guidelines provide, however, that they "are intended to assist the Board in implementing the Ordinance" and that "the purpose of the Ordinance and the provisions of the Ordinance are controlling." *Guidelines.*

Since the 1998 amendment to the Guidelines, the Guidelines have provided that "[d]ebt [s]ervice necessarily incurred to operate the park after adoption of the Ordinance is generally an allowable operating expense if the financing arrangements were prudent and consistent with customary business practice" and that "[d]ebt service incurred after adoption of the Ordinance to purchase a park may be an allowable operating expense if the purchase price paid was reasonable in light of the rent allowed under the Ordinance and involved prudent and customary financing practices." *Guidelines.* The Guidelines also provide that in addition to the eleven factors enumerated in the Ordinance, the Board "may" consider a Gross Profit Maintenance analysis which "compares the gross profit level expected from the last rent increase granted to the park prior to the current application ("target profit") to the gross profit shown by the current application." *Id.* This analysis is "an aid to assist the Board in applying the factors in the Ordinance" and "is not intended to create any entitlement to any particular rent increase." *Id.*

In April of 2004, Colony Cove purchased Colony Cove Mobile Estates ("the Park"), a mobilepark located in Carson, California, for approximately $23,050,000. *FAC* ¶¶ 2, 19. Colony Cove financed around $18 million of the purchase price from G.E. Capital. *Id.* ¶ 21. According to Colony Cove, at the time that it purchased the Park, the City "always (or virtually

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3242 PSG (PJWx) | Date | June 23, 2015 |
|---|---|---|---|
| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* | | |

always) considered a park owner's debt service when disposing of fair return rent applications." *Id.* ¶ 17. Colony Cove alleges that it was entitled to include debt service as an allowable expense and that this belief is reasonable "based in part on the terms of the Ordinance and Guidelines and also based on how the Board had analyzed and calculated rents previously in the City." *Id.* ¶¶ 17, 22.

In 2006, however, the City amended the Guidelines to "provide additional analytical tools to evaluate pending applications for rent increase" and to "help . . . assure that the mobilehome park owners within the City receive[d] a constitutional fair return on their investments." *See* Dkt. # 13-1, *Ex. C* ("2006 Amendment"). The 2006 Amendment states that the Board "may also consider, a 'maintenance of net operating income analysis,'"["MNOI"] which compares the net operating income (NOI) level expected from the last rent increase granted to a park owner and prior to any pending rent increase application (the so-called "target NOI") to the NOI demonstrated in any pending rent increase application" but in which "changes in debt service expenses are not to be considered in the analysis." *Id.* According to the 2006 Amendment, the "analysis is another aid to assist the Board in the factors in the Ordinance" and "is not intended to create any entitlement to any particular rent increase." *Id.*

On or about September 28, 2007, Colony Cove submitted a rent increase application ("Year 1 Application"). *FAC* ¶ 23. According to Colony Cove, it submitted evidence that a rent increase of approximately $200 per space per month was necessary for Colony Cove to earn a fair return on its investment, but was only granted a rent increase of $36.74 per space per month. *Id.* ¶¶ 25-29. Colony Cove alleges that the Board reached this result "by refusing to consider Colony Cove's debt service" which resulted in a six-figure loss on its investment. *Id.* ¶¶ 23-30.

Colony Cove submitted rent increase applications on or about September 28, 2008 ("Year 2 Application"). *Id.* ¶ 31. According to Plaintiff, the applications "demonstrated that Colony Cove continued to operate at a loss" and that "a rent increase of approximately $250 was necessary to achieve a fair return. *Id.* ¶¶ 31-33. Colony Cove pleads that the Board ignored Colony Cove's debt service payments and ignored evidence contained in the application granting substantially less than was necessary for it to earn a fair return and forcing it to incur losses as to its investment. *Id.* ¶¶ 31-36.

B. Procedural Background

Colony Cove filed a complaint against Defendants on October 27, 2008 asserting facial and as-applied takings and due process claims, a state claim seeking a writ of administrative

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3242 PSG (PJWx) | Date | June 23, 2015 |
|---|---|---|---|
| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* | | |

mandate under California law, and requesting declaratory relief. *Compl.* ¶43. The Court granted a motion to dismiss – affirmed by the Ninth Circuit in March 2011 – filed by Defendants holding that Plaintiff's facial challenges were barred by the statute of limitations because the "City's rent control guidelines did not restart the limitations period on the original rent control ordinance;" and that the as-applied takings claim was not ripe because "Colony Cove had not yet pursued an action in state court." *Id.* ¶¶ 44-47, 54.

On December 23, 2009, Colony Cove filed a state writ claim challenging the Year 1 Application Board decision and, on February 3, 2010, challenging the Year 2 Application Board decision. *Id.* ¶ 49. The Superior Court denied Colony Cove's writ challenging the Year 1 application finding that the City "may choose to regulate pursuant to any fairly constructed formula" and that "the landlord cannot insist that a fair return must be calculated on the basis of what it paid for the mobile home park." *Id.* ¶ 51. According to Plaintiff, it stipulated with Defendants to judgment in favor of the City as to the writ challenging the Year 2 Application Board decision acknowledging that "the same trial judge was going to make the same ruling on the City's decision on the Year 2 Applications." *Id.* ¶ 52. Colony Cove appealed the two judgments and the California Court of Appeal affirmed the trial court's denial of the writs challenging the Year 1 and Year 2 Applications on October 21, 2013. *Id.* ¶ 55. These judgments became final on January 28, 2014. *Id.* ¶ 59.

Plaintiff filed this action on April 28, 2014 bring, *inter alia*, a cause action for a takings violation under *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978) for the Year 1 and Year 2 Applications. *See Compl.* Defendant brought a motion to dismiss this cause of action which the Court denied on December 18, 2014. Dkt. # 25. On April 16, 2015, Plaintiff filed a FAC bringing this same claim as well as a takings claim under *Nollan v. California Coastal Comission*, 483 U.S. 825 (1987) and *Dolan v. City of Tigard*, 512 U.S. 374 (1994). *See FAC.* Defendant brings this motion to dismiss Plaintiff's action pursuant to Federal Rule of Civil Procedure 12(b)(6). *See generally Mot.*

II. <u>Legal Standard</u>

A motion to dismiss under Rule 12(b)(6) tests whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When deciding a Rule 12(b)(6) motion, the court must accept the facts pleaded in the complaint as true, and construe them in the light most favorable to the plaintiff. *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013); *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009). The court, however, is not required to accept "legal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3242 PSG (PJWx) | Date | June 23, 2015 |
|---|---|---|---|
| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* | | |

conclusions . . . cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *see Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

The court may properly consider exhibits attached to the complaint. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008); *Amfac Mortg. Corp. v. Az. Mall of Tempe, Inc.*, 583 F.2d 426, 429-30 (9th Cir. 1978). The court may also consider documents that have been judicially noticed. *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001), *overruled on other grounds*, *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002).

After accepting all non-conclusory allegations as true and drawing all reasonable inferences in favor of the plaintiff, the court must determine whether the complaint alleges a plausible claim to relief. *See Iqbal*, 556 U.S. at 679-80. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . .The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

### III. Discussion

Defendants argue that the Court should dismiss Plaintiff's action because Plaintiff's FAC cannot state a takings claim under *Penn Central* or *Nollan/Dolan*. *See Mot.* 1:3-3:4. Additionally, Defendant argues that Plaintiff's claim for "declaratory relief has no basis in law" because Plaintiff fails to state a takings claim. *Id.* 25:1-8. The Court analyzes Defendants' arguments in turn.

### I. As-Applied Takings

#### A. Nollan/Dolan

Plaintiff amended the Complaint to add a *Nollan/Dolan* takings claim based on the Ninth Circuit decision in *Horne v. U.S. Department of Agriculture*, in which the Ninth Circuit held that a use restriction may be subject to a *Nollan/Dolan* takings analysis.[1] *Horne v. U.S. Dept. of Agric.*, 750 F.3d 1128, 1141 (9th Cir. 2014). *Nollan* and *Dolan* involved "government demands

---

[1] Notably, the Ninth Circuit declined to extend their holding beyond the facts of the case, stating, "We do not mean to suggest that all use restrictions concerning personal property must comport with *Nollan* and *Dolan*. Rather, we hold that *Nollan* and *Dolan* provide an appropriate framework to decide *this* case . . ." *Horne v. U.S. Dept. of Agriculture*, 750 F.3d at 1141, n.18 (9th Cir. 2014) (emphasis in original).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3242 PSG (PJWx) | | Date | June 23, 2015 |
|---|---|---|---|---|
| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* | | | |

that a landowner dedicate an easement allowing public access to her property as a condition of obtaining a development permit." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 546 (2005). Similarly, land use permits conditioned on monetary exactions can be subject to the *Nollan/Dolan* framework. *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2599 (2013).

Plaintiff pleads that Defendants impose a use restriction comparable to *Horne* because it "may charge increased rent, but only when approved by the City and the Board" and that the claim is thus subject to *Nollan/Dolan* analysis. *FAC* ¶ 65; *Opp.* 3:22-4:21. According to Plaintiff, the Defendants' conduct constitutes a taking under this framework. *See Opp.* 6:9-8:24.

Defendants argue that Plaintiff's *Nollan/Dolan* claim must be dismissed because the test established by *Nollan/Dolan* "does not apply here" since its conduct does not constitute a "conditional exaction." *Mot.* 9:18-20. Furthermore, Defendants argue that even if *Nollan/Dolan* applies to their alleged conduct, Plaintiff cannot plead that its conduct violates the takings clause under this framework. *Id.* 9:20-22. The Court agrees with Defendants that *Nollan/Dolan* is not applicable here and, therefore, declines to assess the alleged conduct under *Nollan/Dolan.*

Cases applying *Nollan/Dolan* analysis do so in circumstances where a government entity "conditionally grant[s] a government benefit in exchange for an exaction." *Horne,* 750 F.3d at 1143 (The government conditioned raisin production without penalty on the requirement that producers divert a percentage of raisins to a reserve.). *See also, e.g.*, *Dolan v. City of Tigard*, 512 U.S. 374, 379-80 (1994) (The City of Tigard conditioned a permit allowing a store and parking lot to be expanded on the dedication of a portion of the property for a city path.); *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 828 (1987) (The California Coastal Commission conditioned its permission to rebuild a house on the dedication of an easement across the beachfront property.); *Koontz*, 133 S. Ct. at 2592-93 (The city conditioned a building permit on the owner's funding improvements to city property.).

In these cases, the plaintiff had a choice: either exchange the exaction for the benefit, or do not. *Horne*, 750 F.3d at 1143. For example, the petitioners in *Nollan* and *Dolan* could have left their property unchanged. *Nollan*, 483 U.S. 825; *Dolan*, 512 U.S. 374. The petitioners in *Horne* could have avoided the reserve requirement by planting different crops or by not drying the grapes into raisins. *Horne*, 750 F.3d at 1128. The *Nollan/Dolan* framework is simply "not designed to address" issues that do not involve a conditional grant in exchange for an exaction. *City of Monterey v. Del Monte Dunes at Monterey, Ltd*. 526 U.S. 687, 703 (1999).

Here, Plaintiff's FAC does not present the existence of a conditional government benefit. Defendants did not condition higher rental prices in exchange for monetary or physical payment

Case 2:14-cv-03242-PSG-PJW Document 57 Filed 06/23/15 Page 7 of 13 Page ID #:990

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3242 PSG (PJWx) | | Date | June 23, 2015 |
|---|---|---|---|---|
| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* | | | |

from the Plaintiff. Instead, the Board evaluated rent adjustment applications by considering eleven factors enumerated in the ordinance as well as guidelines adopted by the City Council. *See* Carson, Cal. Mun. Code § 4704(g). Not included in the factors or guidelines is the grant of a benefit in exchange for an exaction. Without such a conditional benefit, the *Nollan/Dolan* framework does not apply.

As justification for applying the *Nollan/Dolan* framework, Plaintiff compares the City's rent control laws to the lump sum paid in *Levin v. City and County of San Francisco*. *Opp.* 4:1-3; *Levin v. City and Cnty. of San Francisco*, No. 3:14–cv–03352–CRB, 2014 WL 5355088 (N.D. Cal. Oct. 21, 2014). In *Levin*, if a landlord sought a no-fault eviction of a tenant in order to avoid rent control measures, the landlord was required to pay a lump sum to the evicted tenant and was prohibited from renting the property for two years. *Levin*, 2014 WL 5355088, at *2-3. Thus, in order to receive the government benefit – exemption from the rent control measures allowing for no-fault eviction – the landlord paid the exaction – a lump sum to the evicted tenants. *Id.* This exchange falls squarely into the *Nollan/Dolan* framework and is distinguishable from this case. *Id.* at *7-8.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's *Nollan/Dolan* takings claim.

### B. Penn Central

Plaintiff's takings claim is also brought under *Penn Central*. FAC ¶ 64. Plaintiff contends that under this framework, the Board's conduct "denying reasonable increases in rent" constitutes an unconstitutional taking. *Id.* Defendant disputes this.

As an initial matter, the Court addresses Plaintiff's comment that "[i]nstead of focusing its motion to dismiss on the new Claim Colony Cove has asserted, the City spends the vast majority of its motion arguing with the Court's decision on its first motion to dismiss" and that "[t]he City has not filed a motion for reconsideration of that motion." *Opp.* 1:7-10. An "amended complaint supersedes the original, the latter being treated thereafter as nonexistent." *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997). Therefore, "[c]ourts in this Circuit . . . have permitted defendants moving to dismiss an amended complaint to make arguments previously made and to raise arguments that were previously available." *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 893 (C.D. Cal. 2012). As a result, this Court's decision on the previous motion to dismiss is not dispositive of Defendants' arguments concerning this motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3242 PSG (PJWx) | Date | June 23, 2015 |
|---|---|---|---|
| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* | | |

Under *Penn Central*, a taking takes place when "'regulatory actions [occur] that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner' with the inquiry 'focus[ing] directly upon the severity of the burden that government imposes upon private property rights.'" *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1127 (9th Cir. 2013) (modifications in original). Courts look at the following factors when determining whether there has been a *Penn Central* violation: "the regulation's economic impact on the claimant, the extent to which the regulation interferes with distinct investment-backed expectations, and the character of the government action." *Id.* "Primary among those factors are [t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations." *Id.* (internal quotation marks and citation omitted) (alteration in original).

Here, Plaintiff's FAC states that the Board's decisions had a significant economic impact because it resulted in "substantial loss of property value and forced operating losses exceeding $4 million." *FAC* ¶ 64. Plaintiff also alleges that Defendants' regulation interfered with its reasonable expectation that it "could profit with reasonable rent levels and that its debt service would be considered when the City and the Board set rents." *Id.*

Defendants contend that Plaintiff fails to state a takings violation under *Penn Central* because it does not allege a sufficiently severe economic impact; Plaintiff's distinct, investment-backed expectations were unreasonable; and the character of the government action described in the Complaint does not support a taking under this theory. *Mot.* 13:20-24:28.

        i.    *Economic Impact*

Defendants argue that Plaintiff fails to state that Defendants' actions had an economic impact that supports a taking under *Penn Central*. *Mot.* 14:13-17:3. Here, as the Court explained above, Plaintiff bases its claim on the contention that due to Defendants' actions there was a "substantial loss of property value and forced operating losses exceeding $4 million." *FAC* ¶ 64.

Defendants, as they did in their previous motion to dismiss, argue that this economic impact is not sufficiently severe to support a *Penn Central* taking, and thus, that Plaintiff's claim must be dismissed. *Mot.* 14:13-15:4. As before, however, Defendant has failed to convince the Court that where, as here, a plaintiff has pled that there was at least some negative economic impact from Defendants' actions, this factor is dispositive. *See* Dkt. # 25, Dec. 2014 Order at 13.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3242 PSG (PJWx) | | Date | June 23, 2015 |
|---|---|---|---|---|
| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* | | | |

Defendants' second argument, however, is that Plaintiff is prevented from alleging that there was any economic impact because the issue "of whether Colony Cove was deprived of its ability to make any profit was already argued by the same parties and resolved on the merits in *Colony Cove II*." *Mot.* 15:5-17:2. Defendants attempt to utilize the doctrine of *Collateral Estoppel* to bar Plaintiff from alleging that there was an economic impact that supports a *Penn Central* taking. *Id.* The Court is not persuaded, however, that the doctrine applies to this *Penn Central* factor.

"Judicial proceedings of any state 'have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State.'" *Adam Bros. Farming, Inc. v. Cnty. of Santa Barbara*, 604 F.3d 1142, 1148 (9th Cir. 2010) (citing 28 U.S.C. § 1738). In California, *Collateral Estoppel*, also known as issue preclusion, "precludes litigation of issues argued and decided in prior proceedings." *In re Baldwin*, 249 F.3d 912, 917 (9th Cir. 2001) (internal quotations omitted) (citing *Lucido v. Superior Court*, 51 Cal. 3d 335 (1990). California courts will apply issue preclusion where the following elements are met: (1) the issue sought to be precluded is identical to that decided in a prior proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was "necessarily decided" in the former proceeding; (4) the decision in the prior proceeding is final and on the merits; and (5) "the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." *Id.* at 917-18 (citing *Lucido*, 51 Cal. 3d at 1225).

The Court disagrees with Defendants that the issue that the California Court of Appeal decided is identical to the issue relevant here. *Mot.* 15:28-17:2. The Court first makes clear that under *Penn Central* it must assess the economic impact that Defendants' actions had on Plaintiff. Plaintiff alleges that its property lost value and that it operated at a loss. Defendants argue that the California Court of Appeal held that the California Court held, in *Colony Cove Properties, LLC v. City of Carson*, 220 Cal. App. 4th 840 (2013) ("State Court Decision"), that Plaintiff earned a fair profit on its investments with regards to the Board's rental increase application decisions. *Mot.* 15:28-17:2. Defendants fail to point the Court to any place in the State Court Decision, however, where the California Court made that holding.

Instead, the California Court determined whether the "rent levels set by the Board provided appellant a fair *return*." 220 Cal. App. 4th at 847 (emphasis added). A fair return, according to the California Court, "is incapable of precise definition" but must not be "so high as to defeat the purposes of rent control nor permit landlords to demand of tenants more than the fair value of the property and services which are provided." *Id.* at 868-68 (citations and internal quotations omitted). The California Court concluded that the approach that the Board took in assessing Plaintiff's applications was not "constitutionally invalid" even though it did "not focus on how much the owner chose to pay for a rent-controller property or how the purchase was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3242 PSG (PJWx) | Date | June 23, 2015 |
|---|---|---|---|
| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* | | |

financed." *Id.* at 869. Defendants do not point the Court to any language where the California Court held in the State Court Decision that Plaintiff, when considering its debt service expenses, did not operate its property at a loss after the Board's rental application decisions. Accordingly, Plaintiff is not precluded from pleading that it suffered an economic impact for purposes of its *Penn Central* claim.

> ii. *Investment-Backed Expectations*

Plaintiff pleads that it had "legitimate, investment-backed expectations that it could profit with reasonable rent levels and that its debt service would be considered when the City and the Board sent rents." *FAC* ¶ 64. These expectations were based on the "terms of the Ordinance and Guidelines and also based on how the Board had analyzed and calculated rents previously in the city." *Id.* ¶ 22. Specifically, as outlined above, Plaintiff alleges that the Guidelines in effect at the time it purchased the Park provided that debt service was "an allowable expense" and that "prior to Colony Cove's acquisition of the Park, the City always (or virtually always) considered a park owner's debt service when disposing of fair return rent applications." *Id.* ¶¶ 17, 18.

Investment-backed expectations must be reasonable in order to support a taking under *Penn Central*. *See Guggenheim v. City of Goleta*, 638 F.3d 1111, 1120-21 (9th Cir. 2010).

Defendants' first argument is that the Ordinance, which allowed the MNOI method that the Board used to assess Plaintiff's rent increase applications, was in effect before Plaintiff purchased the property and, therefore, Plaintiff is precluded from stating that it had a reasonable expectation that the Board would consider its debt service. *Mot.* 17:18-18:18. The Court disagrees. As the Court noted in its December 2014 Order, Plaintiff's expectations are not merely based on the Ordinance, which seemed to allow multiple methods to calculate appropriate rent increases, but also "on the Guidelines and how the City had set rents historically on other rent applications." *Opp.* 20:4-11; *December 2014 Order* at 14.

Second, Defendants argue that Plaintiff cannot plead that its investment-backed expectations support a *Penn Central* taking because of the highly regulated nature of the mobile home park industry. *See Mot.* 18:22-20:9. To support their argument, Defendants cite to *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118 (9th Cir. 2013). *Id*. *MHC*, however, is distinguishable. In *MHC*, a plaintiff purchased a mobilehome park that was under a rent-control regime and alleged that the government's interference with its "expectation . . . that [the park] would be subject to no rent control at all" supported a *Penn Central* taking. *MHC*, 714 F.3d at 1128. The Ninth Circuit affirmed the district court's finding that the alleged interference did not support a taking because Plaintiff has no reason to expect that the "rent control regime would disappear altogether." *Id*. Here, Plaintiff pleads that Defendants' interfered with its expectation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3242 PSG (PJWx) | | Date | June 23, 2015 |
|---|---|---|---|---|
| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* | | | |

that the Board would consider its debt service based on the Board's previous assessment of rent increase applications.

Defendants challenge Plaintiff's allegation that the "City always (or virtually always) considered a park owner's debt service." *See Mot.* 20:10-21; *FAC* ¶ 17. Defendants point the Court to past Board resolutions concerning park owners' rent applications in which the Board applied the MNOI method and did not consider debt service when determining rent increases. *Id.* The Court declines to consider these statements in assessing the merit of Plaintiff's claims. As the Court made clear in its December 2014 Order, while it will take notice of Board resolutions "for the purpose of noting their existence," it refuses to take notice of the facts contained within them. *December 2014 Order* at 7. Furthermore, even if the Court took notice of these facts showing that the Board set rents using the MNOI method, that does not compel the result that Plaintiff's allegation is foreclosed at this stage in the litigation.

Defendants' third argument is that Plaintiff's expectation that the Board would consider its debt service when setting rent increases is unreasonable for a host of reasons. *Mot.* 20:27-23:18. All of these reasons center on two contentions: (1) debt service should not be considered because it is unfair, subject to manipulation, administratively problematic, and undermines rent control policy and (2) the Board has always been authorized to utilize the MNOI methodology when setting rent increases. *Id.* Defendants fail to convince the Court, however, that a plaintiff's expectation is rendered unreasonable, as a matter of law, because of these contentions notwithstanding the allegation that the City "always (or virtually always)" considered debt service.

Lastly, Defendants argue that Plaintiff assumed the risk of "economic loss" when it purchased the Park because it "cannot claim to be unaware of the perils of seeking to incorporate its debt service." *Mot.* 24:3-18. According to Defendants, Plaintiff should have appreciated the increasing adoption of the MNOI method before purchasing the Park. *Id.* The Court cannot make this conclusion at this procedural posture. The Court accepts the facts pleaded in the FAC as true and construes them in the light most favorable to the Plaintiff. *See Faulkner*, 706 F.3d at 1017; *Cousins*, 568 F.3d at 1063. As such, Plaintiff has plead sufficient facts to support the allegation that Defendants' actions interfered with its distinct investment-backed expectations.

### iii.   *Character of Government Action*

Plaintiff's FAC fails to plead, as did the Complaint, sufficient facts that the character of the Government's action supports a *Penn Central* taking. A government's action is more likely to support a *Penn Central* taking "when the interference with property can be characterized as a physical invasion by government" and not "when interference arises from some public program

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3242 PSG (PJWx) | Date | June 23, 2015 |
|---|---|---|---|
| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* | | |

adjusting the benefits and burdens of economic life to promote the common good." *MHC*, 714 F.3d at 1128. The Ordinance and the Board's action are more akin to the second scenario than the first. *See id.* (finding that a city Ordinance regulating mobilehome parks did not support that there was a *Penn Central* taking). Nevertheless, Defendants have not shown – nor argued – that this factor is dispositive for finding a *Penn Central* Takings violation.

There is no "set formula" for determining when there is a taking under *Penn Central. See Penn Central*, 438 U.S. at 123. After considering Plaintiff's FAC, the Court finds, again, that the Board's decision had at least a small economic impact and interfered with its distinct investment-backed expectations. Defendants have failed to show that these combined facts – notwithstanding the fact that the economic impact was small and the Government's character does not support a *Penn Central* violation – are insufficient to show that there was a *Penn Central* taking.

As such, the Court DENIES Defendants' motion requesting that the Court dismiss Plaintiff's *Penn Central* takings cause of action.

II. Declaratory Relief

Plaintiff's second cause of action is for declaratory relief. *See FAC* ¶¶ 69-71. Specifically, Plaintiff pleads that there is a declaration "necessary and appropriate at this time to settle the parties' disputes concerning the validity and constitutionality of the City's Rent Control Law." *Id.* ¶ 71. Defendant argues that Plaintiff's cause of action is derivative in nature and does not provide an independent theory of recovery. *See Mot.* 25:2-8. Plaintiff does not contest Defendant's argument in its opposition. *See generally Opp.* This declaration, then, would merely be a finding by the Court that Plaintiff has prevailed on its other cause of action. *See Lai v. Quality Loan Service Corp.*, No. 10-2308 PSG, 2010 WL 3419179, at *3 (C.D. Cal. 2010) ("The object of [declaratory relief] is to afford a new form of relief when needed and not to furnish a litigant with a second cause of action for determination of identical issues."). Therefore, the Court DISMISSES WITHOUT LEAVE TO AMEND Plaintiff's second cause of action.

III. Leave to Amend

The Court has dismissed Plaintiff's *Nollan/Dolan* claim and declaratory relief cause of action without leave to amend. Plaintiff requests leave to amend. *Opp.* 25:8-9

In determining whether leave to amend is warranted, the Court considers: (1) a party's bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility; and (5) whether the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3242 PSG (PJWx) | Date | June 23, 2015 |
|---|---|---|---|
| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* | | |

plaintiff has previously amended his complaint. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Although the factors should be analyzed with liberality, "leave to amend is not to be granted automatically." *Jackson v. Bank of Hawai'i,* 902 F.2d 1385, 1387 (9th Cir. 1990).

Here, the Court sees no evidence of bad faith or undue delay and the Court has not previously assessed the merit of Plaintiff's *Nollan/Dolan* claim. Furthermore, Defendants have not argued, nor shown, that granting Plaintiff leave to amend would be prejudicial. Nevertheless, the Court finds that it would be futile to grant leave to amend because it has dismissed Plaintiff's claims as a matter of law.

IV.     Conclusion

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss. Plaintiff's takings claim is DISMISSED WITHOUT LEAVE TO AMEND to the extent that it is based on *Nollan/Dolan*. The motion is DENIED as to Plaintiff's *Penn Central* claim.

Additionally, Plaintiff's second cause of action for declaratory relief is DISMISSED WITHOUT LEAVE TO AMEND.

**IT IS SO ORDERED.**