RICHARD H. CLOSE (Bar No. 50298)
rclose@gilchristrutter.com
THOMAS W. CASPARIAN (Bar No. 169763)
tcasparian@gilchristrutter.com
YEN N. HOPE (Bar No. 233880)
yhope@gilchristrutter.com
GILCHRIST & RUTTER
Professional Corporation
1299 Ocean Avenue, Suite 900
Santa Monica, California 90401-1000
Telephone: (310) 393-4000
Facsimile: (310) 394-4700

MATTHEW W. CLOSE (Bar No. 188570)
mclose@omm.com
DIMITRI D. PORTNOI (Bar No. 282871)
dportnoi@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Attorneys for Plaintiff Colony Cove
Properties, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLONY COVE PROPERTIES, LLC, a Delaware limited liability company,<br><br>          Plaintiff,<br><br>          v.<br><br>CITY OF CARSON, a municipal corporation; CITY OF CARSON MOBILEHOME PARK RENTAL REVIEW BOARD, a public administrative body; and DOES 1 to 10, inclusive,<br><br>          Defendants. | Case No. CV 14-03242 PSG (PJWx)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING MOBILEHOME PARK CONVERSIONS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing: April 5, 2016 at 9:00 a.m.<br>Courtroom: 880<br>Judge: Hon. Philip S. Gutierrez<br>Trial Date: April 5, 2016 |

1   **TO DEFENDANTS AND THEIR COUNSEL OF RECORD:**

2       **PLEASE TAKE NOTICE** that on April 5, 2016 at 9:00 a.m., Plaintiff

3   Colony Cove Properties, LLC ("Colony Cove") will and hereby does move for the

4   exclusion of evidence on the basis of Federal Rules of Evidence 401, 402, 403, and

5   701.  Plaintiff believes in good faith that Defendants City of Carson and City of

6   Carson Mobilehome Park Rental Review Board intend to offer into evidence during

7   trial, set to begin on April 5, 2016, arguments and evidence regarding Colony

8   Cove's supposed intention, at the time it purchased the mobilehome park at issue

9   (the "Park"), to convert the Park from a rental mobilehome park to a condominium-

10  style resident-owned park.

11      This Motion is made on the grounds that there is no evidence Colony Cove

12  purchased the Park in 2006 with the intention to convert it to a condominium

13  ownership-style park anytime in the foreseeable future.  In fact, to date, Colony

14  Cove has not converted the Park to resident ownership.  Further, whether Colony

15  Cove intended to convert the Park when it purchased the Park is irrelevant, and any

16  marginal probative value is substantially outweighed by the dangers of unfair

17  prejudice, confusing the issues, and wasting time.  None of the experts in the case

18  offered by either party are providing any opinions or valuations based on the

19  supposed conversion of the Park from a rental facility to a resident-owned park.

20      This Motion is based on this Notice of Motion, the Memorandum of Points

21  and Authorities, the Declaration of Matthew W. Close and the exhibits attached

22  thereto, the files in this action, and such additional submissions and argument as

23  may be presented at or before the hearing on this Motion.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1    This Motion is made following the conference of counsel pursuant to Local

2  Rule 7-3 which took place on February 9, 2016.

3

4  Dated: February 22, 2016                    Respectfully submitted,

5                                              GILCHRIST & RUTTER
                                               Professional Corporation
6
                                                              &
7
                                               O'MELVENY & MYERS LLP
8

9                                              By:   /s/ Matthew W. Close
                                                      Matthew W. Close
10

11                                             Attorneys for Plaintiff
                                               Colony Cove Properties, LLC
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.  INTRODUCTION

Plaintiff Colony Cove Properties, LLC ("Colony Cove") submits this motion *in limine* to preclude Defendants City of Carson ("Carson") and City of Carson Mobilehome Park Rental Review Board (the "Board," and collectively with Carson, the "City") from introducing evidence or arguments that Colony Cove purchased the mobilehome park at issue (the "Park") with the intention of converting the Park from a rental mobilehome park to a condominium ownership-style park owned by residents ("conversion").  The City apparently seeks to offer this argument and speculation as a rationalization and justification for its two rent decisions challenged in this case that required Colony Cove to operate at approximately $2,000,000 in cash losses in the first two years it owned the Park.

Although the City has raised the issue of the Park's pending conversion at multiple depositions, there is no evidence that Colony Cove intended to convert the Park anytime in the foreseeable future when it purchased the Park in 2006, or that any such intention would justify the rent decisions giving rise to this case.  In fact, almost ten years after its purchase, Colony Cove has not converted the Park to resident ownership.  Further, the City's staff reports on the two challenged rent applications never mention a conversion, and the City resolutions that unlawfully denied Colony Cove the rents necessary to pay its bills also never mention conversion.  None of the experts designated by either party have offered any opinions regarding the Park's supposed value following a conversion or as a resident-owned park.  To the contrary, all the experts in the case agree that the Park has been and should be valued as a rental park.  The value of the Park derives from its rental income and the City unconstitutionally interfered with Colony Cove's reasonable, investment-backed expectation of the rents it would be permitted to charge.  That is the issue for trial.

Any evidence and argument about conversions would be irrelevant, lack foundation, and be substantially more prejudicial than probative.  *See* Fed. R. Evid.

1   401, 402, 403.  For these reasons, any attempt to introduce evidence or argument

2   that Colony Cove purchased the Park with the intention of converting said Park

3   should be excluded.

4   **II.      RELEVANT BACKGROUND**

5        In April 2006, Colony Cove purchased the Park, Colony Cove Mobile

6   Estates, for more than $23 million.  At the time, Carson's rent-control rules provided

7   for the consideration of debt service (i.e., interest payments on a mortgage) when

8   park owners applied for rent increases.  In fact, in 2003, a Los Angeles Superior

9   Court judge had ordered Carson to consider another park owner's debt service when

10  setting rents because that had been the established practice in the City and was

11  specifically provided for in the City's rent-control regulations ("Order").  Although

12  the City did not appeal that Order (which was indisputably known to and relied on

13  by Colony Cove when it purchased the Park), a few months after Colony Cove's

14  purchase, the City changed its rent-control rules to provide new grounds to ignore

15  debt service payments when setting rents.  The City subsequently disallowed and

16  ignored Colony Cove's debt service when it disposed of the two rent applications

17  giving rise to this case.  In August 2008 and again in July 2009, the City ultimately

18  approved small rent increases that it knew would not allow sufficient income for

19  Colony Cove to pay interest on its mortgage and operate and maintain the Park.  As

20  a result, Colony Cove was forced to operate at approximately $2,000,000 in losses

21  during the two years at issue in this case.  This result was completely unwarranted

22  and unforeseeable since a $200 per month, per space rent increase would have (i)

23  allowed Colony Cove to cover its debt service payments to its lender General

24  Electric Capital Corporation ("GE") and (ii) resulted in rents that were both 20–25%

25  below market levels and comparable to rents charged in other rent-controlled parks

26  in Carson.

27        The question at issue in this litigation is whether the City committed an

28  unconstitutional taking when it abruptly changed its rent-control rules immediately

PLAINTIFF'S MOT. IN LIMINE NO. 1
CV 14-03242 PSG (PJWx)

after Colony Cove purchased the Park, and thus required Colony Cove to operate the Park at huge annual losses.  Whether Colony Cove purchased the Park with the intention of converting the Park from a rental mobilehome park to a condominium ownership-style park is irrelevant.  There is no evidence in the case about the Park's value as a resident-owned park, or even that a proper valuation of the Park requires consideration of a conversion.

Nevertheless, City employees who have no qualifications to appraise or value real estate have asserted during depositions that despite Colony Cove's substantial operating losses, Colony Cove could eventually profit by converting the Park to resident ownership.  (*See* Ex. 5 at 130:5–9.)[1]  There is no evidence to support the claim that Colony Cove purchased the Park with the intention of generating a return on its investment by converting the Park, and all of the experts agree that the proper valuation method for the Park is based on the rents it generates.  And ten years after Colony Cove purchased the Park, the Park has not been converted.  (*See id.* at 130:10–13.)  At best, the evidence suggests that Colony Cove purchased the Park with the intention of keeping its options open and *possibly* converting the Park and selling lots to residents at some uncertain future time.  (*See* Ex. 4 at 98:8–100:12.)

For example, when Colony Cove's owner[2] was asked, during his December 18, 2015 deposition, if he had "decided before you purchased Colony Cove Mobile Estates that you were going to file an application for subdivision of the mobile home park?," his response was: "I had decided to file for a subdivision, ***but I had not decided to proceed with the subdivision***."  (*Id.* at 98:8–14 (emphasis added).)  Mr. Goldstein goes on to explain:

---

[1] All exhibits are attached to the Declaration of Matthew W. Close in Support of Plaintiff's Motions *in Limine* Nos. 1–8.

[2] James F. Goldstein is President of Goldstein Properties, Inc., which is a general partner of El Dorado Palm Springs, Ltd., which serves as manager of Colony Cove. For purposes of the trial and convenience of the factfinder, Colony Cove refers to Mr. Goldstein as the "owner" of Colony Cove.

1
2
3
4
5

> I always like to have as many options available to me as
> possible. ***I think that in the long run, at some point, the
> market might be at a level that warrants selling the
> spaces, but I don't know when that is going to happen.***
> But I want to have the ability to sell spaces or a future
> owner to have that ability because I think it's in my better
> interest.

6  (*Id.* at 100:5–12 (emphasis added).)

7       A mobilehome park conversion does not occur until the first units are actually

8  offered and sold. *See El Dorado Palm Springs, Ltd. v. City of Palm Springs*, 96 Cal.

9  App. 4th 1153, 1166 (2002) ("[C]onversion occurs on the date that the first

10 subdivided unit is sold."); *see also Pac. Palisades Bowl Mobile Estates, LLC v. City

11 of Los Angeles*, 55 Cal. 4th 783, 808 (2012).  An applicant obtains a land-use

12 entitlement for conversion through local agency approval of a subdivision map

13 application (a process which can take years, and did here).  After obtaining a local

14 entitlement, a property owner that wishes to proceed with conversion must pursue it

15 through the California Bureau of Real Estate ("BRE," formerly the California

16 Department of Real Estate), which regulates the creation, marketing, and sale of

17 condominium "airspace" units within the mobilehome park.  Cal. Bus. & Prof. Code

18 §§ 10050, 11000 *et seq.*  The conversion itself does not occur until the state BRE

19 process is completed, all requirements are met, and the first unit is sold.  *See El

20 Dorado*, 96 Cal. App. 4th at 1166; *Pac. Palisades Bowl*, 55 Cal. 4th at 808.

21      Mobilehome park conversions are complex, highly controversial, and the

22 subject of numerous lawsuits.  Accordingly, to the extent there is any evidence of

23 Colony Cove's alleged intention, in 2006, to convert the Park, the probative value of

24 such evidence and argument is substantially outweighed by the dangers of unfair

25 prejudice, confusing the issues, misleading the jury, and/or undue delay and wasting

26 time.

27
28

PLAINTIFF'S MOT. IN LIMINE NO. 1
CV 14-03242 PSG (PJWx)

## III.  THE CITY SHOULD BE PRECLUDED FROM ASSERTING COLONY COVE PURCHASED THE PARK WITH THE INTENTION OF CONVERTING IT

Evidence must be excluded if irrelevant or if its probative value is outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  *See* Fed. R. Evid. 402, 403.  Here, evidence or argument that Colony Cove purchased the Park with the intention, in 2006, of converting said Park is inadmissible for all these reasons.

First, whether Colony Cove purchased the Park with the intention of converting the Park is irrelevant.  In takings cases, economic impact is judged at the time of the taking.  *See Cane Tennessee, Inc. v. United States*, 57 Fed. Cl. 115, 124 (Fed. Cl. 2003) ("Economic impact for a takings analysis is determined by comparing the market value of the property at a moment in time just before the government action with the market value just after the government action.") (citing *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497 (1987)). Property appreciation in the years following a taking does not provide immunity or a defense to the government.  *See Wheeler v. City of Pleasant Grove*, 833 F.2d 267, 271 (11th Cir. 1987) (rejecting district court's conclusion that landowner suffered no compensable loss where property value increased after taking occurred because landowner should be compensated for loss in income-producing potential suffered "over the period of the temporary taking").  As such, Colony Cove's intentions regarding a possible future use of the Park is irrelevant.

Second, whether or not Colony Cove will profit through a conversion that still has not occurred seven to eight years after the City's rent decisions giving rise to this case is purely speculative and depends on a multitude of factors, including when the Park is converted, whether sufficient financing exists so residents can buy their lots, whether residents in fact buy their lots, and the timing at which residents buy

their lots.  The City cannot rely on the possibility that Colony Cove may one day convert the Park and profit therefrom to defeat Colony Cove's claim that the City committed an unconstitutional taking when it abruptly changed its rent-control rules immediately after Colony Cove purchased the Park for more than $23 million and forced Colony Cove to operate at unsustainable losses.  This is precisely the sort of attenuated argument Federal Rule of Evidence 403 is designed to prevent.

Third, there is simply no evidence that Colony Cove intended to proceed with conversion anytime in the near future when it purchased the Park.  The uncontradicted evidence is simply that Colony Cove sought to obtain a local entitlement to "keep its options open" for the future for it or for a future owner, and that Colony Cove has made no effort to proceed with the state BRE regulatory process necessary to convert the park, ten years after purchasing the Park and more than three years after obtaining final local entitlement.

Finally, to the extent there is any probative value in evidence and arguments regarding Colony Cove's alleged intention to convert the Park, such value is substantially outweighed by the dangers of unfair prejudice, confusing the issues, misleading the jury, and/or undue delay and wasting time.  Introducing the subject of mobilehome park conversions in this litigation would simply confuse the issues, mislead the jury, and result in undue delay.  It would lead to extended testimony about conversions, the statutory requirements, and the various factors that might impact whether or not they are profitable.  And there are no expert opinions in this case about the Park's supposed value if the hypothetical conversion were to occur, and the appraisal experts offered by both sides in this case agree that the Park should be valued as a rental park based on the rents it is permitted to charge.  Accordingly, lay witnesses from the City staff speculating about intentions to convert the Park and profits that might be reaped are rank speculation and should be excluded.

Moreover, any discussion of conversions will unduly delay and prolong the trial.  Colony Cove's lawsuit challenges events that occurred prior to July 2009.  If

PLAINTIFF'S MOT. IN LIMINE NO. 1
CV 14-03242 PSG (PJWx)

1  the City is permitted to offer speculative testimony and arguments about a

2  conversion that has not occurred, Colony Cove would have no choice but to

3  introduce evidence that its subdivision map application was not approved by the

4  City until December 2012, that the map approval does not constitute conversion,

5  and, moreover, that in the intervening three years, Colony Cove has not taken any

6  steps to gain state BRE approval and sell units at the Park.

7  **IV.   CONCLUSION**

8       For all the foregoing reasons, the Court should issue an order precluding the

9  City from introducing any evidence or argument regarding Colony Cove's alleged

10  intention to convert the Park or supposed profits that might be generated by a future

11  conversion.

12

13  Dated: February 22, 2016                    Respectfully submitted,

14                                              GILCHRIST & RUTTER

15                                              Professional Corporation

16                                                          &

17                                              O'MELVENY & MYERS LLP

18                                              By:   /s/ Matthew W. Close

19                                                    Matthew W. Close

20                                              Attorneys for Plaintiff

21                                              Colony Cove Properties, LLC

22

23

24

25

26

27

28