RICHARD H. CLOSE (Bar No. 50298)
rclose@gilchristrutter.com
THOMAS W. CASPARIAN (Bar No. 169763)
tcasparian@gilchristrutter.com
YEN N. HOPE (Bar No. 233880)
yhope@gilchristrutter.com
GILCHRIST & RUTTER
Professional Corporation
1299 Ocean Avenue, Suite 900
Santa Monica, California 90401-1000
Telephone: (310) 393-4000
Facsimile: (310) 394-4700

MATTHEW W. CLOSE (Bar No. 188570)
mclose@omm.com
DIMITRI D. PORTNOI (Bar No. 282871)
dportnoi@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Attorneys for Plaintiff Colony Cove
Properties, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLONY COVE PROPERTIES, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CARSON, a municipal corporation; CITY OF CARSON MOBILEHOME PARK RENTAL REVIEW BOARD, a public administrative body; and DOES 1 to 10, inclusive,<br><br>Defendants. | Case No. CV 14-03242 PSG (PJWx)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 4 TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING PARK VALUE AFTER JULY 2009; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing: April 5, 2016 at 9:00 a.m.<br>Courtroom: 880<br>Judge: Hon. Philip S. Gutierrez<br>Trial Date: April 5, 2016 |

**TO DEFENDANTS AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 5, 2016 at 9:00 a.m., Plaintiff Colony Cove Properties, LLC ("Colony Cove") will and hereby does move for the exclusion of evidence on the basis of Federal Rules of Evidence 401, 402, and 403, and a lack of foundation. Colony Cove believes in good faith that Defendants City of Carson ("Carson") and City of Carson Mobilehome Park Rental Review Board (the "Board," and collectively with Carson, the "City") intend to offer into evidence during trial, set to begin on April 5, 2016, arguments and evidence regarding the current value of the mobilehome park at issue (the "Park"), real estate market conditions since the time period at issue, Colony Cove's operations *after* the takings alleged in the case, and/or other financial information related to the park after the relevant time period.

This Motion is made on the grounds that the City's liability in this case is based on its decisions with respect to the rent-increase applications Colony Cove submitted on or around September 28, 2007 and September 28, 2008. The City adopted Resolution Nos. 2008-256 and 2009-269, disposing of the rent-increase applications in August 2008 and July 2009, respectively. The unlawful takings occurred at that time and damages are measured based on the value taken from Colony Cove at that time. The fact that market conditions have changed since those unlawful takings—historically low interest rates resulting from the financial crisis followed by market-wide appreciation in real estate values—is completely irrelevant to the lawfulness of the two rent decisions in this case or the damages that those two decisions inflicted on Colony Cove. The fact that Colony Cove managed to fund the multi-million dollar losses the City imposed on it and avoid bankruptcy is not a defense to this case. Under the City's view, it could lawfully take 10% of every owners' property without providing compensation if real estate values happen to appreciate by 25% or more in the subsequent years. After all, property owners would still come out ahead thanks to market forces after the confiscation. That is

1  the same defense the City is trying to put before the jury.  It is legally irrelevant,
2  prejudicial, and confusing to the jury.
3       This Motion is based on this Notice of Motion, the Memorandum of Points
4  and Authorities, the Declaration of Matthew W. Close and the exhibits attached
5  thereto, the files in this action, and such additional submissions and argument as
6  may be presented at or before the hearing on this Motion.
7       This Motion is made following the conference of counsel pursuant to Local
8  Rule 7-3 which took place on February 9, 2016.

Dated: February 22, 2016                Respectfully submitted,

                                        GILCHRIST & RUTTER
                                        Professional Corporation

                                                    &

                                        O'MELVENY & MYERS LLP

                                        By:   /s/ Matthew W. Close
                                              Matthew W. Close

                                        Attorneys for Plaintiff
                                        Colony Cove Properties, LLC

## I. INTRODUCTION

Plaintiff Colony Cove Properties, LLC ("Colony Cove") hereby submits this motion *in limine* to preclude Defendants City of Carson ("Carson") and City of Carson Mobilehome Park Rental Review Board (the "Board," and collectively with Carson, the "City") from introducing arguments or evidence regarding the current value of the mobilehome park at issue ("the Park"), real estate market conditions, Colony Cove's operating performance in the years following the rent decisions in this case, and/or other financial information related to the Park after the relevant time period, on the grounds that such information is irrelevant and potentially prejudicial.

The central issue in this litigation is whether the City committed an unconstitutional taking when it abruptly changed its rent-control rules immediately after Colony Cove purchased the Park and disallowed Colony Cove's debt service when it disposed of the rent-increase applications Colony Cove submitted on or around September 28, 2007 ("Year 1 Applications") and September 28, 2008 ("Year 2 Applications"). The City's liability in this case is based on its decisions on the Year 1 Applications and the Year 2 Applications. The City adopted Resolution Nos. 2008-256 and 2009-269, disposing of the Year 1 Applications and Year 2 Applications, in August 2008 and July 2009, respectively. The unlawful takings occurred at that time and damages are measured based on the value taken from Colony Cove at that time. It is irrelevant and prejudicial (and factually incorrect) to argue that "everything turned out OK in hindsight" because interest rates fell to historic levels allowing Colony Cove to refinance its property and, in the years leading up to trial, real estate values across the state have seen substantial appreciation. The fact that market conditions have changed since the unlawful takings or the fact that Colony Cove managed to fund the multi-million dollar losses the City imposed on it is not a defense to this case.

For these reasons, any attempt to introduce evidence or arguments regarding

the current value of the Park, real estate market conditions since the time period at issue, Colony Cove's operations *after* the takings alleged in the case, and/or other financial information related to the Park after the relevant time period should be excluded. Any such evidence and argument would be irrelevant, lack foundation, and be substantially more prejudicial than probative. *See* Fed. R. Evid. 401, 402, 403.

## II.  RELEVANT BACKGROUND

In April 2006, Colony Cove purchased the Park, Colony Cove Mobile Estates, for more than $23 million. At the time, Carson's rent-control rules provided for the consideration of debt service (i.e., interest payments on a mortgage) when park owners applied for rent increases. In fact, in 2003, a Los Angeles Superior Court judge had ordered Carson to consider another park owner's debt service when setting rents because that had been the established practice in the City and was specifically provided for in the City's rent-control regulations ("Order"). Although the City did not appeal that Order (which was indisputably known to and relied on by Colony Cove when it purchased the Park), a few months after Colony Cove's purchase, the City changed its rent-control rules to provide new grounds to ignore debt service payments when setting rents. The City subsequently disallowed and ignored Colony Cove's debt service when it disposed of the two rent applications giving rise to this case. In August 2008 and again in July 2009, the City ultimately approved small rent increases that it knew would not allow sufficient income for Colony Cove to operate and maintain the Park. As a result, Colony Cove was forced to operate at approximately $2,000,000 in losses during the two years at issue in this case. This result was completely unwarranted and unforeseeable since a $200 per month, per space rent increase would have (i) allowed Colony Cove to cover its debt service payments to its lender General Electric Capital Corporation ("GE") and (ii) resulted in rents that were both 20–25% below market levels and comparable to rents charged in other rent-controlled parks in Carson.

The question at issue in this litigation is whether the City committed an unconstitutional taking when it abruptly changed its rent-control rules immediately after Colony Cove purchased the Park, and thus required Colony Cove to operate the Park at huge annual losses. And if so, what are the damages. Established case law demonstrates that market factors and other subsequent and fortuitous developments do not immunize the government from liability or offset the damages.

## III. THE CITY SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE AND ARGUMENT REGARDING PARK VALUE AFTER JULY 2009

Evidence must be excluded if irrelevant or if its probative value is outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See* Fed. R. Evid. 402, 403. Here, evidence or arguments regarding the current value of the Park, real estate market conditions since the time period at issue, Colony Cove's operations *after* the takings alleged in the case, and/or other financial information related to the Park after the relevant time period, are inadmissible for all these reasons.

Colony Cove contends that, under the unique circumstances presented here, the City's decisions to deny Colony Cove rent increases sufficient to cover its debt service constitute a taking under *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978), because the City severely interfered with Colony Cove's reasonable, investment-backed expectations and forced Colony Cove to operate at average annual losses exceeding $1 million during the two years covered by this litigation. Colony Cove further claims that it was damaged by the City's decisions. The market conditions after July 2009, when the City unlawfully disposed of the Year 2 Applications, are irrelevant to both the liability and damages inquiry.

In regulatory takings cases, economic impact is judged at the time of the taking. "Economic impact for a takings analysis is determined by comparing the

market value of the property at a moment in time just before the government action with the market value just after the government action." *See Cane Tennessee, Inc. v. United States*, 57 Fed. Cl. 115, 124 (Fed. Cl. 2003) (citing *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497 (1987)). "Market value should be determined as of the date of the taking." *Nemmers v. City of Dubuque*, 764 F.2d 502, 504 (8th Cir. 1985); *accord Wheeler v. City of Pleasant Grove*, 833 F.2d 267, 271 (11th Cir. 1987); *United States v. 564.54 Acres of Land, More or Less, Situated in Monroe & Pike Ctys., Pa.*, 441 U.S. 506, 511–13 (1979) (noting that, in eminent domain actions, the court "has employed the concept of fair market value to determine the condemnee's loss" and that "[u]nder this standard, the owner is entitled to receive 'what a willing buyer would pay in cash to a willing seller' at the time of the taking"). As such, the value of the Park today, real estate market conditions since the unlawful taking, Colony Cove's profits and losses today, and/or other financial information related to the Park after the City adopted Resolution No. 2009-269 in July 2009, are irrelevant.

While the City will insist that the current value of the Park and Colony Cove's later refinancing of the Park offset its substantial operating losses, this argument is factually wrong and misses the mark. If the value of the Park in fact appreciated during the last few years, that was due to widely-reported macroeconomic factors affecting the housing and real estate markets and have nothing at all to do with the City's rent-control decisions. That is why property appreciation in the years following a taking does not provide immunity or a defense to the government. *See Wheeler*, 833 F.2d at 271 (rejecting district court's conclusion that landowner suffered no compensable loss where property value increased after taking occurred because landowner should be compensated for loss in income-producing potential suffered "over the period of the temporary taking"). Similarly, the fact that interest rates dropped to historic lows at the end of the last decade as a result of the global financial crisis is completely irrelevant

whether the City's disposition of Colony Cove's first two rent applications operated as a taking under *Penn Central* and its progeny.  Colony Cove's prudent and rational decision to refinance its mortgage when the opportunity presented itself does not immunize the City from liability or mitigate its damages.  The same would be true if property values had plummeted, or if interest rates had spiked, due to marketwide forces following the City's actions—those events would not contribute to the City's liability or damages.

In other words, Colony Cove had distinct, investment-backed expectations that the City would consider Colony Cove's market-based debt service an allowable expense, and also that Colony Cove could enjoy the benefit (or endure the consequences) of any subsequent market developments.  Colony Cove took the risk that the value of the Park might depreciate or that interest rates might rise, and those risks were solely for Colony Cove's account.  Neither positive nor negative market developments in later years are relevant to whether the City effected a taking when it suddenly decided to eliminate debt service as an allowable expense.

In a further attempt to discount Colony Cove's losses, the City will seek to introduce evidence showing that Colony Cove managed to turn a profit for the first time in 2012.  But this 1% return on equity—six years after Colony Cove purchased the Park—was possible only with additional and substantial investments by Colony Cove's ownership to cover expenses, including debt service.  Without these additional investments, Colony Cove would have had to cease operations at the Park altogether.  The monthly outlay for operational expenses, including debt service, drastically exceeded incoming rents, resulting in a potential default on the mortgage.  Because the Park is Colony Cove's only asset, such an ongoing loss would have precipitated a bankruptcy or foreclosure by the lender (GE Capital).  The City cannot cite Colony Cove's efforts to mitigate future losses to avoid compensating Colony Cove for the incredible losses it suffered during the period of the taking.

To the extent there is any probative value in evidence and arguments about market or financial developments that occurred after July 2009, that value is substantially outweighed by the dangers of unfair prejudice, confusing the issues, misleading the jury, and/or undue delay and wasting time.  The City's liability is based on decisions the City made in August 2008 and July 2009.  The value of the Park, real estate market conditions, Colony Cove's profits and losses, and/or other financial information related to the Park any time thereafter are irrelevant, and to try to establish such information before a jury would result in undue delay and a waste of time.

### IV.   CONCLUSION

For all the foregoing reasons, the Court should issue an order precluding the City from introducing any evidence or argument regarding the current value of the Park, real estate market conditions since the time period at issue, Colony Cove's operations *after* the takings alleged in the case, and/or other financial information related to the Park after the relevant time period.

Dated: February 22, 2016

Respectfully submitted,

GILCHRIST & RUTTER
Professional Corporation

&

O'MELVENY & MYERS LLP

By:   /s/ Matthew W. Close
          Matthew W. Close

Attorneys for Plaintiff
Colony Cove Properties, LLC