MATTHEW W. CLOSE (Bar No. 188570)
mclose@omm.com
DIMITRI D. PORTNOI (Bar No. 282871)
dportnoi@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071–2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

RICHARD H. CLOSE (Bar No. 50298)
rclose@gilchristrutter.com
THOMAS W. CASPARIAN (Bar No. 169763)
tcasparian@gilchristrutter.com
YEN N. HOPE (Bar No. 233880)
yhope@gilchristrutter.com
GILCHRIST & RUTTER
Professional Corporation
1299 Ocean Avenue, Suite 900
Santa Monica, CA 90401–1000
Telephone: (310) 393-4000
Facsimile: (310) 394-4700

Attorneys for Plaintiff Colony Cove
Properties, LLC

## UNITED STATES DISTRICT COURTS

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLONY COVE PROPERTIES, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CARSON, a municipal corporation; CITY OF CARSON MOBILEHOME PARK RENTAL REVIEW BOARD, a public administrative body; and DOES 1 to 10, inclusive,<br><br>Defendants. | Case No. CV 14-03242 PSG (PJWx)<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Courtroom:  880<br>Judge:  Hon. Philip S. Gutierrez<br>Judgment Entered:  May 16, 2016<br>Hearing Date:  August 1, 2016 |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................ 1

II.    COLONY COVE IS THE PREVAILING PARTY AND IS
       ENTITLED TO ATTORNEYS' FEES AND COSTS ................................ 2

       A.     Colony Cove is entitled to recover its reasonable attorneys' fees
              and costs for the entirety of this litigation. ........................... 2

       B.     Colony Cove is entitled to recover its reasonable attorneys' fees
              and costs incurred to exhaust state court remedies on the Year 1
              and Year 2 rent applications as demanded by the City. ....................... 3

III.   COLONY COVE'S FEE REQUEST IS REASONABLE ........................... 7

       A.     The hourly rates for Colony Cove's timekeepers are reasonable. ........ 9

       B.     The number of hours billed by Colony Cove's attorneys were
              reasonably expended in this case. ...................................... 11

              1.     The hours billed in the state court proceedings related to
                     the Year 1 and 2 Applications are reasonable. ......................... 12

              2.     The hours billed in this litigation are reasonable. ................... 13

                     a.     Pleadings ........................................................ 13

                     b.     Discovery ........................................................ 14

                     c.     Pretrial Activities and Filings ................................ 16

                     d.     Trial Preparation and Trial ................................... 17

IV.    THE LODESTAR IS REASONABLE AND NO ADJUSTMENT IS
       WARRANTED .......................................................................... 18

V.     COLONY COVE IS ENTITLED TO RECOVER NON-TAXABLE
       COSTS AS PART OF ITS ATTORNEYS' FEES AWARD ...................... 23

VI.    CONCLUSION ........................................................................ 25

PLAINTIFF'S MEMO. ISO MTN.
FOR ATTYS' FEES & COSTS
CV 14-03242 PSG (PJWx)

# TABLE OF AUTHORITIES

**Page(s)**

## <u>CASES</u>

*Adams v. City of Rialto*,
   No. EDCV 04-155-VAP (SGLx), 2006 WL 7090890 (C.D. Cal. July 20, 2006) .................................................................................................. 8

*Agster v. Maricopa Cnty.*,
   486 F. Supp. 2d 1005 (D. Ariz. 2007) ................................................ 24

*Alexander v. Gardner-Denver Co.*,
   415 U.S. 36 (1974) ............................................................................... 6

*Bartholomew v. Watson*,
   665 F.2d 910 (9th Cir. 1982) ........................................................... 4, 7

*Beltran Rosas v. Cnty. of San Bernardino*,
   260 F. Supp. 2d 990 (C.D. Cal. 2003) ............................................. 3, 6

*Blackwell v. Foley*,
   724 F. Supp. 2d 1068 (N.D. Cal. 2010) ............................................ 21

*Blum v. Stenson*,
   465 U.S. 886 (1984) ............................................................................. 9

*Brandenburger v. Thompson*,
   494 F.2d 885 (9th Cir. 1974) ............................................................... 6

*Cabrales v. Cnty. of Los Angeles*,
   935 F.2d 1050 (9th Cir. 1991) ........................................................... 23

*Camacho v. Bridgeport Fin., Inc.*,
   523 F.3d 973 (9th Cir. 2008) ............................................................... 9

*Chalmers v. City of Los Angeles*,
   796 F.2d 1205 (9th Cir. 1985) .......................................................... 8, 9

*Chaudhry v. City of Los Angeles*,
   751 F.3d 1096 (9th Cir. 2014) ............................................................. 3

*Colony Cove Properties, LLC v. City of Carson*,
   640 F.3d 948 (9th Cir. 2011) ........................................................ 4, 5, 6

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Cotton v. City of Eureka, Cal.*,
   889 F. Supp. 2d 1154 (N.D. Cal. 2012)...............................................................3

*Dang v. Cross*,
   422 F.3d 800 (9th Cir. 2005)...........................................................................23

*Daniels v. Area Plan Commission of Allen Cnty.*,
   306 F.3d 445 (7th Cir. 2002)..............................................................................4

*Dease v. City of Anaheim*,
   838 F. Supp. 1381 (C.D. Cal. 1993)...................................................................2

*Delalat v. Syndicated Office Sys., Inc.*,
   No. 10cv1273-DMS (NLS), 2014 WL 930162 (S.D. Cal. Jan. 28, 2014).........21

*Doran v. Corte Madera Inn Best Western*,
   360 F. Supp. 2d 1057 (N.D. Cal. 2005)............................................................18

*Dowd v. City of Los Angeles*,
   28 F. Supp. 3d 1019 (C.D. Cal. 2014)...............................................................24

*Exeter-West Greenwich Regional School Dist. v. Pontarelli*,
   788 F.2d 47 (1st Cir. 1986) .............................................................................4, 6

*Fischer v. SJB-P.D., Inc.*,
   214 F.3d 1115 (9th Cir. 2000) ..........................................................................11

*Gonzalez v. City of Maywood*,
   729 F.3d 1196 (9th Cir. 2013)......................................................................8, 11

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ................................................................................24

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ......................................................................2, 3, 6, 23

*Hernandez v. Grullense*,
   No. 12-cv-03257-WHO, 2014 WL 1724356 (N.D. Cal. Apr. 30, 2014)..........22

*Hoitt v. Vitek*,
   495 F.2d 219 (1st Cir. 1974) ..............................................................................6

iii

# TABLE OF AUTHORITIES
**(continued)**

Page(s)

*In re SNTL Corp.*,
  571 F.3d 826 (9th Cir. 2009) ............................................................................... 7

*Jones v. Cnty. of Sacramento*,
  No. CIV S-09-1025 DAD, 2011 WL 3584332 (E.D. Cal. Aug. 12, 2011) .......... 8

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975) ................................................... 8, 10, 18, 19

*Lambert v. Ackerley*,
  180 F.3d 997 (9th Cir. 1999) ............................................................................... 8

*Mitchell Engineering v. City and Cnty. of San Francisco*,
  No. C 08-04022 SI, 2011 WL 1431511 (N.D. Cal. Apr. 14, 2011) ................... 24

*Morales v. City of San Rafael*,
  96 F.3d 359 (9th Cir. 1996) ........................................................................... 7, 18

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008) .................................................................. 2, 11, 21

*N.C. Dep't of Trans. v. Crest St. Cmnty. Council, Inc.*,
  479 U.S. 6 (1986) ............................................................................................... 5

*New York Gaslight Club, Inc. v. Carey*,
  447 U.S. 54 (1980) ......................................................................................... 6, 7

*Partners for Health & Home, L.P. v. Seung Wee Yang*,
  488 B.R. 431 (C.D. Cal. 2012) ......................................................................... 20

*Rock Creek Ltd. P'Ship v. State Water Resources Control Bd.*,
  972 F.2d 274 (9th Cir. 1992) .............................................................................. 5

*Safeworks, LLC v. Teupen America, LLC*,
  No. C 08-12197, 2010 WL 3033711 (W.D. Wash. July 29, 2010) ................... 24

*Schwartz v. Sec'y of Health & Human Servs.*,
  73 F.3d 895 (9th Cir. 1995) ................................................................................ 9

*Simi Inv. Co. Inc. v. Harris Cnty., Tex.*,
  236 F.3d 240 (5th Cir. 2000) .............................................................................. 4

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Skokos v. Rhoades*,
    440 F.3d 957 (8th Cir. 2006) ............................................................................ 4

*Smith v. Robinson*,
    468 U.S. 992 (1984) .......................................................................................... 5

*Stonebrae v. Toll Bros., Inc.*,
    No. C-08-0221 EMC, 2011 WL 1334444 (N.D. Cal. Apr. 7, 2011) ............... 21

*Vallavista Corp. v. Vera Bradley Designs, Inc.*,
    No. C 10-00120 JW, 2011 WL 7462065 (N.D. Cal. Apr. 20, 2011) .............. 18

*Webb v. Board of Educ. of Dyer Cnty., Tenn.*,
    471 U.S. 234 (1985) .......................................................................................... 5

*Widrig v. Apfel*,
    140 F.3d 1207 (9th Cir. 1998) .......................................................................... 9

*Williamson County Regional Planning Commission v. Hamilton Bank of
    Johnson City*,
    473 U.S. 172 (1985) .......................................................................................... 4

*Wyatt Tech. Corp. v. Malvern Instruments, Inc.*,
    No. CV 07-8298 ABC (RZx), 2010 WL 11404472 (C.D. Cal. June 17,
    2010) ................................................................................................................ 24

## STATUTES

42 U.S.C. § 1983 ................................................................................... passim

42 U.S.C. § 1988 ................................................................................... passim

## RULES

Fed. R. Civ. P. 15 ...................................................................................... 13

Fed. R. Civ. P. 59 ........................................................................................ 8

## I.   INTRODUCTION

On May 6, 2016, a unanimous jury delivered a verdict in favor of the Plaintiff, Colony Cove Properties, LLC ("Colony Cove"), awarding over $3.3 million in damages.  This Court entered judgment in Colony Cove's favor, awarding those damages and declaring that the City of Carson and its Rental Review Board (collectively, "Defendants" or "the City") had violated Colony Cove's constitutional rights.  Colony Cove succeeded in this litigation and is entitled to its attorneys' fees under 42 U.S.C. § 1988.

Colony Cove is entitled to a fee and cost award in the amount of $3,045,954.46.  Plaintiff successfully litigated this complex case in an efficient manner.  As the Court has noted, this case involved substantial and unique open questions of law.  (*See* 3/21/2016 Trans. at 4-5.)  Colony Cove prevailed against multiple motions to dismiss, met and conferred to avoid the filing of a threatened motion for summary judgment, prevailed in maintaining a jury demand and in defeating the City's erroneous jury instructions and improper motions *in limine*, and ultimately achieved a decisive victory.  Colony Cove achieved this victory without litigating a single discovery dispute and without requesting a single extension for any deadline.  Colony Cove managed discovery efficiently, eschewing the service of interrogatories and requests for admission, stipulating with the City to minimize exchanges, using junior attorneys for document discovery, deposing only witnesses who appeared on the City's witness list, and never sending more than one attorney to any deposition.  Even with these efficiencies, Colony Cove has voluntarily reduced its fee request on this motion by nearly 10%, reducing the number of timekeepers and cutting $288,701.80 in fees and $8,314.49 in costs.  These fees and costs were, in fact, paid by Colony Cove during the course of litigation, but Colony Cove is now seeking to avoid or limit the issues in dispute on this motion.

Throughout, litigation has been rendered more complex due to the City's litigation tactics.  Knowing full well that Colony Cove had a valid federal claim, the

PLAINTIFF'S MEMO ISO MTN.
FOR ATTYS' FEES & COSTS
CV 14-03242 PSG (PJWx)

City required Colony Cove to exhaust state remedies by litigating state law claims in the California courts as a condition precedent to filing this lawsuit.  During this case, the City brought duplicative motions to dismiss, produced documents in unusable format, and promised to produce a key witness for deposition only to reverse course and disclaim any such promise or duty.  Colony Cove made a substantial effort to settle this case before trial, participating meaningfully in mediation, while the City did not send anyone to the first mediation session with settlement authority in violation of this Court's Local Rules.  Under the circumstances, Colony Cove is entitled to reimbursement of its fees as presented in this motion.  The Ninth Circuit has repeatedly emphasized that the reasonableness of a fee award is judged by "whether, in light of the circumstances, the time could reasonably have been billed to a private client."  *See, e.g.*, *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  In this case, attorney hours *were* billed to a private client, who then reviewed and paid those bills.  Colony Cove's attorneys did not work on contingency and will not receive a portion of this fee award; the fee award will merely reimburse bills already paid by a sophisticated client.  For that reason, Colony Cove's fee award is fair, just, and reasonable, and the Court should award it in full.  It is beyond cavil that the fee award being requested here "could reasonably have been billed to a private client."  *See Moreno*, *supra*.  These fees have been billed to and paid by a private client.

## II.  COLONY COVE IS THE PREVAILING PARTY AND IS ENTITLED TO ATTORNEYS' FEES AND COSTS

### A.  Colony Cove is entitled to recover its reasonable attorneys' fees and costs for the entirety of this litigation.

Under 42 U.S.C. § 1988, "a prevailing plaintiff is entitled to [an] award of its reasonable attorneys' fees and costs as a matter of course."  *Dease v. City of Anaheim*, 838 F. Supp. 1381, 1382 (C.D. Cal. 1993); *see also Chaudhry v. City of*

*Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014).  A plaintiff who "succeeds on any significant issue in litigation which achieves some of the benefit [the plaintiff] sought in bringing suit" is a "prevailing party."  *Cotton v. City of Eureka, Cal.*, 889 F. Supp. 2d 1154, 1166 (N.D. Cal. 2012) (citing *Hensley*, 461 U.S. at 433).

Colony Cove's First Amended Complaint sought relief under § 1983 for an as-applied taking in violation of the Takings Clause of the Fifth Amendment. (FAC, ¶¶ 62-68.)  Beginning on April 28, 2016, Colony Cove tried that claim to a jury, which ultimately returned a unanimous verdict in Colony Cove's favor.  (Dkt. No. 194.)  The jury concluded that the City's decisions relating to Colony Cove's rent increase applications submitted in September 2007 and September 2008 constituted regulatory takings without just compensation in violation of the Fifth Amendment and awarded Colony Cove damages totaling $3,336,056.  (*Id.*) Although the quantum of damages was lower than the trial evidence, this is the same relief that Colony Cove sought when bringing suit.  (*See* FAC at 19.)

Colony Cove has clearly obtained at least "some of the benefit [it] sought in bringing suit."  *Cotton*, 889 F. Supp. 2d at 1166.  It is thus the "prevailing party" and is entitled to recover its reasonable attorneys' fees and costs incurred in connection with this litigation.  *See, e.g.*, *id.*

**B.    Colony Cove is entitled to recover its reasonable attorneys' fees and costs incurred to exhaust state court remedies on the Year 1 and Year 2 rent applications as demanded by the City.**

Colony Cove is also entitled to recover reasonable attorneys' fees and costs from the California state court proceedings related to the Year 1 and Year 2 applications, which were filed because the City insisted that Colony Cove exhaust state court remedies before litigating its federal takings claim under *Penn Central*.

"[T]he Ninth Circuit has held that attorney services in prior court proceedings that are a necessary prerequisite to resolve a federal civil rights action can be awarded under Section 1988."  *Beltran Rosas v. Cnty. of San Bernardino*, 260 F. Supp. 2d 990, 993 (C.D. Cal. 2003); *see, e.g.*, *Bartholomew v. Watson*, 665

PLAINTIFF'S MEMO. ISO MTN.
FOR ATTYS' FEES & COSTS
CV 14-03242 PSG (PJWx)

F.2d 910, 914 (9th Cir. 1982) (affirming award of state-court fees because "the state court proceedings were an essential step in the presentation of the inmates' section 1983 claim").[1]

Here, the state court proceedings were a necessary prerequisite for Colony Cove to pursue its as-applied takings claim under § 1983, and the City insisted that Colony Cove pursue those proceedings.  After the Board issued its decision on the Year 2 rent-increase application, Colony Cove filed a complaint in federal court asserting, inter alia, the same as-applied takings claim asserted here.  *See Colony Cove Props., LLC v. City of Carson, et al.*, No. CV 08-07065 PA (JWJx) (Dkt. No. 1).  The City moved to dismiss Colony Cove's claims, including its as-applied takings claim.  *Id.* (Dkt. No. 12.)  The City insisted that Colony Cove file a petition in state court and litigate it to the California Supreme Court in order to exhaust the state court remedies and ripen the § 1983 claim for federal court litigation.  Judge Percy Anderson dismissed Colony Cove's complaint.  *Id.* (Dkt. No. 28).  As is relevant here, Judge Anderson accepted the City's arguments and concluded that Colony Cove's as-applied claim was unripe under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 192–97 (1985).[2]  *Id.* (Dkt No. 28 at 8–10.)  The Ninth Circuit affirmed in 2011.  *See*

---

[1] *See also Exeter-West Greenwich Regional School Dist. v. Pontarelli*, 788 F.2d 47, 51–52 (1st Cir. 1986) ("There is solid precedent for allowing fees under § 1988 for work done in a state court.") (collecting cases); *Skokos v. Rhoades*, 440 F.3d 957, 962 (8th Cir. 2006) ("Federal courts[ ] may award plaintiffs attorney's fees for state-court proceedings that are essential to their federal claims."); *Simi Inv. Co. Inc. v. Harris Cnty., Tex.*, 236 F.3d 240, 255 (5th Cir. 2000) ("Of course, where a state proceeding is a necessary preliminary action to the enforcement of a federal claim, these attorneys' fees may be available in some circumstances, subject to the discretion of the district court.") (citations omitted).

[2] In the Takings context, the Supreme Court has required exhaustion.  "[T]he additional ripeness requirements of *Williamson County* create a takings claim exception to . . . [the] general requirement that exhaustion is not required in § 1983 suits."  *Daniels v. Area Plan Commission of Allen Cnty.*, 306 F.3d 445, 453 (7th Cir. 2002) (citation omitted).  As a result, state court exhaustion was required for Colony Cove's § 1983 claim and the Ninth Circuit so held.  *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 957–59 (9th Cir. 2011).

PLAINTIFF'S MEMO. ISO MTN. FOR ATTYS' FEES & COSTS CV 14-03242 PSG (PJWx)

*generally Colony Cove Properties, LLC v. City of Carson*, 640 F.3d 948 (9th Cir. 2011).  With respect to the as-applied claim, the court reasoned that Colony Cove should seek remedies in state court "prior to filing suit in federal court."  *Id.* at 958. Colony Cove commenced actions to exhaust its California state court remedies for the Year 1 and Year 2 rent-increase decisions.  It was not until after all appeals related to the state court actions were resolved that Colony Cove's takings claim was ripe and it was able to commence this litigation.[3]

Colony Cove attempted to "go straight to court to assert it[s]" claim, but the City insisted on state court litigation first.  *Cf. Webb v. Board of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 241 (1985) ("Because § 1983 stands 'as an independent avenue of relief' and petitioner 'could go straight to court to assert it,' the School Board proceedings in this case simply do not have the same integral function under § 1983 that state administrative functions have under Title VII.") (citing *Smith v. Robinson*, 468 U.S. 992, 1011 n.14 (1984)); *Rock Creek Ltd. P'Ship v. State Water Resources Control Bd.*, 972 F.2d 274, 279 (9th Cir. 1992) (plaintiff could not recover attorneys' fees under § 1988 because prior state court proceedings were "not a condition precedent to [plaintiff's] entry to federal court").  As a result of the City's position, Colony Cove was required to exhaust its remedies in California state court before it could file a § 1983 claim for an as-applied taking in federal court.  *Colony Cove*, 640 F.3d at 958 (dismissal was proper because Colony Cove "did not utilize the [state] process prior to filing suit in federal court").

"A court hearing one of the civil rights claims covered by § 1988 may still award attorney's fees for time spent on administrative proceedings to enforce the civil rights claim prior to the litigation."  *N.C. Dep't of Trans. v. Crest St. Cmnty. Council, Inc.*, 479 U.S. 6, 15 (1986) (citations omitted).  In *New York Gaslight*

---

[3] Colony Cove seeks no fees related to litigation of the original federal action before Judge Anderson or the Ninth Circuit.  (*See* Declaration of Matthew W. Close in Support of Motion for Attorneys' Fees ("Close Decl."), filed concurrently herewith, at ¶ 24.)

PLAINTIFF'S MEMO. ISO MTN.
FOR ATTYS' FEES & COSTS
CV 14-03242 PSG (PJWx)

*Club, Inc. v. Carey*, for example, the Court held Title VII permitted the recovery of attorneys' fees for counsel's work done in state and local administrative proceedings.  447 U.S. 54, 71 (1980).  The Court held "[t]he conclusion that fees are authorized for work done at the state and local levels [to be] inescapable." *id.* at 62–63, in light of the fact that, under Title VII, "[i]nitial resort to state and local remedies is mandated, and recourse to the federal forums is appropriate only when the State does not provide prompt or complete relief."  *Id.* at 65 (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48–50 (1974)).

Here, Colony Cove was required to seek writs in state court before it could avail itself of this federal forum and relief provided under § 1983.  *See Colony Cove*, 640 F.3d at 958.  As a result, the conclusion here is likewise "inescapable" that Colony Cove is entitled to recover fees for its attorneys' work in connection with the state court proceedings for the Year 1 and Year 2 rent-increase decisions. *Carey*, 447 U.S. at 65;[4] *see also, e.g.*, *Pontarelli*, 788 F.2d at 51–52 ("There is solid precedent for allowing fees under § 1988 for work done in a state court.") (collecting cases); *Beltran Rosas*, 260 F. Supp. 2d at 993.

An award of attorneys' fees for work done in the state court proceedings would similarly further the important policies underlying § 1983.  As with Title VII, § 1983 seeks to vindicate individual constitutional rights.  *See Brandenburger v. Thompson*, 494 F.2d 885, 893 n.4 (9th Cir. 1974) ("Section 1983, like the 1964 Act, has as its purpose the vindication of individual constitutional rights."); *Hoitt v. Vitek*, 495 F.2d 219, 220 n.1 (1st Cir. 1974) ("The policy encouraging vindication of constitutional rights underlies 42 U.S.C. § 1983.").  As the *Carey* Court

---

[4] Although *Carey* dealt with an award of attorneys' fees under Title VII, the Court's reasoning applies with equal force here.  As the Supreme Court noted in *Hensley*, § 1988 was patterned in part upon the attorneys' fees provision for Title VII. *Hensley*, 461 U.S. at 433 n.7 ("[t]he legislative history of § 1988 indicates that Congress intended that 'the standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights Act.'").  Thus, the Court's reasoning and conclusion in *Carey* carries significant persuasive value here.

explained, "[p]ermitting an attorney's fee award to one in [the plaintiff's] situation furthers this goal, while a contrary rule would force the complainant to bear the costs of mandatory state and local proceedings and thereby would inhibit the enforcement of a meritorious discrimination claim."  447 U.S. at 63.  Here, permitting fee award would further the remedial purpose of § 1983 and would serve to encourage the bringing of meritorious Fifth Amendment takings claims.[5]

Because Colony Cove was required to exhaust its state court remedies, both by the Ninth Circuit and by the City's insistence in motions to dismiss Colony Cove's first federal complaint, prior to pursing its takings claim under § 1983, the Court should award Colony Cove its reasonable attorneys' fees incurred in connection with the mandatory state court proceedings.

## III.   COLONY COVE'S FEE REQUEST IS REASONABLE

Attorneys' fees are recoverable by a prevailing party to the extent that they are reasonable.  *In re SNTL Corp.*, 571 F.3d 826, 842 (9th Cir. 2009).  The Ninth Circuit has adopted the "lodestar" method of calculating reasonable attorneys' fees to be awarded to a prevailing party where such fees are recoverable in a civil rights action under § 1988.  *See, e.g.*, *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) ("The customary method of determining fees . . . is known as the lodestar method.") (citation omitted).  "To calculate the amount of attorney's fees

---

[5] Declining to award Colony Cove's reasonable attorneys' fees incurred in the state court proceedings, however, would serve as an adverse incentive to § 1983 defendants, like the City, to force § 1983 plaintiffs into expensive state court proceedings that could drain a plaintiff's resources before they are able to return to federal court to vindicate their constitutional rights.  Indeed, after choosing, in the prior federal litigation, to force Colony Cove to pursue remedies in state court rather than defend against Colony Cove's as-applied takings claim on the merits, the City cannot now assert that any fees incurred to ripen the claim under *Williamson County* were not required and mandated.  *See Bartholomew*, 665 F.2d at 912–14 (awarding fees under § 1988 to plaintiff for services performed in state court proceedings where "the state court action was initiated at the insistence of state appellants after the filing of the inmates['] [§1983] complaint in the district court" because "the state court proceedings were an essential step in the presentation of the inmates' section 1983 claim").

PLAINTIFF'S MEMO. ISO MTN.
FOR ATTYS' FEES & COSTS
CV 14-03242 PSG (PJWx)

under the lodestar method, a court must 'multiply the number of hours reasonably expended by the attorney on the litigation by a reasonable hourly rate.'" *Adams v. City of Rialto*, No. EDCV 04-155-VAP (SGLx), 2006 WL 7090890, at *9 (C.D. Cal. July 20, 2006) (citation omitted).

In making its determination of both the number of hours reasonably expended and a reasonable hourly rate, the district court should consider various factors, including: "experience, reputation, and ability of the attorney; the outcome of the results of the proceedings; the customary fees; and the novelty or the difficulty of the question presented." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1985) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). The lodestar figure "is a 'presumptively reasonable' fee under 42 U.S.C. § 1988," *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) (citation omitted), and should only be adjusted in rare instances. *Morales*, 96 F.3d at 364 n.8 ("There is a strong presumption that the lodestar figure represents a reasonable fee. 'Only in rare instances should the lodestar figure be adjusted on the basis of other considerations.'") (citations omitted). Here, the appropriate lodestar amount is $2,947,135.50 for fees incurred through the end of trial. (Close Decl., ¶ 25; *see also id.*, Ex. 7; Declaration of Thomas W. Casparian in Support of Motion for Attorneys' Fees ("Casparian Decl.") filed concurrently herewith, at Exs. 6, 7.)[6] This amount is based on multiplying the reasonable hourly rate for each attorney or legal support staff (ranging from $225 per hour for staff to $975 per hour for a

---

[6] Colony Cove will make a supplemental motion for fees incurred in the briefing of this motion and of all Rule 59 motions submitted by the parties. *See Gonzalez*, 729 F.3d at 1210 ("'[I]t's now well established that time spent in preparing fee applications under 42 U.S.C. § 1988 is compensable.'") (quoting *Anderson v. Director, OWCP*, 91 F.3d 1322, 1325 (9th Cir. 1996)); *Jones v. Cnty. of Sacramento*, No. CIV S-09-1025 DAD, 2011 WL 3584332, *20 (E.D. Cal. Aug. 12, 2011) ("As the prevailing party in this lawsuit, plaintiff will be awarded attorneys' fees incurred opposing defendants['] renewed motion for judgment as a matter of law.") (citing *Lambert v. Ackerley*, 180 F.3d 997, 1012–13 (9th Cir. 1999)).

senior partner and lead trial counsel) by the number of hours reasonably expended by each.  (Close Decl., Ex. 6; Casparian Decl., Ex. 5.)

### A.    The hourly rates for Colony Cove's timekeepers are reasonable.

When calculating the lodestar, the Court first determines a reasonable hourly rate for the prevailing party's attorneys.  "[I]n determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of a comparable skill, experience, and reputation." *Chalmers*, 796 F.2d at 1210–11.

To assist the court in calculating the lodestar, a party seeking fees must submit "satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895–96, n.11 (1984).  The relevant community is that in which the district court sits. *Schwartz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). Recognizing that determining a reasonable rate is "inherently difficult," *Blum*, 465 U.S. at 895 n.11, courts routinely rely on declarations of attorneys who practice in the relevant community to establish a reasonable hourly rate, *see Widrig v. Apfel*, 140 F.3d 1207, 1209 (9th Cir. 1998), as well as determinations of reasonable hourly rates in the same district, *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).

Colony Cove is represented in this litigation by attorneys from O'Melveny & Myers LLP ("OMM") and Gilchrist & Rutter, P.C. ("G&R").  OMM is one of the top law firms in the country, the oldest extant law firm in Los Angeles, and is recognized for its expertise in complex litigation in federal court.  (Close Decl., ¶ 2.)  G&R is a law firm that specializes in complex real estate litigation against municipal and state regulators with particular specialization in the mobilehome park industry.  (Casparian Decl., ¶¶ 2–3.)  Given the firms' respective areas of expertise, Colony Cove retained G&R to handle the rent-control applications for Colony

Cove, as well as all state court proceedings seeking a writ of administrative mandate with respect to the Year 1 and Year 2 rent-increase applications. Colony Cove retained OMM to lead the federal litigation and global litigation strategy, given OMM's depth of experience with, and resources to handle, complex federal litigation and constitutional matters.

The team on this matter has extensive experience in complex litigation and rent-control matters.  Richard Close and Thomas Casparian of G&R have decades of experience prosecuting rent matters before the City's Rent Review Board and litigating in the California state courts related to the City's rent control rules, as well as in other jurisdictions and for other clients.  (Casparian Decl., ¶¶ 5–6.)  They have also represented Colony Cove's owner, Mr. James F. Goldstein, for over three decades in each of Mr. Goldstein's rent-increase applications and related litigation, providing valuable and strategic insight and knowledge that was critical to the efficient and successful prosecution of Mr. Goldstein's claim in this litigation.  (*Id.*; *see also* Declaration of James King in Support of Motion for Attorneys' Fees ("King Decl."), filed concurrently herewith, at ¶ 32.)

Lead trial counsel Matthew W. Close of OMM has 19 years of experience handling complex litigation and has been recognized as by Chambers USA as a leading securities litigator and is an officer of the Federal Bar Association's Los Angeles Chapter.  (Close Decl., ¶ 4; Ex. 1.)  The primary associates and counsel on this case also have substantial complex litigation experience and most have clerked in this District.  (*Id.*, ¶¶ 5–7; Exs. 2–4.)  These considerations support the reasonableness of Colony Cove's attorneys' rates.  *See Kerr*, 526 F.2d at 70 (relevant considerations are "the skill requisite to perform the legal service properly;" "the experience, reputation, and ability of the attorneys;" and "the nature and length of the professional relationship with the client"); *see also* King Decl., ¶¶ 32, 34–37.

As set forth in the attached declarations of Colony Cove's counsel, the hourly

rates requested for Colony Cove's attorneys and legal support staff reflect their actual rates charged to clients, paid by Colony Cove, and are consistent with the prevailing rates in the community for work performed by attorneys of comparable skill, experience, and reputation.  (Close Decl., ¶¶ 12–16; Casparian Decl., ¶¶ 13–16.)  This conclusion is further supported by the declaration of James E. King, a consultant who specializes in attorneys' fees in California.  As Mr. King explains, the rates charged by OMM and G&R are consistent with the rates for attorneys of comparable skill and experience in the Central District of California.  (*See* King Decl., ¶¶ 52–65.)

In light of this evidence, as well as the complexity of the case—this is among the first regulatory takings cases of which counsel are aware to have proceeded to a jury and one of the few cases involving the constitutional issues under *Penn Central* when a municipality changes its rules promptly after a substantial real estate investment — the attorneys' rates are reasonable.

### B.    The number of hours billed by Colony Cove's attorneys were reasonably expended in this case.

The Court next determines the number of hours reasonably spent on the litigation.  *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000).  As a general matter, a district court "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[A]fter all, he won, and might not have, had he been more of a slacker.").  "Ultimately, a 'reasonable' number of hours equals '[t]he number of hours . . . [which] could reasonably have been billed to a private client.'"  *Gonzalez*, 729 F.3d at 1202.

In this matter, the Court and the parties need not speculate what "could reasonably have been billed to a private client."  *Id.*  Colony Cove *is* a private client and the two law firms *did* bill these hours at these rates to the client, who then *paid* all of those bills.  This fee application does not seek compensation for law firms,

but reimbursement to a client who successfully challenged the City's actions. (King Decl., ¶¶ 25–30.)

As explained in greater detail below, the time spent by Colony Cove's attorneys' in this litigation, which was already billed to Colony Cove and largely paid,[7] was reasonable.

### 1. The hours billed in the state court proceedings related to the Year 1 and 2 Applications are reasonable.

As discussed *supra*, because Colony Cove was forced to first seek remedies in California courts before prosecuting its claim for relief under § 1983, Colony Cove is entitled to recover its reasonable attorneys' fees incurred in those proceedings. Colony Cove's attorneys seek reimbursement for 867.1 hours of attorney work during the state court proceedings. (Casparian Decl., ¶ 27; *id.*, Ex. 6.) The hours worked by Colony Cove's attorneys were reasonable.

Colony Cove was represented in the state court proceedings largely by a single firm, G&R, which had state court expertise directly relevant to the writ proceedings and *Kavanau* adjustment process that the City demanded Colony Cove exhaust.[8] (Casparian Decl., ¶¶ 2–3.) Over the more than four years of litigation that followed the dismissal of Colony Cove's § 1983 claims in the first federal action, G&R primarily depended on only two timekeepers to handle all aspects of the writ actions for Year 1 and Year 2 and the related appeals. (*Id.*, ¶¶ 25–27.) Moreover, G&R exercised reasonable billing discretion in assigning the most junior attorney primary responsibility related to the state court proceedings. (*Id.*) By

---

[7] Only the most recent bill, sent following trial, and less than 30 days outstanding, has not been paid. The bill is current, not past due.

[8] Colony Cove retained OMM to provide strategic oversight and guidance in connection with appellate work performed in the state court proceedings. Colony Cove voluntarily omitted such billing entries from the billing records provided in connection with this motion and is not seeking fees for the work performed by OMM attorneys in the state court proceedings. (Close Decl., ¶ 21.) This represents a voluntary reduction of 66.4 hours and $33,984.30 in fees. These fees were, in fact, billed to and paid by Colony Cove.

utilizing lean staffing and depending primarily on the most junior attorney, G&R ensured that duplicative work was avoided and that the hours billed in connection with the state court proceedings were reasonably expended.

### 2. The hours billed in this litigation are reasonable.

Colony Cove's attorneys and support staff at O'Melveny and G&R billed approximately 4,614.7 hours in this litigation. (Close Decl., Ex. 8; Casparian Decl., Ex. 8.) Colony Cove, however, only seeks reimbursement of fees for 4,118.7 hours of attorney and staff work, which represents a voluntary reduction of over 10%. (Close Decl., Ex. 7; Casparian Decl. Ex. 7.) These hours represent a reasonable amount of attorney and staff time spent in this litigation. Indeed, as described in greater detail below, Colony Cove's attorneys litigated this case very efficiently. (*See also* King Decl., ¶¶ 38–49.)

### a. Pleadings

In order to ensure that work was performed in an efficient and cost-effective manner, Colony Cove's lowest-billing attorneys at the time of filing were given primary responsibility for drafting the pleadings and briefing submitted in connection with pleadings motions. These attorneys, nevertheless, were accomplished practitioners with substantial expertise in the underlying legal and factual issues and federal court practice. (Close Decl., ¶ 28; Casparian Decl., ¶ 28.)

Attorney time expended at the pleadings stage was reasonable, particularly in light of the motion practice undertaken by the parties. The City filed two motions to dismiss Colony Cove's claims (*see* Dkt. Nos. 12 and 56), and Colony Cove was required to litigate a motion for leave to amend, even though the Court held that Colony Cove had easily met the liberal standard under Rule 15. (*See* Dkt. No. 34.)

Notably, much of the motion practice was necessitated by the City's litigation tactics. For example, even though the Court denied the City's motion to dismiss the *Penn Central* claim in its Order on the first motion to dismiss, the City nonetheless moved to dismiss the claim again in its second motion to dismiss. (*See*

Dkt. Nos. 25, 53.)  The City's decision to do so required Colony Cove's attorneys to expend time and resources responding to various iterations of arguments that the Court had previously rejected in its Order on the first motion to dismiss.  Had the City decided not to litigate these issues, Colony Cove's attorneys would not have been required to expend as much time as they did at the pleadings stage.[9]

Notwithstanding the reasonableness of Colony Cove's belief that it had a valid claim for Years 3–5 and a claim under the *Nollan/Dolan* doctrine, Colony Cove has reduced its fee request to exclude entries related to those issues.  It has excluded all entries related to Years 3–5 and the motion for leave to amend and half of the time attributable to the second motion to dismiss, amounting to a reduction of 188.2 hours (or $123,475.00 in fees).  (Close Decl., Ex. 8; Casparian Decl., Ex. 8.)

### b.    Discovery

Similarly, the time spent by Colony Cove's attorneys and support staff related to discovery was reasonable.  Colony Cove's attorneys actively sought to limit the amount of time expended on document discovery.  For example, the parties stipulated that all materials contained in the administrative record would be deemed exchanged; as a result, Colony Cove did not expend hours collecting and exchanging such documents with the City.  Moreover, at no time during the litigation did Colony Cove's attorneys spend time propounding written discovery, such as interrogatories and requests for admission.  Instead, Colony Cove sought to minimize costs by relying on documents contained in the administrative record to guide its strategy throughout this litigation.

Colony Cove's attorneys minimized time spent on document discovery by engaging in a very limited, focused review of the documents produced by the City.  Colony Cove's review was complicated, however, by the form of the City's

---

[9] The City's decisions to litigate every pleading issue possible are relevant to determining the reasonableness of the hours expended by Colony Cove's attorneys in this litigation.

1  production of documents.  The City made three productions to Colony Cove

2  throughout the course of this litigation, totaling 126,444 pages.  (Close Decl., ¶ 37.)

3  The productions were not unitized (i.e., all documents in a production were sent in a

4  single PDF and not separated out) and were not produced in a text-searchable

5  format.  (*Id.*)  In order to permit Colony Cove's attorneys to efficiently review the

6  documents, therefore, Colony Cove utilized a professional staff member and vendor

7  to unitize the production and make all documents text-searchable.  (*Id.*)  Paralegals

8  at G&R were also used to populate the database with documents received from

9  Colony Cove and the City, before and during litigation.  (Casparian Decl., ¶ 12.)

10 After the documents were in a form that permitted attorney review, Colony Cove's

11 two lowest billing attorneys engaged in targeted searches of the production

12 database—not a document-by-document review—to find documents and materials

13 to be used as exhibits at depositions and at trial.  (Close Decl., ¶ 30.)

14      Colony Cove's attorneys were similarly efficient when undertaking

15 deposition discovery.  Colony Cove noticed and took the depositions of four

16 witnesses (Mr. Freschauf and the City's three experts), each being a witness that the

17 City indicated that it would likely call at trial.  Colony Cove utilized less costly

18 attorneys or paralegals to prepare deposition outlines and to identify relevant

19 documents to be introduced as exhibits at the deposition.  (Close Decl., ¶ 28.)

20 Finally, although the City sent at least two attorneys to almost every deposition

21 (*Id.*), Colony Cove only sent a single attorney to attend each deposition.  As can be

22 seen, Colony Cove's attorneys worked in a cost-efficient manner to prepare for and

23 take depositions during the course of discovery and took reasonable and appropriate

24 steps to limit the number of attorney hours during discovery.

25      Colony Cove's efficiency is further demonstrated by the absence of any

26 discovery motions in this litigation.  Colony Cove made forthcoming and

27 reasonable responses to the City's requests, and the City never challenged Colony

28 Cove's productions.  At all times, the parties met and conferred, rather than litigate

15

1   discovery disputes.  Further, the parties never once requested this Court to extend

2   any discovery or other deadline.  Colony Cove was ready go to trial with a focused

3   and efficient case on the date the Court set at the initial scheduling conference.

### c.   Pretrial Activities and Filings

5   The time spent in connection with pretrial activities by Colony Cove's

6   timekeepers was also reasonable.  Following the close of discovery, the City did not

7   file a motion for summary judgment.  It did, however, file four motions *in limine*

8   (*see* Dkt. Nos. 59, 60, 61, 70), and in each of them raised summary judgment-style

9   arguments.  Given the broad implications of these motions—from the preclusion of

10  any evidence dealing with one of three *Penn Central* factors to the exclusion of one

11  of Colony Cove's experts—Colony Cove's attorneys were understandably careful

12  in drafting their oppositions and preparing for oral argument.  Colony Cove,

13  however, primarily utilized lower cost attorneys for these tasks in an attempt to be

14  both efficient and cost-effective.  In the end, the Court found no merit with the

15  City's motions and denied each of them.  (*See* Dkt. Nos. 148, 149, 161, 164.)

16  Colony Cove also filed eight motions *in limine* of its own, with responsibility for

17  the drafting each being assigned to lower-billing attorneys.  (Close Decl., ¶ 28; *see*

18  Dkt. Nos. 63, 64, 65, 66, 67, 68, 69, 71.)  The Court granted three of these motions

19  (*see* Dkt. Nos. 146, 147, 165), and sustained a proper objection to one that it had

20  denied without prejudice.  (Dkt. No. 168; TT at 458:12–14.)  The City ultimately

21  did not call at trial one of its experts who was a subject to a motion *in limine* (Mr.

22  Brabant).  If the City had not taken the position that it would call that witness until

23  the last day of trial, motion practice and trial preparation efforts would have been

24  curtailed.  (Close Decl., ¶ 30; Ex. 9.)

25  Moreover, the various pretrial filings required under the Local Rules and the

26  Court's standing order were complicated by intricacies of this case.  As the Court

27  recognized during the first pretrial conference, there is not an abundance of case

28  law dealing with regulatory takings of a rent-controlled mobilehome park. (First

16

PTC Transcript at 4:23-5:2; *see also* Close Decl., ¶ 29.)  This fact required extra attention to the drafting of jury instructions, as evidenced by the Court's Order at the first pretrial conference that the parties amend and annotate their proposed instructions.  Colony Cove's work, moreover, was duplicated by the City's tactics during pretrial proceedings.  For example, long after the City filed its own request for a jury demand, the City changed course to contend that the claim was only partially triable to a jury.  The City never presented this issue by a timely motion to strike the jury demand.  The City's decision to change course late in the litigation injected an unforeseen issue into this case that Colony Cove's attorneys were required to spend valuable time responding to.  (Close Decl., ¶ 30.)

Similarly, the City's arguments related to Colony Cove's right to a jury trial, the propriety of certain jury instructions, and entitlement to damages and prejudgment interest were constantly evolving and changing from one filing to the next, requiring Colony Cove's attorneys to spend time responding to each new argument raised by the City, rather than on other matters.  Given these facts, the time spent with respect to pretrial tasks was reasonable.

### d.    Trial Preparation and Trial

Finally, the time spent by Colony Cove's timekeepers preparing for trial and attending trial was reasonable.  With respect to trial preparation, Colony Cove heavily relied upon its lower cost attorneys and legal support staff to compile, prepare, and submit the trial exhibits as required under the Local Rules and the Court's order.  (Close Decl., ¶ 28; Casparian Decl., ¶¶ 10, 31.)  Lower cost attorneys were also utilized to prepare examination outlines and materials and to work with Colony Cove's witnesses to prepare them for trial in order to ensure that witness preparation was done efficiently and cost-effectively.  (*Id.*)

At trial, Colony Cove had three attorneys at counsel's table (only two of whom were partners).  The City had three partners at its counsel table and populated the secondary "law clerks' table" with another group of attorneys.

PLAINTIFF'S MEMO. ISO MTN.
FOR ATTYS' FEES & COSTS
CV 14-03242 PSG (PJWx)

1    Colony Cove also had one paralegal present for each day of trial and a trial

2    technician to help ensure the orderly and efficient presentation of evidence to the

3    jury.  In addition to the lawyers at counsel table, Colony Cove also had two

4    associates present at various times throughout trial when they were needed for

5    witness preparation or other tasks.  This staffing was comparable to, or less than,

6    that utilized by the City during the trial and was reasonable.

7    **IV.    THE LODESTAR IS REASONABLE AND NO ADJUSTMENT IS
     WARRANTED**

8

9        "[A]fter the lodestar is calculated, a court may assess 'whether it is necessary

10   to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr v.*

11   *Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975)] factors that are not already

12   subsumed in the initial lodestar calculation.'"  *Vallavista Corp. v. Vera Bradley*

13   *Designs, Inc.*, No. C 10-00120 JW, 2011 WL 7462065, at *4 (N.D. Cal. Apr. 20,

14   2011) (quoting *Morales*, 96 F.3d at 363).  Factors to be considered in reaching the

15   initial lodestar calculation (i.e., determining a reasonable rate and reasonable hours)

16   or in deciding whether to adjust the lodestar include: (1) the time and labor

17   required; (2) the novelty and difficulty of the questions involved; (3) the skill

18   requisite to perform the legal service properly; (4) the preclusion of other

19   employment by the attorney due to acceptance of the case; (5) the customary fee;

20   (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client

21   or the circumstances; (8) the amount involved and the results obtained; (9) the

22   experience, reputation, and ability of the attorneys; (10) the "undesirability" of the

23   case; (11) the nature and length of the professional relationship with the client; and

24   (12) awards in similar cases.  *Doran v. Corte Madera Inn Best Western*, 360 F.

25   Supp. 2d 1057, 1060–61 (N.D. Cal. 2005) (citing *Kerr*, 526 F.2d at 70).  Here, these

26   factors support the reasonableness of Colony Cove's requested rates and hours and

27   the resulting lodestar—at the margin, they would support an upward departure.

28   (*See* King Decl., ¶¶ 31–33.)

PLAINTIFF'S MEMO. ISO MTN.
FOR ATTYS' FEES & COSTS
CV 14-03242 PSG (PJWx)

With respect to the first three factors, it is undisputed that the questions and issues raised in this litigation were novel and difficult.  The City's effort in 2006 to amend its rent control guidelines created a novel and unique fact pattern, requiring application of the Supreme Court's *Penn Central* decision and its progeny.  For example, the City's rent-control rules and process was of central importance.  The complexities of the City's rent-control rules and long history between the parties made discovery and motion practice more labor intensive, and also necessitated the expertise and strategic insight of Mr. Goldstein's long-time attorneys at G&R to spearhead the state proceedings and provide critical support in the federal litigation. (Casparian Decl., ¶¶ 5–6; King Decl., ¶ 32–33.)  *See Kerr*, 526 F.2d at 70 (relevant considerations include "the skill requisite to perform the legal service properly;" "the experience, reputation, and ability of the attorneys;" and "the nature and length of the professional relationship with the client").

The time and labor that Colony Cove's timekeepers were required to expend in this case, *id.*, in addition to being affected by the novel and difficult questions and issues raised throughout this litigation (Close Decl., ¶ 29; Casparian Decl., ¶ 32), were also increased by the City's own actions.  The state-court proceedings, for instance, were prompted by the City's insistence that Colony Cove file writ petitions in state court.  Colony Cove was thus required to litigate for four years in state court.  The Court of Appeal's opinion, moreover, sheds light on the complex nature of the state court writ proceedings, which resulted in appeals to the California Court of Appeal.  In light of the complex state court proceedings which were instituted at the City's insistence, the hours worked by Colony Cove's attorneys in those proceedings are reasonable. *See supra* at page 12; King Decl., ¶ 33.

Further, the City's tactics in this litigation also increased Colony Cove's hours.  For example, beginning early in this case, the City indicated that it intended to call Mr. James Brabant MAI at trial as an expert appraiser.  The City designated

1   Mr. Brabant as an expert witness and included Mr. Brabant on every version of its

2   witness list.  (Dkt. No. 74.)  The City continued to share its intention to call Mr.

3   Brabant with Colony Cove throughout pretrial proceeding and trial.  (Close Decl., ¶

4   30; Ex. 9.)  The City rested without calling Mr. Brabant.  Based on the City's stated

5   intent to rely on Mr. Brabant's reports and to call him as a witness, Colony Cove

6   deposed him, filed a motion *in limine* to preclude him from testifying at trial, and

7   spent substantial resources preparing materials for Mr. Brabant's cross-

8   examination.  (*Id*.)  More generally, as explained in detail *supra* at pages 13–18, the

9   City made decisions at every stage that increased the number of hours that Colony

10  Cove's timekeepers were required to reasonably expend in this litigation.  *Cf.*

11  *Partners for Health & Home, L.P. v. Seung Wee Yang*, 488 B.R. 431, 439 (C.D.

12  Cal. 2012) ("The time and effort undertaken by Plaintiff's counsel in prosecuting

13  the claims was reasonable and necessary in light of the needs of the litigation and

14  the stance taken by, and the tactics of, the Defendants in this action.").

15       Despite the case's complexity and the City's tactics, Colony Cove's attorneys

16  litigated this case efficiently, never requesting a single extension of a deadline from

17  this Court.  Colony Cove had two primary timekeepers in the state court

18  proceedings, with Richard Close providing supervision and expertise in Mr.

19  Goldstein's businesses. (Casparian Decl., ¶¶ 25–27.)  OMM added only two

20  timekeepers when this case was first filed in federal court, adding a third lower cost

21  attorney as document discovery initiated in October 2015, and a fourth in January

22  2016 as deposition and trial preparation heated up.[10]  (Close Decl., ¶¶ 6–7.)  The

23  City's staffing was at all times comparable to that of Colony Cove's, and in fact the

24

_____

25  [10] One of the primary timekeepers in the state court proceedings for a writ of
administrative mandate, as well as the early stages of this litigation, was Kevin M.

26  Yopp.  (Casparian Decl., ¶ 8.)  Mr. Yopp left G&R in early 2015, and was replaced
on the team by Yen N. Hope, a junior partner at G&R with comparable experience

27  and a lower billing rate than Mr. Yopp.  (*Id*., ¶ 7.)  The remaining primary
timekeepers were Thomas W. Casparian of G&R, and Matthew W. Close, Dimitri

28  D. Portnoi, Michelle Leu, and Daniel J. Tully of OMM.  (Close Decl., ¶¶ 4–7.)

                                        PLAINTIFF'S MEMO. ISO MTN.
                                        FOR ATTYS' FEES & COSTS
                                        CV 14-03242 PSG (PJWx)

1   City *always* had more attorneys present at depositions than Colony Cove.

2       Colony Cove's attorneys have submitted detailed, contemporaneous time

3   records for all billable work Colony Cove seeks to recover.  (Close Decl., Ex. 7;

4   Casparian Decl., Exs. 6, 7.)  Colony Cove's lead attorney has reviewed each billing

5   entry and attests that the billing records attached represent time actually spent by

6   Colony Cove's attorneys on this action.  *See Moreno*, 534 F.3d at 1112 ("[The

7   court] should defer to the winning lawyer's professional judgment as to how much

8   time he was required to spend on the case."); *Blackwell v. Foley*, 724 F. Supp. 2d

9   1068, 1081 (N.D. Cal. 2010) ("An attorney's sworn testimony that, in fact, [she]

10  took the time claimed . . . is evidence of considerable weight on the issue of time

11  required.").  These bills were contemporaneously submitted to the client and

12  Colony Cove has been paid in full except for recently issued invoices for trial

13  which are not considered past due.  (Close Decl., ¶ 18; Casparian Decl., ¶ 18.)  This

14  further supports the conclusion that both the hours and the hourly rates billed by

15  Colony Cove's attorneys were reasonable.  *See Stonebrae v. Toll Bros., Inc.*, No. C-

16  08-0221 EMC, 2011 WL 1334444, at *6 (N.D. Cal. Apr. 7, 2011) ("That

17  presumption [that the lodestar is reasonable] is particularly forceful where … the

18  fees were billed to and actually paid by the plaintiff during the course of the

19  litigation, the relationship between counsel and the plaintiff was a valid business

20  relationship, and the plaintiff, as client, exercise[d] business judgment in retaining

21  and paying counsel.") (citations omitted).

22      Moreover, Mr. Close states that he has exercised billing judgment and

23  reduced Colony Cove's requested fee award by nearly 10 percent, despite the fact

24  those bills had been paid in full, other than recently issued invoices.  Close Decl., ¶

25  25; *Moreno*, 534 F.3d at 1112–13 (taking into consideration the fact that counsel

26  had voluntarily reduced her reported hours by nine percent in deciding whether a

27  further reduction was appropriate); *Delalat v. Syndicated Office Sys., Inc.*, No.

28  10cv1273-DMS (NLS), 2014 WL 930162, at *3 (S.D. Cal. Jan. 28, 2014)

PLAINTIFF'S MEMO. ISO MTN.
FOR ATTYS' FEES & COSTS
CV 14-03242 PSG (PJWx)

("additional adjustment [was] unnecessary" in light of counsel's voluntarily reduction in requested hours).  OMM and G&R also exercised judgment over the course of the litigation, never billing Mr. Goldstein for "get up to speed" time when new attorneys were added to the team.  This fact further demonstrates that the hours claimed by Colony Cove's attorneys were reasonably expended in this litigation and that the lodestar is reasonable.  (King. Decl., ¶¶ 50–51.)

In addition to litigating the case efficiently, Colony Cove's attorneys also exercised sound business judgment in utilizing highly qualified, lower-cost attorneys and legal support staff with lower billable rates to handle aspects of the litigation.  In the state court proceedings, fully one half of the billable time was completed by the associate with specialized knowledge of the underlying facts and rent control issues.  (Casparian Decl., Ex. 5.)  In federal litigation, the two attorneys with the lowest billable rates coordinated document discovery and associates were given primary responsibility in drafting all pretrial motions and filings.  (Close Decl., ¶ 28.)  This staffing structure ensures work is completed in a cost-effective manner and supports the reasonableness of the rates and hours billed.  *See, e.g.*, *Hernandez v. Grullense*, No. 12-cv-03257-WHO, 2014 WL 1724356, at *11 (N.D. Cal. Apr. 30, 2014) ("The trade-off for the higher billing rate that greater experience and specialized knowledge justifies is that more senior attorneys are expected to delegate routine tasks to others with lower billing rates.").  Moreover, Colony Cove not only sent one attorney to all depositions, but often sent a non-partner or junior partner to take and defend depositions.  (Close Decl., ¶ 28.)  Colony Cove's attorney with the highest hourly rate handled only one deposition – the City's "star" witness Mr. Freschauf who was repeatedly impeached at trial by his deposition testimony.

As can be seen, the *Kerr* factors support the reasonableness of the hourly rates and billed hours and the resulting lodestar.  No adjustment of the lodestar is warranted, moreover, in light of the result that Colony Cove's attorneys obtained.

PLAINTIFF'S MEMO. ISO MTN.
FOR ATTYS' FEES & COSTS
CV 14-03242 PSG (PJWx)

Colony Cove prevailed on its sole claim at trial and obtained a substantial award of $3.3 million in damages as just compensation for the City's unconstitutional takings, as well as declaratory relief finding that the City had violated the Fifth Amendment of the Constitution.  (Dkt. No. 200.) As the Ninth Circuit has noted, "[r]are, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war."  *Cabrales v. Cnty. of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991).  In light of the excellent results that Colony Cove obtained, Colony Cove's attorneys should receive a fee equivalent to the unadjusted lodestar.  *See Hensley*, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.").

## V.   COLONY COVE IS ENTITLED TO RECOVER NON-TAXABLE COSTS AS PART OF ITS ATTORNEYS' FEES AWARD

"Under § 1988, the prevailing party 'may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client,'"  *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (citation omitted), that have not been taxed by the Clerk of Court.  As with fees, the costs and expenses must be reasonable.  *See Harris v. Marhoefer*, 24 F.3d 16, 20 (9th Cir. 1994) ("[R]easonable expenses … may be proper.").

Here, Colony Cove has incurred a total of $98,818.96 in non-taxable costs in connection with this litigation.  (Close Decl., ¶ 46.)  As set forth in greater detail in the attached declarations and documentation, Colony Cove's requested costs include: (1) local travel expenses; (2) mediation fees; (3) messenger and delivery costs; (4) copying and document-processing costs; (5) research expenses; (6) professional services/consultant fees; and (7) certain discovery-related costs.[11]  (*See*

---

[11] Colony Cove also seeks reimbursement of costs incurred for a daily trial transcript.  These costs were necessary to counsel's preparation for cross-examination and closing statements at trial, and also prove essential to their preparation for the City's contemplated post-judgment motions.  These costs (totaling $10,283.70) were also requested in Colony Cove's application to tax costs.

PLAINTIFF'S MEMO. ISO MTN.
FOR ATTYS' FEES & COSTS
CV 14-03242 PSG (PJWx)

Close Decl., ¶¶ 33–44, Exs. 10–19; Casparian Decl., ¶¶ 35–44, Exs. 9–22.)  It is the prevailing practice to bill these costs directly to the client and separate from an attorney's hourly rates.  (Close Decl. ¶ 34; Casparian Decl., ¶ 36.)  Numerous courts have held that these fees are recoverable to the extent reasonable as non-taxable costs.  *See, e.g.*, *Harris*, 24 F.3d at 19 (allowable non-taxable costs included: "service of summons and complaint, service of trial subpoenas, fee for defense expert deposition, postage, investigator, copying costs, hotel bills, meals, messenger service and employment record reproduction"); *Dowd v. City of Los Angeles*, 28 F. Supp. 3d 1019, 1068 (C.D. Cal. 2014) (allowable non-taxable costs included: parking fees, messenger fees, copying charges, transcript fees, shipping costs, and Westlaw research costs); *Mitchell Engineering v. City and Cnty. of San Francisco*, No. C 08-04022 SI, 2011 WL 1431511, at *8 (N.D. Cal. Apr. 14, 2011) (allowable non-taxable costs included daily trial transcripts); *Safeworks, LLC v. Teupen America, LLC*, No. C 08-12197, 2010 WL 3033711, at *7 (W.D. Wash. July 29, 2010) (allowable non-taxable costs included mediation fees); *Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, No. CV 07-8298 ABC (RZx), 2010 WL 11404472, at *2-3 (C.D. Cal. June 17, 2010) (allowable non-taxable costs included expert witness fees, computerized research costs, photocopying and document processing, messenger and delivery costs, travel expenses, deposition costs, and mediation costs); *Agster v. Maricopa Cnty.*, 486 F. Supp. 2d 1005, 1017–19 (D. Ariz. 2007) (allowable non-taxable costs included meals, videotaping depositions, copying, messenger service, legal research, various travel expenses, phone charges, and PACER expenses).

Moreover, the expenses incurred by Colony Cove were reasonable.  Colony Cove's expenses for parking, mileage, car rental, and airfare were incurred for required travel to and from court hearings and trial, depositions, and settlement

In the event that the Clerk taxes these costs, Colony Cove will withdraw these costs from its motion.

PLAINTIFF'S MEMO. ISO MTN.
FOR ATTYS' FEES & COSTS
CV 14-03242 PSG (PJWx)

1   conferences.  (Close Decl., ¶ 41; Casparian Decl., ¶ 40.)[12]  Moreover, only one

2   attorney traveled to each deposition and attorneys carpooled to court hearings and

3   settlement conferences to minimize expenses.  (Close Decl., ¶ 41.)

4        Colony Cove's mediator fees were also reasonable.  The parties agreed to

5   mediate before retired Magistrate Judge Margaret A. Nagle from JAMS and Judge

6   Nagle's rates (which both parties agreed to) were comparable to rates charged by

7   other mediators of comparable experience, reputation, and expertise.  (*Id.*, ¶ 35.)

8   Moreover, Colony Cove tried in good faith to resolve the case in litigation.  (*Id.*)

9   Although the parties attended two mediation sessions with Judge Nagle, the second

10  was necessitated by the City's failure to bring anyone with settlement authority

11  from the City to the first mediation.   (*Id.*)

12       Finally, Colony Cove's various messenger costs, photocopying and

13  document processing costs, and online research expenses are reasonable.  As

14  Colony Cove's attorneys have attested, each of these expenses is typically charged

15  to the client separately from an attorney's billable time.  (Close Decl., ¶¶ 34, 36–40,

16  42–43; Casparian Decl., ¶¶ 35–44.)  Detailed records are attached listing each

17  expense (Close Decl., Exs. 11–19; Casparian Decl., Exs. 9–22) and each was

18  reviewed by Colony Cove's attorneys to ensure that the expenses were reasonably

19  necessary to their representation of Colony Cove in this litigation

20       Because each of the requested expenses are reasonable and are routinely

21  awarded as non-taxable costs, the Court should award $98,818.96 in costs.

22  **VI.   CONCLUSION**

23       For the forgoing reasons, Colony Cove respectfully requests that the Court

24  grant its request for $2,947,135.50 attorneys' fees and $98,818.96 in costs.

25

26

27  _____
    [12] With respect to the only airfare required for the deposition of Matt Crow, whom
    the City had indicated they intended to call at trial, Colony Cove's attorney traveled
28  economy class.  (Casparian Decl., ¶ 40.)

PLAINTIFF'S MEMO. ISO MTN.
FOR ATTYS' FEES & COSTS
CV 14-03242 PSG (PJWx)

Dated: May 31, 2016

Respectfully submitted,

GILCHRIST & RUTTER
Professional Corporation
                &
O'MELVENY & MYERS LLP

By:   /s/ Matthew W. Close

Matthew W. Close

Attorneys for Plaintiff
Colony Cove Properties, LLC

PLAINTIFF'S MEMO. ISO MTN.
FOR ATTYS' FEES & COSTS
CV 14-03242 PSG (PJWx)