MATTHEW W. CLOSE (Bar No. 188570)
mclose@omm.com
DIMITRI D. PORTNOI (Bar No. 282871)
dportnoi@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071–2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

RICHARD H. CLOSE (Bar No. 50298)
rclose@gilchristrutter.com
THOMAS W. CASPARIAN (Bar No. 169763)
tcasparian@gilchristrutter.com
YEN N. HOPE (Bar No. 233880)
yhope@gilchristrutter.com
GILCHRIST & RUTTER
Professional Corporation
1299 Ocean Avenue, Suite 900
Santa Monica, CA 90401–1000
Telephone: (310) 393-4000
Facsimile: (310) 394-4700

Attorneys for Plaintiff Colony Cove Properties, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COLONY COVE PROPERTIES, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CARSON, a municipal corporation; CITY OF CARSON MOBILEHOME PARK RENTAL REVIEW BOARD, a public administrative body; and DOES 1 to 10, inclusive,<br><br>Defendants. | Case No. CV 14-03242 PSG (PJWx)<br><br>**DECLARATION OF MATTHEW W. CLOSE IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Courtroom: 880<br>Judge: Hon. Philip S. Gutierrez |

I, Matthew W. Close, hereby state and declare as follows:

1. I am an active member in good standing of the State Bar of California and am admitted to practice before this Court. I am a partner of O'Melveny & Myers LLP, counsel of record for Plaintiff Colony Cove Properties, LLC ("Plaintiff"). I have personal knowledge of the facts set forth below, and, if called upon, I could and would testify to the truth of the following.

2. O'Melveny & Myers LLP ("O'Melveny") serves as co-counsel in this litigation along with Gilchrist & Rutter PC ("G&R"). O'Melveny is an international law firm with approximately 700 lawyers in 15 offices worldwide. O'Melveny was founded in 1885 and is the oldest existing major law firm in Los Angeles. O'Melveny is recognized as a leader in handling complex litigation. For example, O'Melveny has been among the top 10 on *The American Lawyer*'s A-List for the past four years, and is one of just two firms to have been named a winner, finalist, or honorable mention recipient in every year of *The American Lawyer*'s Litigation Department of the Year contest. O'Melveny has been recognized as a "California Powerhouse" by *Law360* for the past two years (2014, 2015). O'Melveny is also rated as a "Leading Firm" by *Chambers USA*.

**(A) Primary Litigation Team**

3. To prosecute this case, O'Melveny utilized attorneys who were suited to handle the litigation responsibilities inherent in this case. Including myself, O'Melveny used a total of four (4) attorneys to handle all aspects of this case.

4. I graduated *Order of the Coif* from Boalt Hall School of Law at the University of California, Berkeley in 1996. I passed the California Bar Exam in 1996 and was admitted to the California Bar in 1997. From 1996–1997, I served as a law clerk in this District for the Honorable Mariana R. Pfaelzer. I joined O'Melveny as a litigation attorney immediately after my clerkship with Judge Pfaelzer in 1997. In 2003, I was voted into the partnership. My practice is exclusively litigation and dispute resolution. My diverse litigation practice includes

shareholder and securities matters, commercial litigation, consumer class actions, ERISA cases, and real estate disputes including prior matters involving rent control disputes and mobilehome park regulation (*E.g., El Dorado Palm Springs, Ltd. v. City of Palm Springs*, 118 Cal. Rptr. 2d 15 (2002)).  Clients regularly engage me to handle litigation matters in federal and state courts nationwide.  I am recognized by Chambers USA as a leading securities litigator in California.  I was chosen for a "2012 Distinguished Legal Writing Award" by the Burton Awards for Legal Achievement, in conjunction with the Library of Congress.  I am an officer and board member of the Federal Bar Association's Los Angeles Chapter and have served on the Executive Committee of the Los Angeles County Bar Association's Litigation Committee.  At O'Melveny, I sit on various leadership committees including as the Lead Director of the Policy Committee, which serves as our firm's Board of Directors.  Attached hereto as **Exhibit 1** is a true and correct print-out of my curriculum vitae.

5. Dimitri Portnoi is a counsel in O'Melveny's litigation group, with almost five years of experience at O'Melveny working on substantial and complex litigation matters, including representing both plaintiffs and defendants in constitutional litigation. Mr. Portnoi graduated *magna cum laude* from New York University School of Law in 2008 and clerked for the Honorable Margaret M. Morrow of this Court and the Honorable Judith W. Rogers of the U.S. Court of Appeals for the D.C. Circuit.  Mr. Portnoi has represented Section 1983 plaintiffs multiple times, arguing one Section 1983 case to the Ninth Circuit, and serving on the team that successfully overturned Nevada's same-sex marriage ban.  In connection with the Nevada case, Section 1988 fees were awarded pursuant to a voluntary settlement with the State of Nevada.  In addition to these cases, Mr. Portnoi has litigated dozens of other cases involving complex constitutional and/or real estate claims.  Attached hereto as **Exhibit 2** is a true and correct print-out of Mr. Portnoi's curriculum vitae.

6. Michelle Leu is an associate in O'Melveny's litigation group, with three and a half years of experience litigating complex business disputes in the Central District of California. During the time period for which fees are sought, Ms. Leu had substantial experience in briefing, preparing for depositions, and assisting with other litigation tasks. During law school, Ms. Leu served as an extern for the Honorable George H. Wu of this Court. Ms. Leu graduated from University of California Berkeley School of Law in 2012. Attached hereto as **Exhibit 3** is a true and correct print-out of Ms. Leu's bio.

7. Daniel Tully is an associate in O'Melveny's litigation group. Mr. Tully joined O'Melveny in September 2015 after clerking for the Honorable Margaret M. Morrow of this Court. During his time at O'Melveny, Mr. Tully has worked on complex litigation matters in the Central District of California. During law school, Mr. Tully served as an extern for the Honorable Gary A. Feess of this Court. Mr. Tully graduated from UCLA School of Law in 2014, ranking #6 in the graduating class and was elected to the *Order of the Coif*. Attached hereto as **Exhibit 4** is a true and correct print-out of Mr. Tully's bio.

**(B)  Professional Legal Support Staff**

8. In addition to the four attorney timekeepers, O'Melveny also utilized three members of the firm's professional legal support staff at various stages of the litigation.

9. Kendra Morries is a paralegal in O'Melveny's litigation group and assisted the litigation team with various trial preparation tasks and provided support during trial. Ms. Morries has over twenty years of experience as a litigation paralegal, including ten and a half years working at O'Melveny. Ms. Morries has experience managing all aspects of litigation, including: technology support, case investigation, deposition preparation, discovery issues, document productions, and trial preparation. Mr. Morries has assisted counsel at trials throughout the nation and has assisted with appeals before the U.S. Courts of Appeals and the United

1  States Supreme Court. Ms. Morries obtained an M.P.A. from California State
2  University at Fullerton in 1982.
3       10.    Robert Newcombe is a lead practice manager in O'Melveny's practice
4  support department. Mr. Newcombe primarily assisted the litigation team by
5  preparing and presenting demonstratives and exhibits at trial to assist the jury in
6  following questions and the evidence. Mr. Newcombe's assistance permitted
7  Colony Cove's attorneys to present evidence and demonstratives in an efficient and
8  stream-lined manner to fit the time limitations imposed by the Court. Mr.
9  Newcombe is more efficient and less costly than a junior associate. Mr. Newcombe
10 has twenty years of experience in the legal technology profession, including nine
11 years of providing trial presentation support, covering over twenty trials,
12 arbitrations, and hearings in federal and state courts throughout the country. Mr.
13 Newcombe obtained his B.A. from the University of Chicago in 1976.
14      11.    John Shannon is a senior project analyst in O'Melveny's practice
15 support department. Mr. Shannon primarily assisted the litigation team by
16 managing O'Melveny's e-discovery database used for the production of documents.
17 Mr. Shannon also assisted in inputting the City's productions into O'Melveny's
18 discovery database and oversaw the unitization and conversion into a text-
19 searchable format of the City's document productions. Mr. Shannon has nearly
20 nine years of experience at O'Melveny in managing internally hosted and externally
21 hosted production databases and has assisted litigation teams in several trials and
22 arbitrations throughout the country.
23      **(C)   Hourly Rates**
24      12.    I am familiar with the billing rates charged by O'Melveny attorneys
25 and professional legal support staff in this action. All of the fees for which
26 reimbursement is sought are based on records maintained by O'Melveny in its
27 normal course of business. I am the person at O'Melveny responsible for reviewing
28 and approving all bills sent to Plaintiff in this matter, and I have, in fact, done that

throughout this engagement.

13. My billing rate over the course of this litigation ranged from $870 per hour in 2013 to $975 per hour in 2016. Mr. Portnoi's billing rate ranged from $630 per hour in 2013 to $775 per hour in 2016. Ms. Leu's current billing rate, which was charged for all work that she performed in connection with this litigation, is $655 per hour. Mr. Tully's billing rate was $415 per hour in 2015 and is currently $515 per hour.

14. Ms. Morries' current billing rate, which was charged for all work that she performed in connection with this litigation, is $275 per hour. Mr. Newcombe's billing rate for all work performed in this litigation was $285 per hour. Mr. Shannon's billing rate was $225 per hour in 2015 and is currently $235 per hour.

15. Attached hereto as **Exhibit 5** is a chart summarizing the billing rates for each O'Melveny attorney and professional legal support staff member over the course of this litigation.

16. Based on my experience and knowledge of the Los Angeles legal community, I believe that the billing rates for O'Melveny's attorneys and staff are reasonable and in line with prevailing rates in the community for services by attorneys and professionals of comparable skill, experience, and reputation for complex litigation such as this.

**(D) Hours Billed and Lodestar**

17. I am familiar with the customary time entry and billing practices employed by O'Melveny. Attached hereto as **Exhibit 6** is a report showing a list of the timekeepers, their billing rates, and the respective hours and amounts billed by each timekeeper for which Colony Cove now seeks reimbursement.

18. Colony Cove seeks reimbursement of fees totaling $1,649,777.00, representing 2,562.6 hours of billable work performed by O'Melveny timekeepers. Attached hereto as **Exhibit 7** is a copy of a report listing the itemized billing entries

for O'Melveny attorneys and staff for fees submitted to Colony Cove for which Colony Cove now seeks reimbursement. As of the date of this declaration, every one of these bills has been paid in full by Colony Cove with the exception of the bill that I sent in May 2016, covering April time and the trial. This one outstanding bill is current. I have no reason at all to believe that it will not be paid in full just like every other invoice. These records were generated in accordance with the customary time entry and billing practices employed by O'Melveny, with which I am familiar.

19. I reviewed all of O'Melveny's bills during the course of the litigation as I prepared bills that were sent to Colony Cove. In connection with my contemporaneous review of billing entries, I voluntarily wrote-off attorney and staff fees of $67,548.50 (representing 134.9 hours) as part of my normal effort to ensure that our fees and billings are reasonable and appropriate.

20. My colleagues at O'Melveny and I reviewed each of the bills for purposes of this motion. In the exercise of my billing judgment, I have decided to not seek reimbursement of certain fees billed to the client by O'Melveny attorneys and staff because of the standards applicable to the fee motion and in an effort to limit the number of issues that are disputed on this motion. For example, I have excluded all time for four timekeepers who billed fewer than 25 hours in connection with this litigation. This work included all of the time billed by counsel Brittany Rogers, a 2010 graduate of Harvard Law School (*cum laude*) and former law clerk for the Honorable Michael W. Fitzgerald of this Court. Brittany provided assistance during trial in researching and briefing various evidentiary issues that arose. It also included paralegal services provided in connection with preparing and filing Colony Cove's various briefs at the pleadings stage. This reduction amounted to 44.9 hours, or $22,224.50 in fees.

21. I have also excluded a total of $33,984.30 in fees (66.4 hours) billed by O'Melveny attorneys in connection with Colony Cove's proceedings in the

California state courts seeking writs of administrative mandamus challenging the City's decisions with respect to Colony Cove's rent-increase applications filed in September 2007 and September 2008. The work completed by counsel in connection with the state court writ proceedings was a necessary prerequisite to bringing Colony Cove's § 1983 as-applied takings claim in this action based on the Defendants' successful assertion that Plaintiff had to comply with the exhaustion requirement under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194–95, 197 (1985). *See Colony Cove Properties, LLC v. City of Carson*, 640 F.3d 948, 958 (9th Cir. 2011). Nonetheless, I have voluntarily reduced Colony Cove's fee request and decided not to seek reimbursement of these fees. This work included all the time entries billed by former O'Melveny associate Tamar Braz (née Malinek), a 2008 graduate of Boalt Hall School of Law (*Order of the Coif*) and former law clerk for the Honorable Dorothy W. Nelson on the U.S. Court of Appeals for the Ninth Circuit. Tamar and I provided strategic advice during the state-court litigation, while G&R was lead counsel. Although all these fees were in fact paid by Colony Cove, my client and I are now exercising our discretion not to seek reimbursement for those fees.

22. As part of this motion, I reduced billable entries totaling $62,817.00 in fees, representing 85.4 hours in attorney and staff time, for work attributable to attorney time spent on various unsuccessful legal theories in this litigation. For example, I have voluntarily excluded fees incurred in connection with Colony Cove's claims relating to the City's decisions with respect to Colony Cove's rent-increase applications filed in 2009, 2010, and 2011, which were dismissed by the Court in its Order on the City's first motion to dismiss. (*See* Dkt. No. 25.) I have also excluded attorney time billed in furtherance of Colony Cove's takings claim under *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987) and *Dolan v. City of Tigard*, 512 U.S. 374 (1994), because it too was dismissed by the Court in its Order on the City's second motion to dismiss. (*See* Dkt. No. 57.) This included

excluding time billed by O'Melveny's attorneys in connection with Colony Cove's successful motion to amend the complaint and reducing by half the attorney and staff time spent on tasks relating to the City's motion to dismiss the first amended complaint, which sought dismissal of Colony Cove's *Nollan* and *Dolan* claim, as well as Colony Cove's *Penn Central* claim. These reductions are indicated on the billing records appearing in Exhibit 7 with an asterisk (*).

23. In total, O'Melveny timekeepers billed 2,894.2 hours, representing $1,836,351.30 in fees, in connection with this litigation since 2011. This time represents time billed in connection with this litigation, as well as all time spent on the state court proceedings referenced in paragraph 21 above. As described above, however, my client and I have voluntarily reduced Colony Cove's fees request by 331.6 hours, or $186,574.30 in fees. This represents a voluntary reduction of 11.5% of O'Melveny's hours and a reduction of over 10% of O'Melveny's fees. The excluded time entries have not been submitted and any reductions in billable time have been indicated on the billing records appearing in Exhibit 7 with an asterisk (*). Attached hereto as **Exhibit 8** is a chart summarizing the various reductions and write-offs of time billed by O'Melveny timekeepers for which my client and I do not seek reimbursement.

24. O'Melveny attorneys and professional legal support staff also billed 665.2 hours (or $308,331.50 in fees) in the first federal litigation. *See Colony Cove Properties, LLC v. City of Carson, et al.*, No. CV 08-07065 PA (JWJx). This time was reasonably expended in furtherance of Colony Cove's § 1983 claim and only dismissed at the City's insistence that Colony Cove first seek a writ of administrative mandamus in California state courts. Although all these fees were in fact paid by Colony Cove, my client and I are now exercising our discretion not to seek reimbursement for those fees. When added to the total time billed as referenced in the preceding paragraph, and considered with the reductions noted there, this represents an overall voluntary reduction of 28% of O'Melveny's hours

1  ((331.6+665.2)/(2,894.2+665.2)) and of 23% of O'Melveny's fees
2  (($186,574.30+$308,331.50) /($1,836,351.30+$308,331.50)).

3  25. I have reviewed the Declaration of Thomas W. Casparian of G&R
4  being submitted concurrently with my declaration and the exhibits attached thereto.
5  Based on the information in his declaration and in this declaration, in total counsel
6  for Colony Cove at O'Melveny and G&R billed 5,515.8 hours, representing
7  $3,235,837.30 in fees, in connection with this litigation, and necessary, related
8  proceedings in the California state courts. Colony Cove is only seeking
9  reimbursement of fees for 4,985.8 hours of billable work, or $2,947,135.50 in fees.
10 This represents a voluntary reduction of 530 hours (nearly 10%) and $288,701.80 in
11 fees (9%) made by Colony Cove's attorneys and Colony Cove. This represents the
12 proper "lodestar" for the fee award in my judgment.

**(E) Reasonableness of Lodestar**

14 26. Based on my experience and knowledge of the Los Angeles legal
15 community, it is my opinion that the time and fees billed by O'Melveny and G&R
16 timekeepers in this litigation were both reasonable and appropriate and were within
17 the standard in the community for a case of this type and complexity.

18 27. As stated earlier, Colony Cove's fee request has been voluntarily
19 reduced by nearly 10%—a total of 530 hours or $288,701.80 in fees. This
20 represents exclusion of all timekeepers who billed fewer than 25 hours, exclusion of
21 all hours billed by O'Melveny attorneys in connection with the state court writ
22 proceedings that were required by the City in order for Colony Cove to bring its §
23 1983 claim in this action, and the exclusion of time attributable to several legal
24 theories that were dismissed by the Court.

25 28. It was my practice throughout this litigation to utilize the most
26 efficient and suitably-skilled timekeeper with the lowest hourly rate practicable for
27 all tasks. With respect to the pleadings, Kevin Yopp, Esq. then a junior partner at
28 G&R (and formerly an associate at O'Melveny who I worked with and trained) and

the lowest billing attorney on the litigation team at that time, was given responsibility to draft the complaint and first amended complaint. Mr. Yopp was also given primary responsibility in connection with Colony Cove's briefing on the City's two motions to dismiss. For discovery, Colony Cove utilized one of the lowest billing attorneys, Yen Hope, Esq. at G&R, to draft and prepare responses to the City's numerous interrogatories and requests for production, and directed Mr. Tully with overseeing the City's production database and document review efforts. Additionally, the associates on the case, Ms. Leu and Mr. Tully, prepared deposition outlines for O'Melveny attorneys who conducted depositions and gathered all materials that were used during depositions. With respect to the depositions themselves, only one attorney for Colony Cove attended each deposition. To my knowledge, the City regularly sent two attorneys to local depositions and, according to the transcript, the City sent 3 attorneys to the deposition of James F. Goldstein. Ms. Hope and Mr. Portnoi, a junior partner and a counsel, conducted half of the depositions. Ms. Leu and Mr. Tully were also primarily responsible for drafting Colony Cove's briefing on various pretrial motions and, with the assistance of Ms. Morries, prepared all required pretrial filings. Finally, Ms. Leu and Mr. Tully prepared all documents and materials used by trial attorneys for direct and cross examinations at trial.

29. This case involved substantial and unique questions of law and complex constitutional issues requiring attorneys with specialized skill and experience. To the best of my knowledge, this is one of a very small number of regulatory takings cases to have proceeded to a jury and one of the few cases involving the constitutional issues under regulatory takings jurisprudence when a municipality changes its rules promptly after a substantial real estate investment.

30. This litigation was rendered more complex and time-consuming by the intricacies of the case and by the City's own litigation tactics. To be clear, I am not attacking the skill or professionalism of opposing counsel; in fact, it is my opinion

1 that the conduct of this litigation met or exceeded the Civility and Professionalism
2 Guidelines established by the Central District. Nevertheless, even reasonable
3 litigation tactics and judgments have consequences for the time and effort that
4 opposing counsel must invest in the litigation. The City moved to dismiss Colony
5 Cove's as-applied takings claim under *Penn Central* twice in this litigation, raising
6 arguments similar to those previously rejected by the Court. The City also made its
7 document productions in an unsearchable format, necessitating the use of Mr.
8 Shannon and a third-party vendor to unitize and make the productions text-
9 searchable. By making the production text-searchable, Mr. Tully and Ms. Leu
10 could efficiently review the production by conducting targeted searches rather than
11 a much more expense document-by-document review. Finally, weeks before trial,
12 the City raised a number of challenges to Colony Cove's right to a jury trial, despite
13 its own demand for a jury trial, as well as to Colony Cove's entitlement to damages
14 and prejudgment interest and various jury instructions. These challenges, made in
15 my judgment late in the litigation and in most cases without a viable counter-
16 proposal, necessitated substantial attorney time to address. Moreover, the City did
17 not call an expert witness that it had represented throughout the entire course of
18 litigation that it intended to call at trial, Mr. James Brabant. On May 1, after the
19 first two days of trial, lead trial counsel for the City, Mr. Onstot, emailed me and
20 informed me that the City still intended to call Mr. Brabant at trial. In response, we
21 continued to prepare for his examination and cross-examination. To my surprise,
22 however, the City rested its case without calling Mr. Brabant. This was trial
23 counsel's right, but my team spent substantial time preparing to depose, deposing,
24 moving in limine, reviewing reports and files produced by, and preparing to
25 examine Mr. Brabant. Attached hereto as **Exhibit 9** is a true and correct copy of
26 the email sent to me by counsel for the City on May 1, 2016.
27     31. As stated earlier, it is also my belief that the hourly rates charged in
28 connection with this litigation are reasonable and in line with prevailing rates in the

community for services by attorneys and professionals of comparable skill, experience, and reputation for complex litigation.

32. As a result, based on my experience and knowledge of the Los Angeles legal community, I believe that the fees for which Colony Cove seeks reimbursement (i.e., the "lodestar") is reasonable.

**(F) Costs**

33. Colony Cove also incurred and was billed for expenses that are recoverable as part of an attorneys' fee award because they are not part of O'Melveny's overhead and are normal and customary expenses incurred in litigation that are charged to clients. Attached hereto as **Exhibit 10** is a chart summarizing the costs sought to be reimbursed by Colony Cove. In total, Colony Cove seeks reimbursement of $71,476.88 in costs.

34. I am familiar with the billing practices of O'Melveny with respect to expenses in this action. Based on my experience, billing a client separately for the expenses sought to be reimbursed by Colony Cove and summarized in Exhibit 10 is a common practice. These expenses are not customarily subsumed in attorney rates and each expense was billed to Colony Cove separate from attorney billable charges, all as provided for in O'Melveny's standard terms of engagement.

35. O'Melveny attorneys (myself and Mr. Portnoi) attended two in-person mediation sessions. The parties jointly agreed to retain retired Magistrate Judge Margaret A. Nagle of JAMS as the mediator in this case and by doing so jointly agreed that Judge Nagle's fees were appropriate and reasonable. At the first mediation session, the City did not send any individual with settlement authority and Mr. Goldstein was excused early from that session by the mediator. At the mediator's request, Mr. Goldstein and counsel agreed to participate in a second full-day mediation session before Judge Nagle, which was attended by appropriate decision-makers from the City. Attached hereto as **Exhibit 11** are true and correct copies of invoices and payments made to JAMS for the parties' mediation sessions

held with Judge Nagle.

36.  In connection with this litigation, I took the deposition of Mr. Kenneth Freschauf on January 15, 2016. As is my common practice, I arranged to have Mr. Freschauf's deposition video recorded. Attached hereto as **Exhibit 12** is a true and correct copy of an invoice received for the videorecording of Mr. Freschauf's deposition.

37.  O'Melveny incurred costs necessary to make the documents produced by the City in discovery usable by Colony Cove's attorneys. The City made three productions to Colony Cove throughout the course of this litigation, totaling 126,444 pages. The productions were not unitized (i.e., all documents in a production were sent in a single PDF and not separated out) and were not produced in a text-readable format. In order to permit Colony Cove's attorneys to efficiently review the documents, I directed Mr. Shannon to solicit bids from vendors and to retain the lowest-cost reliable vendor to unitize the production and make all documents text-searchable. O'Melveny also incurred costs in hosting an internal discovery database for the City's productions. Attached hereto as **Exhibit 13** are true and correct copies of invoices and receipts for the third party vendor's work in unitizing and converting the documents into a text searchable format, as well as copies of invoices for data hosting fees for the internal discovery database. These costs were billed separately to Colony Cove and have been paid in full.

38.  O'Melveny also incurred various costs for professional services provided by trial consultants and internal professional services. O'Melveny retained, at my direction, a third-party consultant to assist in preparing demonstrative exhibits to be used at trial. I also retained a jury consultant to provide strategic advice prior to and during *voir dire*. In addition to these consultants, O'Melveny timekeepers incurred various costs relating to text-editing and preparing various documents for filing with the court. Attached hereto as **Exhibit 14** are true and correct copies of the trial consultants' invoices and an

itemization of text-editing costs incurred by O'Melveny timekeepers. These costs were billed separately to Colony Cove and have been paid in full.

39. O'Melveny incurred costs in obtaining daily trial transcripts and hearing transcripts for the pretrial conferences held in this case. The transcripts were necessary for Colony Cove's attorneys to effectively prepare for trial and will be necessary for counsel to be able to oppose the City's contemplated renewed motion for judgment as a matter of law. Attached hereto as **Exhibit 15** are true and correct copies of invoices reflecting the transcript costs incurred by O'Melveny and paid by Colony Cove.

40. O'Melveny attorneys also incurred certain online research costs in connection with this litigation, for which Colony Cove has been billed and paid. It is O'Melveny's standard practice to bill clients at a discounted rate for online research services such as Westlaw and LexisNexis. In my experience, it is the prevailing practice in the Los Angeles legal community to bill online research costs separate from an attorney's hourly rate. Attached hereto as **Exhibit 16** are true and correct copies of invoices and receipts for all online research costs billed by O'Melveny for which Colony Cove seeks reimbursement.

41. O'Melveny timekeepers incurred limited travel expenses in connection with their representation of Colony Cove in this litigation. These expenses include parking, mileage, and taxicab expenses that were incurred for required travel to and from court hearings and trial, depositions, and settlement conferences. Based on my experience, I believe that the travel costs that were billed are appropriate and reasonable and well within the standard in this market for this litigation. As stated, O'Melveny only sent one attorney to each deposition and, to the extent possible, O'Melveny attorneys and staff carpooled to court hearings, trial, and settlement conferences to minimize expenses. Attached hereto as **Exhibit 17** are true and correct copies of invoices and receipts for all travel expenses incurred by O'Melveny timekeepers in connection with this litigation.

42. O'Melveny also incurred various messenger and delivery costs during this litigation. These expenses include, for example, the cost of messenger service for delivery of mandatory chambers copies and the delivery of courtesy copies to opposing counsel. Attached hereto as **Exhibit 18** are true and correct copies of invoices and receipts for all messenger and delivery costs billed by O'Melveny for which Colony Cove seeks reimbursement.

43. O'Melveny incurred various photocopying and document processing costs in connection with its representation of Colony Cove in this litigation. All photocopying and document processing costs are billed by O'Melveny's in-house vendor and it is O'Melveny's standard practice, and the prevailing practice in this community, to bill these costs separately from an attorney's hourly rate. Attached hereto as **Exhibit 19** are true and correct copies of invoices and receipts for all photocopying and document processing costs billed by O'Melveny for which Colony Cove seeks reimbursement.

44. In total, Colony Cove seeks reimbursement of $71,476.88 in costs incurred by O'Melveny in connection with this litigation.

45. O'Melveny also incurred other costs that were billed to Colony Cove separately from an attorney's hourly rate and were paid in full. These costs total $8,314.49 and include certain charges related to online research, PACER access, messenger service and delivery, meals, and in-house text-editing. In my experience, it is the prevailing practice in the Los Angeles legal community to bill these types of expenses separately from an attorney's hourly rate. However, in an exercise of billing judgment, I wrote-off these costs and have decided to exclude these costs from those for which Colony Cove seeks reimbursement. This represents a reduction of 10.4% of costs incurred by O'Melveny in connection with this litigation.

46. I have reviewed the Declaration of Thomas W. Casparian of G&R being submitted concurrently with my declaration and the exhibits attached thereto.

Based on the information in his declaration and this declaration, in total counsel for Colony Cove at O'Melveny and Gilchrist incurred $107,133.45 in costs, in connection with this litigation and necessary, related proceedings in the California state courts. Colony Cove is only seeking reimbursement of $98,818.96 in costs, representing a voluntary reduction of $8,314.49, or 7.8%, of costs incurred in this litigation.

**(G) Conclusion**

47. It is my opinion that the attorneys' fees and costs requested by Colony Cove are reasonable under the standards set forth by the United States Court of Appeals for the Ninth Circuit and this Court.

48. The attorneys' fees and costs requested by Colony Cove do not include attorney time expended in connection with this fee application or with post-judgment motions. Colony Cove will file a supplemental motion for attorneys' fees after all post-judgment motions are decided.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 31, 2016, in New York, New York.

                                          /s/ Matthew W. Close
                                          Matthew W. Close