1              UNITED STATES DISTRICT COURT

2         CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3          HONORABLE PHILIP S. GUTIERREZ, U.S. DISTRICT JUDGE

4

5    COLONY COVE PROPERTIES, LLC, a        )
     Delaware limited liability company,   )
6                                          )
                    PLAINTIFF,             )    CASE NO.
7                                          )
             vs.                           )    CV 14-03242-PSG
8                                          )
     CITY OF CARSON, a municipal           )
9    corporation; CITY OF CARSON           )
     MOBILEHOME PARK RENTAL REVIEW BOARD,  )    PAGES (670 to 712)
10   a public administrative body; and     )
     DOES 1 to 10, inclusive,              )    VOLUME 8
11                                         )
                    DEFENDANTS.            )
12   _____)

13

14

15

16                     REPORTER'S TRANSCRIPT OF
                            TRIAL DAY 4
17                    WEDNESDAY, MAY 4, 2016
                           1:02 P.M.
18                    LOS ANGELES, CALIFORNIA

19

20

21

22

23   _____

24            MIRANDA ALGORRI, CSR 12743, CRR
            FEDERAL OFFICIAL COURT REPORTER
25          312 NORTH SPRING STREET, ROOM 435
             LOS ANGELES, CALIFORNIA 90012
                MIRANDAALGORRI@GMAIL.COM

                    UNITED STATES DISTRICT COURT

1                     **APPEARANCES OF COUNSEL:**

2

3   **FOR THE PLAINTIFF:**

4

      O'MELVENY & MYERS, LLP
5       BY:  DIMITRI D. PORTNOI
      BY:  MATTHEW W. CLOSE
6       400 South Hope Street
      18th Floor
7       Los Angeles, California 90071

8

      GILCHRIST & RUTTER, APC
9       BY:  THOMAS W. CASPARIAN
      Wilshire Palisades Building
10      1299 Ocean Avenue
      Suite 900
11      Santa Monica, California 90401

12

13   **FOR THE DEFENDANTS:**

14

      ALESHIRE & WYNDER, LLP
15      BY:  JEFFREY MICHAEL MALAWY
      BY:  JUNE SUSAN AILIN
16      BY:  STEPHEN R. ONSTOT
      18881 Von Karman Avenue
17      Suite 1700
      Irvine, California 92612
18

19

20

21

22

23

24

25

1                     **I N D E X**

2

3             **WEDNESDAY, MAY 4, 2016; VOLUME 8**

4

5             **Chronological Index of Witnesses**

6

7

    Witnesses:_____   Page____

8

9

10

11                    (None)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

<u>**EXHIBITS**</u>

**WEDNESDAY, MAY 4, 2016; VOLUME 8**

| Exhibit | For ID | In EVD |
|---------|--------|--------|

(None)

**UNITED STATES DISTRICT COURT**

1              **LOS ANGELES, CALIFORNIA; WEDNESDAY, MAY 4, 2016**

2                              **1:02 P.M.**

3                                **---**

4

5          (The following proceedings were held in

6          open court in the presence of the jury:)

7                    THE COURT:  Defense's argument.

8                    MR. ONSTOT:  Carson didn't follow the rules.

9    Really?  Rule No. 1, no entitlement to gross profit maintenance

10   in consideration of debt service.

11                   Rule No. 2, protecting residents from excessive

12   rent increases and allowing the park owner a fair return

13   although not necessarily profit.

14                   Rule No. 3, no particular formula need be used.

15                   Rule No. 4, use of 11 factors and other relevant

16   factors like debt service to be used in calculating a rent

17   increase.

18                   Another rule, debt service okay if the purchase

19   price is reasonable in light of allowed rents.  Another rule,

20   the ordinance prevails over the guidelines.

21                   Those were the rules that were in effect at the

22   time Mr. Goldstein bought the park, and they were in effect at

23   the time of his first rent increase application and his second.

24                   Now, for the next few minutes I will go over the

25   evidence, and I will fire several torpedoes that completely

sink plaintiff's case.  And I know it's after lunch; so I will
try to get to these quickly and concisely.

Your task in this case is to determine if there
was a taking in violation of the 5th Amendment to the
Constitution.  And there is one thing, and this is torpedo
No. 1.  Did the City take Mr. Goldstein's property?  The City
cannot take something that Mr. Goldstein is not entitled to in
the first place.  Rule No. 1, no entitlement to consideration
of debt service in the gross profit maintenance formula.

Let me give you some examples.  You have a house
on Main Street.  The City wants to widen Main Street, and they
come to you and say, "We're going to take the front half of
your front yard."  They have to pay you for it.  That's a
taking.  They take your property.  Just compensation for that
swath of land.

Another example.  Let's say you own a 1976 Volvo
and the government passes a law saying you can't own a
1976 Volvo.  Perhaps another taking.  Why?  Because, even
though the Government doesn't come and repossess your Volvo or
take it from you, you still can't use it.  So you have no use
of that car.

Now, compare that to this factual situation,
another hypothetical.  Let's say you decide to buy a bar or to
open a bar.  The eight-juror bar, octo bar.  And you go, and
you find tables and chairs and alcohol and all the stuff to

1    open a bar, and you pick a location that's across the street

2    from an elementary school, and you sign a five-year lease to

3    open your bar.  You spend a lot of money.  And then you go to

4    the city to get the permit to operate that bar, and they say,

5    no, I'm sorry, but we have a zoning law that says no bars

6    across the street from elementary schools.

7                   Now, you spent a lot of money, and you ask the

8    city, well, I spent all this money.  I want to be reimbursed

9    for it, justly compensated.  I spent money trying to get the

10   bar.  City says, no, it's not a taking.  Why?  Because you

11   weren't entitled to open that bar across the street from the

12   elementary school in the first place and you probably should

13   have done your due diligence in figuring out that before you

14   spent all the money.

15                  Now, that's our situation here because

16   Mr. Goldstein took on this huge mortgage, and he was never

17   entitled under the law to pass the cost of that mortgage to his

18   residents.  Now, the law requires that any taking be so severe

19   that it's the functional equivalent of directly appropriating

20   plaintiff's private property and ousting it from him.  We don't

21   have that in this case.  Mr. Goldstein is there today.

22   Colony Cove is in operation.

23                  Now, how does this relate to the factors that you

24   heard in the jury instructions?  One, as Mr. Close pointed out

25   and is in the instructions, is investment-backed expectation.

**UNITED STATES DISTRICT COURT**

1    Should Mr. Goldstein have known that he would not be entitled

2    to pass through his mortgage debt?

3              Now, Mr. Goldstein was on the witness stand, and

4    you heard him.  And there are basically three reasons why he

5    said that he thought he was entitled to pass on the debt

6    service.  One is that he said, "I know the ordinance very

7    well," and he knows that there are 12 factors to consider and

8    no one factor is determinative and there are other relevant

9    factors that may be considered as well.  He would testify he's

10   very familiar with the guidelines and all of that including the

11   gross profit maintenance analysis as well as other formulas.

12             Now, he also knew from the ordinance itself that

13   the homeowners are to be protected from excessive rent

14   increases.  He knew that going in.  He knew that going in.

15   And, yes, the ordinance does allow for fair return to the park

16   owner.  But what we've heard so far from the plaintiff is

17   everything about Mr. Goldstein.  We haven't heard anything

18   regarding the concerns of the residents except they should be

19   protected from excessive rents, and they're not parties to this

20   suit.  But Mr. Goldstein knew going in that this had to be

21   taken into account.

22             Now, another thing that Mr. Goldstein knew going

23   in, because he testified he was very familiar with the law

24   here, is that the guidelines are intended to assist the board

25   in implementing the ordinance, and the purpose of the ordinance

Case 2:14-cv-03242-PSG-PJW   Document 241   Filed 09/28/16   Page 9 of 53   Page ID #:7483

678

1    and the provision of the ordinances are controlling.  Nobody

2    disputes that the ordinance was in place at the time

3    Mr. Goldstein bought the park or at the time that Mr. Goldstein

4    filed for his rent applications.

5            Mr. Goldstein was also very familiar with this

6    law, namely, that the ordinance does not mandate the use of any

7    formula or guarantee increases equal to the increase in the

8    consumer price index or any percentage of that.

9            In addition, Mr. Goldstein was familiar with the

10   law at the time regarding debt service.  Debt service incurred

11   after adoption of the ordinance to purchase a park may be an

12   allowable operating expense if the purchase price paid was

13   reasonable in light of the rents allowed, past tense, under the

14   ordinance and involved prudent and customary finance practices.

15           Mr. Goldstein also knew that in the guidelines it

16   states that the reason for these general rules is that passing

17   on increased debt service due to purchase and prices above

18   those that can be justified by the income earned by the park

19   under rent control would defeat the purpose of rent control.

20           Mr. Goldstein knew of all of these things.  But

21   perhaps, most importantly, for purposes of this case -- there

22   we go.  The last line regarding gross profit maintenance

23   analysis.  The analysis is not intended to operate -- excuse

24   me -- to create any entitlement to any particular rent

25   increase.  That was before Mr. Goldstein at the time he

1   purchased the park.  That was before Mr. Goldstein at the time

2   he applied for the first rent application.  And that was before

3   Mr. Goldstein by the time he did the second rent application.

4   That's rule No. 1, no entitlement.  If he's not entitled to

5   have his debt service passed on, there cannot be a taking of

6   that.

7          Next, Carson Harbor Village, Mr. Goldstein's

8   other park.  Mr. Goldstein said, well, I relied on my past

9   experiences with Carson Harbor Village.  He testified that he

10  filed a lawsuit that he lost.  He sued for $21 million.  He

11  didn't prevail on that.  He also said he applied for rent

12  increases and got some including part of his mortgage payment.

13  And we went over those in the resolutions.  Hard to read; so I

14  won't.

15         But in 1997 he applied for about $163 rent

16  increase, and he was granted $58.70.  Then, again, in 2001 he

17  applied for another rent increase of $222, and he got $14.29.

18  And the third, in 2003 he applied for yet another rent increase

19  of about $109, and he was granted $19.22.  Mr. Goldstein says,

20  well, the City gave me a portion of my debt service.  We don't

21  dispute that.  The City is not opposed to giving some debt

22  service back to the park owner, but that's only reasonable if

23  it's done in light of avoiding excessive rent increases to the

24  residents.  So we're not opposed.  The City is not opposed to

25  pass on debt service as long as it doesn't result in excessive

1    rent increases.

2              Then he talks about his reliance on

3    *Carson Gardens*.  You've heard a lot about that case.

4    *Carson Gardens* was case specific.  It involved not a word about

5    Colony Cove.  The plaintiffs hang their hat on it.

6    Mr. Goldstein said he's intimately familiar with the case and

7    he relied upon it when he bought the park.

8              Now, Mr. Close and the other plaintiff's counsel

9    talked about it excessively and what it said, cherry picking

10   pieces of that appellate court opinion trying to convince you

11   that the MNOI formula was not acceptable.  But if you recall,

12   which seems like a long time ago, back in my opening statement,

13   I said pay attention to Exhibit 18, the letter that

14   Mr. Goldstein got from his lawyers, an important letter

15   advising him on the wisdom of acquiring Colony Cove.  And

16   you'll have that in the jury room, Exhibit 18, along with the

17   *Carson Gardens* opinion.

18             Here's an excerpt from page 4 of that letter.  It

19   talks about *Carson Gardens*.  And in the middle of the page, it

20   says, "Although the trial court ordered the board to reconsider

21   its decision and give due consideration to the park's actual

22   reasonable operating cost --" here's the torpedo "-- the Court

23   of Appeal did not review that decision because of the

24   procedural posture of that particular case and indicated that,

25   if it were to review that prior order, it might have determined

```
 1   that the board was free to have used the 50 percent of CPI
 2   formula or some other formula that would have excluded debt
 3   service.  Even without considering whether it agreed with the
 4   trial court's initial order, the Court of Appeal made clear,
 5   made clear, that the board was under no obligation to pass
 6   through the entire amount of debt service costs."
 7             That particular case is very instructive to any
 8   potential buyer of a mobile home park in Carson regarding the
 9   lengths the City will go to minimize or eliminate rent
10   increases.
11             That is Mr. Goldstein's lawyer telling him what
12   Carson Gardens says.  The date of that, January 19, 2006.
13   Mr. Goldstein in January of 2006 was advised by his lawyer,
14   Mr. Close, the exact opposite of what plaintiff's lawyer are
15   telling you in this trial.
16             Other reasons why Mr. Goldstein's idea of
17   reasonable expectations are, in fact, unreasonable, one is he
18   didn't do his homework.  He didn't look into the
19   Paradise Trailer Park case or the Park Villa case, both from
20   2004, or the Park Granada case regarding MNOI and the board's
21   prior decisions not passing on debt service to the park's
22   residents -- excuse me -- the land owner's mortgage payments to
23   the residents.  Had he done so, that would have been
24   reasonable, as we heard from Mr. Doug Danny, that the buyer
25   needs to do their homework to find out what they're getting
```

```
 1    into.
 2              Now, speaking of Mr. Danny, he was from
 3    Grossman Properties.  He was the broker.  And he testified
 4    somewhat guardedly, but he was candid because, remember, his
 5    bread and butter comes from listing mobile home parks for the
 6    owners.  And knowing that Mr. Goldstein has a handful of them,
 7    he's very careful in what he said.  But by and large he was
 8    truthful, and he did testify as to the offering memorandum.
 9              One of the things that was in there that
10    Mr. Goldstein knew before he got the Colony Cove Park was the
11    whole chapter of potential rent increases.  And when you look
12    at this, it tells him that the two prior increases were $14.50
13    and $4.46.  So a light bulb should have went off in
14    Mr. Goldstein's head saying I might not be able to get a huge
15    increase in my rent.
16              Then it goes on to say it is by no means assured
17    that the park will obtain an increased rent in the future.  The
18    last sentence says, "The actual increase upon a detailed
19    analysis of the property's operation rents and other Carson
20    parks and changes to the CPI, all of which are subject to the
21    often unpredictable decision rendered by the Mobilehome Park
22    Rental Review Board."  So now Mr. Goldstein has this offering
23    memorandum warning him.  The light bulb is going off in his
24    head that we shouldn't expect a rent increase or at least a
25    large one.
```

**UNITED STATES DISTRICT COURT**

1            Now I'd like to go back to Exhibit 18, another

2   paragraph out of the letter that his own lawyer wrote.  Page 2

3   of that lawyer, first line.  And I didn't underline the end of

4   it.  It came with the letter.

5            It says, "In fact, the City makes clear in every

6   opportunity that there is no entitlement to any rent increase

7   under the City Rent Control Law."  Mr. Goldstein's lawyer,

8   prior to the time Mr. Goldstein bought the property, told him

9   you're not entitled to a rent increase.

10            Then the last paragraph of that letter, which I

11   alluded to in my opening statement, the letter concludes --

12   from Mr. Goldstein's lawyer -- "In our opinion, a purchaser

13   should not rely on collecting any increase rents from those

14   collected currently."

15            And Mr. Goldstein explained this letter in the

16   only possible way he could, but it still doesn't make sense.

17   He said that he got together with his lawyer to come up with a

18   bunch of facts, six pages of facts and arguments that he didn't

19   believe in and send it over to the seller to try to drive down

20   the price.

21            And the reason that doesn't make any sense,

22   ladies and gentlemen, is because the owners of Colony Cove

23   owned Colony Cove since the 1970's.  They knew what Carson was

24   like.  They knew what their park was like.  So why would

25   somebody like Mr. Goldstein need to drive down the price by

1    sending them a letter?  It's preaching to the choir.

2              And then Mr. Goldstein on the witness stand

3    before you folks said, well, it wasn't addressed to

4    Grossman Properties because there's some legal -- legal

5    requirement that lawyers can only send letters to their

6    clients.  There was no authority for that presented after

7    Mr. Goldstein's statement.  And think about it if that makes

8    sense to you.

9              Now, is that honest in dealing with the purchase

10   of a property?  And the reason that it's not is because, if

11   Mr. Goldstein can conspire with his lawyer to come up with a

12   bunch of falsities that they're going to send to another party

13   in an effort to drive down the price of a mobile home park,

14   what is stopping him from conspiring with the lawyers here

15   sitting on a witness stand and telling you more falsities in an

16   effort to drive up damages?  Nothing.

17             Another reason why Mr. Goldstein's expectations

18   are unreasonable that he would get his mortgage payments passed

19   through is Dr. Baar's testimony.  He testified that it was

20   unreasonable.  And again, the jury instruction that you have

21   will say it has to be a reasonable expectation, not just what

22   pops up in anybody's head.  Not a subjective reason but an

23   objective reason.

24             Dr. Baar is a well-known expert in rent control

25   methodologies, well-respected, and unopposed.  He was the only

1    person who testified as to the reasonableness of

2    Mr. Goldstein's expectation.  That expert opinion that the

3    plaintiffs did not refute.

4              Now what did Dr. Baar say?  Well, he relied on

5    prior case law showing that Mr. Goldstein was unreasonable.

6    And then he explained three reasons why it doesn't make sense

7    to pass on the debt service to the residents.

8              The first one is that it defeats the purpose of

9    rent control, and that's exactly the situation here -- that we

10   have here.  Now, you've seen this slide before.  It was from

11   plaintiff.  These are the offering price and the various offers

12   that were made on the Colony Cove property.  And we all know,

13   that Mr. Goldstein paid $23 million roughly for purchasing it.

14   We also know that he took out a loan that had two parts, one

15   for six-and-a-quarter percent, one for six-and-an-eighth

16   percent.

17             And the second one here is from Mr. Weisswasser,

18   and here's the terms of his loan.  Note that Mr. Weisswasser

19   would have carried back a 4 percent interest financing.

20   4 percent.  And if you look at the exhibit that's in evidence

21   for the Cal Am Properties that paid 21.5, there's no evidence

22   there that there was any debt to be undertaken by Cal Am.

23             So why is this important?  Because it shows

24   exactly -- illustrates Dr. Baar's point.  That is, if you let

25   mortgage payments drive the increase in rental charges, it

```
 1    defeats the purpose of rent control because here Mr. Goldstein
 2    bought the property with the highest debt service, highest
 3    interest rate.  If Mr. Weisswasser acquired the property, his
 4    debt service, his mortgage payments would be lower.  And
 5    Cal Am, if they had no debt, then Cal Am would not have to pass
 6    any or request to pass any mortgage payments on to the
 7    residents.
 8                So that's the one reason why Dr. Baar explained
 9    it doesn't make sense to require that debt service be always
10    passed on to the residents.
11                Then Dr. Baar also said it's nonsensical.  It
12    makes no logical sense.  Again, I'll use the plaintiff's
13    exhibit here.  This is the comparison of Colony Cove to
14    Carson Harbor Village.  Here we have two parks.  Carson Harbor
15    Village is a family park across the street from the senior park
16    of Colony Cove.  And if Colony Cove, which there was testimony
17    at the time Mr. Goldstein bought the property, quality-wise was
18    a bit inferior to Carson Harbor Village.
19                If the City allowed Mr. Goldstein to pass on his
20    mortgage cost to the residents of Colony Cove as requested,
21    their rent would have been $1,032 a month.  Here the
22    rent-controlled park of higher quality at the time,
23    Carson Harbor Village, was $543 a month.  So it's nonsensical
24    because passing on the debt service as in this case, if it
25    happened, would mean that the seniors of Colony Cove would have
```

1    to pay over twice as much rent per month for those little

2    spaces for their mobile homes as the residents in the park

3    across the street which was of better quality.

4              Lastly, Dr. Baar said that the mortgage can be

5    manipulated.  It very well could be that someone could come in

6    with a loan of a high interest rate, say, six-and-a-quarter or

7    eight-and-a-quarter percent, buy a mobile home park, apply for

8    the rent increase, get the rent increase under GPM, if it was

9    allowed, and then pay off the loan.  Now they have a sky-high

10   rent, no debt service.  Inequitable.  And that high rent is

11   going to stay the same because it would only change, remember,

12   if the park owner goes in for an application for a rent

13   adjustment.

14             So for those three reasons Dr. Baar said it makes

15   sense not to pass on debt service and Mr. Goldstein's

16   expectations were not reasonable.

17             Lastly, remember Mr. Hansen who was sitting on

18   the stand yesterday?  Remember I asked him about the $600,000

19   letter of credit Mr. Goldstein was required to post in order to

20   get the loan?  Remember that that letter of credit was for debt

21   service reserve?  G.E. Capital, the lender, knew that there was

22   a problem.  Mr. Hansen said it was unusual for a lender to

23   require a letter of credit to cover debt service.  So another

24   light bulb should have went on in Mr. Goldstein's head because

25   the lender required extra precautions to protect its interest

**UNITED STATES DISTRICT COURT**

1    knowing that the mortgage debt was very, very large.

2              There's been a lot of testimony with regards to

3    the net operating income at the time of purchase, about

4    $1.1 million, and the debt service of 1.2.  Mr. Hansen, he

5    testified he recommended Mr. Goldstein take that loan to start

6    out immediately underwater.  Starting out with a large loan is

7    bad enough.  Then asking that the cost of that loan, which was

8    interest only for a while, to be passed on to the residents can

9    only result in that excessive rent increase.

10             So did the City interfere with Mr. Goldstein's

11   unreasonable investment backed expectations?  Yes.  Did it

12   interfere with Mr. Goldstein's reasonable investment backed

13   expectations?  No, because he did not have any.

14             Now, the next subject or factor that you're asked

15   to consider is economic impact.  What is the economic impact to

16   Mr. Goldstein?  Remember Ms. Noelle Stephens?  I think she was

17   the second witness that testified.  I went through with

18   Ms. Stephens Mr. Goldstein's acquisition to the property in her

19   budget, and I went through almost month-by-month showing that,

20   from the time Mr. Goldstein bought Colony Cove, he was

21   operating a loss.  All the way up to the time he filed his

22   first rent application he was operating a loss.

23             Mr. Goldstein testified yesterday that he

24   anticipated operating a loss to begin with.  You're going to

25   receive an instruction that says they don't get to recover for

1    any damages that they caused themselves.  They have to prove by

2    a preponderance of the evidence that the City caused those

3    damages.

4              Here's the instruction.  It's No. 18.  "To

5    establish that the defendants deprived plaintiff of its

6    particular rights under the Constitution, plaintiff must prove

7    by a preponderance of the evidence that the acts were so

8    closely related to the deprivation of plaintiff's rights as to

9    be the moving force causing the injury."  How can that be when

10   the City didn't do anything until Mr. Goldstein had suffered,

11   according to him, 18 months of losses?  The City did not cause

12   that.  The City didn't do anything until the first application.

13             Secondly, if you recall, there are things other

14   than just rent that affect a park's value.  Mr. Goldstein

15   testified that, as the rents increase, the value of the park

16   increases.  Do we know how much?  No.  But we know that all the

17   City did was grant two rent increases.  So if the park

18   increases in value after each of those, that's not damage to

19   Mr. Goldstein caused by the City.  It's a benefit.  It's a

20   positive economic impact.

21             Secondly, Mr. Goldstein has and still has the

22   ability to develop at least 16 extra spaces that would not be

23   subject to rent control.  That's a positive economic impact.

24   He gets those developed, and he collects a lot more money in

25   terms of rent.  Not controlled by the City.

 1              Thirdly, lots of testimony with regards to

 2    conversion of the mobile home park to condominiums.  That's a

 3    positive economic impact.  And we know that that was

 4    Mr. Goldstein's expectation because I showed Mr. Hansen

 5    yesterday the loan application that mentions conversion to

 6    condominiums.  So plaintiff is only focused on the rental

 7    issue, not the whole value of the park because they can't.

 8    Once they start talking about conversion to condominiums and

 9    selling those lots, values increase.  Dollars go up.  Same

10    thing with the spaces.  The plaintiff has to stick to the

11    rents.

12              Now, with regard to damages, you've heard from

13    Mr. Salomon and Mr. Ellis, but here's another torpedo.

14    Instruction No. 16, Mr. Close brought this out.  In the middle

15    of the page -- and these are instructions that you promised to

16    follow.  It was given by the judge.  Quote, "Your damages

17    award, therefore, should be based on what the evidence shows to

18    be the difference over the period of the taking between the

19    property's fair market value without the regulatory restriction

20    and its fair market value with the restriction; that is, the

21    loss in the nature of income-producing potential for the months

22    that the regulatory taking was in effect," closed quote.

23              There's no evidence of that.  You have one

24    appraisal by Mr. Detling that shows the value of the park at

25    $23 million.  There is no appraisal showing how much the

1     property is worth at the end of the first year when

2     Mr. Goldstein applied for his first rent increase application.

3     There's no appraisal showing the value of that park after the

4     second rent application.

5            Plus, as to the loss in the nature of

6     income-producing potential, there wasn't any testimony on

7     income-producing potential. What you have is Mr. Salomon who

8     basically said, well, there's rents we didn't get. And he

9     calculated them from, I think, December, 2008, all the way up

10    to 2016, I believe. There was nothing about income increase

11    potential or lost potential for rental income.

12           And the time period is for the two years that are

13    at issue here, the time period that the regulatory action was

14    in effect. Yes. Mr. Salomon went all the way from 2008 to

15    2016.

16           So scour the evidence. Discuss it amongst

17    yourselves. But this instruction says to look at the evidence

18    and what the standard is for damages. You have no evidence of

19    market value at the time Mr. Goldstein bought the property, and

20    the difference between that and years one and year two and the

21    damage calculations, although they sound great, they don't

22    address the law. Smoke and mirrors is what Mr. Salomon

23    produced.

24           There's one thing that Mr. Salomon and Mr. Ellis

25    agree on, however, and that is, if there is no entitlement or

1    if you find that Mr. Goldstein is not entitled to have his

2    mortgage payments passed through, the damages are zero.  So

3    either way, you cannot find damages if you follow the evidence

4    and follow the law.

5                Third, the nature of the governmental action.

6    We're not talking about taking a piece of property from

7    somebody's front yard.  We're not talking about taking a

8    1976 Volvo.  We're not even talking about a bar.  What we're

9    talking about is rent control.  And the nature of the

10   government action is clearly stated in the purpose and

11   principles of the guidelines.

12               Namely, to protect the residents from excessive

13   rents and to allow park owners to earn a joint and reasonable

14   or fair return.  And the reason for it is -- and it came out

15   before -- that mobile home owners' investments are made in

16   purchasing the dwellings they live in.  The mobile homes

17   basically are immobile because they're hard to move, and you

18   heard testimony as to why.  A lot of park owners don't want

19   older mobile homes.  The number of parks are shrinking, that

20   type of thing.

21               If you look at 1001-3, it explains very clearly

22   why moving a mobile home is not generally a feasible

23   alternative.  They're stuck, have very few options unlike, if

24   you live in an apartment, you can pick up and move.  So a

25   homeowner who can no longer afford to rent, must sell the home

**UNITED STATES DISTRICT COURT**

1    quickly to avoid being evicted.  However, excessive rents make

2    a home more difficult to sell and often require the homeowner

3    to sell the home at a price which is insufficient to allow

4    recovery of the investment made in the home.

5              So that's the balancing act that the City has to

6    do.  The interest of the residents knowing that they're stuck,

7    the interest of the mobile home park owner.  That is the

8    government action that we're talking about here.

9              Now, Mr. Close made a big deal of the politics

10   going on with the mayor and all that stuff, but it was very

11   clearly stated and it was undisputed that none of this stuff

12   occurred from 2006 to 2009 which is the time period we're

13   talking about here.  Zero evidence of that.  There's no

14   evidence that anybody on the mobile home board was crooked or

15   appointed or told or controlled, whatever you want to call it.

16   It's smoke and mirrors.  Had there of been a problem in those

17   years, you can bet that plaintiff would have found it out and

18   would have put it before you just like they tried to trot out

19   *Carson Gardens* and arguing in their favor, but they didn't.

20             Next point on character of government action.  I

21   started this in my opening statement.  Now you have seen the

22   evidence.  Here is that first year rent application for $414.

23   That's what the rent was about the time Mr. Goldstein acquired

24   the property.  First rent increase he wanted another 618 to

25   bring it up to 1,032.  That's 159 percent increase.  That is

excessive in light of everything that we have seen.  Everything

we've seen showed that the rents were under $100, yet still

provided fair returns.

So in year one, you take that 1,032, and you

subtract what Mr. Goldstein said was enough to cover his debt

service which is $200 minus the 414 which was the original rent

that covered supposedly the operating expenses.  That leaves

$414 per space per month.  Where does that go?  Into

Mr. Goldstein's pocket.  40 percent of the rent he wanted to

charge would go directly into his pocket all in one fowl swoop.

Mr. Goldstein never asked that any rent increase

be phased in.  It's not the City's job to run his cash flow for

his business.  If he wanted to protect the residents, as he

stated he does, why don't you ask to have them phased in?  If

he wanted 618, ask to have them phased in $200 a month for

three years or something else that can make it more affordable.

But 159 dollar {sic} rent increase in one fowl swoop the board

determined was excessive.

Did they give him a rent increase?  Yes, they

did.  A more reasonable 8.8 percent which exceeded the CPI

which I pointed out during the evidence phase of the testimony.

The consumer price index was 6.67 at the time.  So

Mr. Goldstein would have made more than inflation.

Year two, same thing.  Mr. Goldstein requested a

$342 rent increase which is 82 percent.  He got 5.5 percent,

1    and the CPI was 4.79 percent.  Again, the Rent Board didn't

2    pass on the debt service but gave him a rent increase that was

3    greater than inflation.

4            Now, another word about MNOI.  As Dr. Baar

5    explained, that's how the park owners make their money because

6    MNOI stands for maintenance of net operating income, and

7    maintenance means you keep it the same and you increase it for

8    inflation.

9            So what happens is that the operating income, the

10   rents go up meaning the revenue goes up.  And if the expense

11   goes up, then the amount of money the park owner is allowed to

12   make goes up as well.  And over time that necessarily reduces

13   or can be used to reduce any debt service and, therefore,

14   increase the return to the investor, the park owner.  And

15   Mr. Goldstein made very, very clear he's in it for the long

16   hall.  Long-term investment.

17           I'm almost done.  Instruction No. 15, this is the

18   one that explains reasonable expectations.  At the bottom --

19   and Mr. Close pointed this out -- "You may consider the actual

20   investment backed expectations of Mr. Goldstein but only to the

21   extent they are reasonable under the circumstances.  In other

22   words, you must judge the reasonableness of plaintiff's

23   expectations from the perspective of a reasonable investor in

24   plaintiff's position at the time of investment and not with a

25   20/20 vision of hindsight."

1          As Dr. Baar pointed out, Mr. Goldstein's

2   subjective, what's in his mind, expectations of passing through

3   that very large mortgage payment was objectively not reasonable

4   for the reasons he stated and that I pointed out.  That's what

5   makes the factor of the City's interference with any of those

6   expectations immaterial because they were unreasonable.

7          Lastly, Court's Instruction No. 12.  This is the

8   standard of proof, preponderance of the evidence.  "The

9   plaintiffs have the burden of proof.  They have to convince you

10  that the weight of the evidence weighs more in their favor than

11  in the defendant's favor on those three factors as you balance

12  them and combine them."  So if it's 50/50, if it's a toss up,

13  the law says you find for the defense.  If the evidence favors

14  the defense on those three factors, you find for the defense.

15  Only if the evidence, when you balance and weigh it, exceeds

16  50 percent, tips the scale a little bit more in plaintiff's

17  favor than defendants' can you find for the plaintiff.

18          I want to make a couple points on what Mr. Close

19  said in regards to his opening.  The reason I do this is

20  because I don't get to speak to you again.  Mr. Close, as the

21  plaintiff's counsel, has the burden of proof.  So the rules say

22  that he gets to go last.  And he can respond to what I can say,

23  but I won't have an opportunity to respond to his rebuttal.

24          I pointed out that there has been no change of

25  rules.  I showed you the rules.  You've seen the rules.  The

1    rules say that the residents need to be protected and that the

2    park owner gets a fair return.  Doesn't say profit.  It says a

3    fair return.  2006 to 2009 time frame the board considered 8.8

4    and 5.5 percent rent increases to be reasonable for those

5    times.

6            After you balance the evidence, weigh it and

7    discuss it, we trust that you will find in favor of the

8    defendants and render a verdict in favor of the defendants.

9            And on behalf of the City of Carson and the

10   Rent Control Board and the counsel that represent them, thank

11   you very much for your time and attention in this matter.

12           THE COURT:  Ladies and gentlemen, we're going to

13   take a short five, ten-minute break, and then we'll hear the

14   final argument, and then the case will be submitted to you for

15   your deliberations.

16           Until then, remember not to discuss the case

17   among yourselves or with anyone else.  Do not express or form

18   any opinions.  We'll see you in ten minutes.

19       (A recess was taken at 1:53 p.m.)

20           THE COURT:  Plaintiff's rebuttal.

21           MR. CLOSE:  Ladies and gentlemen, thank you,

22   again, for your time and attention.

23           Now, I heard a lot of things in that closing

24   argument, but I didn't see much evidence.  And I may have

25   misheard a few things, and you all took notes.  And if I get it

**UNITED STATES DISTRICT COURT**

1    wrong, I apologize in advance.

2                But there was no evidence to support most of the

3    things I heard during that closing statement, and the reason

4    why is the City of Carson did not bring a single employee to

5    this trial to testify.  Not a single council member.  Certainly

6    not their mayor.  They didn't bring a single Rent Control Board

7    member.  They didn't bring anyone to sit in that witness box

8    and look and tell us why they changed the rules when they

9    passed that ordinance, that resolution on October 31, 2006.

10   They didn't bring a single person here, elected official,

11   senior officer to tell you and tell us why they did what they

12   did in 2006.  They didn't bring anybody here who was involved

13   in any of the decisions that are at issue in the litigation.

14   They didn't bring anybody.

15               They brought a retired consultant, Mr. Freschauf,

16   and a professor who they use regularly in these cases who I

17   talked about and said he's a believer in MNOI.  He's got an

18   argument.  He's got a theory.  But he's not the decision maker.

19   That's who they brought to testify at this case.  That's how --

20   that's what they thought of this proceeding.  Not the mayor,

21   not a council member, not a Rent Board member, not a city

22   manager.  They didn't even come and testify.

23               So when the City's attorney stands up here and

24   tells you things like we're not opposed to giving some debt

25   service to park owners, where is the evidence of that?  Well,

1    I'll tell you what.  They weren't opposed to it consistently

2    from early 1990's through 2006.  That's why the *Carson Gardens*

3    trial court ruled that their practices and their guidelines

4    required them to do that.

5            Now, Mr. Onstot is correct.  When the City lost

6    in that trial court right down the street here, they didn't

7    bother to take it up on appeal the proper way.  They didn't

8    want to do that.  Nope.  They went back and huddled and decided

9    here's what we'll do.  We'll change the rules.  I cannot

10   believe that once, not once -- excuse me -- not once did

11   counsel address the October 31 resolution signed by the mayor,

12   signed by the city attorney, voted for by every council member

13   to change the guidelines.  And if you remember, that resolution

14   stands in stark contrast to the language of the courts in

15   *Carson Gardens*.

16           Can I have slide 15, please.

17           Not once was the bottom resolution, 1003,

18   mentioned.  Not once were we ever treated to testimony from

19   anyone at Carson as to how they could possibly reconcile these

20   two statements.  In fact, when we did have Mr. Freschauf on the

21   stand, what did he tell us?  Let me remind you of the evidence.

22           Slide 6, please.

23           The first thing he told us was, again, talking

24   about gross profit maintenance at the very bottom, almost every

25   hearing since the early 90's.  And then what did he tell us

1   about the *Carson Gardens* case under oath -- I'm sorry.  17.

2               Mr. Freschauf's testimony:

3               *Question:  That's the same MNOI analysis*

4           *the courts in Carson Gardens litigation found*

5           *to be improper; isn't that correct?*

6               Answer:  They found it to be improper in

7           that particular case, yes.

8               For some reason they think that doesn't matter,

9   that that didn't happen, but it did.  We knew about it.  We

10  relied on it.  Mr. Goldstein told you that.

11              Something else I heard a lot of.  We had no

12  entitlement.  We had no entitlement.  I encourage you to read

13  those jury instructions closely.  The first person that finds

14  the word "entitlement," I look forward to hearing about it.

15  It's not what the law is.  Reasonable investment-backed

16  expectation.  And you know what, Mr. Freschauf -- slide 26 --

17  testified under oath:

18              *Question:  Let's talk about operating*

19          *expenses.  Should -- would it be reasonable*

20          *for a park owner to believe in 2006 that*

21          *rent-setting process in Carson would allow*

22          *that park owner to charge rents sufficient*

23          *to cover the park owner's operating expenses?*

24              *Answer:  If by operating expenses*

25          *we're including debt service, yes.*

1              What could be better evidence of what a

2   reasonable investment-backed expectation would be in 2006 than

3   the testimony of their number one witness acknowledge that it

4   would be reasonable for a park owner to believe this?

5              The standard in those instructions is not that we

6   were entitled to it.  It was guaranteed.  That's not what

7   you're going to find in Instruction 15.

8              Really tried to prop up Dr. Baar as the expert on

9   investment-backed expectation.  Not an economist.  You heard

10  his testimony.  Never invested in real estate.  Not his field

11  of practice.  He's a true believer in MNOI.  He's a true

12  believer, as they acknowledge, that the debt service just

13  doesn't belong.  But that is in no way connected to what a

14  reasonable, reasonable person making an investment in 2006

15  would have believed about the rules in Carson.  After all, the

16  published court decision described the litigation as having

17  found the board was required to consider it.  And in fact,

18  opening statement -- closing statement began with "We're not

19  opposed to it."  I heard it.

20             Again, there was a lot of lawyer argument that

21  somehow the other offers were somehow really different than

22  what we were doing, than what Mr. Goldstein did including on

23  Exhibit 40 that went on the screen really quickly, that

24  Weisswasser offer.  I actually thought the City's attorney --

25  pull up 40 for me, please -- was trying to suggest that there

1    was a loan out there at 4 percent.  In fact, this is the

2    Weisswasser offer -- he is saying I will buy this park for

3    $24 million if you, the seller, give me a loan at 4 percent.

4    There was no offer by the seller here.  This was the buyer

5    saying give me a below-market interest loan, and I'll put up a

6    lot of money and consider buying the park.

7                 There is no evidence that anyone was looking to

8    make loans in 2006 at 4 percent.  And trust me, if there was

9    evidence out there, if there was evidence that somehow these

10   loans could be had at 4 percent, these lawyers would have found

11   it.  Nothing was stopping them.

12                And then I heard them just say the other offer

13   involved no debt.  Zero evidence of that.

14                There no evidence that there was any manipulation

15   going on here.  It's just an assertion, a boogeyman.  And I

16   heard about how they did grant us two small rent increases as

17   if that somehow makes changing the rules and totally

18   disregarding the debt service okay.  I mean, it's, if someone

19   came in, drained a bank account, then put $20 back and said I

20   gave you $20.  I put it back.  That's not the way it works, and

21   you know it's not the way it works because they went and

22   changed the rules.  We wouldn't even be here if they hadn't

23   changed the rules.

24                And they didn't even talk about Exhibit 1003.

25   They didn't even bring a witness in other than Mr. Freschauf

1    who was very uncomfortable when I read to him the recitation --

2    slide 21, please --

3              *Question:  I'd like to focus on the*

4         *second whereas clause and ask -- it says*

5         *there highlighted, "Whereas the city council*

6         *hereby finds that it's appropriate to*

7         *amend the current guidelines that govern*

8         *the administration of the city's mobile*

9         *home space Rent Control Ordinance."*

10             *Do you see that, Mr. Freschauf?*

11             *Yes.  Answer.*

12             *Question:  Isn't it true that the*

13        *guidelines govern the administration*

14        *of the Rent Control Ordinance?*

15             *Answer:  I guess it would depend on*

16        *your definition of "govern."*

17             That's what they brought in to explain that

18   change.  If they really believed all that stuff about our

19   rules, let us do whatever we want, would they have ever passed

20   this resolution on Halloween?  It's almost like their position

21   is we have these rules but then we have a part of the rules

22   that say we can do whatever we want and disregard the rest of

23   the rules.  That's not okay.  That's what the Constitution

24   protects us from.  The City can't go and say here are the rules

25   and, by the way, in the fine print, we can change the rules

**UNITED STATES DISTRICT COURT**

1    whenever we want without regard to how much you've invested,

2    how much you put in.

3              We heard about the bar analogy.  Here's an

4    analogy I find useful.  Imagine Main Street.  You want to open

5    a store.  You go, and you purchase a store from somebody.  You

6    buy the inventory.  You do all the interior designing.  You get

7    it ready to open.  And then the city decides it's not so sure

8    it likes your store, and they change the rules that used to say

9    stores on that side of Main Street could be open seven days a

10   week from 9:00 to 7:00.  And then they say down on that corner

11   they're only allowed to be open from Monday noon to 2:00.

12             They didn't take your store.  They didn't rip it

13   up off the ground.  They didn't walk out of there with the cash

14   register and all the inventory.  But make no mistake.  They

15   have destroyed your entire investment and done substantial

16   harm.  And if you didn't have a deep pocket or someone who

17   could weather the storm, it would be gone.  That's not okay.

18             On the damages point, again, there was a lot of

19   argument but no evidence, and I want to show you a little

20   testimony on this.  But he said there was no evidence that we

21   met what the requirements were of jury Instruction 16, that is,

22   "The loss and the nature of the income-producing potential for

23   the months that the regulatory taking was in effect."

24             I'd like to bring up testimony, please, from the

25   City's own expert Mr. Ellis.  This is from the trial yesterday.

1           *Question:  And is it your opinion*
2      *that Mr. Salomon developed an opinion*
3      *that relates to a relationship of the*
4      *value for Colony Cove?*
5           Mr. Ellis, *Answer:  Yes.*
6           *Question:  Mr. Salomon concludes that*
7      *the monthly rental value for the park*
8      *should be 65,213 greater than the prior*
9      *rental value; is that correct?*
10          *Answer:  Yes.*
11          *And your report does not disagree*
12     *with that number; correct?*
13          *Answer:  I did not do an analysis*
14     *nor form an opinion on that regarding*
15     *that number.*
16          *Question:  Mr. Salomon's report*
17     *expresses an opinion of a rental value*
18     *at a given time; correct?*
19          *Answer:  Yes.*
20          *Question:  In other words,*
21     *Mr. Salomon's estimate of damages*
22     *reflects the loss of the park's ability*
23     *to produce income through rents*
24     *beginning when the City's rent decision*
25     *became effective on December 1st, 2008,*

1          *and ending with some point after trial;*

2          *correct?*

3                    *Answer:  Yes.*

4                    Those are the words of their own expert.  We did

5     bring on that evidence.  That is what Mr. Salomon's report

6     does.  And the fact, again, that there is not a, quote,

7     "entitlement" is not the standard.

8                    We all saw Mr. Freschauf and heard his testimony

9     about Mayor Dear's conduct and the politicalization of the rent

10    control proceedings in Carson, and it was awful convenient how

11    yesterday morning after a long weekend he came in and said none

12    of that happened during 2006, 2008.  It was all later.  Listen,

13    they changed the guidelines.  They changed the rules.  And

14    they're not even being honest about it.

15                   I heard some other things that I think I need to

16    respond to here.  I actually thought I heard defense counsel

17    suggest that we should have said, instead of putting in that

18    application $600, we should have asked for a phased-in rent

19    increase of something reasonable like $200 over three years.

20    Maybe I misheard.

21                   But you heard Mr. Freschauf's testimony -- slide

22    18, please -- that, when it came to the rent hearing,

23    Mr. Goldstein and his representatives stood before the board --

24                    *Question:  Isn't it true that at*

25          *the hearing on my client's rent*

1          *application, the Year 1 Application,*

2          *Mr. Goldstein's representatives announced*

3          *to the board that Mr. Goldstein would*

4          *accept a rent increase of $200 which was*

5          *the amount the staff had calculated as*

6          *being necessary to provide a sufficient*

7          *revenue and income to pay the debt service?*

8                    *Answer:  Yes.*

9          I have to tell you, when I heard -- when all of a

10   sudden then we heard testimony about phased-in rent increases

11   involving -- and then it was like the staff never does it.

12   It's happened a few times.  You heard Mr. Goldstein yesterday

13   never heard anything about it.  I really think that we would

14   have heard someone from the City actually talk about that if

15   that was the practice or if that was something available.

16          Ultimately this comes back to the question is it

17   fair for the City to say here are our rules, here are the way

18   we're going to apply them, and then say but we always have the

19   right to decide in a certain case that we don't want to follow

20   the rules?  And by the way, they tried that in *Carson Gardens,*

21   and the trial court said no.  And they now want to say that

22   didn't happen, that, because it didn't go to the

23   Court of Appeal, it doesn't matter.

24          These trial courts do matter, and it does matter

25   what happened there, and they have to own it and live up to it.

**UNITED STATES DISTRICT COURT**

1   And it's just not fair for them to say we get to pick and

2   choose who gets the triple digit rent increase when they

3   inherit their park and who they don't really like so much or

4   think they can get away with changing the rules and giving a

5   small rent increase.

6              And, remember, the rents were always going to be

7   well below market.  Mr. Goldstein says it.  The $200 that he

8   was asking for at the hearing was well below the market rents.

9              It's about the evidence.  It's about the

10  witnesses.  It's about the documents.  They didn't bring in a

11  single witness to justify what went on when they changed the

12  rules on Halloween night.  They didn't bring in a single

13  witness to talk about why the Rent Board did what they did.

14  They had two consultants come in, and they dragged up that

15  broker from San Diego and then tried to just imply that he was

16  somehow under our thumb just because, when they asked him

17  "Would it be reasonable based on your offering memorandum to

18  believe the debt service could be used to increase rents?" and

19  he said, basically, "I think so," all of a sudden they're

20  claiming that he was twisting his testimony.

21             And then they brought in the loan broker -- I'm

22  not sure why still -- to show him an application to suggest

23  Mr. Goldstein was trying to convert.  Mr. Goldstein sat on the

24  witness stand and told you, "I wanted to keep my options open.

25  I haven't converted, but I have the right to do so, and I

1   wanted that option."

2              None of these are reasons to deliver a verdict

3   anything other than for the plaintiff.  The conduct in 2006,

4   -7, and -8 by the City was egregious, and it did greatly

5   interfere with the plaintiff's investment-backed expectation.

6   That is the evidence, and they're not going to find anything in

7   those jury instructions that talk about ripping our land away

8   from us, throwing us off the property, marching in with police

9   officers, and taking over the property.  You're not going to

10  find anything in there about entitlements.  It's all in

11  Instruction 15, and we've clearly met the standards through the

12  evidence, not the lawyer arguing.

13              Thank you again for your time, your attention,

14  your patience, and again, we ask you to return a verdict for

15  the plaintiff.

16              Thank you.

17              THE COURT:  Will the clerk please swear in the

18  bailiff.

19              THE CLERK:  Please state your name for the

20  record.

21              THE WITNESS:  Doyle McMullin.

22              THE CLERK:  You do solemnly swear that you will

23  take charge of the jury and keep them together, that you will

24  not speak to them yourself, nor allow anyone else to speak to

25  them on matters concerning this case except on order of the

1   court and, when they have agreed upon a verdict, you will

2   return them to the court.

3              Further, that you will take charge of the

4   alternate jurors and keep them apart from the jury while

5   they're deliberating on the cause until otherwise instructed by

6   the court?

7              THE BAILIFF:  I do.

8              THE CLERK:  All rise.

9         (The following proceedings were held in

10        open court out of the presence of the jury:)

11             THE COURT:  Counsel, did you want to put

12   something on the record about the demonstratives?

13             MR. PORTNOI:  I believe we reached our agreement

14   and submitted it to Ms. Hernandez.  I didn't know if it needed

15   to be on the record.

16             THE COURT:  I'm sorry?

17             MR. PORTNOI:  I just didn't know if it needed to

18   be on the record.

19             THE COURT:  Basically demonstratives 1 through 10

20   are going with the exhibits.  Was that the agreement?

21             MS. AILIN:  And 14 through -- I'm sorry.  13 --

22             THE COURT:  13 through 19?

23             MS. AILIN:  19.

24             THE COURT:  So 1 through 10 and 13 through 19

25   will be given to the jurors with the exhibits.  All right.

**UNITED STATES DISTRICT COURT**

1    Thank you.

2                    MR. PORTNOI:  Thank you, Your Honor.

3                    MS. AILIN:  Thank you.

4           (A recess was taken at 2:28 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5            I, MIRANDA ALGORRI, FEDERAL OFFICIAL REALTIME

6    COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR

7    THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT

8    PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE

9    FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

10   STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

11   ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN

12   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF

13   THE UNITED STATES.

14

15            DATED THIS  4TH  DAY OF MAY, 2016.

16

17

18            /S/ MIRANDA ALGORRI
                 _____
19            MIRANDA ALGORRI, CSR NO. 12743, CRR
              FEDERAL OFFICIAL COURT REPORTER
20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

## $

**$1,032** [1] - 686:21
**$100** [1] - 694:2
**$109** [1] - 679:19
**$14.29** [1] - 679:17
**$14.50** [1] - 682:12
**$163** [1] - 679:15
**$19.22** [1] - 679:19
**$20** [2] - 702:19, 702:20
**$200** [5] - 694:6, 694:15, 706:19, 707:4, 708:7
**$21** [1] - 679:10
**$222** [1] - 679:17
**$23** [2] - 685:13, 690:25
**$24** [1] - 702:3
**$342** [1] - 694:25
**$4.46** [1] - 682:13
**$414** [2] - 693:22, 694:8
**$543** [1] - 686:23
**$58.70** [1] - 682:12
**$600** [1] - 706:18
**$600,000** [1] - 687:18

## /

**/S** [1] - 712:18

## 1

**1** [8] - 670:10, 674:9, 675:6, 675:8, 679:4, 707:1, 710:19, 710:24
**1,032** [2] - 693:25, 694:4
**1.1** [1] - 688:4
**1.2** [1] - 688:4
**10** [3] - 670:10, 710:19, 710:24
**1001-3** [1] - 692:21
**1003** [2] - 699:17, 702:24
**11** [1] - 674:15
**12** [2] - 677:7, 696:7
**12743** [2] - 670:23, 712:19
**1299** [1] - 671:10
**13** [3] - 710:21, 710:22, 710:24
**14** [1] - 710:21
**14-03242-PSG** [1] - 670:7
**15** [4] - 695:17, 699:16, 701:7, 709:11
**159** [2] - 693:25, 694:17
**16** [3] - 689:22, 690:14, 704:21
**17** [1] - 700:1
**1700** [1] - 671:17
**18** [6] - 680:13, 680:16, 683:1, 689:4, 689:11, 706:22
**18881** [1] - 671:16
**18TH** [1] - 671:6
**19** [4] - 681:12, 710:22,

**710:23, 710:24**
**1970'S** [1] - 683:23
**1976** [3] - 675:16, 675:18, 692:8
**1990'S** [1] - 699:2
**1997** [1] - 679:15
**1:02** [2] - 670:17, 674:2
**1:53** [1] - 697:19
**1ST** [1] - 705:25

## 2

**2** [2] - 674:11, 683:2
**20/20** [1] - 695:25
**2001** [1] - 679:16
**2003** [1] - 679:18
**2004** [1] - 681:20
**2006** [13] - 681:12, 681:13, 693:12, 697:3, 698:9, 698:12, 699:2, 700:20, 701:2, 701:14, 702:8, 706:12, 709:3
**2008** [4] - 691:9, 691:14, 705:25, 706:12
**2009** [2] - 693:12, 697:3
**2016** [7] - 670:16, 672:3, 673:3, 674:1, 691:10, 691:15, 712:15
**21** [1] - 703:2
**21.5** [1] - 685:21
**26** [1] - 700:16
**28** [1] - 712:8
**2:00** [1] - 704:11
**2:28** [1] - 711:4

## 3

**3** [1] - 674:14
**31** [2] - 698:9, 699:11
**312** [1] - 670:24

## 4

**4** [13] - 670:16, 670:16, 672:3, 673:3, 674:1, 674:15, 680:18, 685:19, 685:20, 702:1, 702:3, 702:8, 702:10
**4.79** [1] - 695:1
**40** [3] - 694:9, 701:23, 701:25
**400** [1] - 671:6
**414** [1] - 694:6
**435** [1] - 670:24
**4TH** [1] - 712:15

## 5

**5.5** [2] - 694:25, 697:4
**50** [2] - 681:1, 696:16
**50/50** [1] - 696:12

**5TH** [1] - 675:4

## 6

**6** [1] - 699:22
**6.67** [1] - 694:22
**618** [2] - 693:24, 694:15
**65,213** [1] - 705:8
**670** [1] - 670:9

## 7

**7** [1] - 709:4
**712** [1] - 670:9
**753** [1] - 712:8
**7:00** [1] - 704:10

## 8

**8** [4] - 670:10, 672:3, 673:3, 709:4
**8.8** [2] - 694:20, 697:3
**82** [1] - 694:25

## 9

**90'S** [1] - 699:25
**900** [1] - 671:10
**90012** [1] - 670:25
**90071** [1] - 671:7
**90401** [1] - 671:11
**92612** [1] - 671:17
**9:00** [1] - 704:10

## A

**ABILITY** [2] - 689:22, 705:22
**ABLE** [1] - 682:14
**ABOVE** [1] - 712:11
**ABOVE-ENTITLED** [1] - 712:11
**ACCEPT** [1] - 707:4
**ACCEPTABLE** [1] - 680:11
**ACCORDING** [1] - 689:11
**ACCOUNT** [2] - 677:21, 702:19
**ACKNOWLEDGE** [2] - 701:3, 701:12
**ACQUIRED** [2] - 686:3, 693:23
**ACQUIRING** [1] - 680:15
**ACQUISITION** [1] - 688:18
**ACT** [1] - 693:5
**ACTION** [5] - 691:13, 692:5, 692:10, 693:8, 693:20
**ACTS** [1] - 689:7
**ACTUAL** [3] - 680:21, 682:18, 695:19
**ADDITION** [1] - 678:9

**ADDRESS** [2] - 691:22, 699:11
**ADDRESSED** [1] - 684:3
**ADJUSTMENT** [1] - 687:13
**ADMINISTRATION** [2] - 703:8, 703:13
**ADMINISTRATIVE** [1] - 670:10
**ADOPTION** [1] - 678:11
**ADVANCE** [1] - 698:1
**ADVISED** [1] - 681:13
**ADVISING** [1] - 680:15
**AFFECT** [1] - 689:14
**AFFORD** [1] - 692:25
**AFFORDABLE** [1] - 694:16
**AGO** [1] - 680:12
**AGREE** [1] - 691:25
**AGREED** [2] - 681:3, 710:1
**AGREEMENT** [2] - 710:13, 710:20
**AILIN** [4] - 671:15, 710:21, 710:23, 711:3
**ALCOHOL** [1] - 675:25
**ALESHIRE** [1] - 671:14
**ALGORRI** [4] - 670:23, 712:5, 712:18, 712:19
**ALLOW** [5] - 677:15, 692:13, 693:3, 700:21, 709:24
**ALLOWABLE** [1] - 678:12
**ALLOWED** [6] - 674:19, 678:13, 686:19, 687:9, 695:11, 704:11
**ALLOWING** [1] - 674:12
**ALLUDED** [1] - 683:11
**ALMOST** [4] - 688:19, 695:17, 699:24, 703:20
**ALTERNATE** [1] - 710:4
**ALTERNATIVE** [1] - 692:23
**AMEND** [1] - 703:7
**AMENDMENT** [1] - 695:4
**AMOUNT** [3] - 681:6, 695:11, 707:5
**ANALOGY** [2] - 704:3, 704:4
**ANALYSIS** [6] - 677:11, 678:23, 682:19, 700:3, 705:13
**AND** [3] - 712:6, 712:9, 712:11
**ANGELES** [3] - 670:17, 670:25, 674:1
**ANGELES** [1] - 671:7
**ANNOUNCED** [1] - 707:2
**ANSWER** [9] - 700:6, 700:24, 703:11, 703:15, 705:10, 705:13, 705:19, 706:3, 707:8
**ANSWER** [1] - 705:5
**ANTICIPATED** [1] - 688:24

APART [1] - 710:4
APARTMENT [1] - 692:24
APC [1] - 671:8
APOLOGIZE [1] - 698:1
APPEAL [3] - 680:23, 681:4, 707:23
APPEAL [1] - 699:7
APPEARANCES [1] - 671:1
APPELLATE [1] - 680:10
APPLICATION [1] - 707:1
APPLICATION [13] - 674:23, 679:2, 679:3, 687:12, 688:22, 689:12, 690:5, 691:2, 691:4, 693:22, 706:18, 707:1, 708:22
APPLICATIONS [1] - 678:4
APPLIED [6] - 679:2, 679:11, 679:15, 679:17, 679:18, 691:2
APPLY [2] - 687:7, 707:18
APPOINTED [1] - 693:15
APPRAISAL [3] - 690:24, 690:25, 691:3
APPROPRIATE [1] - 703:6
APPROPRIATING [1] - 676:19
ARGUING [2] - 693:19, 709:12
ARGUMENT [6] - 674:7, 697:14, 697:24, 698:18, 701:20, 704:19
ARGUMENTS [1] - 683:18
ASSERTION [1] - 702:15
ASSIST [1] - 677:24
ASSURED [1] - 682:16
ATTENTION [4] - 680:13, 697:11, 697:22, 709:13
ATTORNEY [2] - 698:23, 699:12, 701:24
AUTHORITY [1] - 684:6
AVAILABLE [1] - 707:15
AVENUE [2] - 671:10, 671:16
AVOID [1] - 693:1
AVOIDING [1] - 679:23
AWARD [1] - 690:17
AWFUL [1] - 706:10

B

BAAR [9] - 684:24, 685:4, 686:8, 686:11, 687:4, 687:14, 695:4, 696:1, 701:8
BAAR'S [2] - 684:19, 685:24
BACKED [2] - 676:25, 688:11, 688:12, 695:20, 700:15, 701:2, 701:9, 709:5
BAD [1] - 688:7
BAILIFF [1] - 710:7

BAILIFF [1] - 709:18
BALANCE [3] - 696:11, 696:15, 697:6
BALANCING [1] - 693:5
BANK [1] - 702:19
BAR [11] - 675:23, 675:24, 676:1, 676:3, 676:4, 676:10, 676:11, 692:8, 704:3
BARS [1] - 676:5
BASED [2] - 690:17, 708:17
BECAME [1] - 705:25
BEGAN [1] - 701:18
BEGIN [1] - 688:24
BEGINNING [1] - 705:24
BEHALF [1] - 697:9
BELIEVER [3] - 698:17, 701:11, 701:12
BELONG [1] - 701:13
BELOW [3] - 702:5, 708:7, 708:8
BELOW-MARKET [1] - 702:5
BENEFIT [1] - 689:19
BET [1] - 693:17
BETTER [2] - 687:3, 701:1
BETWEEN [2] - 690:18, 691:20
BIG [1] - 693:9
BIT [2] - 686:18, 696:16
BOARD [1] - 670:9
BOARD [6] - 682:22, 695:1, 697:10, 698:6, 698:21, 708:13
BOARD [10] - 677:24, 680:20, 681:1, 681:5, 693:14, 694:17, 697:3, 701:17, 706:23, 707:3
BOARD'S [1] - 681:20
BODY [1] - 670:10
BOOGEYMAN [1] - 702:15
BOTHER [1] - 699:7
BOTTOM [3] - 695:18, 699:17, 699:24
BOUGHT [8] - 674:22, 678:3, 680:7, 683:8, 686:2, 686:17, 688:20, 691:19
BOX [1] - 698:7
BREAD [1] - 682:5
BREAK [1] - 697:13
BRING [12] - 693:25, 698:4, 698:6, 698:7, 698:10, 698:12, 698:14, 702:25, 704:24, 706:5, 708:10, 708:12
BROKER [3] - 682:3, 708:15, 708:21
BROUGHT [5] - 690:14, 698:15, 698:19, 703:17, 708:21
BUDGET [1] - 688:19

BUILDING [1] - 671:9
BULB [3] - 682:13, 682:23, 687:24
BUNCH [2] - 683:18, 684:12
BURDEN [2] - 696:9, 696:21
BUSINESS [1] - 694:13
BUTTER [1] - 682:5
BUY [4] - 675:23, 687:7, 702:2, 704:6
BUYER [3] - 681:8, 681:24, 702:4
BUYING [1] - 702:6
BY [6] - 671:5, 671:5, 671:9, 671:15, 671:15, 671:16

C

CAL [4] - 685:21, 685:22, 686:5
CALCULATED [2] - 691:9, 707:5
CALCULATING [1] - 674:16
CALCULATIONS [1] - 691:21
CALIFORNIA [5] - 670:2, 670:17, 670:25, 674:1, 712:7
CALIFORNIA [3] - 671:7, 671:11, 671:17
CANDID [1] - 682:4
CANNOT [4] - 675:7, 679:5, 692:3, 699:9
CAPITAL [1] - 687:21
CAR [1] - 675:21
CAREFUL [1] - 682:7
CARRIED [1] - 685:19
CARSON [2] - 670:8, 670:9
CARSON [27] - 674:8, 679:7, 679:9, 680:3, 680:4, 680:17, 680:19, 681:8, 681:12, 682:19, 683:23, 686:14, 686:18, 686:23, 693:19, 697:9, 698:4, 699:2, 699:15, 699:19, 700:1, 700:4, 700:21, 701:15, 706:10, 707:20
CASE [21] - 675:1, 675:3, 676:21, 678:21, 680:3, 680:4, 680:6, 680:24, 681:7, 681:19, 681:20, 685:5, 686:24, 697:14, 697:16, 698:19, 700:1, 700:7, 707:19, 709:25
CASE [1] - 670:6
CASES [1] - 698:16
CASH [2] - 694:12, 704:13
CASPARIAN [1] - 671:9
CAUSED [3] - 689:1, 689:2,

689:19
CAUSING [1] - 689:9
CENTRAL [2] - 670:2, 712:7
CERTAIN [1] - 707:19
CERTAINLY [1] - 698:5
CERTIFICATE [1] - 712:1
CERTIFY [1] - 712:7
CHAIRS [1] - 675:25
CHANGE [7] - 687:11, 696:24, 699:9, 699:13, 703:18, 703:25, 704:8
CHANGED [6] - 698:8, 702:22, 702:23, 706:13, 708:11
CHANGES [1] - 682:20
CHANGING [2] - 702:17, 708:4
CHAPTER [1] - 682:11
CHARACTER [1] - 693:20
CHARGE [4] - 694:10, 700:22, 709:23, 710:3
CHARGES [1] - 685:25
CHERRY [1] - 680:9
CHOIR [1] - 684:1
CHOOSE [1] - 708:2
CHRONOLOGICAL [1] - 672:5
CIRCUMSTANCES [1] - 695:21
CITY [6] - 676:4, 676:8, 698:21, 699:12, 703:5, 704:7
CITY [27] - 675:6, 675:11, 676:10, 679:20, 679:21, 679:24, 681:9, 683:5, 683:7, 686:19, 688:10, 689:2, 689:10, 689:11, 689:12, 689:17, 689:19, 689:25, 693:5, 697:9, 698:4, 699:5, 703:24, 707:14, 707:17, 709:4
CITY [2] - 670:8, 670:9
CITY'S [1] - 703:8
CITY'S [6] - 694:12, 696:5, 698:23, 701:24, 704:25, 705:24
CLAIMING [1] - 708:20
CLAUSE [1] - 703:4
CLEAR [4] - 681:4, 681:5, 683:5, 695:15
CLEARLY [4] - 692:10, 692:21, 693:11, 709:11
CLERK [1] - 709:17
CLERK [3] - 709:19, 709:22, 710:8
CLIENT'S [1] - 706:25
CLIENTS [1] - 684:6
CLOSE [2] - 671:5, 697:21
CLOSE [6] - 676:24, 680:8, 681:14, 690:14, 693:9,

**UNITED STATES DISTRICT COURT**

695:19, 696:18, 696:20
CLOSED [1] - 690:22
CLOSELY [2] - 689:8, 700:13
CLOSING [3] - 697:23, 698:3, 701:18
CODE [1] - 712:8
COLLECTED [1] - 683:14
COLLECTING [1] - 683:13
COLLECTS [1] - 689:24
COLONY [1] - 670:5
COLONY [14] - 676:22, 680:5, 680:15, 682:10, 683:22, 683:23, 685:12, 686:13, 686:16, 686:20, 686:25, 688:20, 705:4
COMBINE [1] - 696:12
COMPANY [1] - 670:5
COMPARE [1] - 675:22
COMPARISON [1] - 686:13
COMPENSATED [1] - 676:9
COMPENSATION [1] - 675:14
COMPLETELY [1] - 674:25
CONCERNING [1] - 709:25
CONCERNS [1] - 677:18
CONCISELY [1] - 675:2
CONCLUDES [2] - 683:11, 705:6
CONDOMINIUMS [3] - 690:2, 690:6, 690:8
CONDUCT [2] - 706:9, 709:3
CONFERENCE [1] - 712:12
CONFORMANCE [1] - 712:12
CONNECTED [1] - 701:13
CONSIDER [5] - 677:7, 688:15, 695:19, 701:17, 702:6
CONSIDERATION [3] - 674:10, 675:8, 680:21
CONSIDERED [2] - 677:9, 697:3
CONSIDERING [1] - 681:3
CONSISTENTLY [1] - 699:1
CONSPIRE [1] - 684:11
CONSPIRING [1] - 684:14
CONSTITUTION [3] - 675:5, 689:6, 703:23
CONSULTANT [1] - 698:15
CONSULTANTS [1] - 708:14
CONSUMER [2] - 678:8, 694:22
CONTRAST [1] - 699:14
CONTROL [8] - 678:19, 684:24, 685:9, 686:1, 689:23, 692:9, 706:10
CONTROL [5] - 683:7,

697:10, 698:6, 703:9, 703:14
CONTROLLED [3] - 686:22, 689:25, 693:15
CONTROLLING [1] - 678:1
CONVENIENT [1] - 706:10
CONVERSION [3] - 690:2, 690:5, 690:8
CONVERT [1] - 708:23
CONVERTED [1] - 708:25
CONVINCE [2] - 680:10, 696:9
CORNER [1] - 704:10
CORPORATION [1] - 670:9
CORRECT [6] - 699:5, 700:5, 705:9, 705:12, 705:18, 706:2
CORRECT [1] - 712:9
COST [4] - 676:17, 680:22, 686:20, 688:7
COSTS [1] - 681:6
COUNCIL [4] - 698:5, 698:21, 699:12, 703:5
COUNSEL [6] - 680:8, 696:21, 697:10, 699:11, 706:16, 710:11
COUNSEL [1] - 671:1
COUPLE [1] - 696:18
COURT [3] - 680:22, 681:4, 707:23
COURT [11] - 674:6, 680:10, 680:20, 699:3, 699:6, 701:16, 707:21, 710:1, 710:2, 710:6, 710:10
COURT [14] - 670:1, 670:24, 674:7, 697:12, 697:20, 709:17, 710:11, 710:16, 710:19, 710:22, 710:24, 712:6, 712:19
COURT'S [1] - 696:7
COURT'S [1] - 681:4
COURTS [3] - 699:14, 700:4, 707:24
COVE [14] - 676:22, 680:5, 680:15, 682:10, 683:22, 683:23, 685:12, 686:13, 686:16, 686:20, 686:25, 688:20, 705:4
COVE [1] - 670:5
COVER [3] - 687:23, 694:5, 700:23
COVERED [1] - 694:7
CPI [4] - 681:1, 682:20, 694:20, 695:1
CREATE [1] - 678:24
CREDIT [3] - 687:19, 687:20, 687:23
CROOKED [1] - 693:14
CRR [2] - 670:23, 712:19
CSR [2] - 670:23, 712:19
CURRENT [1] - 703:7

CUSTOMARY [1] - 678:14
CV [1] - 670:7

D

DAMAGE [2] - 689:18, 691:21
DAMAGES [10] - 684:16, 689:1, 689:3, 690:12, 690:16, 691:18, 692:2, 692:3, 704:18, 705:21
DANNY [2] - 681:24, 682:2
DATE [1] - 681:12
DATED [1] - 712:15
DAY [2] - 670:16, 712:15
DAYS [1] - 704:9
DEAL [1] - 693:9
DEALING [1] - 684:9
DEAR'S [1] - 706:9
DEBT [39] - 674:10, 674:16, 674:18, 675:9, 677:2, 677:5, 678:10, 678:17, 679:5, 679:20, 679:21, 679:25, 681:2, 681:6, 681:21, 685:7, 685:22, 686:2, 686:4, 686:5, 686:9, 686:24, 687:10, 687:15, 687:20, 687:23, 688:1, 688:4, 694:5, 695:2, 695:13, 698:24, 700:25, 701:12, 702:13, 702:18, 707:7, 708:18
DECEMBER [2] - 691:9, 705:25
DECIDE [2] - 675:23, 707:19
DECIDED [1] - 699:8
DECIDES [1] - 704:7
DECISION [6] - 680:21, 680:23, 682:21, 698:18, 701:16, 705:24
DECISIONS [2] - 681:21, 698:13
DEEP [1] - 704:16
DEFEAT [1] - 678:19
DEFEATS [2] - 685:8, 686:1
DEFENDANT'S [1] - 696:11
DEFENDANTS [1] - 689:5, 697:8
DEFENDANTS [2] - 670:11, 671:13
DEFENDANTS' [1] - 696:17
DEFENSE [4] - 696:13, 696:14, 706:16
DEFENSE'S [1] - 674:7
DEFINITION [1] - 703:16
DELAWARE [1] - 670:5
DELIBERATING [1] - 710:5
DELIBERATIONS [1] - 697:15
DELIVER [1] - 709:2

DEMONSTRATIVES [2] - 710:12, 710:19
DEPRIVATION [1] - 689:8
DEPRIVED [1] - 689:5
DESCRIBED [1] - 701:16
DESIGNING [1] - 704:6
DESTROYED [1] - 704:15
DETAILED [1] - 682:18
DETERMINATIVE [1] - 677:8
DETERMINE [1] - 675:3
DETERMINED [2] - 680:25, 694:18
DETLING [1] - 690:24
DEVELOP [1] - 689:22
DEVELOPED [2] - 689:24, 705:2
DIEGO [1] - 708:15
DIFFERENCE [2] - 690:18, 691:20
DIFFERENT [1] - 701:21
DIFFICULT [1] - 693:2
DIGIT [1] - 708:2
DILIGENCE [1] - 676:13
DIMITRI [1] - 671:5
DIRECTLY [2] - 676:19, 694:10
DISAGREE [1] - 705:11
DISCUSS [3] - 691:16, 697:7, 697:16
DISPUTE [1] - 679:21
DISPUTES [1] - 678:2
DISREGARD [1] - 703:22
DISREGARDING [1] - 702:18
DISTRICT [5] - 670:1, 670:2, 670:3, 712:6, 712:7
DIVISION [1] - 670:2
DO [1] - 712:7
DOCUMENTS [1] - 708:10
DOES [1] - 670:10
DOLLAR [1] - 694:17
DOLLARS [1] - 690:9
DONE [5] - 676:13, 679:23, 681:23, 695:17, 704:15
DOUG [1] - 681:24
DOWN [5] - 683:19, 683:25, 684:13, 699:6, 704:10
DOYLE [1] - 709:21
DR [11] - 684:19, 684:24, 685:4, 685:24, 686:8, 686:11, 687:4, 687:14, 695:4, 696:1, 701:8
DRAGGED [1] - 708:14
DRAINED [1] - 702:19
DRIVE [5] - 683:19, 683:25, 684:13, 684:16, 685:25
DUE [3] - 676:13, 678:17, 680:21

**DURING** [3] - 694:21, 698:3, 706:12
**DWELLINGS** [1] - 692:16

# E

**EARLY** [2] - 699:2, 699:25
**EARN** [1] - 692:13
**EARNED** [1] - 678:18
**ECONOMIC** [5] - 688:15, 689:20, 689:23, 690:3
**ECONOMIST** [1] - 701:9
**EFFECT** [5] - 674:21, 674:22, 690:22, 691:14, 704:23
**EFFECTIVE** [1] - 705:25
**EFFORT** [2] - 684:13, 684:16
**EGREGIOUS** [1] - 709:4
**EIGHT** [2] - 675:24, 687:7
**EIGHT-AND-A-QUARTER** [1] - 687:7
**EIGHT-JUROR** [1] - 675:24
**EIGHTH** [1] - 685:15
**EITHER** [1] - 692:3
**ELECTED** [1] - 698:10
**ELEMENTARY** [3] - 676:2, 676:6, 676:12
**ELIMINATE** [1] - 681:9
**ELLIS** [4] - 690:13, 691:24, 704:25, 705:5
**EMPLOYEE** [1] - 698:4
**ENCOURAGE** [1] - 700:12
**END** [2] - 683:3, 691:1
**ENDING** [1] - 706:1
**ENTIRE** [2] - 681:6, 704:15
**ENTITLED** [1] - 712:11
**ENTITLED** [9] - 675:7, 676:11, 676:17, 677:1, 677:5, 679:4, 683:9, 692:1, 701:6
**ENTITLEMENT** [10] - 674:9, 675:8, 678:24, 679:4, 683:6, 691:25, 700:12, 700:14, 706:7
**ENTITLEMENTS** [1] - 709:10
**EQUAL** [1] - 678:7
**EQUIVALENT** [1] - 676:19
**ESTABLISH** [1] - 689:5
**ESTATE** [1] - 701:10
**ESTIMATE** [1] - 705:21
**EVD** [1] - 673:5
**EVICTED** [1] - 693:1
**EVIDENCE** [36] - 674:25, 685:20, 685:21, 689:2, 689:7, 690:17, 690:23, 691:16, 691:17, 691:18, 692:3, 693:13, 693:14, 693:22, 694:21, 696:8,

696:10, 696:13, 696:15, 697:6, 697:24, 698:2, 698:25, 699:21, 701:1, 702:7, 702:9, 702:13, 702:14, 704:19, 704:20, 706:5, 708:9, 709:6, 709:12
**EXACT** [1] - 681:14
**EXACTLY** [2] - 685:9, 685:24
**EXAMPLE** [1] - 675:16
**EXAMPLES** [1] - 675:10
**EXCEEDED** [1] - 694:20
**EXCEEDS** [1] - 696:15
**EXCEPT** [2] - 677:18, 709:25
**EXCERPT** [1] - 680:18
**EXCESSIVE** [10] - 674:11, 677:13, 677:19, 679:23, 679:25, 688:9, 692:12, 693:1, 694:1, 694:18
**EXCESSIVELY** [1] - 680:9
**EXCLUDED** [1] - 681:2
**EXCUSE** [3] - 678:23, 681:22, 699:10
**EXHIBIT** [2] - 685:20, 686:13
**EXHIBIT** [6] - 673:5, 680:13, 680:16, 683:1, 701:23, 702:24
**EXHIBITS** [2] - 710:20, 710:25
**EXHIBITS** [1] - 673:1
**EXPECT** [1] - 682:4
**EXPECTATION** [8] - 676:25, 684:21, 685:2, 690:4, 700:16, 701:2, 701:9, 709:5
**EXPECTATIONS** [10] - 681:17, 684:17, 687:16, 688:11, 688:13, 695:18, 695:20, 695:23, 696:2, 696:6
**EXPENSE** [2] - 678:12, 695:10
**EXPENSES** [4] - 694:7, 700:19, 700:23, 700:24
**EXPERIENCES** [1] - 679:9
**EXPERT** [5] - 684:24, 685:2, 701:8, 704:25, 706:4
**EXPLAIN** [1] - 703:17
**EXPLAINED** [4] - 683:15, 685:6, 686:8, 695:5
**EXPLAINS** [2] - 692:21, 695:18
**EXPRESS** [1] - 697:17
**EXPRESSES** [1] - 705:17
**EXTENT** [1] - 695:21
**EXTRA** [2] - 687:25, 689:22

# F

**FACT** [6] - 681:17, 683:5, 699:20, 701:17, 702:1, 706:6
**FACTOR** [3] - 677:8, 688:14, 696:5
**FACTORS** [7] - 674:15, 674:16, 676:23, 677:7, 677:9, 696:11, 696:14
**FACTS** [2] - 683:18
**FACTUAL** [1] - 675:22
**FAIR** [10] - 674:12, 677:15, 690:19, 690:20, 692:14, 694:3, 697:2, 697:3, 707:17, 708:1
**FALSITIES** [2] - 684:12, 684:15
**FAMILIAR** [5] - 677:10, 677:23, 678:5, 678:9, 680:6
**FAMILY** [1] - 686:15
**FAR** [1] - 677:16
**FAVOR** [6] - 693:19, 696:10, 696:11, 696:17, 697:7, 697:8
**FAVORS** [1] - 696:13
**FEASIBLE** [1] - 692:22
**FEDERAL** [3] - 670:24, 712:5, 712:19
**FEW** [4] - 674:24, 692:23, 697:25, 707:12
**FIELD** [1] - 701:10
**FIGURING** [1] - 676:13
**FILED** [3] - 678:4, 679:10, 688:21
**FINAL** [1] - 697:14
**FINANCE** [1] - 678:14
**FINANCING** [1] - 685:19
**FINE** [1] - 703:25
**FIRE** [1] - 674:25
**FIRST** [14] - 674:23, 675:8, 676:12, 679:2, 683:3, 685:8, 688:22, 689:12, 691:1, 691:2, 693:22, 693:24, 699:23, 700:13
**FIVE** [2] - 676:2, 697:13
**FIVE-YEAR** [1] - 676:2
**FLOOR** [1] - 671:6
**FLOW** [1] - 694:12
**FOCUS** [1] - 703:3
**FOCUSED** [1] - 690:6
**FOLKS** [1] - 684:3
**FOLLOW** [5] - 674:8, 690:16, 692:3, 692:4, 707:19
**FOLLOWING** [2] - 674:5, 710:9
**FOR** [4] - 671:3, 671:13, 712:6
**FORCE** [1] - 689:9
**FOREGOING** [1] - 712:9
**FORM** [2] - 697:17, 705:14

**FORMAT** [1] - 712:11
**FORMULA** [6] - 674:14, 675:9, 678:7, 680:11, 681:2
**FORMULAS** [1] - 677:11
**FORWARD** [1] - 700:14
**FOWL** [2] - 694:10, 694:17
**FRAME** [1] - 693:3
**FREE** [1] - 681:1
**FRESCHAUF** [2] - 698:15, 699:20, 700:16, 702:25, 703:10, 706:8
**FRESCHAUF'S** [2] - 700:2, 706:21
**FRONT** [2] - 675:12, 675:13, 692:7
**FUNCTIONAL** [1] - 676:19
**FUTURE** [1] - 682:17

# G

**G.E** [1] - 687:21
**GARDENS** [11] - 680:3, 680:4, 680:17, 680:19, 681:12, 693:19, 699:2, 699:15, 700:1, 700:4, 707:20
**GENERAL** [1] - 678:16
**GENERALLY** [1] - 692:22
**GENTLEMEN** [3] - 683:22, 697:12, 697:21
**GILCHRIST** [1] - 671:8
**GIVEN** [3] - 690:16, 705:18, 710:25
**GOLDSTEIN** [63] - 674:22, 675:7, 676:16, 676:21, 677:1, 677:3, 677:17, 677:20, 677:22, 678:3, 678:5, 678:9, 678:15, 678:20, 678:25, 679:1, 679:3, 679:8, 679:19, 680:6, 680:14, 681:13, 682:6, 682:10, 682:22, 683:8, 683:15, 683:25, 684:2, 684:11, 685:5, 685:13, 686:1, 686:17, 686:19, 687:19, 688:5, 688:16, 688:20, 688:23, 689:10, 689:14, 689:19, 689:21, 691:2, 691:19, 692:1, 693:23, 694:5, 694:11, 694:23, 694:24, 695:15, 695:20, 700:10, 701:22, 706:23, 707:3, 707:12, 708:7, 708:23
**GOLDSTEIN'S** [19] - 675:6, 679:7, 681:11, 681:16, 682:14, 683:7, 683:12, 684:7, 684:17, 685:2, 687:15, 687:24, 688:10, 688:12, 688:18, 690:4, 694:9, 696:1, 707:2

**GOVERN** [3] - 703:7, 703:13, 703:16
**GOVERNMENT** [4] - 675:17, 692:10, 693:8, 693:20
**GOVERNMENT** [1] - 675:19
**GOVERNMENTAL** [1] - 692:5
**GPM** [1] - 687:8
**GRANADA** [1] - 681:20
**GRANT** [2] - 689:17, 702:16
**GRANTED** [2] - 679:16, 679:19
**GREAT** [1] - 691:21
**GREATER** [2] - 695:3, 705:8
**GREATLY** [1] - 709:4
**GROSS** [5] - 674:9, 675:9, 677:11, 678:22, 699:24
**GROSSMAN** [2] - 682:3, 684:4
**GROUND** [1] - 704:13
**GUARANTEE** [1] - 678:7
**GUARANTEED** [1] - 701:6
**GUARDEDLY** [1] - 682:4
**GUESS** [1] - 703:15
**GUIDELINES** [10] - 674:20, 677:10, 677:24, 678:15, 692:11, 699:3, 699:13, 703:7, 703:13, 706:13
**GUTIERREZ** [1] - 670:3

**H**

**HALF** [1] - 675:12
**HALL** [1] - 695:16
**HALLOWEEN** [2] - 703:20, 708:12
**HANDFUL** [1] - 682:6
**HANG** [1] - 680:5
**HANSEN** [4] - 687:17, 687:22, 688:4, 690:4
**HARBOR** [6] - 679:7, 679:9, 686:14, 686:18, 686:23
**HARD** [2] - 679:13, 692:17
**HARM** [1] - 704:16
**HAT** [1] - 680:5
**HEAD** [4] - 682:14, 682:24, 684:22, 687:24
**HEAR** [1] - 697:13
**HEARD** [25] - 676:24, 677:4, 677:16, 677:17, 680:3, 681:24, 690:12, 692:18, 697:23, 698:3, 700:11, 701:9, 701:19, 702:12, 702:16, 704:3, 706:8, 706:15, 706:16, 706:21, 707:9, 707:10, 707:12, 707:13, 707:14
**HEARING** [5] - 699:25,

700:14, 706:22, 706:25, 708:8
**HELD** [2] - 674:5, 710:9
**HELD** [1] - 712:10
**HEREBY** [1] - 703:6
**HEREBY** [1] - 712:7
**HERNANDEZ** [1] - 710:14
**HIGH** [3] - 687:6, 687:9, 687:10
**HIGHER** [1] - 686:22
**HIGHEST** [1] - 686:2
**HIGHLIGHTED** [1] - 703:5
**HINDSIGHT** [1] - 695:25
**HOME** [14] - 681:8, 682:5, 684:13, 687:7, 690:2, 692:15, 692:22, 692:25, 693:2, 693:3, 693:4, 693:7, 693:14, 703:9
**HOMEOWNER** [2] - 692:25, 693:2
**HOMEOWNERS** [1] - 677:13
**HOMES** [3] - 687:2, 692:16, 692:19
**HOMEWORK** [2] - 681:18, 681:25
**HONEST** [2] - 684:9, 706:14
**HONOR** [1] - 711:2
**HONORABLE** [1] - 670:3
**HOPE** [1] - 671:6
**HOUSE** [1] - 675:10
**HUDDLED** [1] - 709:8
**HUGE** [2] - 676:16, 682:14
**HYPOTHETICAL** [1] - 675:23

**I**

**ID** [1] - 673:5
**IDEA** [1] - 681:16
**ILLUSTRATES** [1] - 685:24
**IMAGINE** [1] - 704:4
**IMMATERIAL** [1] - 696:6
**IMMEDIATELY** [1] - 688:6
**IMMOBILE** [1] - 692:17
**IMPACT** [5] - 688:15, 689:20, 689:23, 690:3
**IMPLEMENTING** [1] - 677:25
**IMPLY** [1] - 708:15
**IMPORTANT** [2] - 680:14, 685:23
**IMPORTANTLY** [1] - 678:21
**IMPROPER** [2] - 700:5, 700:6
**IN** [3] - 712:6, 712:10, 712:11
**INCLUDING** [4] - 677:10, 679:12, 700:25, 701:22

**INCLUSIVE** [1] - 670:10
**INCOME** [12] - 678:18, 688:3, 690:21, 691:6, 691:7, 691:10, 691:11, 695:6, 695:9, 704:22, 705:23, 707:7
**INCOME-PRODUCING** [4] - 690:21, 691:6, 691:7, 704:22
**INCREASE** [35] - 674:17, 674:23, 678:7, 678:25, 679:16, 679:17, 679:18, 682:15, 682:18, 682:24, 683:6, 683:9, 683:13, 685:25, 687:8, 688:9, 689:15, 690:9, 691:2, 691:10, 693:24, 693:25, 694:11, 694:17, 694:19, 694:25, 695:2, 695:7, 695:14, 706:19, 707:4, 708:2, 708:5, 708:18
**INCREASED** [2] - 678:17, 682:17
**INCREASES** [15] - 674:12, 677:14, 678:7, 679:12, 679:23, 680:1, 681:10, 682:11, 682:12, 689:16, 689:17, 689:18, 697:4, 702:16, 707:10
**INCURRED** [1] - 678:10
**INDEX** [1] - 672:5
**INDEX** [2] - 678:8, 694:22
**INDICATED** [1] - 680:24
**INEQUITABLE** [1] - 687:10
**INFERIOR** [1] - 686:18
**INFLATION** [3] - 694:23, 695:3, 695:8
**INHERIT** [1] - 708:3
**INITIAL** [1] - 681:4
**INJURY** [1] - 689:9
**INSTEAD** [1] - 706:17
**INSTRUCTED** [1] - 710:5
**INSTRUCTION** [4] - 684:20, 688:25, 689:4, 691:17
**INSTRUCTION** [6] - 690:14, 695:17, 696:7, 701:7, 704:21, 709:11
**INSTRUCTIONS** [6] - 676:24, 676:25, 690:15, 700:13, 701:5, 709:7
**INSTRUCTIVE** [1] - 681:7
**INSUFFICIENT** [1] - 693:3
**INTENDED** [2] - 677:24, 678:23
**INTEREST** [8] - 685:19, 686:3, 687:6, 687:25, 688:8, 693:6, 693:7, 702:5
**INTERFERE** [3] - 688:10, 688:12, 709:5
**INTERFERENCE** [1] - 696:5
**INTERIOR** [1] - 704:6

**INTIMATELY** [1] - 680:6
**INVENTORY** [2] - 704:6, 704:14
**INVESTED** [2] - 701:10, 704:1
**INVESTMENT** [13] - 676:25, 688:11, 688:12, 693:4, 695:16, 695:20, 695:24, 700:15, 701:2, 701:9, 701:14, 704:15, 709:5
**INVESTMENT-BACKED** [5] - 676:25, 700:15, 701:2, 701:9, 709:5
**INVESTMENTS** [1] - 692:15
**INVESTOR** [2] - 695:14, 695:23
**INVOLVED** [4] - 678:14, 680:4, 698:12, 702:13
**INVOLVING** [1] - 707:11
**IRVINE** [1] - 671:17
**IS** [2] - 712:9, 712:11
**ISSUE** [3] - 690:7, 691:13, 698:13
**ITSELF** [1] - 677:12

**J**

**JANUARY** [2] - 681:12, 681:13
**JEFFREY** [1] - 671:15
**JOB** [1] - 694:12
**JOINT** [1] - 692:13
**JUDGE** [2] - 690:16, 695:22
**JUDGE** [1] - 670:3
**JUDICIAL** [1] - 712:12
**JUNE** [1] - 671:15
**JUROR** [1] - 675:24
**JURORS** [2] - 710:4, 710:25
**JURY** [10] - 674:6, 676:24, 680:16, 684:20, 700:13, 704:21, 709:7, 709:23, 710:4, 710:10
**JUSTIFIED** [1] - 678:18
**JUSTIFY** [1] - 708:11
**JUSTLY** [1] - 676:9

**K**

**KARMAN** [1] - 671:16
**KEEP** [4] - 695:7, 708:24, 709:23, 710:4
**KNOWING** [3] - 682:6, 688:1, 693:6
**KNOWN** [2] - 677:1, 684:24
**KNOWS** [1] - 677:7

**L**

**LADIES** [3] - 683:22,

697:12, 697:21
**LAND** [3] - 675:15, 681:22, 709:7
**LANGUAGE** [1] - 699:14
**LARGE** [5] - 682:7, 682:25, 688:1, 688:6, 696:3
**LAST** [4] - 678:22, 682:18, 683:10, 696:22
**LASTLY** [3] - 687:4, 687:17, 696:7
**LAW** [12] - 675:17, 676:5, 676:17, 676:18, 677:23, 678:6, 678:10, 685:5, 691:22, 692:4, 696:13, 700:15
**LAW** [1] - 683:7
**LAWSUIT** [1] - 679:10
**LAWYER** [11] - 681:11, 681:13, 681:14, 683:2, 683:3, 683:7, 683:12, 683:17, 684:11, 701:20, 709:12
**LAWYERS** [4] - 680:14, 684:5, 684:14, 702:10
**LEASE** [1] - 676:2
**LEAST** [2] - 682:24, 689:22
**LEAVES** [1] - 694:7
**LEGAL** [2] - 684:4
**LENDER** [3] - 687:21, 687:22, 687:25
**LENGTHS** [1] - 681:9
**LETTER** [12] - 680:13, 680:14, 680:18, 683:2, 683:4, 683:10, 683:11, 683:15, 684:1, 687:19, 687:20, 687:23
**LETTERS** [1] - 684:5
**LIABILITY** [1] - 670:5
**LIGHT** [7] - 674:19, 678:13, 679:23, 682:13, 682:23, 687:24, 694:1
**LIMITED** [1] - 670:5
**LINE** [2] - 678:22, 683:3
**LISTEN** [1] - 706:12
**LISTING** [1] - 682:5
**LITIGATION** [3] - 698:13, 700:4, 701:16
**LIVE** [3] - 692:16, 692:24, 707:25
**LLC** [1] - 670:5
**LLP** [2] - 671:4, 671:14
**LOAN** [13] - 685:14, 685:18, 687:6, 687:9, 687:20, 688:5, 688:6, 688:7, 690:5, 702:1, 702:3, 702:5, 708:21
**LOANS** [2] - 702:8, 702:10
**LOCATION** [1] - 676:1
**LOGICAL** [1] - 686:12
**LONG-TERM** [1] - 695:16
**LOOK** [7] - 681:18, 682:11,

685:20, 691:17, 692:21, 698:8, 700:14
**LOOKING** [1] - 702:7
**LOS** [1] - 671:7
**LOS** [3] - 670:17, 670:25, 674:1
**LOSS** [7] - 688:21, 688:22, 688:24, 690:21, 691:5, 704:22, 705:22
**LOSSES** [1] - 689:11
**LOST** [3] - 679:10, 691:11, 699:5
**LOWER** [1] - 686:4
**LUNCH** [1] - 675:1

---

# M

**MAIN** [4] - 675:11, 704:4, 704:9
**MAINTENANCE** [7] - 674:9, 675:9, 677:11, 678:22, 695:6, 695:7, 699:24
**MAKER** [1] - 698:18
**MALAWY** [1] - 671:15
**MANAGER** [1] - 698:22
**MANDATE** [1] - 678:6
**MANIPULATED** [1] - 687:5
**MANIPULATION** [1] - 702:14
**MARCHING** [1] - 709:8
**MARKET** [6] - 690:19, 690:20, 691:19, 702:5, 708:7, 708:8
**MATTER** [1] - 712:11
**MATTER** [5] - 697:11, 700:8, 707:23, 707:24
**MATTERS** [1] - 709:25
**MATTHEW** [1] - 671:5
**MAY** [5] - 670:16, 672:3, 673:3, 674:1, 712:15
**MAYOR** [4] - 693:10, 698:6, 698:20, 699:11
**MAYOR** [1] - 706:9
**MCMULLIN** [1] - 709:21
**MEAN** [2] - 686:25, 702:18
**MEANING** [1] - 695:10
**MEANS** [2] - 682:16, 695:7
**MEMBER** [5] - 698:5, 698:7, 698:21, 699:12
**MEMORANDUM** [3] - 682:8, 682:23, 708:17
**MENTIONED** [1] - 699:18
**MENTIONS** [1] - 690:5
**MET** [2] - 704:21, 709:11
**METHODOLOGIES** [1] - 684:25
**MICHAEL** [1] - 671:15
**MIDDLE** [2] - 680:19, 690:14
**MIGHT** [2] - 680:25, 682:14

**MILLION** [5] - 679:10, 685:13, 688:4, 690:25, 702:3
**MIND** [1] - 696:2
**MINIMIZE** [1] - 681:9
**MINUS** [1] - 694:6
**MINUTE** [1] - 697:13
**MINUTES** [2] - 674:24, 697:18
**MIRANDA** [4] - 670:23, 712:5, 712:18, 712:19
**MIRANDAALGORRI@ GMAIL.COM** [1] - 670:25
**MIRRORS** [2] - 691:22, 693:16
**MISHEARD** [2] - 697:25, 706:20
**MISTAKE** [2] - 704:14
**MNOI** [7] - 680:11, 681:20, 695:4, 695:6, 698:17, 700:3, 701:11
**MOBILE** [13] - 681:8, 682:5, 684:13, 687:2, 687:7, 690:2, 692:15, 692:16, 692:19, 692:22, 693:7, 693:14, 703:8
**MOBILEHOME** [1] - 682:21
**MOBILEHOME** [1] - 670:9
**MONDAY** [1] - 704:11
**MONEY** [9] - 676:3, 676:7, 676:8, 676:9, 676:14, 689:24, 695:5, 695:11, 702:6
**MONICA** [1] - 671:11
**MONTH** [7] - 686:21, 686:23, 687:1, 688:19, 694:8, 694:15
**MONTH-BY-MONTH** [1] - 688:19
**MONTHLY** [1] - 705:7
**MONTHS** [3] - 689:11, 690:21, 704:23
**MORNING** [1] - 706:11
**MORTGAGE** [14] - 676:16, 676:17, 677:2, 679:12, 681:22, 684:18, 685:25, 686:4, 686:6, 686:20, 687:4, 688:1, 692:2, 696:3
**MOST** [2] - 678:21, 698:2
**MOVE** [2] - 692:17, 692:24
**MOVING** [2] - 689:9, 692:22
**MR** [5] - 674:8, 697:21, 710:13, 710:17, 711:2
**MS** [3] - 710:21, 710:23, 711:3
**MUNICIPAL** [1] - 670:8
**MUST** [3] - 689:6, 692:25, 695:22
**MYERS** [1] - 671:4

---

# N

**NAME** [1] - 709:19

**MILLION** ... (column 4)

**NAMELY** [2] - 678:6, 692:12
**NATURE** [5] - 690:21, 691:5, 692:5, 692:9, 704:22
**NECESSARILY** [2] - 674:13, 695:12
**NECESSARY** [1] - 707:6
**NEED** [4] - 674:14, 683:25, 697:1, 706:15
**NEEDED** [2] - 710:14, 710:17
**NEEDS** [1] - 681:25
**NET** [2] - 688:3, 695:6
**NEVER** [5] - 676:16, 694:11, 701:10, 707:11, 707:13
**NEXT** [4] - 674:24, 679:7, 688:14, 693:20
**NIGHT** [1] - 708:12
**NO** [2] - 670:6, 712:19
**NOBODY** [1] - 678:1
**NOELLE** [1] - 688:16
**NONE** [3] - 693:11, 706:11, 709:2
**NONE** [2] - 672:11, 673:8
**NONSENSICAL** [2] - 686:11, 686:23
**NOON** [1] - 704:11
**NORTH** [1] - 670:24
**NOTE** [1] - 685:18
**NOTES** [1] - 697:25
**NOTHING** [3] - 684:16, 691:10, 702:11
**NUMBER** [4] - 692:19, 701:3, 705:12, 705:15

---

# O

**O'MELVENY** [1] - 671:4
**OATH** [2] - 700:1, 700:17
**OBJECTIVE** [1] - 684:23
**OBJECTIVELY** [1] - 696:3
**OBLIGATION** [1] - 681:5
**OBTAIN** [1] - 682:17
**OCCURRED** [1] - 693:12
**OCEAN** [1] - 671:10
**OCTO** [1] - 675:24
**OCTOBER** [2] - 698:9, 699:11
**OF** [11] - 670:2, 670:8, 670:9, 670:15, 671:1, 712:1, 712:7, 712:9, 712:12, 712:15
**OFFER** [4] - 701:24, 702:2, 702:4, 702:12
**OFFERING** [4] - 682:8, 682:22, 685:11, 708:17
**OFFERS** [2] - 685:11, 701:21
**OFFICER** [1] - 698:11
**OFFICERS** [1] - 709:9

**OFFICIAL** [4] - 670:24, 712:1, 712:5, 712:19
**OFFICIAL** [1] - 698:10
**OFTEN** [2] - 682:21, 693:2
**OLDER** [1] - 692:19
**ONCE** [6] - 690:8, 699:10, 699:17, 699:18
**ONE** [20] - 675:5, 676:24, 677:6, 677:8, 681:17, 682:9, 682:25, 685:8, 685:14, 685:15, 685:17, 686:8, 690:23, 691:20, 691:24, 694:4, 694:10, 694:17, 695:18, 701:3
**ONSTOT** [1] - 699:5
**ONSTOT** [2] - 671:16, 674:8
**OPEN** [11] - 674:6, 675:24, 676:1, 676:3, 676:11, 704:4, 704:7, 704:9, 704:11, 708:24, 710:10
**OPENING** [5] - 680:12, 683:11, 693:21, 696:19, 701:18
**OPERATE** [2] - 676:4, 678:23
**OPERATING** [12] - 678:12, 680:22, 688:3, 688:21, 688:22, 688:24, 694:7, 695:6, 695:9, 700:18, 700:23, 700:24
**OPERATION** [2] - 676:22, 682:19
**OPINION** [8] - 680:10, 680:17, 683:12, 685:2, 705:1, 705:2, 705:14, 705:17
**OPINIONS** [1] - 697:18
**OPPORTUNITY** [2] - 683:6, 696:23
**OPPOSED** [6] - 679:21, 679:24, 698:24, 699:1, 701:19
**OPPOSITE** [1] - 681:14
**OPTION** [1] - 709:1
**OPTIONS** [2] - 692:23, 708:24
**ORDER** [4] - 680:25, 681:4, 687:19, 709:25
**ORDERED** [1] - 680:20
**ORDINANCE** [11] - 674:20, 677:6, 677:12, 677:15, 677:25, 678:2, 678:6, 678:11, 678:14, 698:9
**ORDINANCE** [2] - 703:9, 703:14
**ORDINANCES** [1] - 678:1
**ORIGINAL** [1] - 694:6
**OTHERWISE** [1] - 710:5
**OUSTING** [1] - 676:20
**OWN** [6] - 675:16, 675:17,

683:2, 704:25, 706:4, 707:25
**OWNED** [1] - 683:23
**OWNER** [1] - 674:12, 677:16, 679:22, 687:12, 693:7, 695:11, 695:14, 697:2, 700:20, 700:22, 701:4
**OWNER'S** [2] - 681:22, 700:23
**OWNERS** [6] - 682:6, 683:22, 692:13, 692:18, 695:5, 698:25
**OWNERS'** [1] - 692:15

**P**

**P.M** [2] - 697:19, 711:4
**P.M** [1] - 670:17, 674:2
**PAGE** [1] - 672:7
**PAGE** [4] - 680:18, 680:19, 683:2, 690:15
**PAGE** [1] - 712:11
**PAGES** [1] - 670:9
**PAGES** [1] - 683:18
**PAID** [3] - 678:12, 685:13, 685:21
**PALISADES** [1] - 671:9
**PARADISE** [1] - 681:19
**PARAGRAPH** [2] - 683:2, 683:10
**PARK** [42] - 674:12, 674:22, 677:15, 678:3, 678:11, 678:18, 679:1, 679:8, 679:22, 680:7, 681:8, 682:17, 683:24, 684:13, 686:15, 686:22, 687:2, 687:7, 687:12, 689:15, 689:17, 690:2, 690:7, 690:24, 691:3, 692:13, 692:18, 693:7, 695:5, 695:11, 695:14, 697:2, 698:25, 700:20, 700:22, 700:23, 701:4, 702:2, 702:6, 705:7, 708:3
**PARK** [5] - 681:19, 681:20, 682:10, 682:21
**PARK** [1] - 670:9
**PARK'S** [4] - 680:21, 681:21, 689:14, 705:22
**PARKS** [4] - 682:5, 682:20, 686:14, 692:19
**PART** [2] - 679:12, 703:21
**PARTICULAR** [6] - 674:14, 678:24, 680:24, 681:7, 689:6, 700:7
**PARTIES** [1] - 677:19
**PARTS** [1] - 685:14
**PARTY** [1] - 684:12
**PASS** [1] - 676:17, 677:2, 677:5, 679:25, 681:5, 685:7, 686:5, 686:6, 686:19,

687:15, 695:2
**PASSED** [7] - 679:5, 684:18, 686:10, 688:8, 692:2, 698:9, 703:19
**PASSES** [1] - 675:17
**PASSING** [4] - 678:16, 681:21, 686:24, 696:2
**PAST** [2] - 678:13, 679:8
**PATIENCE** [1] - 709:14
**PAY** [5] - 675:13, 680:13, 687:1, 687:9, 707:7
**PAYMENT** [2] - 679:12, 696:3
**PAYMENTS** [6] - 681:22, 684:18, 685:25, 686:4, 686:6, 692:2
**PER** [3] - 687:1, 694:8
**PERCENT** [18] - 681:1, 685:15, 685:16, 685:19, 685:20, 687:7, 693:25, 694:9, 694:20, 694:25, 695:1, 696:16, 697:4, 702:1, 702:3, 702:8, 702:10
**PERCENTAGE** [1] - 678:8
**PERHAPS** [2] - 675:18, 678:21
**PERIOD** [4] - 690:18, 691:12, 691:13, 693:12
**PERMIT** [1] - 676:4
**PERSON** [4] - 685:1, 698:10, 700:13, 701:14
**PERSPECTIVE** [1] - 695:23
**PHASE** [1] - 694:21
**PHASED** [5] - 694:12, 694:14, 694:15, 706:18, 707:10
**PHASED-IN** [2] - 706:18, 707:10
**PHILIP** [1] - 670:3
**PICK** [3] - 676:1, 692:24, 708:1
**PICKING** [1] - 680:9
**PIECE** [1] - 692:6
**PIECES** [1] - 680:10
**PLACE** [3] - 675:8, 676:12, 678:2
**PLAINTIFF** [10] - 677:16, 685:11, 689:5, 689:6, 690:6, 690:10, 693:17, 696:17, 709:3, 709:15
**PLAINTIFF** [2] - 670:6, 671:3
**PLAINTIFF'S** [12] - 675:1, 676:20, 680:8, 681:14, 686:12, 689:8, 695:22, 695:24, 696:16, 696:21, 697:20, 709:5
**PLAINTIFFS** [3] - 680:5, 685:3, 696:9
**PLUS** [1] - 691:5

**POCKET** [3] - 694:9, 694:10, 704:16
**POINT** [4] - 685:24, 693:20, 704:18, 706:1
**POINTED** [6] - 676:24, 694:21, 695:19, 696:1, 696:4, 696:24
**POINTS** [1] - 696:18
**POLICE** [1] - 709:8
**POLITICALIZATION** [1] - 706:9
**POLITICS** [1] - 693:9
**POPS** [1] - 684:22
**PORTION** [1] - 679:20
**PORTNOI** [4] - 671:5, 710:13, 710:17, 711:2
**POSITION** [2] - 695:24, 703:20
**POSITIVE** [3] - 689:20, 689:23, 690:3
**POSSIBLE** [1] - 683:16
**POSSIBLY** [1] - 699:19
**POST** [1] - 687:19
**POSTURE** [1] - 680:24
**POTENTIAL** [8] - 681:8, 682:11, 690:21, 691:6, 691:7, 691:11, 704:22
**PRACTICE** [2] - 701:11, 707:15
**PRACTICES** [2] - 678:14, 699:3
**PREACHING** [1] - 684:1
**PRECAUTIONS** [1] - 687:25
**PREPONDERANCE** [3] - 689:2, 689:7, 696:8
**PRESENCE** [2] - 674:6, 710:10
**PRESENTED** [1] - 684:6
**PREVAIL** [1] - 679:11
**PREVAILS** [1] - 674:20
**PRICE** [9] - 674:19, 678:8, 678:12, 683:20, 683:25, 684:13, 685:11, 693:3, 694:22
**PRICES** [1] - 678:17
**PRINCIPLES** [1] - 692:11
**PRINT** [1] - 703:25
**PRIVATE** [1] - 676:20
**PROBLEM** [2] - 687:22, 693:16
**PROCEDURAL** [1] - 680:24
**PROCEEDING** [1] - 698:20
**PROCEEDINGS** [1] - 712:10
**PROCEEDINGS** [3] - 674:5, 706:10, 710:9
**PROCESS** [1] - 700:21
**PRODUCE** [1] - 705:23
**PRODUCED** [1] - 691:23

**PRODUCING** [4] - 690:21, 691:6, 691:7, 704:22

**PROFESSOR** [1] - 698:16

**PROFIT** [7] - 674:9, 674:13, 675:9, 677:11, 678:22, 697:2, 699:24

**PROMISED** [1] - 690:15

**PROOF** [3] - 696:8, 696:9, 696:21

**PROP** [1] - 701:8

**PROPER** [1] - 699:7

**PROPERTIES** [3] - 682:3, 684:4, 685:21

**PROPERTIES** [1] - 670:5

**PROPERTY** [16] - 675:6, 675:14, 676:20, 683:8, 684:10, 685:12, 686:2, 686:3, 686:17, 688:18, 691:1, 691:19, 692:6, 693:24, 709:8, 709:9

**PROPERTY'S** [2] - 682:19, 690:19

**PROTECT** [3] - 687:25, 692:12, 694:13

**PROTECTED** [3] - 677:13, 677:19, 697:1

**PROTECTING** [1] - 674:11

**PROTECTS** [1] - 703:24

**PROVE** [2] - 689:1, 689:6

**PROVIDE** [1] - 707:6

**PROVIDED** [1] - 694:3

**PROVISION** [1] - 678:1

**PRUDENT** [1] - 678:14

**PUBLIC** [1] - 670:10

**PUBLISHED** [1] - 701:16

**PULL** [1] - 701:25

**PURCHASE** [7] - 674:18, 678:11, 678:12, 678:17, 684:9, 688:3, 704:5

**PURCHASED** [1] - 679:1

**PURCHASER** [1] - 683:12

**PURCHASING** [2] - 685:13, 692:16

**PURPOSE** [5] - 677:25, 678:19, 685:8, 686:1, 692:10

**PURPOSES** [1] - 678:21

**PURSUANT** [1] - 712:8

**PUT** [6] - 693:18, 702:5, 702:19, 702:20, 704:2, 710:11

**PUTTING** [1] - 706:17

**Q**

**QUALITY** [3] - 686:17, 686:22, 687:3

**QUALITY-WISE** [1] - 686:17

**QUARTER** [3] - 685:15, 687:6, 687:7

**QUICKLY** [3] - 675:2, 693:1, 701:23

**QUOTE** [3] - 690:16, 690:22, 706:6

**R**

**RATE** [2] - 686:3, 687:6

**REACHED** [1] - 710:13

**READ** [3] - 679:13, 700:12, 703:1

**READY** [1] - 704:7

**REAL** [1] - 701:10

**REALLY** [7] - 674:9, 701:8, 701:21, 701:23, 703:18, 707:13, 708:3

**REALTIME** [1] - 712:5

**REASON** [11] - 678:16, 683:21, 684:10, 684:17, 684:22, 684:23, 686:8, 692:14, 696:19, 698:3, 700:8

**REASONABLE** [24] - 674:19, 678:13, 679:22, 680:22, 681:17, 681:24, 684:21, 687:16, 688:12, 692:13, 694:20, 695:18, 695:21, 695:23, 696:3, 697:4, 700:15, 700:19, 701:2, 701:4, 701:14, 706:19, 708:17

**REASONABLENESS** [2] - 685:1, 695:22

**REASONS** [6] - 677:4, 681:16, 685:6, 687:14, 696:4, 709:2

**REBUTTAL** [2] - 696:23, 697:20

**RECEIVE** [1] - 688:25

**RECESS** [2] - 697:19, 711:4

**RECITATION** [1] - 703:1

**RECOMMENDED** [1] - 688:5

**RECONCILE** [1] - 699:19

**RECONSIDER** [1] - 680:20

**RECORD** [4] - 709:20, 710:12, 710:15, 710:18

**RECOVER** [1] - 688:25

**RECOVERY** [1] - 693:4

**REDUCE** [1] - 695:13

**REDUCES** [1] - 695:12

**REFLECTS** [1] - 705:22

**REFUTE** [1] - 685:3

**REGARD** [2] - 690:12, 704:1

**REGARDING** [6] - 677:18, 678:10, 678:22, 681:8, 681:20, 705:14

**REGARDS** [3] - 688:2, 690:1, 696:19

**REGISTER** [1] - 704:14

**REGULARLY** [1] - 698:16

**REGULATIONS** [1] - 712:12

**REGULATORY** [4] - 690:19, 690:22, 691:13, 704:23

**REIMBURSED** [1] - 676:8

**RELATE** [1] - 676:23

**RELATED** [1] - 689:8

**RELATES** [1] - 705:3

**RELATIONSHIP** [1] - 705:3

**RELEVANT** [2] - 674:15, 677:8

**RELIANCE** [1] - 680:2

**RELIED** [4] - 679:8, 680:7, 685:4, 700:10

**RELY** [1] - 683:13

**REMEMBER** [9] - 682:4, 687:11, 687:17, 687:18, 687:20, 688:16, 697:16, 699:13, 708:6

**REMIND** [1] - 699:21

**RENDER** [1] - 697:8

**RENDERED** [1] - 682:21

**RENT** [66] - 674:12, 674:16, 674:23, 677:13, 678:4, 678:19, 678:24, 679:2, 679:3, 679:11, 679:15, 679:17, 679:18, 679:23, 680:1, 681:9, 682:11, 682:15, 682:17, 682:24, 683:6, 683:9, 684:24, 685:9, 686:1, 686:21, 686:22, 687:1, 687:8, 687:10, 687:12, 688:9, 688:22, 689:14, 689:17, 689:23, 689:25, 691:2, 691:4, 692:9, 692:25, 693:22, 693:23, 693:24, 694:6, 694:9, 694:11, 694:17, 694:19, 694:25, 695:2, 697:4, 700:21, 702:16, 705:24, 706:9, 706:18, 706:22, 706:25, 707:4, 707:10, 708:2, 708:5

**RENT** [8] - 683:7, 695:1, 697:10, 698:6, 698:21, 703:9, 703:14, 708:13

**RENT-CONTROLLED** [1] - 686:22

**RENT-SETTING** [1] - 700:21

**RENTAL** [1] - 670:9

**RENTAL** [6] - 685:25, 690:6, 691:11, 705:7, 705:9, 705:17

**RENTAL** [1] - 682:22

**RENTS** [7] - 674:19, 677:19, 678:13, 682:19, 683:13, 689:15, 690:11,

**REGULARLY** [1] - 698:16

691:8, 692:13, 693:1, 694:2, 695:10, 700:22, 705:23, 708:6, 708:8, 708:18

**REPORT** [3] - 705:11, 705:16, 706:5

**REPORTED** [1] - 712:10

**REPORTER** [4] - 670:24, 712:1, 712:6, 712:19

**REPORTER'S** [1] - 670:15

**REPOSSESS** [1] - 675:19

**REPRESENT** [1] - 697:10

**REPRESENTATIVES** [2] - 706:23, 707:2

**REQUEST** [1] - 686:6

**REQUESTED** [2] - 686:20, 694:24

**REQUIRE** [3] - 686:9, 687:23, 693:2

**REQUIRED** [4] - 687:19, 687:25, 699:4, 701:17

**REQUIREMENT** [1] - 684:5

**REQUIREMENTS** [1] - 704:21

**REQUIRES** [1] - 676:18

**RESERVE** [1] - 687:21

**RESIDENTS** [16] - 674:11, 676:18, 677:18, 679:24, 681:22, 681:23, 685:7, 686:7, 686:10, 686:20, 687:2, 688:8, 692:12, 693:6, 694:13, 697:1

**RESOLUTION** [5] - 698:9, 699:11, 699:13, 699:17, 703:20

**RESOLUTIONS** [1] - 679:13

**RESPECTED** [1] - 684:25

**RESPOND** [3] - 696:22, 696:23, 706:16

**REST** [1] - 703:22

**RESTRICTION** [2] - 690:19, 690:20

**RESULT** [2] - 679:25, 688:9

**RETIRED** [1] - 698:15

**RETURN** [8] - 674:12, 677:15, 692:14, 695:14, 697:2, 697:3, 709:14, 710:2

**RETURNS** [1] - 694:3

**REVENUE** [2] - 695:10, 707:7

**REVIEW** [1] - 670:9

**REVIEW** [2] - 680:23, 680:25

**REVIEW** [1] - 682:22

**RIGHTS** [2] - 689:6, 689:8

**RIP** [1] - 704:12

**RIPPING** [1] - 709:7

**RISE** [1] - 710:8

**ROOM** [1] - 670:24

**ROOM** [1] - 680:16

**ROUGHLY** [1] - 685:13
**RULE** [8] - 674:9, 674:11, 674:14, 674:15, 674:18, 674:19, 675:8, 679:4
**RULED** [1] - 699:3
**RULES** [26] - 674:8, 674:21, 678:16, 696:21, 696:25, 697:1, 698:8, 699:9, 701:15, 702:17, 702:22, 702:23, 703:19, 703:21, 703:23, 703:24, 703:25, 704:8, 706:13, 707:17, 707:20, 708:4, 708:12
**RUN** [1] - 694:12
**RUTTER** [1] - 671:8

## S

**SALOMON** [7] - 690:13, 691:7, 691:14, 691:22, 691:24, 705:2, 705:6
**SALOMON'S** [3] - 705:16, 705:21, 706:5
**SAN** [1] - 708:15
**SANTA** [1] - 671:11
**SAT** [1] - 708:23
**SAW** [1] - 706:8
**SCALE** [1] - 696:16
**SCHOOL** [2] - 676:2, 676:12
**SCHOOLS** [1] - 676:6
**SCOUR** [1] - 691:16
**SCREEN** [1] - 701:23
**SECOND** [6] - 674:23, 679:3, 685:17, 688:17, 691:4, 703:4
**SECONDLY** [2] - 689:13, 689:21
**SECTION** [1] - 712:8
**SEE** [3] - 697:18, 697:24, 703:10
**SELL** [3] - 692:25, 693:2, 693:3
**SELLER** [3] - 683:19, 702:3, 702:4
**SELLING** [1] - 690:9
**SEND** [3] - 683:19, 684:5, 684:12
**SENDING** [1] - 684:1
**SENIOR** [2] - 686:15, 698:11
**SENIORS** [1] - 686:25
**SENSE** [7] - 683:16, 683:21, 684:8, 685:6, 686:9, 686:12, 687:15
**SENTENCE** [1] - 682:18
**SERVICE** [34] - 674:10, 674:16, 674:18, 675:9, 677:6, 678:10, 678:17, 679:5, 679:20, 679:22,

679:25, 681:3, 681:6, 681:21, 685:7, 686:2, 686:4, 686:9, 686:24, 687:10, 687:15, 687:21, 687:23, 688:4, 694:6, 695:2, 695:13, 698:25, 700:25, 701:12, 702:18, 707:7, 708:18
**SETTING** [1] - 700:21
**SEVEN** [1] - 704:9
**SEVERAL** [1] - 674:25
**SEVERE** [1] - 676:18
**SHORT** [1] - 697:13
**SHOW** [2] - 704:19, 708:22
**SHOWED** [3] - 690:4, 694:2, 696:25
**SHOWING** [4] - 685:5, 688:19, 690:25, 691:3
**SHOWS** [3] - 685:23, 690:17, 690:24
**SHRINKING** [1] - 692:19
**SIC** [1] - 694:17
**SIDE** [1] - 704:9
**SIGN** [1] - 676:2
**SIGNED** [2] - 699:11, 699:12
**SINGLE** [6] - 698:4, 698:5, 698:6, 698:10, 708:11, 708:12
**SINK** [1] - 675:1
**SIT** [1] - 698:7
**SITTING** [2] - 684:15, 687:17
**SITUATION** [3] - 675:22, 676:15, 685:9
**SIX** [4] - 683:18, 685:15, 687:6
**SIX-AND-A-QUARTER** [2] - 685:15, 687:6
**SIX-AND-AN-EIGHTH** [1] - 685:15
**SKY** [1] - 687:9
**SKY-HIGH** [1] - 687:9
**SLIDE** [6] - 685:10, 699:16, 699:22, 700:16, 703:2, 706:21
**SMALL** [2] - 702:16, 708:5
**SMOKE** [2] - 691:22, 693:16
**SOLEMNLY** [1] - 709:22
**SOMEONE** [4] - 687:5, 702:18, 704:16, 707:14
**SOMEWHAT** [1] - 682:4
**SORRY** [4] - 676:5, 700:1, 710:16, 710:21
**SOUND** [1] - 691:21
**SOUTH** [1] - 671:6
**SPACE** [2] - 694:8, 703:9
**SPACES** [2] - 687:2, 689:22, 690:10
**SPEAKING** [1] - 682:2

**SPECIFIC** [1] - 680:4
**SPEND** [1] - 676:3
**SPENT** [4] - 676:7, 676:8, 676:9, 676:14
**SPRING** [1] - 670:24
**STAFF** [2] - 707:5, 707:11
**STAND** [6] - 677:3, 684:2, 684:15, 687:18, 699:21, 708:24
**STANDARD** [4] - 691:18, 696:8, 701:5, 706:7
**STANDARDS** [1] - 709:11
**STANDS** [3] - 695:6, 698:23, 699:14
**STARK** [1] - 699:14
**START** [2] - 688:5, 690:8
**STARTED** [1] - 693:21
**STARTING** [1] - 688:6
**STATE** [1] - 709:19
**STATEMENT** [7] - 680:12, 683:11, 684:7, 693:21, 698:3, 701:18
**STATEMENTS** [1] - 699:20
**STATES** [4] - 670:1, 712:6, 712:8, 712:13
**STATES** [1] - 678:16
**STAY** [1] - 687:11
**STENOGRAPHICALLY** [1] - 712:10
**STEPHEN** [1] - 671:16
**STEPHENS** [2] - 688:16, 688:18
**STICK** [1] - 690:10
**STILL** [5] - 675:20, 683:16, 689:21, 694:2, 708:22
**STOOD** [1] - 706:23
**STOPPING** [2] - 684:14, 702:11
**STORE** [4] - 704:5, 704:8, 704:12
**STORES** [1] - 704:9
**STORM** [1] - 704:17
**STREET** [6] - 676:1, 676:6, 676:11, 686:15, 687:3, 699:6
**STREET** [1] - 670:24
**STREET** [5] - 671:6, 675:11, 704:4, 704:9
**STUCK** [2] - 692:23, 693:6
**STUFF** [4] - 675:25, 693:10, 693:11, 703:18
**SUBJECT** [3] - 682:20, 688:14, 689:23
**SUBJECTIVE** [2] - 684:22, 696:2
**SUBMITTED** [2] - 697:14, 710:14
**SUBSTANTIAL** [1] - 704:15
**SUBTRACT** [1] - 694:5
**SUDDEN** [2] - 707:10, 708:19

**SUED** [1] - 679:10
**SUFFERED** [1] - 689:10
**SUFFICIENT** [2] - 700:22, 707:6
**SUGGEST** [3] - 701:25, 706:17, 708:22
**SUIT** [1] - 677:20
**SUITE** [2] - 671:10, 671:17
**SUPPORT** [1] - 698:2
**SUPPOSEDLY** [1] - 694:7
**SUSAN** [1] - 671:15
**SWATH** [1] - 675:15
**SWEAR** [2] - 709:17, 709:22
**SWOOP** [2] - 694:10, 694:17

## T

**TABLES** [1] - 675:25
**TALKS** [2] - 680:2, 680:19
**TASK** [1] - 675:3
**TEN** [2] - 697:13, 697:18
**TEN-MINUTE** [1] - 697:13
**TENSE** [1] - 678:13
**TERM** [1] - 695:16
**TERMS** [2] - 685:18, 689:25
**TESTIFIED** [10] - 677:23, 679:9, 682:3, 684:19, 685:1, 688:5, 688:17, 688:23, 689:15, 700:17
**TESTIFY** [5] - 677:9, 682:8, 698:5, 698:19, 698:22
**TESTIMONY** [17] - 684:19, 686:16, 688:2, 690:1, 691:6, 692:18, 694:21, 699:18, 700:2, 701:3, 701:10, 704:20, 704:24, 706:8, 706:21, 707:10, 708:20
**THAT** [3] - 712:7, 712:8, 712:11
**THE** [25] - 671:3, 671:13, 674:7, 697:12, 697:20, 709:17, 709:19, 709:21, 709:22, 710:7, 710:8, 710:11, 710:16, 710:19, 710:22, 710:24, 712:6, 712:7, 712:8, 712:9, 712:10, 712:11, 712:12, 712:13
**THEMSELVES** [1] - 689:1
**THEORY** [1] - 698:18
**THEREFORE** [2] - 690:17, 695:13
**THIRD** [2] - 679:18, 692:5
**THIRDLY** [1] - 690:1
**THIS** [1] - 712:15
**THOMAS** [1] - 671:9
**THREE** [7] - 677:4, 685:6, 687:14, 694:16, 696:11, 696:14, 706:19

**THROWING** [1] - 709:8
**THUMB** [1] - 708:16
**TIPS** [1] - 696:16
**TITLE** [1] - 712:8
**TO** [1] - 712:8
**TODAY** [1] - 676:21
**TOGETHER** [2] - 683:17, 709:23
**TOOK** [3] - 676:16, 685:14, 697:25
**TORPEDO** [3] - 675:5, 680:22, 690:13
**TORPEDOES** [1] - 674:25
**TOSS** [1] - 696:12
**TOTALLY** [1] - 702:17
**TRAILER** [1] - 681:19
**TRANSCRIPT** [3] - 670:15, 712:9, 712:11
**TREATED** [1] - 699:18
**TRIAL** [1] - 670:16
**TRIAL** [10] - 680:20, 681:4, 681:15, 698:5, 699:3, 699:6, 704:25, 706:1, 707:21, 707:24
**TRIED** [4] - 693:18, 701:8, 707:20, 708:15
**TRIPLE** [1] - 708:2
**TROT** [1] - 693:18
**TRUE** [4] - 701:11, 703:12, 706:24
**TRUE** [1] - 712:9
**TRUST** [2] - 697:7, 702:8
**TRUTHFUL** [1] - 682:8
**TRY** [2] - 675:2, 683:19
**TRYING** [4] - 676:9, 680:10, 701:25, 708:23
**TWICE** [1] - 687:1
**TWISTING** [1] - 708:20
**TWO** [10] - 682:12, 685:14, 686:14, 689:17, 691:12, 691:20, 694:24, 699:20, 702:16, 708:14
**TYPE** [1] - 692:20

### U

**U.S** [1] - 670:3
**ULTIMATELY** [1] - 707:16
**UNCOMFORTABLE** [1] - 703:1
**UNDER** [12] - 676:17, 678:13, 678:19, 681:5, 683:7, 687:8, 689:6, 694:2, 695:21, 700:1, 700:17, 708:16
**UNDERLINE** [1] - 683:3
**UNDERTAKEN** [1] - 685:22
**UNDERWATER** [1] - 688:6
**UNDISPUTED** [1] - 693:11
**UNITED** [4] - 670:1, 712:6,

712:8, 712:13
**UNLIKE** [1] - 692:23
**UNOPPOSED** [1] - 684:25
**UNPREDICTABLE** [1] - 682:21
**UNREASONABLE** [6] - 681:17, 684:18, 684:20, 685:5, 688:11, 696:6
**UNUSUAL** [1] - 687:22
**UP** [23] - 683:17, 684:11, 684:16, 684:22, 688:21, 690:9, 691:9, 692:24, 693:25, 695:10, 695:11, 695:12, 696:12, 698:23, 699:7, 701:8, 701:25, 702:5, 704:13, 704:24, 707:25, 708:14
**USEFUL** [1] - 704:4

### V

**VALUE** [13] - 689:14, 689:15, 689:18, 690:7, 690:19, 690:20, 690:24, 691:3, 691:19, 705:4, 705:7, 705:9, 705:17
**VALUES** [1] - 690:9
**VARIOUS** [1] - 685:11
**VERDICT** [4] - 697:8, 709:2, 709:14, 710:1
**VILLA** [1] - 681:19
**VILLAGE** [6] - 679:7, 679:9, 686:14, 686:15, 686:18, 686:23
**VIOLATION** [1] - 675:4
**VISION** [1] - 695:25
**VOLUME** [3] - 670:10, 672:3, 673:3
**VOLVO** [4] - 675:16, 675:18, 675:19, 692:8
**VON** [1] - 671:16
**VOTED** [1] - 699:12
**VS** [1] - 670:7

### W

**WALK** [1] - 704:13
**WANTS** [1] - 675:11
**WARNING** [1] - 682:23
**WEATHER** [1] - 704:17
**WEDNESDAY** [4] - 670:16, 672:3, 673:3, 674:1
**WEEK** [1] - 704:10
**WEEKEND** [1] - 706:11
**WEIGH** [2] - 696:15, 697:6
**WEIGHS** [1] - 696:10
**WEIGHT** [1] - 696:10
**WEISSWASSER** [5] - 685:17, 685:18, 686:3, 701:24, 702:2

**WELL-KNOWN** [1] - 684:24
**WELL-RESPECTED** [1] - 684:25
**WESTERN** [1] - 670:2
**WHEREAS** [1] - 703:4
**WHEREAS** [1] - 703:5
**WHOLE** [2] - 682:11, 690:7
**WIDEN** [1] - 675:11
**WILSHIRE** [1] - 671:9
**WISDOM** [1] - 680:15
**WISE** [1] - 686:17
**WITH** [1] - 712:12
**WITNESS** [10] - 677:3, 684:2, 684:15, 688:17, 698:7, 701:3, 702:25, 708:11, 708:13, 708:24
**WITNESS** [1] - 709:21
**WITNESSES** [2] - 672:5, 672:7
**WITNESSES** [1] - 708:10
**WORD** [3] - 680:4, 695:4, 700:14
**WORDS** [3] - 695:22, 705:20, 706:4
**WORKS** [2] - 702:20, 702:21
**WORTH** [1] - 691:1
**WROTE** [1] - 683:2
**WYNDER** [1] - 671:14

### Y

**YARD** [2] - 675:13, 692:7
**YEAR** [6] - 676:2, 691:1, 691:20, 693:22, 694:4, 694:24
**YEAR** [1] - 707:1
**YEARS** [5] - 691:12, 691:20, 693:17, 694:16, 706:19
**YESTERDAY** [6] - 687:18, 688:23, 690:5, 704:25, 706:11, 707:12
**YOURSELF** [1] - 709:24
**YOURSELVES** [2] - 691:17, 697:17

### Z

**ZERO** [3] - 692:2, 693:13, 702:13
**ZONING** [1] - 676:5

**UNITED STATES DISTRICT COURT**