1          UNITED STATES DISTRICT COURT

2       CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3        HONORABLE PHILIP S. GUTIERREZ, U.S. DISTRICT JUDGE

4

5   COLONY COVE PROPERTIES, LLC, a      )
    Delaware limited liability company, )
6                                       )
                    PLAINTIFF,          )   CASE NO.
7                                       )
          vs.                           )   CV 14-03242-PSG
8                                       )
    CITY OF CARSON, a municipal         )
9   corporation; CITY OF CARSON         )
    MOBILEHOME PARK RENTAL REVIEW BOARD, )  PAGES (1 to 86)
10  a public administrative body; and   )
    DOES 1 to 10, inclusive,            )   VOLUME 1
11                                      )
                    DEFENDANTS.         )
12  _____ )

13

14

15

16              REPORTER'S TRANSCRIPT OF
                     TRIAL DAY 1
17            THURSDAY, APRIL 28, 2016
                     9:07 A.M.
18            LOS ANGELES, CALIFORNIA

19

20

21

22

23  _____

24          MAREA WOOLRICH, CSR 12698, CCRR
            FEDERAL OFFICIAL COURT REPORTER
25         255 EAST TEMPLE STREET, ROOM 181-K
             LOS ANGELES, CALIFORNIA 90012
                 MAREAWOOLRICH@AOL.COM


                  UNITED STATES DISTRICT COURT

1                        **APPEARANCES OF COUNSEL:**

2


3    **FOR THE PLAINTIFF:**

4
         O'MELVENY & MYERS, LLP
5        BY:   DIMITRI D. PORTNOI
         BY:   MATTHEW W. CLOSE
6        400 South Hope Street
         18th Floor
7        Los Angeles, California 90071

8
         GILCHRIST & RUTTER, APC
9        BY:   THOMAS W. CASPARIAN
         Wilshire Palisades Building
10       1299 Ocean Avenue, Suite 900
         Santa Monica, California 90401

11

12   **FOR THE DEFENDANTS:**

13

14       ALESHIRE & WYNDER, LLP
         BY:   JEFFREY MICHAEL MALAWY
15       BY:   JUNE SUSAN AILIN
         BY:   STEPHEN R. ONSTOT
16       18881 Von Karman Avenue, Suite 1700
         Irvine, California 92612

17

18

19

20

21

22

23

24

25

                        **UNITED STATES DISTRICT COURT**

```
 1              LOS ANGELES, CALIFORNIA; THURSDAY, APRIL 28, 2016
 2                          9:07 A.M.
                               ---
 3
 4              THE CLERK:  Calling civil 14-3242, Colony Cove
 5   Properties versus City of Carson.
 6        Counsel, please state your appearances.
 7              MR. CLOSE:  Good morning, Your Honor.  Matthew Close
 8   and Dimitri Portnoi, O'Melveny & Myers, LLP for the plaintiff.
 9              THE COURT:  Good morning.
10              MR. ONSTOT:  Good morning, Your Honor.
11   Stephen Onstot and June Ailin and Jeff Malawy for the
12   defendants.
13              THE COURT:  With regard to the witnesses to be
14   disclosed to the jurors when they come in, I have plaintiff's
15   witness list, the last plaintiff's witness list.  Are these the
16   four that you intend to call solely?
17              MR. CLOSE:  Yes, Your Honor.
18              THE COURT:  Then for the defense I have the joint
19   witness list.  Who should I identify besides the witnesses that
20   plaintiff is calling?  Who should I identify to the jurors?
21              MR. ONSTOT:  Your Honor, that would be
22   Kenneth Baar --
23              THE COURT:  Give me a second.  Okay.  Kenneth Baar.
24              MR. ONSTOT:  James Brabant, John Ellis,
25   Kenneth Freschauf, Mark Hansen, Ann James, and Doug Danny.
```

**UNITED STATES DISTRICT COURT**

```
 1              THE COURT:  I'm sorry.  Doug --
 2              MR. ONSTOT:  Danny, D-a-n-n-y.  He's on page 5 of
 3  the joint --
 4              THE COURT:  I've got it.
 5              MR. ONSTOT:  And Matt Crow is the final one.
 6              THE COURT:  All right.
 7       And then I've received plaintiff's and defendants'
 8  proposed voir dire questions.  I will ask all the questions
 9  submitted.  I will modify slightly the defendants' questions
10  just to, I think, make it a little broader.
11       I want to also know if any of them have -- one of your
12  first questions is what is their understanding of rent control.
13  I would propose also if they have any specialty in that area.
14       And then also the second question, do you think the
15  concept of rent control is unfair, I would prefer to ask if
16  they have strong feelings about rent control, and we'll see
17  both perspectives about what are their thoughts on rent
18  control.  Those are the changes I would make.
19       Also, there were two -- in terms of the preliminary
20  instructions to be given to the jurors, after the jurors were
21  selected, there were two disputed.  One of them was Instruction
22  No. 2, the claims and defenses.  Essentially what I'm going to
23  do is edit the plaintiff's proposed jury instruction that will
24  simply read, "To help you follow the evidence, I will give you
25  a brief summary of the positions of the parties.  Plaintiff,
```

1    Colony Cove Properties, LLC has one claim against Defendants,

2    City of Carson and City of Carson's Mobile Home Park Rental

3    Review Board.

4         "Plaintiff alleges that defendants effected a taking of

5    plaintiff's property without just compensation in violation of

6    the Fifth Amendment to the United States Constitution and

7    Title 42, United States Code Section 1983.

8         "Plaintiff has the burden of proving this claim.

9         "Defendants deny this claim."

10        And then, since the matter is going to the jury, I'm going

11   to give disputed Instruction No. 3 with regard to the burden of

12   proof and the preponderance of evidence.

13        I think that takes care of it from my point of view.

14   Anything else to address before we call jurors?

15             MR. CLOSE:  Yes, Your Honor.  We'd like to address a

16   few housekeeping matters if the Court would indulge.

17        I wanted to see -- we worked closely with defense counsel

18   on getting together a list of admitted facts as part of the

19   meet and confer process.

20        We have -- what's the Court's preference in terms of how

21   to present that to the jury?  I think we've agreed on the form.

22   We proposed it as an exhibit number.  Defense counsel raised is

23   it really an exhibit or evidence.  But we would like a clear

24   record that it's stipulated and in.

25             THE COURT:  Well, I agree with defense counsel.  It

1    would be akin to sending back trial transcripts back there.

2    It's essentially conceded as admitted evidence.

3         So what I would propose, as the proponent of the evidence,

4    the stipulated facts, at some point in their case in chief

5    asked for my permission to read those facts to the jurors and

6    indicate -- I'll indicate to the jurors these are facts that

7    are stipulated to by the parties.  That means the parties agree

8    these facts are true and correct.

9              MR. CLOSE:  Do we want to do that at the start of

10   the case?

11             THE COURT:  Whatever fits in your case.  I'll leave

12   it to you.  If you think it's better at the end of the case or

13   after the first witness, I leave it to you, when do you think

14   it's best for the presentation of your case.

15             MR. CLOSE:  And we've agreed on a paper version of

16   it too that I think both sides agree can be published to the

17   jury.  Okay.

18        We also worked extensively with defense counsel on a -- a

19   large number of the exhibits have been stipulated to both

20   authenticity and admissibility.  It would be our view that

21   right now or at some moment shortly hereafter that we formally

22   admit those into evidence and assure the efficiency of the

23   trial process thereafter.

24             THE COURT:  I would say let's do that right after we

25   pick the jury, I give them preliminary instructions, and we are

1    getting ready to break for lunch.  We'll take care of all the

2    admitted exhibits.

3         Once the document is admitted, just let me know the number

4    so I can take a quick look so I can make sure it actually is

5    admitted.  Then once I've done that, I'll allow you to publish.

6              MR. CLOSE:  That's fine.  Mostly just wanting to

7    make sure we don't have a record issue later of all these

8    exhibits actually being admitted.

9         There is -- we have an Exhibit 108 which is subject to

10   also a request for judicial notice which is the historical

11   prices of the S&P 500 Index.  I don't think its contents are

12   disputed.  I believe there may be a question about is it an

13   exhibit, is it something that's judicially noticed.  And I

14   think there's no dispute it's judicially noticeable.

15        We would just like to resolve that in whatever format the

16   Court wants.  As I said, the content is not disputed.

17             THE COURT:  Is a witness going to refer to the

18   H&P -- the S&P?

19             MR. CLOSE:  Yes.

20             THE COURT:  What witness is going to do that?

21             MR. CLOSE:  The experts.

22             THE COURT:  Before that expert testifies, let's deal

23   with it.

24             MR. CLOSE:  Okay.

25        A couple other housekeeping matters if the Court will

1    indulge me.

2         When does the Court generally prefer to handle the charge

3    conference and the rest of the instructions in the arc of the

4    case?

5              THE COURT:  Probably realistically I'll look at them

6    over the weekend again.  It just depends what else I'm doing,

7    how fast I can get to them.  I mean, certainly we'll get to

8    them -- I'll give you an example.  With sufficient -- it will

9    be probably at the latest the day before -- the afternoon

10   before -- so let's say argument is Thursday morning, Wednesday

11   night so that you have them.  And if you want to show them to

12   the jurors as part of your argument, you'll have that ability.

13   That probably would be the latest.

14             MR. CLOSE:  Certainly -- there's not that many.

15             THE COURT:  There's not that many.

16             MR. CLOSE:  If the Court gets to them earlier, we'd

17   be amenable to coming in Monday to resolving that so we don't

18   have as much --

19             THE COURT:  Unlikely, given the Monday calendar.

20             MR. CLOSE:  There's still time.

21        A couple other housekeeping matters.  We spoke with the

22   CRD regarding jury selection.  Can I just confirm how many

23   prospective jurors the Court puts in the box, and does the

24   Court also conduct voir dire of the jurors -- the standard line

25   of questions, Your Honor?

```
 1              THE COURT:  I will put 14 in the box, 1 through 14.
 2   I only will question -- ask questions of the jurors in the box.
 3       So let's say for a moment, assuming that there aren't any
 4   challenges for cause, so let's say three peremptories a side,
 5   then if both parties exercise all three peremptories, so it
 6   will be eight for the jurors.  If for some reason somebody
 7   doesn't exercise a peremptory, it will be the first eight for
 8   the jurors, the first eight.
 9              MR. CLOSE:  So a jury of eight.
10       How does the Court handle peremptories?  Do they announce
11   from counsel table, or does the Court like a conference?
12              THE COURT:  It depends where we are at.  Most likely
13   questioning the 14 jurors will take a little bit of time.
14   Usually what I'll do -- if the time is appropriate, what I
15   would prefer to do is say let's take a 10-minute, 15-minute
16   break, allow you to confer with each other, and then while the
17   jurors are out waiting, we would exercise the peremptory
18   challenges outside their presence.
19       If it goes more quickly, then we'd have a sidebar
20   conference and exercise peremptories at sidebar.  But most
21   likely during the first break.
22              MR. CLOSE:  So it sounds like there's no scenario
23   under which we are calling them out, and therefore I don't need
24   to inquire about the Court's practice with respect to back
25   strikes and the like.
```

1           THE COURT:  No.  We won't do it from the counsel

2   table.  We'll either do it in open court without the jurors not

3   present or at sidebar.

4           MR. CLOSE:  Just rules of the game on time,

5   seven hours a side.  How does the Court handle to the extent

6   there are sidebars or more, you know, objection discussions

7   that take, you know, more than the normal objection of ruling?

8           THE COURT:  If it's your witness, you are on the

9   clock.  Or if it's cross, that cross is on the clock.

10          MR. CLOSE:  Right.  The examining lawyer is on the

11  clock even for the sidebars and --

12          THE COURT:  Exactly.

13          MR. CLOSE:  I assume at the end of each day we'll

14  sync up on the Court's time?

15          THE COURT:  If you ask me and I remember.  You'll

16  have to ask me because I won't remember.

17          MR. CLOSE:  The balls in our court.  I get it.

18      Moving through, when does the Court -- so there are, I

19  think, objections to two of our demonstratives that we plan to

20  use in openings.  We have objections to the defense

21  demonstratives but none of which they've disclosed for use in

22  opening.  Their openings are clean.  There's two of ours that

23  there's an objection to.

24      When in the sequencing would the Court like to resolve

25  that?

1      THE COURT:  We should do it now unless you want your

2  opening interrupted.

3      MR. CLOSE:  I do not.  I do not.

4      THE COURT:  What are they?  Show them to me.

5      MR. CLOSE:  Your Honor, may I approach?

6      THE COURT:  You may.

7      MR. CLOSE:  The two that are on top are the disputed

8  ones.

9      THE COURT:  Okay.  So are these the ultimate numbers

10  of the expert in terms of plaintiff's expert, defense expert,

11  damages calculation?

12      MR. CLOSE:  They are the numbers in their reports.

13  Both reports are stipulated as to authenticity and

14  admissibility.

15      THE COURT:  And you anticipate these numbers will

16  come into evidence?

17      MR. CLOSE:  I anticipate they will as soon as we

18  make a motion at the start of the case to admit all the

19  stipulated exhibits.

20      THE COURT:  And the objection?

21      MS. AILIN:  Good morning, Your Honor.  June Ailin

22  for Colony Cove.

23     We have such a significant issue in this case as to

24  whether there is any liability for damages that any discussion

25  of damages in the opening is inherently argumentative, and it

```
 1    gets worse when you take big pictures and put them up in front

 2    of the jury.  It's argumentative and prejudicial.

 3              THE COURT:  The objection is overruled.

 4         Any other matters?

 5              MR. CLOSE:  Thank you, Your Honor.  I think that

 6    resolves opening statement demonstratives.

 7         And my proposal would be in the mornings we'll go

 8    through -- we have some standing ones to the defendants'

 9    objections, and we'll just disclose the morning of kind of

10    practice.

11         I think I'm down to -- the Court -- we made a motion

12    in limine, plaintiff did, No. 7, with respect to the defense

13    expert Mr. Baar that I took note the Court denied without

14    prejudice.

15              THE COURT:  I'm just thinking with regard to some

16    things, there might be a lack of foundation as to expertise.

17    There may be some lack of foundation as to expertise as you

18    raise that I'm not -- until I hear the preliminary

19    instructions, preliminary testimony, I just don't know.  I

20    don't know.

21              MR. CLOSE:  Okay.

22              THE COURT:  So we'll treat it like any other expert.

23    So if he gives -- goes through his CV and his expertise and the

24    nature of his -- and defense asks a question and you believe

25    it's lack of foundation, expertise, you get up, I'll rule.
```

1       MR. CLOSE:  This expert the issue is, the Court

2   probably recalls, is he has some --

3       THE COURT:  Right.  Whether he can testify as to

4   incorporate the case; right?

5       MR. CLOSE:  Basically here's what Justice Bolin

6   meant when he wrote this Court of Appeal decision.

7       THE COURT:  I don't even know what that's going to

8   look like.  I want to see it.

9       MR. CLOSE:  Okay.

10      THE COURT:  If you want to stand up and object, I'll

11  have it in context.  But I suspect, since Justice Bolin is

12  dead, anyone opining as to what he thinks and never having

13  asked him, it seems a bit odd.

14      MR. CLOSE:  I agree.

15      Now, this is the reason we made the motion in limine

16  early.  It's also sitting there in the report that there will

17  be a --

18      THE COURT:  I don't even know -- they may not

19  solicit it either as well.  I'm on top of what you are saying.

20  I just thought, well, maybe under some scenario it could come

21  in.  I don't know.  But, I mean, there's a couple scenarios in

22  my mind that it could come in.  I needed context.

23      MR. CLOSE:  Understood.  Very well.  I think that

24  exhausts my list.  But let me check with Mr. Portnoi.  Excuse

25  me one second.

1      I assume the Court's practice is the same.  We had another

2  motion in limine with respect about arguing about wealth and

3  those issues.

4           THE COURT:  I agreed with the defense.  It's just

5  overbroad.  So, you know, they were not claiming that they were

6  going to use necessarily the wealth of the individual tenants,

7  but they needed some leeway in terms of explaining some

8  socioeconomics aspects of rent control.  And I thought that was

9  fair game for them.

10      But I felt they were -- the motions and oppositions were

11  two ships crossing in the night not connecting.  So that's why

12  I said denied without prejudice.  I could see some wealth

13  information is obviously going to come in as to your particular

14  principal because he's invested $5 million of his own dollars

15  and he has another mobile home park.  So they are going to know

16  he has some serious cash.  At least from my perspective it's

17  serious cash.  Maybe not --

18           MR. CLOSE:  He'll be here shortly.

19           THE COURT:  So I could see some scenario when it

20  would get prejudicial.  That's what I was thinking, the motion

21  was overbroad.

22           MR. CLOSE:  And I accept that and understood that,

23  and I mostly was clarifying if we do find a point where -- we

24  won't be drawing the Court's ire for objecting on the motion in

25  limine -- notwithstanding the denial of the motion in limine if

1    we think it crosses that line?

2              THE COURT:  Right.  Right.

3              MR. CLOSE:  All right.  I think that's it.

4    Thank you, Your Honor.

5              THE COURT:  All right.  Anything from the defense

6    before we call a jury panel?

7              MR. ONSTOT:  Yes, Your Honor.  Stephen Onstot for

8    the defendants.

9         As the Court recalls, this matter was set for trial

10   originally for April 5th.  And due to the Local Rules and

11   pretrial planning efforts, et cetera, et cetera, we had to

12   prepare well in advance of the trial date with regards to the

13   witnesses and testimony.

14        At that time in the spring, one of our witnesses,

15   Doug Danny, was scheduled to have hip replacement surgery.  Not

16   just hip surgery, hip replacement surgery, and would be

17   unavailable April 5th to testify in person.  So what we did was

18   we planned to use his deposition.

19        Last Wednesday I learned that, because of the two trial

20   continuances and Mr. Danny is now clear to travel and could be

21   here Tuesday morning at 10:00 or whenever Your Honor wants to

22   start proceedings on Tuesday.

23        So he will be testifying live.  I can argue that and the

24   authority for it.  But there's a strong preference for

25   witnesses to testify live.

1          THE COURT:  Is there an objection?

2          MR. CLOSE:  Yes, Your Honor.

3          THE COURT:  Why?

4          MR. CLOSE:  Well, two grounds.  The witness was

5     disclosed as being by deposition.  We were never told of the

6     contingency until last week despite the fact apparently defense

7     had been monitoring -- so first was he was never disclosed.  We

8     did depo designations and I just learned last week.

9        The second ground is it wasn't clear from the discussion

10    here, but when it was presented to me, it was like and wherever

11    we are Tuesday morning, we may call him during your case.

12          THE COURT:  That's -- if you don't stipulate to

13    that, that's not going to happen.  The objection as to him

14    testifying in person is denied, but whose ever -- whose ever

15    case is going, they are the master of the case, and I'm not

16    going to force anybody to interrupt.  If the parties can't

17    agree of taking someone out of order, that's the agreement

18    between the parties.

19        And I don't mean to be negative about that.  If you have a

20    concept of the flow of your case that can't be interrupted for

21    a strategic reason, I understand that.

22          MR. CLOSE:  And that may be a nonissue.

23          THE COURT:  Right.

24          MR. CLOSE:  But in my view just to accommodate this

25    witness who is a third party outside the jurisdiction who wants

```
 1   to be in and out by 10:30, to take a damages expert off the
 2   stand is a bridge too far.
 3                THE COURT:  Okay.
 4                MR. CLOSE:  There's a third issue I have with this
 5   witness now that I know he is going to be a live witness
 6   potentially that I want to at least socialize with the Court.
 7        This witness was the broker for the seller of the property
 8   to our client.  A broker at a big firm, been there forever.
 9   I've now read his deposition.
10        I would say 75 percent of what he testifies to is
11   basically expert opinion on the industry, how to operate
12   mobile home parks, the business over the last 25 years.  He was
13   never disclosed as an expert, never presented as an expert
14   report.
15        So I understand the Court's ruling on his live testimony,
16   but I at least want to be clear now our position is that
17   witness can testify to what he heard, saw, and said, but we are
18   going to --
19                THE COURT:  Meet and confer as to whether or not
20   he's going to testify as to expertise, and we'll talk about it.
21                MR. CLOSE:  Very well.  We will.  Thank you,
22   Your Honor.
23                THE COURT:  Anything else from the defense?
24                MR. ONSTOT:  Nothing else, Your Honor.
25                THE COURT:  Mr. Close, I had a last question, and
```

1    then we'll call a jury panel.  Is there any -- with

2    Judge Nagel, are there any further discussions anticipated, or

3    are the discussions over as far as you know?

4           MR. CLOSE:  I believe they are over.

5           THE COURT:  So that's interesting.  I say it's

6    interesting because we don't know who the jurors are going to

7    be in this case.  As I've read through the -- read through

8    the -- all the materials now, I think I've got a pretty good

9    understanding of the case.  And I frankly have absolutely no

10   idea who is going to win and who is going to lose.  I have

11   none.

12     I certainly wouldn't go to Las Vegas and bet on this case.

13   There was another case I just tried back to back where I looked

14   at both sides, and I said I don't know who is going to win.

15   Each side has its momentum at times and loses momentum.  The

16   other side gains momentum.  I suspect the same will be in this

17   case.

18     So it's kind of strange to have two cases back to back.

19   Usually, right or wrong, you can kind of -- even the litigants

20   may know.  If I try this case ten times, I'll get a defense

21   verdict eight.  If I try this case ten times, I'll win eight

22   times.  This one I don't know.  I just don't know who is going

23   to win.

24     So given that, that's why I said I'm surprised there

25   aren't any ongoing negotiations.  It doesn't seem like a

```
 1    business person or a municipality would be much into gambling.
 2               MR. CLOSE:  I certainly agree with most of what you
 3    said.  Maybe not at the end.  We certainly were engaged --
 4               THE COURT:  I'm not blaming anybody.  It just seems
 5    a business person -- apparently from what I can see and what
 6    I've read looks successful.  A municipality, it just seems
 7    those are not -- maybe not if you are a gambler.  I don't know.
 8    It just seems like these aren't people that are going to go to
 9    Las Vegas and do crazy things.
10               MR. CLOSE:  My client is not a gambler.  And as
11    anyone who reads the paper or watches the news, sometimes
12    government -- sometimes other factors are at work other than,
13    you know, what's maybe business.
14               THE COURT:  What was -- you don't have to tell me.
15    I don't want to talk about anything about mediation.  But today
16    would your drop-dead number be today?  If you don't want to
17    tell me, you don't have to answer the question.  If you want,
18    if you feel comfortable telling me, what would your drop-dead
19    number be today?
20               MR. CLOSE:  It's a package --
21               THE COURT:  If you don't feel comfortable telling
22    me, that's fine.
23               MR. CLOSE:  It's not so simple as that.  Let me put
24    it that way.  There are other variables in play other than
25    just --
```

```
 1            THE COURT:  A number.
 2            MR. CLOSE:  -- a number.  And at one point I thought
 3   Judge Nagle had us quite close.  And then out of respect for
 4   the mediation process and my colleagues on the other side, I
 5   don't want to say any more other than you are preaching to the
 6   choir.
 7            THE COURT:  I'm not preaching to anybody.  I'm just
 8   making observations.  It just seems to me at the end of the
 9   day, if there was an ability to resolve the case -- by next
10   Friday, someone going to be extremely unhappy and happy.
11   There's not going to be a between.  I don't see this case as
12   a -- as jurors going to compromise and do something.  I think
13   somebody is going to win and somebody is going to lose.  So
14   next Friday someone is -- either your entrepreneur or elected
15   officials are going to be unhappy.
16            MR. CLOSE:  I understand that, Your Honor.  That's
17   the -- Judge Nagle certainly, I think, made that argument at
18   least in the sessions I participated in and my client
19   participated in in a compelling fashion.  And, you know, I
20   don't know what more to say other than I'm with you.
21            THE COURT:  Anything from the defense side?  I just
22   made that observation.  I don't want to get into the mediation
23   process, but from your perspective, are the negotiates
24   basically were done, and we are going to move to trial and
25   figure out whether this is going to end up red or black as we
```

 1    roll the roulette wheel?

 2              MS. AILIN:   June Ailin for the defense.

 3        Yes, discussions are over.  Mr. Close's representations on

 4    that is accurate as is his comment that sometimes there are

 5    other considerations besides money.  And that's all I feel at

 6    liberty to say.

 7              THE COURT:   I thought this case was about money.

 8    Either the City pays nothing or the City pays something.  And

 9    so at the end of the day, someone's judgment is going to be way

10    off.

11              MR. CLOSE:   Your Honor, I'm not -- you are right in

12    terms of the judgment in this case.  As the Court is well

13    aware, the dispute arises from certain decisions made by the

14    defendant with respect to their police power over the setting

15    of rents.  And so --

16              THE COURT:   There's ongoing relationships.

17              MR. CLOSE:   I'm sorry?

18              THE COURT:   There's ongoing relationships.

19              MR. CLOSE:   Correct.  My client continues to own the

20    park in the city.

21              THE COURT:   All right.  Let's go ahead and call the

22    jury panel.  Thank you.

23              (A brief recess was taken.)

24              (Prospective jurors enter the courtroom.)

25              THE COURT:   Good morning and welcome to

1   Courtroom 880.  At this time I'm going to ask you to rise

2   again, stand so that the courtroom deputy can administer the

3   oath to you.

4            THE CLERK:  Please raise your right hand.

5        Ladies and gentlemen, do you and each of you solemnly

6   swear that you will make true answers to such questions as may

7   be put to you touching upon your qualifications to serve as

8   trial jurors in the cause now before this Court, so help you

9   God?

10            PROSPECTIVE JURY:  I do.

11            THE CLERK:  Thank you.

12            THE COURT:  Again, good morning ladies and

13   gentlemen.  I want to thank you in advance of your jury service

14   on this case.  All of us understand that jury service can

15   sometimes be inconvenient, but we all appreciate your coming

16   here to give your attention to this case.

17        This morning we are going to select a jury in a civil

18   case.  It's entitled Colony Cove Properties, LLC versus City of

19   Carson and the City of Carson Mobilehome Park Rental Review

20   Board.

21        My name is judge Phillip Gutierrez.  My courtroom deputy

22   is Ms. Hernandez, and my court reporter is Ms. Woolrich.

23        You'll be given our phone numbers later on in the

24   proceedings if you are selected as a juror.  The reason we give

25   you our phone numbers is so, if something comes up, you can

1    call us and let you know what's going on.

2         The other reason we give that number to you is that now

3    that you've been sworn in as jurors in this case, it's

4    important that everybody arrive on time in the mornings or

5    after breaks because we can't get started if somebody is

6    missing.  If someone is missing, everybody has to wait for that

7    person to arrive into the courtroom.  So it's important that

8    everyone arrives on time.

9         At the same time, I want to also tell you that we are also

10   going to respect your time as well.  And we are going to

11   do everything -- the lawyers and I are going to do everything

12   we can to make sure we start on time, that the breaks stay on

13   schedule so we don't waste any of your time.

14        Having made that commitment, sometimes it works

15   beautifully.  Other times it doesn't work so well.  But you

16   need to know that the lawyers and I are doing everything we can

17   to keep the trial going smoothly.

18        If at any point in time you have difficulty hearing me,

19   later on hearing the lawyers or hearing a witness or you are

20   having difficulty seeing something that's being presented on

21   one of the screens, please do something to get my attention.

22        I'm usually looking around the courtroom.  If you raise

23   your hand or put your hand by your ear, I'll be looking around

24   so that I make sure that everybody sees and hears everything

25   that goes on during the case.

1        At this point in time, I'm going to ask some basic

2   questions of everyone as a group.  If the answer is yes to any

3   question that I ask you, please raise your hand.

4        Ms. Hernandez will give you a microphone.  Tell me your

5   name.  Give me a moment to find you on my list, and I'll follow

6   up with whatever the "yes" answer may be.

7        The parties have estimated this case will take

8   approximately four to five days.  So basically we will go

9   Thursday, Friday, Tuesday, Wednesday, Thursday.  By Thursday,

10  the case should be submitted to you for your deliberations.  So

11  that would be next Thursday.  We don't have court on Mondays.

12  And typically our schedule during the trial is 9:00 to 12:00

13  and 1:30 to 4:30.

14       Now that I've given you the schedule of the case taking a

15  little less -- about five days or less, does anyone in the

16  audience have an extreme, extraordinary hardship in staying for

17  this case for that limited period of time?  Please raise your

18  hand if you do.

19       If I can have your name, please.

20            PROSPECTIVE JUROR:  Jamie Weber.

21            THE COURT:  Okay.  Ms. Weber?

22            PROSPECTIVE JUROR:  I help take care of my mom who

23  is disabled, and this cuts into the time I take care of her

24  after work on Tuesdays and Wednesdays.  And I won't be able to

25  get home to help her in time.

```
 1          THE COURT:  What time do you usually get home from
 2  work?
 3          PROSPECTIVE JUROR:  About 5:00.
 4          THE COURT:  So you are out in Ventura.  So you are
 5  worried that, if we stop at 4:30, you won't get home by 5:00.
 6  Okay.  Thank you.
 7      Anybody else?
 8      At this point in time, I'm going to ask counsel to
 9  introduce themselves to the jurors and the persons also at
10  their table.
11          MR. CLOSE:  Good morning.  My name is Matthew Close.
12  With me is Lara Giese, James Goldstein, and Dimitri Portnoi.
13          THE COURT:  Thank you.
14          MR. ONSTOT:  Good morning.  My name is
15  Stephen Onstot, and at counsel table with me is June Ailin and
16  Jeff Malawy.  And behind me is Margaret Rose, Lara Leitner, and
17  John Raymond with the City of Carson.
18          THE COURT:  Mr. Close?
19          MR. CLOSE:  I would also like to introduce my
20  colleague Thomas Casparian that's sitting out there.
21          THE COURT:  There's a couple reasons why I introduce
22  everybody at the outset, including myself.  You may see us out
23  in the hallway.  You may see us down in the cafeteria.  You may
24  see us in the elevator.  And all of us are going to treat you
25  as if you don't exist.  We are not going to acknowledge your
```

```
 1   smiles.  We are not going to respond "good morning," nothing.

 2        And nobody is being rude to you.  Everybody is simply

 3   following my instruction that no one is to have any contact

 4   with you.  So even if you are polite and say "good morning" or

 5   "are we on time" or whatever, they are just going to ignore

 6   you.  Again, no one is being rude.  They are simply following

 7   my instruction.

 8        Also, now that you've been introduced to everyone involved

 9   in the trial, do any of you know anyone or recognize the names

10   of anyone?  Please raise your hands if you do.

11        Okay.  In the back row?

12             PROSPECTIVE JUROR:  Evany Perkins.

13             THE COURT:  Who do you recognize?

14             PROSPECTIVE JUROR:  Mr. Goldstein.

15             THE COURT:  If you would come over to sidebar to

16   discuss it along with the lawyers.

17             (The following was held at sidebar.)

18             THE COURT:  How do you know Mr. Goldstein?

19             PROSPECTIVE JUROR:  I am an avid sports fan and know

20   that he is as well.  I actually follow him on Instagram and

21   Facebook.  I don't know him personally, but I recognize him

22   from --

23             THE COURT:  Is it a blog?

24             PROSPECTIVE JUROR:  Social media.

25             THE COURT:  Social media?
```

1          PROSPECTIVE JUROR:  Yes.  But not personal.

2          THE COURT:  What kinds of sports?

3          PROSPECTIVE JUROR:  Lakers, basketball, NBA.

4          THE COURT:  Like Byron Scott got fired, who is going

5   to be the new coach, things like that?

6          PROSPECTIVE JUROR:  No.  I just know that he is an

7   avid basketball fan because I follow him.  And he is also a

8   designer, and I had some work with models and designing.  So

9   I'm just familiar with some of his work.

10         THE COURT:  Have you ever met him personally?

11         PROSPECTIVE JUROR:  I have not.

12         THE COURT:  Anything about what you've read or

13  interacted with him in social media that would prevent you from

14  being fair in this case?

15         PROSPECTIVE JUROR:  No, sir.

16         THE COURT:  What I mean by "fair" is you are not

17  going to favor Mr. Goldstein because you are both avid

18  basketball fans.

19         PROSPECTIVE JUROR:  No, sir.

20         THE COURT:  Or you are not going to favor him

21  because of what he's written about the Lakers?

22         PROSPECTIVE JUROR:  No, sir.

23         THE COURT:  Okay.  Thank you.

24         (The following was held in open court.)

25         THE COURT:  Did I miss anyone else in the audience?

 1   Any of the persons we introduced?  No other hands have been

 2   raised.

 3       The following witnesses may be called during the course of

 4   this trial:  James Goldstein, Noelle Stephens, Rob Detling,

 5   Peter A. Salomon, Kenneth Baar, James Brabant, John Ellis,

 6   Kenneth Freschauf, Doug Danny, Mark Hansen, Ann James,

 7   Matt Crow.

 8       Do any of the prospective jurors recognize any of the

 9   names of the witnesses that I have just identified?  Please

10   raise your hand if you do.  I don't see any hands.

11       This is a brief statement about this case.  Plaintiff,

12   Colony Cove Property, owns a mobile home park in the City of

13   Carson that is subject to rent control.  This means that the

14   defendants, the City and its Rental Review Board, decide how

15   much monthly rent Colony Cove can charge.

16       Colony Cove claims that shortly after it purchased the

17   mobile home park, the City revised its rent control guidelines

18   and then did not allow Colony Cove to charge enough rent to pay

19   its monthly mortgage and other operating expenses.

20       Colony Cove argues that these rent decisions constituted a

21   taking of its property without just compensation in violation

22   of the Fifth Amendment to the United States Constitution and

23   Title 42 United States Code Section 1983.

24       The City and the Rental Review Board deny this claim.  The

25   City and the Rental Review Board contend that the rent rules

1    never guaranteed the consideration of mortgage interest

2    payments or guaranteed any rent increases.

3         The City also contends that in the years prior to

4    Colony Cove's purchase, rent increases requests by several

5    other mobile home park owners who sought rent increases to

6    cover mortgage interest were denied.  Therefore, the City

7    contends it was unreasonable for Colony Cove to expect a large

8    rent increase to cover mortgage interest.

9         Now that I've read a brief statement of the case, has

10   anyone heard anything about this case or know anything about

11   this case?  Please raise your hand if you do.

12        The gentleman in the back row.

13             PROSPECTIVE JUROR:  Christopher Lofland.

14             THE COURT:  One moment.  Okay, Mr. Lofland, how do

15   you know about this case?

16             PROSPECTIVE JUROR:  I believe this was covered on

17   the news a few months ago.

18             THE COURT:  It was --

19             PROSPECTIVE JUROR:  I believe it was covered on the

20   news a few months ago.

21             THE COURT:  And do you remember, was it on TV,

22   was it in the newspaper?

23             PROSPECTIVE JUROR:  It was on television.

24             THE COURT:  It was on television.  And do you

25   remember what network it was on?

1          PROSPECTIVE JUROR:  Honestly I don't.

2          THE COURT:  Did you watch the story about it?

3          PROSPECTIVE JUROR:  I briefly -- I watched the story

4     for -- it was about a minute run I believe they had on it.

5          THE COURT:  It was --

6          PROSPECTIVE JUROR:  It was about a minute run the

7     news had on it.

8          THE COURT:  Okay.  After seeing what you saw, did

9     you form any opinions about the dispute?

10         PROSPECTIVE JUROR:  Not at that point.

11         THE COURT:  Okay.  At any point after?

12         PROSPECTIVE JUROR:  Never really thought about it.

13    It just sounded familiar once it was brought up here.

14         THE COURT:  Okay.  Is there anything about what you

15    saw during that news story that would prevent you from being

16    fair to both sides?

17         PROSPECTIVE JUROR:  I don't think there is.

18         THE COURT:  All right.  Thank you.

19       Anyone else?

20       We will now begin selecting the jury.  In the trial of

21    this case, each side is entitled to have a fair, unbiased, and

22    unprejudiced jury.  The purpose of the jury is to find and

23    determine the facts.

24       Under our system of justice, you are the sole judges of

25    the facts.  The goal of jury selection is to choose jurors who

can be fair and impartial to both sides in this case and who
will be able to decide the questions presented to them based
solely on the evidence presented during the course of the
trial.

If there's any fact or any reason why any of you might be
biased or prejudiced in any way, you must disclose those facts
or reasons when you are asked to do so.  It is your duty to
make such a disclosure.

During jury selection, the Court will ask you about your
background, experience, your state of mind to help us determine
whether or not you are qualified to be a juror in this case.
Qualified simply means that you will be a fair and impartial
juror and that you can decide the case based on the evidence
presented in the courtroom and on nothing else.

There's no such thing as a right or a wrong answer.
Answers are only complete or incomplete.

At this point I'm going to ask Ms. Hernandez to call the
first 14 jurors into the jury box.  When your name is called,
take a seat into the jury box.  The first person called will
take a seat in Seat No. 1 which is the back row closest to the
audience.  Then the jurors will fill in in the seats behind
them.  The ninth juror will take a seat in the front row
closest to the audience, filling in the following jurors until
the 14th seat.

PROSPECTIVE JUROR:  Can you please repeat that?

1          THE COURT:  I will in a sec.

2      Again, the jurors will sit in the jury box that are

3  called.  The first person called sits in Seat No. 1 filling in

4  to Seat No. 8.  The ninth person called will sit in the front

5  row sitting in Seat No. 14.

6      Basically all the pressure is on the first person called

7  because you are going to sit in Seat No. 1.  Then after that,

8  just follow the next juror and sit next to them.  If there's a

9  confusion, we'll sort it out.  Don't worry about it.

10     Okay.  Ms. Hernandez?

11         THE CLERK:  Cristine Rodriguez Espinoza,

12  Edna Sofia Dahinten, Evany Joy Perkins, Christopher Lofland,

13  Niloufar Behrouzvazeri, last name B-e-h-r-o-u-z-v-a-z-e-r-i,

14  Allie Perison.

15         THE COURT:  Hold on one second.  Okay.

16         THE CLERK:  Nia Armstrong, Peggy Phillips,

17  Nancy Elizabeth Gama.

18         THE COURT:  Hold on.  No, no, no.  That seat.

19         PROSPECTIVE JUROR #8:  Oh, sorry.

20         THE COURT:  You are Ms. Phillips; correct?

21         PROSPECTIVE JUROR #8:  Yes.

22         THE COURT:  Okay.  Thank you.

23     Go ahead.

24         THE CLERK:  Peggy Alvarez, Samuel Albert Sousa,

25  Peter Tompkins, Devin Michael Bunten, Yonghwa Lee.

1          THE COURT:  Welcome to the jury box.

2      To the jurors sitting out in the audience, please pay

3  close attention to the questions that I ask and the answers

4  that are given because it will be very likely that you are

5  called to sit in and substitute in for one of the jurors

6  sitting in the jury box, and you are going to be asked the same

7  identical questions.  So as you are sitting back there, think

8  about what your answers to the questions would be.

9      Also, if -- none of my questions are intended to pry into

10  any of your personal lives.  But some of the questions may, in

11  fact, be personal to you.  If you believe that blurting out the

12  answer in open court is something you don't want to do, just

13  let me know and we'll go to sidebar like we did a few minutes

14  earlier with the lawyers and discuss whatever the answer may

15  be.

16      I'm going to ask the juror in Seat No. 1 -- you've been

17  given a slip of paper.  If you would answer the questions on

18  the slip of paper for us.

19          PROSPECTIVE JUROR #1:  My name is Cristine Rodriguez

20  Espinoza.  I live in Compton.  I have an associates of science.

21  I am divorced.  I have one child, three years old.  And I don't

22  have any prior jury service.  And no ties to the legal system.

23          THE COURT:  What do you currently do, your

24  occupation?

25          PROSPECTIVE JUROR #1:  I'm a cosmetologist.

```
 1              THE COURT:  And you said you had an AA in science.
 2   Any particular specialty?
 3              PROSPECTIVE JUROR #1:  Respiratory therapy.
 4              THE COURT:  What's the occupation of your former
 5   spouse?
 6              PROSPECTIVE JUROR #1:  Truck driver.
 7              THE COURT:  Thank you.
 8         Juror in Seat No. 2?
 9              PROSPECTIVE JUROR #2:  My name is Edna Sofia
10   Dahinten.  My area of residence is Tarzana, California.  I have
11   a bachelor's degree in business management.  My employer is
12   Aerojet Rocketdyne.  My occupation is senior executive
13   assistant for the engineering department.  I'm married.  We
14   have no children.  My husband's occupation is information
15   technology engineer.  And my prior jury service was criminal,
16   and yes, they reached a verdict.
17              THE COURT:  Was it one criminal case?
18              PROSPECTIVE JUROR #2:  Yes.  Just one.
19              THE COURT:  And what was the charge?
20              PROSPECTIVE JUROR #2:  Theft.
21              THE COURT:  It was a murder case?
22              PROSPECTIVE JUROR #2:  It's been 15 years.  I don't
23   remember well.
24              THE COURT:  But it was criminal?
25              PROSPECTIVE JUROR #2:  Yeah.  And at work we have a
```

```
1    legal department.  So there's lawyers.

2              THE COURT:  Do you interact with the legal

3    department?

4              PROSPECTIVE JUROR #2:  Yes.

5              THE COURT:  Tell me how.

6              PROSPECTIVE JUROR #2:  IP, information -- you know,

7    the IP.

8              THE COURT:  As an engineer, you are developing works

9    that -- meaning copyright?

10             PROSPECTIVE JUROR #2:  Yes.

11             THE COURT:  What kind of works do you --

12             PROSPECTIVE JUROR #2:  I'm in the engineering

13   department.  So we work with rocket science.

14             THE COURT:  And then the work that you do with the

15   lawyers is giving them information so they can apply for

16   copyright protection?

17             PROSPECTIVE JUROR #2:  Yes.

18             THE COURT:  Or patent protection?

19             PROSPECTIVE JUROR #2:  It's my boss, but I do all

20   the administrative.

21             THE COURT:  And have any of the patents ever been --

22   or copyrights, have they ever gone to court?

23             PROSPECTIVE JUROR #2:  Not that I know of.  That,

24   I'm not involved.

25             THE COURT:  But the only interaction that you've had
```

     1    with the legal department is basically with patent or copyright

     2    applications?

     3              PROSPECTIVE JUROR #2:  Yes.

     4              THE COURT:  You mentioned your husband is in

     5    information technology.  Is it for any particular sector or

     6    kind of business or government?

     7              PROSPECTIVE JUROR #2:  No.  It's basically he's a

     8    contractor, and it's for studios.

     9              THE COURT:  Music or movie studios?

    10              PROSPECTIVE JUROR #2:  Movies.

    11              THE COURT:  You told -- what's your degree in?

    12              PROSPECTIVE JUROR #2:  Business management, a

    13    bachelor's in business management.

    14              THE COURT:  Thank you.

    15         Juror in Seat No. 3.

    16              PROSPECTIVE JUROR #3:  My name is Evany Perkins.  I

    17    live in Pasadena.  I have a bachelor's degree in business

    18    management.  I work for the Los Angeles Police Federal

    19    Credit Union.  I'm a vice president.  I'm single.  No children.

    20    No prior jury service.  And my ties would be to the LAPD.

    21              THE COURT:  Are those because they are customers?

    22              PROSPECTIVE JUROR #3:  They are members, and they

    23    are also on our board of directors.

    24              THE COURT:  As a vice president at the credit union,

    25    tell me about the kind work that you do.

1      PROSPECTIVE JUROR #3:  I oversee our branch

2  operations.  I'm responsible for our branches, our call center,

3  and the processing of deceased claims, levies, subpoenas, and

4  trust accounts.

5      THE COURT:  Do -- has any of your work involved

6  loans?

7      PROSPECTIVE JUROR #3:  My staff does do loans.  I'm

8  not responsible for the loan department, but my staff does

9  handle loans.

10      THE COURT:  At some point did you work your way

11  through the loan department?

12      PROSPECTIVE JUROR #3:  No.  I just have some

13  training associated with it.

14      THE COURT:  Tell me a little about your training as

15  it relates to mortgages.

16      PROSPECTIVE JUROR #3:  As it relates to mortgages,

17  the only thing that my teams and I are responsible for is

18  assisting members with submitting their mortgage loan

19  applications.  You have to have certain licensing in order to

20  speak in depth about mortgage loans.  So we don't handle it to

21  that point.

22      And the only other side would be that we notarize

23  documents associated with mortgage loans.

24      THE COURT:  Then most of the loans that are

25  processed at the credit union, most of them are residential?

1            PROSPECTIVE JUROR #3:  Most of them are, yes.

2            THE COURT:  Do you do any commercial lending?

3            PROSPECTIVE JUROR #3:  Very few.

4            THE COURT:  Have you ever been involved in any kind

5    of commercial lending transactions?

6            PROSPECTIVE JUROR #3:  No, sir.

7            THE COURT:  What types of commercial lending is done

8    at the credit union, if you know?

9            PROSPECTIVE JUROR #3:  There have been a couple of

10   apartment buildings and, I believe, a strip mall type of

11   property.

12           THE COURT:  But you didn't work directly on either

13   of those projects?

14           PROSPECTIVE JUROR #3:  No, sir.

15           THE COURT:  All right.  Thank you.

16           PROSPECTIVE JUROR #4:  My name is Chris Lofland.  I

17   live in Castaic, California.  High school education.  I work in

18   the motion picture industry doing construction.  I'm married.

19   Let's see.  My wife, she was a schoolteacher.  I have three

20   children, 18, 20, and 25.  No prior jury service.  And no ties

21   with any of the legal system.

22           THE COURT:  What did your wife teach?

23           PROSPECTIVE JUROR #4:  She taught elementary and

24   middle school.

25           THE COURT:  Working back, what are the 25, 20, and

1    18 year olds doing?

2              PROSPECTIVE JUROR #4:  The 18 year old is not doing

3    much right now.  The 20 year old is doing the same work I do,

4    construction in the studios.  And the 25 year old is a sailor

5    in the Navy.

6              THE COURT:  How long has he been in the Navy?

7              PROSPECTIVE JUROR #4:  Three years.

8              THE COURT:  All right.  Thank you.

9              PROSPECTIVE JUROR #5:  My name is

10   Niloufar Behrouzvazeri.  I live in Reseda.  I have my

11   high school diploma and some college.  I'm an esthetician.  I'm

12   single, and no prior jury service.

13             THE COURT:  Any ties to the legal system?

14             PROSPECTIVE JUROR #5:  No.

15             THE COURT:  What types of classes did you take?  You

16   said you took some college.  Just general ed?

17             PROSPECTIVE JUROR #5:  Just prerequisites, yeah.

18             THE COURT:  Can I follow up with juror in seat

19   No. 2?  I forgot to follow up on a question.

20             PROSPECTIVE JUROR #2:  Yes.

21             THE COURT:  You mentioned you have a degree in

22   business management?

23             PROSPECTIVE JUROR #2:  Yes.

24             THE COURT:  Did you take any coursework as it

25   related to real estate or mortgages or anything like that?

1          PROSPECTIVE JUROR #2:  No.

2          THE COURT:  All right.  Do you have any expertise in

3    real estate or mortgages or things like that?

4          PROSPECTIVE JUROR #2:  No.

5          THE COURT:  Thank you.  Go ahead and pass it on to

6    juror in Seat No. 6.

7          PROSPECTIVE JUROR #6:  I'm Allison Perison.  I live

8    in the Pico/Robertson area.  I have a bachelor in communication

9    arts with a focus in film and television.  I'm single.  I work

10   as an assistant at Creative Arts Agency.  I have no prior jury

11   service, and my dad is a lawyer.

12         THE COURT:  What do you do as an assistant?

13         PROSPECTIVE JUROR #6:  All sorts of stuff.

14         THE COURT:  Whatever is needed?

15         PROSPECTIVE JUROR #6:  Yes.  A lot of meetings,

16   client servicing, things like that.

17         THE COURT:  All right.  What type of law does your

18   dad practice?

19         PROSPECTIVE JUROR #6:  He works at a home builder

20   for D.R. Horton.  He's a risk manager.

21         THE COURT:  All right.  Thank you.

22         PROSPECTIVE JUROR #7:  My name is Nia Armstrong.  I

23   live in Los Angeles.  I have a bachelor's of science degree in

24   health education.  I'm single.  The adults living in the house

25   is both retired.  One is an ultrasound technician and the other

1   is a supervisor for Los Angeles Unified School District.  No

2   children.  Prior jury service, criminal.  It was felony murder.

3        Occupation -- my occupation, I work for Department of

4   Insurance.  I'm a compliance officer in the consumer

5   communications bureau.  And ties to the legal system, my

6   brother is a --

7            THE COURT:  Slow down.  Back up to -- I broke down

8   after you told me what you did with the Department of

9   Insurance.  I'll follow up.  Then I'll follow up to make sure I

10  heard everything.

11      After you told me that you worked for the Department of

12  Insurance -- doing what?

13           PROSPECTIVE JUROR #7:  I'm a compliance officer in

14  the consumer communications bureau.

15           THE COURT:  Okay.  Then any ties to the legal field?

16           PROSPECTIVE JUROR #7:  No.  I don't deal with

17  anybody in our legal department.

18           THE COURT:  So you were a juror on one case?

19           PROSPECTIVE JUROR #7:  It was a criminal case.  It

20  was a felony murder.

21           THE COURT:  Right.  Did that jury reach a verdict?

22           PROSPECTIVE JUROR #7:  No.

23           THE COURT:  Did you actually deliberate on that

24  case?

25           PROSPECTIVE JUROR #7:  Yes.

1           THE COURT:  So it was a hung jury?

2           PROSPECTIVE JUROR #7:  Yes.

3           THE COURT:  Okay.  How long ago was that?

4           PROSPECTIVE JUROR #7:  That was in 2006,

5    October 2006.

6           THE COURT:  What do you do -- what does a compliance

7    officer do?  Tell me about your work.

8           PROSPECTIVE JUROR #7:  We deal more with the

9    consumers, and we try to resolve any issues they may have with

10   their insurance companies, brokers or agents.  And that's

11   dealing with 21 lines of insurance.

12          THE COURT:  So like issues with like pricing or --

13          PROSPECTIVE JUROR #7:  Pricing, claims --

14          THE COURT:  Claims handling?

15          PROSPECTIVE JUROR #7:  Claims handling, underwriting

16   practices.  We don't determine liability.  We just review the

17   files and make sure they didn't violate any codes or

18   regulations.

19          THE COURT:  You mentioned you are living with two

20   adults, both are retired.

21          PROSPECTIVE JUROR #7:  Retired.

22          THE COURT:  One was a supervisor at LAUSD.

23          PROSPECTIVE JUROR #7:  The other one was an

24   ultrasound technician at Kaiser.

25          THE COURT:  All right.  Thank you.

```
 1              PROSPECTIVE JUROR #8:  I'm Peggy Phillips.  I live
 2    in Los Angeles.  I have a bachelor degree in design and
 3    merchandising.  I work for Giorgio Armani.  I'm a senior
 4    manager.  I'm married.  No kids.  No prior jury service.  And
 5    no tie with the legal system.
 6              THE COURT:  Tell me about your work as a senior
 7    manager.
 8              PROSPECTIVE JUROR #8:  I work in a retail
 9    environment shop.
10              THE COURT:  Okay.  Thank you.  If you can pass the
11    microphone to juror in Seat No. 9.
12              PROSPECTIVE JUROR #9:  My name is Nancy Gama.  I
13    live in La Puente.  My highest education is Northwest College.
14    It's a private college.  I work at MV Medical.  My occupation
15    is claims examiner.  My marital status is single.
16              THE REPORTER:  Could you speak up, please.
17              PROSPECTIVE JUROR #9:  My name is Nancy Gama.  I
18    live in La Puente.  Highest education degree is Northwest
19    College.  It's a private college.  My employer is MV Medical.
20    My occupation is claims examiner.  Marital status is single.
21    Occupation living with me is my child, ten years old, a
22    student.  And I have no entities with -- I haven't served as a
23    jury before.
24              THE COURT:  No prior jury service?
25              PROSPECTIVE JUROR #9:  No.
```

```
 1              THE COURT:  I think you said you are a claims

 2   examiner?

 3              PROSPECTIVE JUROR #9:  Yes.

 4              THE COURT:  Tell me about your work.

 5              PROSPECTIVE JUROR #9:  I just process claims, like

 6   medical claims, for --

 7              THE COURT:  For reimbursement?

 8              PROSPECTIVE JUROR #9:  Yeah.

 9              THE COURT:  And you took some college.  Was it just

10   general ed?

11              PROSPECTIVE JUROR #9:  It was for medical billing.

12              THE COURT:  Thank you.

13              PROSPECTIVE JUROR #10:  My name is Peggy Alvarez.  I

14   live in Monterey Park, high school graduate.  I have two jobs.

15   One is an office manager for a clothing manufacturer, and one

16   is working down at Music Center on the evenings and weekends.

17      I am married.  My husband is a playwright.  I have been

18   jury duty for civil and criminal.  And legal system, my father

19   was a police officer.

20              THE COURT:  Okay.  How many criminal cases did you

21   work on?

22              PROSPECTIVE JUROR #10:  You know, I've been on

23   juries probably about five or six times, and male prostitution,

24   workers' comp, there was murder.  Most of them are -- you know,

25   were dropped due to deciding out of court.
```

UNITED STATES DISTRICT COURT

 1                    THE COURT:  Let me ask about the ones -- did you
 2     work on any you actually deliberated?
 3                    PROSPECTIVE JUROR #10:  Yeah.  The male prostitution
 4     and the workers' comp.
 5                    THE COURT:  The prostitution case, did that jury
 6     reach a verdict?
 7                    PROSPECTIVE JUROR #10:  Yes.
 8                    THE COURT:  The workers' comp, was that a civil
 9     case?
10                    PROSPECTIVE JUROR #10:  Yes.
11                    THE COURT:  Did that jury reach a verdict?
12                    PROSPECTIVE JUROR #10:  Yes.
13                    THE COURT:  What do you do at the Music Center?
14                    PROSPECTIVE JUROR #10:  I supervise the ushering
15     staff at the Ahmanson Theatre.
16                    THE COURT:  Your husband is a playwright.  Any
17     particular genre he works on?
18                    PROSPECTIVE JUROR #10:  History, he loves history.
19                    THE COURT:  Thank you.
20                    PROSPECTIVE JUROR #11:  My name is Samuel Sousa.  I
21     live in Pico Rivera.  I'm a high school graduate currently
22     going to college for my associates in child development.  I
23     work in the fast food industry.  I'm single.  I'm living with
24     my parents.  My mother works at a clothing store and reviews
25     purchase orders, and my father is an interpreter for the DMV as

 1  well as small claims court.

 2      I have no children.  This is my first time on a jury.  So

 3  no prior services.  And the only ties I would have would be my

 4  father being the interpreter.

 5          THE COURT:  After you get your AA in child

 6  development, do you have a particular interest after that once

 7  you have your AA?

 8          PROSPECTIVE JUROR #11:  Yes.  I hope to go into

 9  pediatric nursing and continue my education.

10          THE COURT:  Thank you.

11      Juror in seat 12.

12          PROSPECTIVE JUROR #12:  My name is Peter Tompkins.

13  I live in Malibu.  I have a bachelor's degree in engineering

14  and also an MBA.  I'm retired after 32 years with Citigroup.  I

15  was a vice president both in the technology group and later in

16  the marketing group.

17      I'm married.  My wife is also retired.  She was also a

18  computer programmer until she was laid off during one of the

19  downturns.  And then she turned to full time managing our

20  real estate investments.

21      My brother also lives with us.  He's a car salesman.  I

22  have a 32-year-old boy who is an EMT in Boston.

23      I've been on a couple of juries, the most recent was

24  probably 15 years ago.  It was a civil case.  And then I was an

25  alternate on a jury probably ten years before that that was

1    also a civil case.  And if I was on any others, I don't

2    remember.

3              THE COURT:  The civil case that you actually were

4    on, did that jury reach a verdict?

5              PROSPECTIVE JUROR #12:  It reached a verdict.

6              THE COURT:  Generally, what that was case about?

7              PROSPECTIVE JUROR #12:  It was a person -- it was a

8    relatively well-known person whose image was being used, and he

9    was suing the person who used his image, copyright or whatever.

10             THE COURT:  And you have an MBA?

11             PROSPECTIVE JUROR #12:  Yes.

12             THE COURT:  Any particular specialty that you worked

13   on when you were getting your MBA?

14             PROSPECTIVE JUROR #12:  No.

15             THE COURT:  So when you worked for Citigroup through

16   your -- you said 32 years?

17             PROSPECTIVE JUROR #12:  Yes, sir.

18             THE COURT:  Were you ever involved in mortgage

19   lending?

20             PROSPECTIVE JUROR #12:  I was never involved in

21   mortgage lending, no.

22             THE COURT:  Do you have any expertise in mortgage

23   lending?

24             PROSPECTIVE JUROR #12:  I have a half a dozen

25   commercial loans on the real estate we own.  So yes.

1          THE COURT:  That's what I was going to ask you next

2    about.  You talked about real estate holdings --

3          PROSPECTIVE JUROR #12:  We own six rental

4    properties, about 75 units.

5          THE COURT:  All six together, if you combined them,

6    would be 75 units?

7          PROSPECTIVE JUROR #12:  That's correct.

8          THE COURT:  What cities are the properties located

9    in?

10          PROSPECTIVE JUROR #12:  A small one is in Topanga

11    which is unincorporated LA County.  The other five buildings

12    are all in Venice which is part of the City of Los Angeles.

13          THE COURT:  Are they all rental housing units?

14          PROSPECTIVE JUROR #12:  They are all together 9- to

15    12-unit buildings in the Los Angeles, and the one in Topanga is

16    a mixed use, house and commercial.

17          THE COURT:  The City of Los Angeles has rent

18    control?

19          PROSPECTIVE JUROR #12:  It sure does.

20          THE COURT:  So how long have you had the apartments

21    in Venice?  Over what time period?

22          PROSPECTIVE JUROR #12:  The first one my wife bought

23    in 1990.

24          THE COURT:  The last one --

25          PROSPECTIVE JUROR #12:  The most recent in Venice

```
 1    was in 2005.  The Topanga one we bought about a year ago.
 2              THE COURT:  And Topanga you said was unincorporated?
 3              PROSPECTIVE JUROR #12:  Topanga is unincorporated,
 4    not rent controlled.
 5              THE COURT:  Okay.
 6              PROSPECTIVE JUROR #12:  If that's where you are
 7    going.
 8              THE COURT:  Well, I want to know what your
 9    experience is -- have you ever had -- I'm not sure how the City
10    of Los Angeles works.  So the questions may be a little vague.
11        So in the city, you are -- talking about your Venice
12    properties, if you want to increase the rent, what is the
13    process you go through?
14              PROSPECTIVE JUROR #12:  So there are three or four
15    different processes.  There's an annual increase that we are
16    entitled to.  The City sets a percentage, and we can increase
17    all the rents by that percentage.
18        If a tenant voluntarily vacates or is evicted for
19    nonpayment of rent through an unlawful detainer, we can raise
20    the rent to whatever the market will bear, you know, part of
21    the Costa-Hawkins Bill, whatever it was 15, 20 years ago.
22        We can also request an increase for capital improvements.
23    There's a process through the City that keeps changing, and I'm
24    not real familiar with it because we have a management company
25    that's been handling that for us.
```

1          THE COURT:  So if you needed, let's say, earthquake

2    retrofit, that would be --

3          PROSPECTIVE JUROR #12:  Earthquake retrofit, which

4    funny you should mention that, that's coming up --

5          THE COURT:  Well, it's been in the news.

6          PROSPECTIVE JUROR #12:  -- that's coming up here any

7    year now.

8          THE COURT:  Right.

9          PROSPECTIVE JUROR #12:  They haven't really

10   identified the process for that, but I assume it will be

11   similar to any other capital improvement that we can identify

12   how much it's going to cost and we pass it through.

13       In the case of the earthquake retrofit, I believe we can

14   pass through half of it spread over ten years, and we are the

15   bank for ten years.

16         THE COURT:  Have you ever been in the process -- one

17   of the scenarios you discussed was then you can charge what the

18   market will bear.

19         PROSPECTIVE JUROR #12:  Correct.

20         THE COURT:  Have you ever -- and have you ever gone

21   through that process of renting out a unit and determining what

22   the market will bear?

23         PROSPECTIVE JUROR #12:  Always, yeah.

24         THE COURT:  Okay.  So are there ever disputes

25   between the City and you, as an owner, as to a disagreement as

1   to what the market will bear?

2          PROSPECTIVE JUROR #12:  No.  I'm sorry.  You

3   probably misunderstood my intent.  By what the market will

4   bear, I mean we can advertise and rent it for any price we can

5   get.

6          THE COURT:  Okay.  So there's no regulation --

7          PROSPECTIVE JUROR #12:  The City is not involved in

8   that.

9          THE COURT:  Okay.  So --

10          PROSPECTIVE JUROR #12:  It really is the market, not

11   the City.

12          THE COURT:  Yeah.  So you'll do a survey or whatever

13   or talk to land owners --

14          PROSPECTIVE JUROR #12:  We'll put it on the market,

15   and if it doesn't rent, lower the price.  If it does rent, we

16   weren't asking enough.

17          THE COURT:  Okay.  All right.

18          PROSPECTIVE JUROR #12:  And the last question there

19   about lawyers, I have a number of lawyers as personal friends

20   just through my contact within Malibu and through my contacts

21   with actually the Center Theatre Group here that I'm a donor

22   to.  And I've hired a number of lawyers over the years.

23          THE COURT:  Specifically unlawful --

24          PROSPECTIVE JUROR #12:  Unlawful detainers.  And we

25   were involved in a workers' comp claim against us.  We had to

1    hire a lawyer for that.

2          THE COURT:  I'm going to ask this question of the

3    group later on, but since we are on the subject, do you have

4    what you would view as strong feelings about rent control?

5          PROSPECTIVE JUROR #12:  Yes.

6          THE COURT:  Tell me what your feelings are.

7          PROSPECTIVE JUROR #12:  I probably don't need to.  I

8    think it's horrible.  I think it's -- you know, we almost lost

9    some buildings because of it a number of years ago.  We've come

10   out okay in the long run.  But it's -- I'm a free market kind

11   of guy.

12         THE COURT:  Okay.  So when you -- because you

13   couldn't keep up with expenses, is that what you're saying,

14   when you say lost buildings?

15         PROSPECTIVE JUROR #12:  Yes, sir.  We didn't

16   actually lose buildings, but we came close.  We had one in

17   foreclosure, and we could not keep up with expenses, and we

18   couldn't raise the rents.

19       Let me go back, if I may, to the -- just for what it's

20   worth, I'm also currently on the boards of a couple of

21   nonprofits if that matters in the theater business.

22         THE COURT:  In the theater business?

23         PROSPECTIVE JUROR #12:  Yes.

24         THE COURT:  The City Center --

25         PROSPECTIVE JUROR #12:  And I'm also, you know, a

1   member -- I'm a commissioner on a very inactive commission in

2   the city of Malibu, but it's probably relevant to this.  It's

3   the Mobile Home Rent Stabilization Commission.  It hasn't met

4   in probably 15 years, but I'm still on the books as a member of

5   it.

6           THE COURT:  What was the -- what was the last

7   activity 15 years ago, what was their role?

8           PROSPECTIVE JUROR #12:  It was the Paradise Cove

9   owners were petitioning for a rent increase because the rents

10  didn't cover their expenses.

11          THE COURT:  What was your role as a board member?

12          PROSPECTIVE JUROR #12:  I was a commissioner.  I was

13  one of the five.

14          THE COURT:  Did you ultimately make a decision as to

15  what --

16          PROSPECTIVE JUROR #12:  We made a decision.

17          THE COURT:  Collectively?

18          PROSPECTIVE JUROR #12:  Collectively, yes.

19          THE COURT:  And the last time you did that was

20  15 years ago?

21          PROSPECTIVE JUROR #12:  At least, 15 or 20 years.

22  It's been a long, long time.

23          THE COURT:  Nothing since?

24          PROSPECTIVE JUROR #12:  No.  There have been --

25  there are two mobile home parks in Malibu.  And so there's not

```
1    a whole lot of opportunity for cases, and there haven't been
2    any since then.
3             THE COURT:  But you are still on the commission?
4             PROSPECTIVE JUROR #12:  Yeah.  They still send me
5    this form to fill -- it's a Form 700 to fill out every year,
6    financial disclosure thing, so I must be.
7             THE COURT:  Okay.  We've talked about a lot of your
8    experiences and your feelings about rent control.  One of the
9    things the jurors are going to hear me -- I think you've
10   already heard me say a couple of times, can you be fair.  Can
11   you be fair to --
12            PROSPECTIVE JUROR #12:  I believe so.  I mean, I
13   disagree with rent control, but I understand that it's the law,
14   and I believe I can look at it -- I can look at it impartially
15   based on what you tell us the law is.
16            THE COURT:  That's exactly my point.  I'm going to
17   explain what I mean by "fair" to everybody, all the jurors.
18   And, again, throwing that phrase of "fair and impartial," "fair
19   and impartial."  I keep saying it.
20     But what I mean by fair and impartial you summarized quite
21   nicely, actually, is that fair and impartial means that you are
22   going to decide this case based on what you hear from the
23   witness stand.  You are going to determine what the facts are
24   based on what you see and hear in this courtroom and not based
25   on life experiences or things that you've gone through.
```

1      And then the second thing is that, even if you disagree

2   with it, you are going to follow the law that I instruct you on

3   even though you may fundamentally disagree with the law.

4      So, for example, let's say if this was a marijuana case

5   and you thought marijuana should be legal, but you would still

6   follow the law if this case was about marijuana.  So that kind

7   of illustrates my point.

8      So going back to Mr. Tompkins, can you be a fair and

9   impartial juror to both sides in this case?

10      PROSPECTIVE JUROR #12:  I believe I can, yes, sir.

11      THE COURT:  Okay.  Then also too, just the last

12   point I want to make on this topic is that, you know, we tell

13   you to base your decision based on what happens in this case.

14   But on the other hand, we are not telling you to leave your

15   common sense in the hallway.  We are going to want your common

16   sense in the courtroom.  But we want you to judge this case

17   based on what you see and hear in the courtroom.

18      All right.  Thank you.

19      Juror in Seat No. 13.

20      PROSPECTIVE JUROR #13:  My name is Devin Bunten.  I

21   live in the Palms neighborhood of Los Angeles.  I will, in

22   about six weeks, finish my Ph.D. at UCLA in economics.  And

23   my -- I've been hired -- I haven't started working yet, but

24   I've been hired by the Federal Reserve Board of Governors in

25   DC.  I am single.  I live with an unmarried partner who is also

UNITED STATES DISTRICT COURT

1    a student at UCLA. No children. I have not served on a jury.

2        My ties to the legal system, I'm currently involved as an

3    appellant in a case. It's not -- it's currently before a

4    zoning review board, not the technical legal system, about

5    developer trying to add additional housing units in a complex.

6        And I also interact with and discuss research with my --

7    with some lawyers. My research touches on topics of housing

8    regulation. And so I interact with them to hear what they

9    think about my economic research.

10            THE COURT: Okay. So let's work -- what do you do

11    at the Federal Reserve?

12            PROSPECTIVE JUROR #13: I will be an economist in

13    the consumer and business spending division. The job will

14    forecast -- go into forecasting housing market variables,

15    forecasting how much housing investment, real estate investment

16    there's going to be over the next year, coming years for the

17    Board of Governors.

18            THE COURT: Okay. So how did you develop your

19    expertise that you have in housing? Tell me about your

20    studies, your research, and your areas of expertise.

21            PROSPECTIVE JUROR #13: Yes. So I've been

22    researching urban economics and housing markets at UCLA for

23    almost six years now. My research focuses -- my dissertation

24    focuses on local land use regulations and other -- and other

25    sort of housing market regulations that affect how much people

1    can build, that affect what prices they can set, and then sort

2    of studying what the economic after effects of these laws may

3    be.

4         THE COURT:  Then you said you are -- tell me about

5    your role as an appellant.

6         PROSPECTIVE JUROR #13:  Yeah.  I am part of an

7    organization, a new organization that's trying to find avenues

8    in the political system to increase housing development in the

9    area.  And we occasionally send letters in support of various

10   new projects that are before zoning review boards.

11        And after sending one letter, the project was denied.  And

12   the folks who were trying -- the developer got in contact with

13   me to try to appeal it to the next -- to the next level in the

14   system.  They thought that it would be more -- you know, the

15   people would be more excited about someone in the neighborhood

16   being the sort of center of that appeal rather than the

17   developer themselves.

18        And so that -- so that has been pushed back a couple

19   times, but it should be upcoming to go before the next level in

20   the zoning appeals process.  Yeah.

21        THE COURT:  It's still in the administrative

22   process?  It's not in the court system?

23        PROSPECTIVE JUROR #13:  It's not in the court system

24   yet, that's right.

25        THE COURT:  Do you see yourself -- there are

```
 1    advocates -- do you -- in your role in terms of housing

 2    development, I don't want to pigeonhole you, but is there a

 3    label?  Is there like -- are you -- do you see what I'm getting

 4    at -- I'm trying to get at?

 5              PROSPECTIVE JUROR #13:  In terms of the advocacy?

 6              THE COURT:  Yes.  Like are you a pro --

 7              PROSPECTIVE JUROR #13:  Yeah.

 8              THE COURT:  I mean, all these election slogans we

 9    hear, I'm just trying to think, do you have a slant?

10              PROSPECTIVE JUROR #13:  Yeah.  It's what's been

11    called a YIMBY group.

12              THE COURT:  What the heck is that?

13              PROSPECTIVE JUROR #13:  The opposite of NIMBY.  So

14    it's people who are willing to say yes in my backyard, I want

15    more development in this area rather than the traditional no,

16    not in my backyard.

17              THE COURT:  So just a hypothetical, so if -- let's

18    say a developer was proposing a high density condominium

19    complex on a boulevard, and so you would say -- a NIMBY would

20    say not in my backyard, it's going to destroy my view, it's

21    going to congest the neighborhood.  You would be more likely to

22    say build it?

23              PROSPECTIVE JUROR #13:  That's right.

24              THE COURT:  Okay.  Does any of your work in terms of

25    housing, have you focused on -- so, for example, apartments,
```

```
  1    availability of rent control, any of your research or your

  2    thoughts go into that area?

  3              PROSPECTIVE JUROR #13:  Yeah, not -- I haven't

  4    published anything on it yet.  But one of the topics I'm

  5    interested in researching is how living under a rent control

  6    ordinance can affect households' preferences for other sorts of

  7    regulations within the city.  For instance, how, if you live in

  8    a rent controlled unit, are you more or less likely to be in

  9    favor of other zoning restrictions that might affect use or

 10    future development.

 11              THE COURT:  So it's -- it's not necessarily on rent

 12    control but how -- let's say, if I live in a rent controlled

 13    apartment, how does that affect my view about the development

 14    of the high density condominium complex?

 15              PROSPECTIVE JUROR #13:  That's right.

 16              THE COURT:  But not necessarily on whether rent

 17    control is a good idea or a bad idea?

 18              PROSPECTIVE JUROR #13:  Yeah.  So the sort of

 19    outcome of that would be that affects my opinion about that new

 20    condo development and that affects the housing market as a

 21    whole.  And so yes, it would be studying sort of what the

 22    outcome variables are, you know, how much do house prices

 23    change, for instance, as a result of having rent control in the

 24    first place.

 25              THE COURT:  Do you have any expertise in the area
```

```
 1   of, let's say, financing housing?
 2            PROSPECTIVE JUROR #13:  Not a great deal, no.  I
 3   haven't studied the financing side of things.
 4            THE COURT:  You have sort of a general understanding
 5   of methods of financing maybe just like everyone else would in
 6   terms of --
 7            PROSPECTIVE JUROR #13:  Probably more than everyone
 8   else, but I don't have -- I haven't written a dissertation on
 9   it.
10            THE COURT:  Okay.  All right.  Do you have -- so if
11   you are not going to spend your career at the Federal Reserve,
12   what do you see yourself doing after spending some time at the
13   Federal Reserve?
14            PROSPECTIVE JUROR #13:  Probably -- I mean, I'm
15   interested in spending a career there.
16            THE COURT:  Okay.
17            PROSPECTIVE JUROR #13:  But also going into
18   academia.
19            THE COURT:  All right.  Thank you.
20       Juror in Seat No, 14.
21            PROSPECTIVE JUROR #14:  My name is Yonghwa Kim Lee.
22   I'm living in Pasadena.  Highest education, degree, or
23   training, I'm an MBA concentrating accounting.  I'm a CPA too.
24   I'm working as a financial advisor for New York Life.
25       I'm married.  My husband is a professor in a seminary.  I
```

have two children, one who is a medical doctor resident right

now, and my daughter is a Ph.D. candidate in UCLA.

I do not have prior jury service experience.  I'm tied to

the legal system through my business.  I'm working with the

estate lawyer for my clients.

THE COURT:  Are you a lawyer?

PROSPECTIVE JUROR #14:  No, I'm not.

THE COURT:  You are working with lawyers for your

clients?

PROSPECTIVE JUROR #14:  Yeah, I'm working with the

lawyer for my client.

THE COURT:  Okay.  So tell me about your work at

New York Life then.

PROSPECTIVE JUROR #14:  I'm a financial advisor

doing financial planning, retirement planning, estate planning

with the client to find out their needs and then fill the gap

between what they have currently and what they need.

THE COURT:  So when you say you work with lawyers,

are you working with lawyers, for example, on estate plans or

how to hold properties or things like that?

PROSPECTIVE JUROR #14:  Yes, planning for their

trusts and revocable trusts, those types of things.

THE COURT:  Do any of the -- as a financial advisor,

do any of the investment vehicles that you are working with

involve mortgages?

```
1              PROSPECTIVE JUROR #14:  Many my client has

2    residential property which has a mortgage.  But I do not

3    directly work relating to mortgage things.  Just finding out

4    what they have.

5              THE COURT:  Okay.  Do you have any particular

6    expertise, let's say, in banking or housing?

7              PROSPECTIVE JUROR #14:  I used to be a financial --

8    a chief financial officer in a bank for 30 years, but I do not

9    have any expertise in mortgage lending.

10             THE COURT:  Okay.  And you mentioned -- I believe

11   you said your daughter is a Ph.D. candidate?

12             PROSPECTIVE JUROR #14:  Yes.

13             THE COURT:  What is she studying?

14             PROSPECTIVE JUROR #14:  Candidate for urban

15   planning.

16             THE COURT:  Do you ever talk about urban planning

17   with her?

18             PROSPECTIVE JUROR #14:  Not that much.

19             THE COURT:  Okay.  All right.  Thank you.

20        Just give me one moment.

21        When all of you were sitting in the audience, I read you a

22   brief statement about what this case is about.  Let me read it

23   again, and then I want to ask you questions generally as a

24   group.  If the answer is yes to any question that I ask, raise

25   your hand, give me a moment to mark who said yes, and then I'll
```

 1   follow up with whatever the yes answer would be.

 2        So, as I stated at the beginning of the process, this is

 3   what the case is about.  Plaintiff, Colony Cove Property, owns

 4   a mobile home park in the City of Carson that is subject to

 5   rent control.  This means that the defendants, the City and its

 6   Rental Review Board, decide how much monthly rent Colony Cove

 7   can charge.

 8        Colony Cove claims that shortly after it purchased the

 9   mobile home park, the City revised its rent control guidelines

10   and then did not allow Colony Cove to charge enough rent to pay

11   its monthly mortgage and other operating expenses.

12        Colony Cove argues that these rent decisions constituted a

13   taking of its property without just compensation in violation

14   of the Fifth Amendment to the United States Constitution and

15   Title 42, United States Code Section 1983.

16        The City and the Rental Review Board deny this claim.  The

17   City and the Rental Review Board contend that the rent rules

18   never guaranteed the consideration of mortgage interest

19   payments or guaranteed any rent increases.

20        The City also contends that in the years prior to

21   Colony Cove's purchase, rent increase requests by several other

22   mobile home park owners who sought rental increases to cover

23   mortgage interest were denied.  Therefore, the City contends it

24   was unreasonable for Colony Cove to expect a large rent

25   increase to cover mortgage interest.

1    Does anybody feel, just based on what I said this case is

2  about -- does anyone feel at this point in time that they could

3  not be fair and impartial to both sides?  Does anyone feel that

4  way at this time?  Please raise your hand if you do.

5    Okay.  I didn't see any hands raised.

6    Have any of you ever been involved as a plaintiff or

7  defendant in a lawsuit?

8    Juror in Seat No. 12, you talked about some of it.

9    PROSPECTIVE JUROR #12:  I haven't, but my wife has.

10  She's normally been the plaintiff in unlawful detainers.

11    THE COURT:  Okay.  Anybody else?

12    Okay.  The gentleman behind you in Seat No. 4.

13    PROSPECTIVE JUROR #4:  Same thing with my wife over

14  an Amtrak crash back in the nineties.

15    THE COURT:  Okay.  Thank you.

16    Again, if the answer is yes, raise your hand.  Do any of

17  you or any family members or people close to you live in the

18  city of Carson?

19    No hands have been raised.

20    Do any of you or any family members or people close to you

21  live in a mobile home park?

22    Okay.  Juror in Seat No. 1, you raised your hand.

23    PROSPECTIVE JUROR #1:  My younger sister lives in a

24  mobile home park.

25    THE COURT:  And where is that mobile home park

```
 1   located?
 2             PROSPECTIVE JUROR #1:  In Compton.
 3             THE COURT:  And do you visit her at her house?
 4             PROSPECTIVE JUROR #1:  Yes.  It's about two blocks
 5   away from my house.
 6             THE COURT:  Have you ever talked to her about her
 7   relationship let's say with her landlord?
 8             PROSPECTIVE JUROR #1:  She has had a few issues here
 9   and there but nothing major.
10             THE COURT:  What kinds of issues?
11             PROSPECTIVE JUROR #1:  Just like fixing certain
12   things in the house, and just -- he was like really -- wouldn't
13   tell her -- wouldn't get back to her in time or he would send
14   someone but when she was at school.
15             THE COURT:  Okay.  Has she ever been involved in any
16   disputes about rent?
17             PROSPECTIVE JUROR #1:  When she asked him to fix the
18   restroom sink --
19             THE COURT:  Did she withhold rent?
20             PROSPECTIVE JUROR #1:  No.  He said that he would,
21   but then he didn't.
22             THE COURT:  All right.  Anything about what happened
23   to your sister that would prevent you from being fair in this
24   case?
25             PROSPECTIVE JUROR #1:  No.
```

1          THE COURT:  All right.  Thank you.

2      Did I miss anybody else?  No?  Okay.

3      Do any of you or any family members or people close to you

4  live in rent controlled housing?

5      Okay.  Juror in Seat No. 13?

6          PROSPECTIVE JUROR #13:  I live in a rent controlled

7  apartment in Los Angeles.

8          THE COURT:  Okay.  And have you lived in it while

9  the time you were -- you moved in when you were a student?

10          PROSPECTIVE JUROR #13:  Yeah.

11          THE COURT:  And then are you going to leave to go to

12  DC soon?

13          PROSPECTIVE JUROR #13:  My partner will still live

14  there.

15          THE COURT:  Okay.  I was going to ask later on the

16  group as a whole, but while I have you on the microphone, do

17  you have any strong feelings about rent control?

18          PROSPECTIVE JUROR #13:  Yeah, I do.

19          THE COURT:  What are those feelings?

20          PROSPECTIVE JUROR #13:  I am strongly in favor.

21          THE COURT:  Of rent control?

22          PROSPECTIVE JUROR #13:  Yeah.

23          THE COURT:  Okay.  So we've heard two spectrums;

24  right?  We've heard one juror say against rent control, not a

25  surprise, and the other juror says he's for rent control.

1          Same question.  You heard me talk about the concept of

2     fair and impartial.  Putting aside your personal beliefs and

3     following what you think to be the law in this -- as I explain

4     it to you, can you be a fair and impartial juror to both sides?

5               PROSPECTIVE JUROR #13:  Yeah, I think so.

6               THE COURT:  All right.  Thank you.

7          Have any of you or any family members or people close to

8     you ever had a dispute with a landlord?

9          Okay.  No hands have been raised.

10         Do any of you have any specialty or special knowledge

11    about what rent control is?

12         And juror in Seat No. 12, you raised your hand.  Anything

13    other than we've already discussed?

14              PROSPECTIVE JUROR #12:  Nothing really other than

15    what we've already discussed.

16              THE COURT:  Or anything new I should say?

17              PROSPECTIVE JUROR #12:  Nothing new.

18              THE COURT:  Okay.  Anyone else?

19              PROSPECTIVE JUROR #12:  I've been involved with it

20    for -- obviously it's 30 years.

21              THE COURT:  Okay.  And juror in Seat No. 13, you

22    raised your hand.

23              PROSPECTIVE JUROR #13:  It's sort of a commonly

24    discussed topic in urban economics.  So I have got some special

25    knowledge, I guess, of, you know, sort of what the empirical

```
 1   evidence is on how it affects housing markets, how it affects
 2   tenants and investment.
 3               THE COURT:  Thank you.
 4       We've already heard from one juror.  Does anyone else
 5   think that rent control is unfair to landlords?  Anyone else?
 6       All right.  No hands have been raised.
 7       Are you or any immediate family member landlords?
 8       All right.  Anyone else?
 9       Okay.  Juror in Seat No. 14, also Juror No. 12 raised his
10   hand.  Go ahead, Juror 14.
11               PROSPECTIVE JUROR #14:  I have two four-unit
12   apartments.
13               THE COURT:  Apartments?
14               PROSPECTIVE JUROR #14:  Yeah.
15               THE COURT:  Is it one property or separate
16   properties?
17               PROSPECTIVE JUROR #14:  Two separate properties.
18               THE COURT:  Where are those properties located, what
19   cities?
20               PROSPECTIVE JUROR #14:  One is Los Angeles -- both
21   are Los Angeles.  One is close to the Olympic, the
22   Miracle Mile.  One is in Korea Town.
23               THE COURT:  Okay.  And so, as far as you know, are
24   those properties controlled by rent control?
25               PROSPECTIVE JUROR #14:  Yes.  Both are.
```

```
 1              THE COURT:  Okay.  And do you have any opinions

 2   about rent control?

 3              PROSPECTIVE JUROR #14:  I do not have any specific

 4   opinion on that.

 5              THE COURT:  Do you think it's affected you in a good

 6   way or a bad way, or you just don't have a feeling about it?

 7              PROSPECTIVE JUROR #14:  We just purchased last year,

 8   and then there are tenants in the one building.  So we are

 9   increasing 3 percent every year.  The other one is mostly new

10   tenants so to the market price.

11              THE COURT:  Okay.  Do you think you can be fair to

12   both sides in this case?

13              PROSPECTIVE JUROR #14:  I think so.

14              THE COURT:  All right.  Can I see counsel at

15   sidebar?

16              (The following was held at sidebar.)

17              THE COURT:  If you didn't hear the courtroom deputy

18   when they call, if you want to -- if you are going to say

19   something, tell us your name first so the court reporter can

20   know who is speaking.

21          Is there anything counsel wants me to follow up on with

22   any particular juror that I may have missed?

23              MR. CLOSE:  I don't think so from plaintiff's side.

24              THE COURT:  Mr. Close.

25              MR. CLOSE:  Sorry.
```

1          MR. ONSTOT:  Steve Onstot, nothing from defense

2    side.

3          THE COURT:  All right.  We'll break for about

4    15 minutes.  You can confer among yourselves, and then we'll

5    talk about challenges for cause and peremptory challenges.

6          MR. CLOSE:  Sounds good.  Thank you.

7          MR. ONSTOT:  Thank you.

8          (The following was held in open court.)

9          THE COURT:  Ladies and gentlemen, we are going to

10   take a morning break of just 15 minutes.

11       A couple things I want to say.  The process will move

12   rather quickly.  We are going to know by lunchtime who is going

13   to stay as a juror and who is not going to stay.  So by noon

14   you'll know where you are in the process.

15       A couple other things -- I'll say this before every break,

16   but I just really want to emphasize it this time right now is

17   that don't discuss this case among yourselves or with anyone

18   else.  Don't form or express any opinions about this case until

19   it's finally submitted to you.  That means you've heard all the

20   evidence, you've heard the arguments of the lawyers, and you've

21   heard the legal statement of the law, and you are back there

22   deliberating with jurors.

23       Also don't do any independent research.  Don't consult the

24   Internet.  Don't Google me.  Don't Google the lawyers.  The

25   reason I'm saying -- there's a million other things that you

 1   could do that I don't even understand.  So just don't try to

 2   figure out anything about this case using electronic media or

 3   the computer or social media.

 4       And the reason we say that is just to be fair to both

 5   sides; that is, that basically everything you learn about this

 6   case has to come from this courtroom.  If you are doing things

 7   that the lawyers don't know about, they can't address what

 8   you're -- they can't represent their clients appropriately

 9   because we don't know what's being presented to you.  So don't

10   do any investigation or research on your own.

11       We are going to see you -- for the jurors sitting in the

12   jury box, remember where you are sitting because I'm going to

13   ask you to sit in the same identical seats.  We are going to

14   resume again in 15 minutes.  Reassemble outside.  Don't come in

15   the courtroom.  And in 15 minutes we'll bring you back in.

16   Thank you.

17              THE CLERK:  All rise.

18              (Prospective jury out at 11:18 A.M.)

19              THE COURT:  I'll give you about ten minutes to

20   consult among yourselves.  Then I'll come out, and we'll talk

21   about challenges for cause and peremptories.

22              (A brief recess was taken.)

23              (Outside the presence of the jury.)

24              THE COURT:  All right.  Challenges for cause from

25   the plaintiff?

1              MR. CLOSE:  None, Your Honor.

2              THE COURT:  Challenges for cause, defense?

3              MR. ONSTOT:  Pass for cause, Your Honor.

4              THE COURT:  First peremptory is with the plaintiff.

5              MR. CLOSE:  We'll use our first on Juror No. 1.

6              THE COURT:  All right.

7        The next peremptory is with the defense.

8              MR. ONSTOT:  No. 3, Your Honor.

9              THE COURT:  The next peremptory is with the

10   plaintiff.

11             MR. CLOSE:  Plaintiff, No. 5.

12             THE COURT:  The next peremptory is with the defense.

13             MR. ONSTOT:  Defense passes.

14             THE COURT:  Next peremptory is with the plaintiff.

15             MR. CLOSE:  We pass.  The jury is acceptable.

16             THE COURT:  So the jury would be Jurors 2, 4 --

17   Jurors 2, 4, 6, 7, 8, 9, 10, and 11.  Is that everybody's

18   understanding?

19             MR. CLOSE:  I apologize, Your Honor.  One more time.

20             THE COURT:  2, 4, 6, 7, 8, 9, 10, 11.  Those would

21   be the first eight.

22             MR. CLOSE:  Correct.

23             MR. ONSTOT:  Correct.

24             THE COURT:  Okay.  Let's go ahead and bring the

25   jurors in.

```
 1              MR. CLOSE:  Before we do that, Your Honor, can I ask
 2    a quick question?
 3              THE COURT:  Sure.
 4              MR. CLOSE:  Will we be taking a break before
 5    openings?
 6              THE COURT:  Yes.  I'm going to just swear the jury
 7    in, read some preliminary instructions, break for lunch, lunch,
 8    openings at 1:30.
 9              MR. CLOSE:  Can I ask one other scheduling matter
10    while we're all here?  Our second witness lives in Indio, deep
11    desert.  Our plan had been to call her first tomorrow morning.
12    I think that still makes sense.  But if there were going to be
13    really short openings and a really short cross --
14              THE COURT:  We can break early.  All right.
15              MR. CLOSE:  Okay.  You're not -- okay.
16              THE COURT:  I just have the time frame in my mind.
17    As long as we fill that time frame and don't go -- you know, as
18    long as we don't go into next Friday -- as long as testimony
19    ends when, you know, what I've represented to the jurors, I'm
20    okay.
21              MR. CLOSE:  I think we are going to be fine.  I
22    just -- we might, depending on the cross and stuff, end at 3:40
23    today instead of getting deeper into the forest.
24              THE COURT:  All right.  As long as -- you know, I
25    anticipated in my mind not a lot of testimony today.  So in
```

1    terms of the time, that's all I wanted to do was keep my

2    commitment to the jurors when they'll start their

3    deliberations.

4              MR. CLOSE:  Thank you, Your Honor.

5              THE COURT:  All right.  Let's go ahead and bring the

6    jurors in.

7              (Jury in at 11:32 A.M.)

8              THE COURT:  We are missing one juror.

9              THE CLERK:  I'll go check.

10       Not out there.

11              THE COURT:  Counsel, sidebar.

12              (The following was held at sidebar.)

13              THE CLERK:  She's not in the restroom either.  I

14    checked the restroom.

15              THE COURT:  She's one of the excused jurors.  Can I

16    have counsel's stipulations?  We'll just proceed, and we'll

17    excuse all -- she's one of the ones we are going to excuse and

18    just move on.

19              MR. CLOSE:  That's fine.  Matthew Close, plaintiff.

20              MR. ONSTOT:  That's fine.  Steve Onstot, defense.

21              (The following was held in open court.)

22              THE COURT:  When you are excused on this case, go

23    back to the jury assembly room and let them know that you've

24    been excused.

25         Juror in Seat No. 1, Ms. Espinoza, juror in Seat No. 3,

1  Ms. Perkins, and juror in Seat No. 5, Ms. Behrouvazeri, you

2  are excused.  You may go to the jury assembly room.

3       Okay.  I'm going to ask jurors in Seat Nos. 12, 13, and

4  14, to remain seated and the other jurors to please stand to be

5  sworn in.

6            THE CLERK:  Please raise your right hand.

7            THE COURT:  Well, hold on.  Okay.

8            THE CLERK:  Ladies and gentlemen, do you solemnly

9  swear you will well and truly try the cause now before this

10 court and a true verdict therein render according to the

11 evidence, so help you God?

12           THE JURY:  I do.

13           THE CLERK:  Thank you.

14           THE COURT:  Thank you.

15      Okay.  Now, jurors in Seat Nos. 12, 13, and 14, you are

16 now excused.  Thank you for your jury service.

17      The jurors in the audience, you are also excused on this

18 case.  Thank you for your jury service.  Just go back to the

19 jury assembly room and let them know that you've been excused.

20 Thank you.

21           THE CLERK:  You can leave the questionnaires on the

22 chair.  Thank you.

23           THE COURT:  Ladies and gentlemen, you are now the

24 jury in this case.  It is my duty to instruct you on the law.

25 These instructions are preliminary instructions to help you

understand the principles that apply to civil trials and to
help you understand the evidence as you listen to it.

You will be allowed to keep this set throughout the trial
to which you may refer.  This set of instructions is not to be
taken home and must remain in the jury room when you leave in
the evenings.

At the end of the trial, I will give you a final set of
instructions.  It is the final set of instructions which will
govern your deliberations.  You must not infer from these
instructions or anything I may say or do as indicating that I
have an opinion regarding the evidence or what your verdict
should be.

It is your duty to find the facts from all the evidence in
this case.  To those facts you will apply the law as I give it
to you.  You must follow the law as I give it to you whether
you agree with it or not, and you must not be influenced by any
personal likes or dislikes, opinions, prejudices, or sympathy.
That means that you must decide the case solely on the evidence
before you.  You will recall that you just took an oath to do
so.

In following my instructions, you must follow all of them
and not single out some and ignore others.  They are all
important.  To help you follow the evidence, I will give you a
brief summary of the positions of the parties.

Plaintiff, Colony Cove Properties, LLC, has one claim

1    against defendants, City of Carson and City of Carson

2    Mobilehome Park Rental Review Board.  Plaintiff alleges that

3    defendants effected a taking of plaintiff's property without

4    just compensation of violation of the Fifth Amendment to the

5    United States Constitution and Title 42, United States Code

6    Section 1983.  Plaintiff has the burden of proving this claim.

7    Defendants deny this claim.

8         When a party has the burden of proof on any claim by a

9    preponderance of the evidence, it means you must be persuaded

10   by the evidence that the claim is more probably true than not

11   true.  You should base your decision on all of the evidence

12   regardless of which party presented it.

13        The evidence you are to consider in deciding what the

14   facts are consist of, one, the sworn testimony of any witness;

15   two, the exhibits which are received into evidence; and three,

16   any facts to which the lawyers have agreed.

17        In reaching your verdict, you may consider only the

18   testimony and exhibits received into evidence.  Certain things

19   are not evidence, and you may not consider them in deciding

20   what the facts are.  I will list them for you.

21        One, arguments and statements by lawyers are not evidence.

22   The lawyers are not witnesses.  What they will say in their

23   opening statements, closing arguments, and at other times is

24   intended to help you interpret the evidence, but it is not

25   evidence.  If the facts as you remember them differ from the

1    way the lawyers have stated them, your memory of them controls.

2         Questions and objections by lawyers are not evidence.

3    Attorneys have a duty to their clients to object when they

4    believe a question is improper under the Rules of Evidence.

5    You should not be influenced by the objection or by the Court's

6    ruling on it.

7         Three, testimony that has been excluded or stricken or

8    that you have been instructed to disregard is not evidence and

9    must not be considered.  In addition, sometimes testimony and

10   exhibits are received only for a limited purpose.  When I have

11   given a limiting instruction, you must follow it.

12        Four, anything you may have seen or heard when the Court

13   was not in session is not evidence.  You are to decide the case

14   solely on the evidence received at trial.

15        Some evidence may be admitted for a limited purpose only.

16   When I instruct you that an item of evidence has been admitted

17   for a limited purpose, you must consider it only for that

18   limited purpose and for no other.

19        Evidence may be direct or circumstantial.  Direct evidence

20   is direct proof of a fact such as testimony by a witness about

21   what that witness personally saw or heard or did.

22   Circumstantial evidence is proof of one or more facts from

23   which you could find another fact.

24        You should consider both kinds of evidence.  The law makes

25   no distinction between the weight to be given to either direct

1   or circumstantial evidence.  It is for you to decide how much

2   weight to give to any evidence.

3       There are Rules of Evidence that control what can be

4   received into evidence.  When a lawyer asks a question or

5   offers an exhibit into evidence and a lawyer on the other side

6   thinks that it is not permitted by the Rules of Evidence, that

7   lawyer may object.

8       If I overrule the objection, the question may be answered

9   or the exhibit received.  If I sustain the objection, the

10  question cannot be answered, and the exhibit cannot be

11  received.  Whenever I sustain an objection to a question, you

12  must ignore the question and must not guess about what the

13  answer might have been.

14      Sometimes I may order that evidence be stricken from the

15  record and that you disregard or ignore the evidence.  That

16  means that, when you are deciding the case, you must not

17  consider the evidence that I told you to disregard.

18      In deciding facts in this case, you may have to decide

19  which testimony to believe and which testimony not to believe.

20  You may believe everything a witness says or part of it or none

21  of it.

22      Proof of a fact does not necessarily depend on the number

23  of witnesses who testify about it.  In considering the

24  testimony of any witness, you may take into account:

25      One, the opportunity and ability of the witness to see or

1    hear or know the things testified to; two, the witness's

2    memory; three, the witness's manner while testifying; four, the

3    witness's interest in the outcome of the case and any bias or

4    prejudice; five, whether other evidence contradicted the

5    witness's testimony; six, the reasonableness of the witness's

6    testimony in light of all the other evidence; and seven, any

7    other factor that bears on believability.

8         The weight of the evidence as to a fact does not

9    necessarily depend on the number of witnesses who testify about

10   it.

11        I will now say a few words about your conduct as jurors.

12   First, keep an open mind throughout the trial and do not decide

13   what the verdict should be until you and your fellow jurors

14   have completed your deliberations at the end of the case.

15        Second, because you must decide this case based only on

16   the evidence received in the case and on my instructions as to

17   the law that applies, you must not be exposed to any other

18   information about the case or to the issues it involves during

19   the course of your jury duty.

20        Thus, until the end of the case or unless I tell you

21   otherwise, do not communicate with anyone in any way and do not

22   let anyone else communicate with you in any way about the

23   merits of the case or anything to do with it.  This includes

24   discussing the case in person, in writing, by telephone, or

25   electronic means via e-mail, text message, or any Internet chat

1   room, blog, website or other feature.

2       This applies to communicating with your fellow jurors

3   until I give you the case for your deliberation, and it applies

4   to communicating with anyone else, including your family

5   members, your employer, the media or the press, and the people

6   involved in the trial.  Although you may notify your family and

7   your employer that you have been seated as a juror in this

8   case.  But if you are asked or approached in any way about your

9   jury service or anything about this case, you must respond that

10  you have been ordered not to discuss the matter and to report

11  the contact to the Court.

12      Because you will receive all the evidence and legal

13  instructions you properly may consider to return a verdict, do

14  not read, watch, or listen to any news or media accounts or

15  commentary about the case or anything to do with it.  Do not do

16  any research such as consulting dictionaries, searching the

17  Internet, or using other reference materials.  And do not make

18  any investigation or in any other way try to learn about this

19  case on your own.

20      The law requires these restrictions to ensure the parties

21  have a fair trial based on the same evidence that each party

22  has had an opportunity to address.  A juror who violates these

23  restrictions jeopardizes the fairness of these proceedings and

24  a mistrial could result that would require the entire trial

25  process to start over.  If any juror is exposed to any outside

1    information, please notify the Court immediately.

2         During deliberations, you will have to make your decision

3    based on what you recall of the evidence.  You will not have a

4    transcript of the trial.  I urge you to pay close attention to

5    the testimony as it is given.  If at any time you cannot hear

6    or see the testimony, evidence, questions, or arguments, let me

7    know so that I can correct the problem.

8         If you wish, you may take notes to help you remember the

9    evidence.  If you do take notes, please keep them to yourselves

10   until you and your fellow jurors go to the jury room to decide

11   the case.  Do not let note taking distract you.  When you

12   leave, your notes should be left in the jury room.  No one will

13   read your notes.  They will be destroyed at the conclusion of

14   the case.

15        Whether or not you take notes, you should rely on your own

16   memory of the evidence.  Notes are only to assist your memory.

17   You should not be overly influenced by your notes or those of

18   your fellow jurors.

19        From time to time during the trial, it may become

20   necessary for me to talk with the attorneys out of the hearing

21   of the jury, either by having a conference at the bench when

22   the jury is present in the courtroom or by calling a recess.

23   Please understand that, while you are waiting, we are working.

24        The purpose of these conferences is not to keep relevant

25   information from you but to decide how certain evidence is to

1   be treated under the Rules of Evidence and to avoid confusion

2   and error.  Of course, we will do our -- what we can to keep

3   the number and length of these conferences to a minimum.

4        I may not always grant an attorney's request for a

5   conference.  Do not consider my granting or denying a request

6   for a conference as any indication of my opinion of the case or

7   what your verdict should be.

8        Trials proceed in the following way:  First, each side may

9   make an opening statement.  An opening statement is not

10  evidence.  It is simply an outline to help you understand what

11  that party expects the evidence will show.  A party is not

12  required to make an opening statement.

13       The plaintiff will then present evidence, and counsel for

14  the defendant may cross-examine.  Then the defendant may

15  present evidence, and counsel for the plaintiff may

16  cross-examine.

17       After the evidence has been presented, I will instruct you

18  on the law that applies to the case, and the attorneys will

19  make closing arguments.  After that, you will go to the jury

20  room to deliberate on your verdict.

21       Ladies and gentlemen, we are going to take the lunch

22  break.  I'm going to have you go back to the jury deliberating

23  room.  Ms. Hernandez will take information from you and give

24  our contact information, and then she'll give you some

25  procedures to follow in leaving and coming into the jury room

```
 1    from the hallway.  We'll see you at 1:30.
 2                 THE CLERK:  All rise.
 3                 (Outside the presence of the jury.)
 4                 THE COURT:  Would it be easy to do the exhibits at
 5    the end of the day or right after lunch?  I don't know what --
 6    you only have one witness.  Do you want to just do it after
 7    lunch?
 8                 MR. CLOSE:  We are just going to move them in
 9    en masse; correct?
10                 THE COURT:  Yes.
11                 MR. CLOSE:  I'm happy to do it right before we open
12    or do it now.  That's your choice.
13                 THE COURT:  Ms. Hernandez needs to be present to
14    help me keep it organized.
15                 MR. CLOSE:  Can you hear, Jim?
16         Mr. Goldstein doesn't hear well and is having a struggle
17    in here.
18                 THE COURT:  Wendy, do those work for counsel table?
19                 THE CLERK:  They should all be working, Your Honor.
20                 MR. CLOSE:  If there's a second set, maybe we can
21    try that second set.
22                 THE COURT:  The second set?  Let's see if we can fix
23    it by trying a couple of different sets.  Then we'll see
24    everybody at 1:30, and we'll deal with the exhibits, and then
25    we'll have opening.
```

1              MR. CLOSE:  Thank you, Your Honor.

2              (At 11:53 A.M. the lunch recess was taken.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5                I, MAREA WOOLRICH, FEDERAL OFFICIAL REALTIME COURT

6  REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE

7  CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT

8  TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING

9  IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY

10  REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT

11  THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

12  REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

13

14

15                      DATED THIS  28TH  DAY OF APRIL, 2016.

16

17

18                    /S/ MAREA WOOLRICH

19                    MAREA WOOLRICH, CSR NO. 12698, CRR
                        FEDERAL OFFICIAL COURT REPORTER

20

21

22

23

24

25

# #

**#10** [8] - 44:14, 44:23, 45:4, 45:8, 45:11, 45:13, 45:15, 45:19
**#11** [2] - 45:21, 46:9
**#12** [47] - 46:13, 47:6, 47:8, 47:12, 47:15, 47:18, 47:21, 47:25, 48:4, 48:8, 48:11, 48:15, 48:20, 48:23, 49:1, 49:4, 49:7, 49:15, 50:4, 50:7, 50:10, 50:20, 50:24, 51:3, 51:8, 51:11, 51:15, 51:19, 51:25, 52:6, 52:8, 52:16, 52:24, 53:1, 53:9, 53:13, 53:17, 53:19, 53:22, 53:25, 54:5, 54:13, 55:11, 64:10, 67:15, 67:18, 67:20
**#13** [25] - 55:21, 56:13, 56:22, 57:7, 57:24, 58:6, 58:8, 58:11, 58:14, 58:24, 59:4, 59:16, 59:19, 60:3, 60:8, 60:15, 60:18, 66:7, 66:11, 66:14, 66:19, 66:21, 66:23, 67:6, 67:24
**#14** [18] - 60:22, 61:8, 61:11, 61:15, 61:22, 62:2, 62:8, 62:13, 62:15, 62:19, 68:12, 68:15, 68:18, 68:21, 69:1, 69:4, 69:8, 69:14

# 1

**1** [20] - 9:2, 31:21, 32:4, 32:8, 33:17, 33:20, 34:1, 34:4, 34:7, 64:23, 64:24, 65:3, 65:5, 65:9, 65:12, 65:18, 65:21, 66:1, 72:6, 75:1
**10** [2] - 72:18, 72:21
**10-MINUTE** [1] - 9:16
**108** [1] - 7:10
**10:00** [1] - 15:22
**10:30** [1] - 17:2
**11** [2] - 72:18, 72:21
**11:18** [1] - 71:19
**11:32** [1] - 74:8
**11:53** [1] - 85:3
**12** [6] - 46:12, 64:9, 67:13, 68:10, 75:4, 75:16
**12-UNIT** [1] - 48:16
**12:00** [1] - 24:13
**13** [5] - 55:20, 66:6, 67:22, 75:4, 75:16
**14** [10] - 9:2, 9:14, 31:19, 32:6, 60:21, 68:10, 68:11, 75:5, 75:16
**14TH** [1] - 31:25
**15** [11] - 34:23, 46:25, 49:22, 53:5, 53:8, 53:21, 53:22, 70:5, 70:11, 71:15, 71:16

**15-MINUTE** [1] - 9:16
**18** [3] - 38:21, 39:2, 39:3
**1983** [4] - 5:8, 28:24, 63:16, 77:7
**1990** [1] - 48:24
**1:30** [1] - 24:14, 73:9, 84:2, 84:25

# 2

**2** [26] - 4:23, 34:9, 34:10, 34:19, 34:21, 34:23, 35:1, 35:5, 35:7, 35:11, 35:13, 35:18, 35:20, 35:24, 36:4, 36:8, 36:11, 36:13, 39:20, 39:21, 39:24, 40:2, 40:5, 72:17, 72:18, 72:21
**20** [5] - 38:21, 39:1, 39:4, 49:22, 53:22
**2005** [1] - 49:2
**2006** [2] - 42:5, 42:6
**21** [1] - 42:12
**25** [4] - 17:13, 38:21, 39:1, 39:5

# 3

**3** [16] - 5:12, 36:16, 36:17, 36:23, 37:2, 37:8, 37:13, 37:17, 38:2, 38:4, 38:7, 38:10, 38:15, 69:10, 72:9, 75:1
**30** [2] - 62:9, 67:21
**32** [2] - 46:15, 47:17
**32-YEAR-OLD** [1] - 46:23
**3:40** [1] - 73:23

# 4

**4** [9] - 38:17, 38:24, 39:3, 39:8, 64:13, 64:14, 72:17, 72:18, 72:21
**42** [4] - 5:8, 28:24, 63:16, 77:6
**4:30** [2] - 24:14, 25:6

# 5

**5** [7] - 4:3, 14:15, 39:10, 39:15, 39:18, 72:12, 75:2
**500** [1] - 7:12
**5:00** [2] - 25:4, 25:6
**5TH** [2] - 15:11, 15:18

# 6

**6** [7] - 40:7, 40:8, 40:14, 40:16, 40:20, 72:18, 72:21

# 7

**7** [16] - 12:13, 40:23, 41:14, 41:17, 41:20, 41:23, 42:1, 42:3, 42:5, 42:9, 42:14, 42:16, 42:22, 42:24, 72:18, 72:21
**700** [1] - 54:6
**75** [3] - 17:11, 48:5, 48:7

# 8

**8** [7] - 32:5, 32:20, 32:22, 43:2, 43:9, 72:18, 72:21
**880** [1] - 22:2

# 9

**9** [11] - 43:12, 43:13, 43:18, 44:1, 44:4, 44:6, 44:9, 44:12, 48:15, 72:18, 72:21
**9:00** [1] - 24:13

# A

**A.M** [3] - 71:19, 74:8, 85:3
**AA** [3] - 34:2, 46:6, 46:8
**ABILITY** [3] - 8:13, 20:10, 80:1
**ABLE** [2] - 24:25, 31:3
**ABSOLUTELY** [1] - 18:10
**ACADEMIA** [1] - 60:19
**ACCEPT** [1] - 14:23
**ACCEPTABLE** [1] - 72:16
**ACCOMMODATE** [1] - 16:25
**ACCORDING** [1] - 75:11
**ACCOUNT** [1] - 79:25
**ACCOUNTING** [1] - 60:24
**ACCOUNTS** [2] - 37:5, 81:15
**ACCURATE** [1] - 21:5
**ACKNOWLEDGE** [1] - 26:1
**ACTIVITY** [1] - 53:8
**ADD** [1] - 56:6
**ADDITION** [1] - 78:10
**ADDITIONAL** [1] - 56:6
**ADDRESS** [4] - 5:15, 5:16, 71:8, 81:23
**ADMINISTER** [1] - 22:3
**ADMINISTRATIVE** [2] - 35:21, 57:22
**ADMISSIBILITY** [2] - 6:21, 11:15
**ADMIT** [2] - 6:23, 11:19
**ADMITTED** [8] - 5:19, 6:3, 7:3, 7:4, 7:6, 7:9, 78:16, 78:17
**ADULTS** [2] - 40:25, 42:21
**ADVANCE** [2] - 15:13, 22:14
**ADVERTISE** [1] - 51:5
**ADVISOR** [3] - 60:25, 61:15,

61:24
**ADVOCACY** [1] - 58:6
**ADVOCATES** [1] - 58:2
**AEROJET** [1] - 34:13
**AFFECT** [5] - 57:1, 57:2, 59:7, 59:10, 59:14
**AFFECTED** [1] - 69:6
**AFFECTS** [4] - 59:20, 59:21, 68:2
**AFTERNOON** [1] - 8:10
**AGENCY** [1] - 40:11
**AGENTS** [1] - 42:11
**AGO** [9] - 29:18, 29:21, 42:4, 46:25, 49:2, 49:22, 52:10, 53:8, 53:21
**AGREE** [7] - 6:1, 6:8, 6:17, 13:15, 16:18, 19:3, 76:17
**AGREED** [4] - 5:22, 6:16, 14:5, 77:17
**AGREEMENT** [1] - 16:18
**AHEAD** [6] - 21:22, 32:24, 40:6, 68:11, 72:25, 74:6
**AHMANSON** [1] - 45:16
**AILIN** [2] - 11:22, 21:3
**AILIN** [3] - 11:22, 21:3, 25:16
**AKIN** [1] - 6:2
**ALBERT** [1] - 32:25
**ALLEGES** [2] - 5:5, 77:3
**ALLIE** [1] - 32:15
**ALLISON** [1] - 40:8
**ALLOW** [4] - 7:6, 9:17, 28:19, 63:11
**ALLOWED** [1] - 76:4
**ALMOST** [2] - 52:9, 56:24
**ALTERNATE** [1] - 47:1
**ALVAREZ** [2] - 32:25, 44:14
**AMENABLE** [1] - 8:18
**AMENDMENT** [4] - 5:7, 28:23, 63:15, 77:5
**AMTRAK** [1] - 64:15
**ANGELES** [12] - 36:19, 40:24, 41:2, 43:3, 48:13, 48:16, 48:18, 49:11, 55:22, 66:8, 68:21, 68:22
**ANN** [2] - 4:1, 28:7
**ANNOUNCE** [1] - 9:11
**ANNUAL** [1] - 49:16
**ANSWER** [11] - 19:18, 24:3, 24:7, 31:16, 33:13, 33:15, 33:18, 62:25, 63:2, 64:17, 79:14
**ANSWERED** [2] - 79:9, 79:11
**ANSWERS** [4] - 22:7, 31:17, 33:4, 33:9
**ANTICIPATE** [2] - 11:16, 11:18
**ANTICIPATED** [2] - 18:3, 74:1
**APARTMENT** [3] - 38:11, 59:14, 66:8

**APARTMENTS** [4] - 48:21, 59:1, 68:13, 68:14
**APOLOGIZE** [1] - 72:20
**APPEAL** [2] - 57:14, 57:17
**APPEAL** [1] - 13:7
**APPEALS** [1] - 57:21
**APPELLANT** [2] - 56:4, 57:6
**APPLICATIONS** [2] - 36:3, 37:20
**APPLIES** [4] - 80:18, 81:3, 81:4, 83:19
**APPLY** [3] - 35:16, 76:2, 76:15
**APPRECIATE** [1] - 22:16
**APPROACH** [1] - 11:6
**APPROACHED** [1] - 81:9
**APPROPRIATE** [1] - 9:15
**APPROPRIATELY** [1] - 71:9
**APRIL** [2] - 15:11, 15:18
**ARC** [1] - 8:4
**AREA** [7] - 4:14, 34:11, 40:9, 57:10, 58:16, 59:3, 60:1
**AREAS** [1] - 56:21
**ARGUE** [1] - 15:24
**ARGUES** [2] - 28:21, 63:13
**ARGUING** [1] - 14:3
**ARGUMENT** [3] - 8:11, 8:13, 20:18
**ARGUMENTATIVE** [2] - 12:1, 12:3
**ARGUMENTS** [5] - 70:21, 77:22, 77:24, 82:7, 83:20
**ARISES** [1] - 21:14
**ARMANI** [1] - 43:4
**ARMSTRONG** [2] - 32:17, 40:23
**ARRIVE** [2] - 23:5, 23:8
**ARRIVES** [1] - 23:9
**ARTS** [1] - 40:10
**ARTS** [1] - 40:11
**ASIDE** [1] - 67:3
**ASPECTS** [1] - 14:9
**ASSEMBLY** [3] - 74:24, 75:3, 75:20
**ASSIST** [1] - 82:17
**ASSISTANT** [3] - 34:14, 40:11, 40:13
**ASSISTING** [1] - 37:19
**ASSOCIATED** [2] - 37:14, 37:24
**ASSOCIATES** [2] - 33:21, 45:23
**ASSUME** [3] - 10:14, 14:2, 50:11
**ASSUMING** [1] - 9:4
**ASSURE** [1] - 6:23
**ATTENTION** [4] - 22:17, 23:22, 33:4, 82:5
**ATTORNEY'S** [1] - 83:5

**ATTORNEYS** [3] - 78:4, 82:21, 83:19
**AUDIENCE** [7] - 24:17, 28:1, 31:22, 31:24, 33:3, 62:22, 75:18
**AUTHENTICITY** [2] - 6:21, 11:14
**AUTHORITY** [1] - 15:25
**AVAILABILITY** [1] - 59:2
**AVENUES** [1] - 57:8
**AVID** [3] - 26:20, 27:8, 27:18
**AVOID** [1] - 83:2
**AWARE** [1] - 21:14

## B

**BAAR** [2] - 12:14, 28:6
**BACHELOR** [2] - 40:9, 43:3
**BACHELOR'S** [5] - 34:12, 36:14, 36:18, 40:24, 46:14
**BACKGROUND** [1] - 31:11
**BACKYARD** [3] - 58:15, 58:17, 58:21
**BAD** [2] - 59:18, 69:7
**BALLS** [1] - 10:18
**BANK** [2] - 50:16, 62:9
**BANKING** [1] - 62:7
**BASE** [2] - 55:14, 77:12
**BASED** [12] - 31:3, 31:14, 54:16, 54:23, 54:25, 55:14, 55:18, 64:2, 80:16, 81:22, 82:4
**BASIC** [1] - 24:2
**BASKETBALL** [3] - 27:4, 27:8, 27:19
**BEAR** [5] - 49:21, 50:19, 50:23, 51:2, 51:5
**BEARS** [1] - 80:8
**BEAUTIFULLY** [1] - 23:16
**BECOME** [1] - 82:20
**BEGIN** [1] - 30:21
**BEGINNING** [1] - 63:3
**BEHIND** [3] - 25:17, 31:22, 64:13
**BEHROUZVAZERI** [3] - 32:14, 39:11, 75:2
**BEHROUZVAZERI** [1] - 32:14
**BELIEFS** [1] - 67:3
**BELIEVABILITY** [1] - 80:8
**BENCH** [1] - 82:22
**BEST** [1] - 6:15
**BET** [1] - 18:13
**BETTER** [1] - 6:13
**BETWEEN** [5] - 16:19, 20:12, 51:1, 61:18, 79:1
**BIAS** [1] - 80:4
**BIASED** [1] - 31:7
**BIG** [2] - 12:2, 17:9
**BILL** [1] - 49:22

**BILLING** [1] - 44:12
**BIT** [2] - 9:14, 13:14
**BLACK** [1] - 21:1
**BLAMING** [1] - 19:5
**BLOCKS** [1] - 65:5
**BLOG** [2] - 26:24, 81:2
**BLURTING** [1] - 33:12
**BOARD** [9] - 5:4, 22:21, 28:15, 28:25, 29:1, 63:7, 63:17, 63:18, 77:3
**BOARD** [5] - 36:24, 53:12, 55:25, 56:5, 56:18
**BOARDS** [2] - 52:21, 57:11
**BOLIN** [2] - 13:6, 13:12
**BOOKS** [1] - 53:5
**BOSS** [1] - 35:20
**BOSTON** [1] - 46:23
**BOUGHT** [2] - 48:23, 49:2
**BOULEVARD** [1] - 58:20
**BOX** [9] - 8:24, 9:2, 9:3, 31:19, 31:20, 32:3, 33:2, 33:7, 71:13
**BOY** [1] - 46:23
**BRABANT** [1] - 28:6
**BRANCH** [1] - 37:2
**BRANCHES** [1] - 37:3
**BREAK** [10] - 7:2, 9:17, 9:22, 70:4, 70:11, 70:16, 73:5, 73:8, 73:15, 83:23
**BREAKS** [2] - 23:6, 23:13
**BRIDGE** [1] - 17:3
**BRIEF** [7] - 5:1, 21:24, 28:12, 29:10, 62:23, 71:23, 76:25
**BRIEFLY** [1] - 30:4
**BRING** [3] - 71:16, 72:25, 74:6
**BROADER** [1] - 4:11
**BROKE** [1] - 41:8
**BROKER** [2] - 17:8, 17:9
**BROKERS** [1] - 42:11
**BROTHER** [2] - 41:7, 46:22
**BROUGHT** [1] - 30:14
**BUILD** [2] - 57:2, 58:23
**BUILDER** [1] - 40:20
**BUILDING** [1] - 69:9
**BUILDINGS** [6] - 38:11, 48:12, 48:16, 52:10, 52:15, 52:17
**BUNTEN** [2] - 33:1, 55:21
**BURDEN** [4] - 5:9, 5:12, 77:7, 77:9
**BUREAU** [2] - 41:6, 41:15
**BUSINESS** [14] - 17:13, 19:2, 19:6, 19:14, 34:12, 36:7, 36:13, 36:14, 36:18, 39:23, 52:22, 52:23, 56:14, 61:5
**BYRON** [1] - 27:5

## C

**CAFETERIA** [1] - 25:24
**CALCULATION** [1] - 11:12
**CALENDAR** [1] - 8:20
**CALIFORNIA** [2] - 34:11, 38:18
**CANDIDATE** [3] - 61:3, 62:12, 62:15
**CANNOT** [2] - 79:11, 82:6
**CAPITAL** [2] - 49:23, 50:12
**CAR** [1] - 46:22
**CARE** [4] - 5:14, 7:2, 24:23, 24:24
**CAREER** [2] - 60:12, 60:16
**CARSON** [5] - 5:3, 22:20, 25:18, 28:14, 63:5, 64:19, 77:2
**CARSON'S** [1] - 5:3
**CASE** [96] - 6:5, 6:11, 6:12, 6:13, 6:15, 8:5, 11:19, 11:24, 13:5, 16:12, 16:16, 16:21, 18:8, 18:10, 18:13, 18:14, 18:18, 18:21, 18:22, 20:10, 20:12, 21:8, 21:13, 22:15, 22:17, 22:19, 23:4, 24:1, 24:8, 24:11, 24:15, 24:18, 27:15, 28:12, 29:10, 29:11, 29:12, 29:16, 30:22, 31:2, 31:12, 31:14, 34:18, 34:22, 41:19, 41:20, 41:25, 45:6, 45:10, 46:25, 47:2, 47:4, 47:7, 50:14, 54:23, 55:5, 55:7, 55:10, 55:14, 55:17, 56:4, 62:23, 63:4, 64:2, 65:25, 69:13, 70:18, 70:19, 71:3, 71:7, 74:23, 75:19, 75:25, 76:15, 76:19, 78:14, 79:17, 79:19, 80:4, 80:15, 80:16, 80:17, 80:19, 80:21, 80:24, 80:25, 81:4, 81:9, 81:10, 81:16, 81:20, 82:12, 82:15, 83:7, 83:19
**CASES** [3] - 18:19, 44:21, 54:2
**CASH** [2] - 14:17, 14:18
**CASPARIAN** [1] - 25:21
**CASTAIC** [1] - 38:18
**CENTER** [3] - 44:17, 45:14, 52:25
**CENTER** [3] - 37:3, 51:22, 57:17
**CERTAIN** [5] - 21:14, 37:20, 65:12, 77:19, 83:1
**CERTAINLY** [6] - 8:8, 8:15, 18:13, 19:3, 19:4, 20:18
**CETERA** [2] - 15:12
**CHAIR** [1] - 75:23
**CHALLENGES** [7] - 9:5, 9:19, 70:6, 71:22, 71:25,

72:3
**CHANGE** [1] - 59:24
**CHANGES** [1] - 4:19
**CHANGING** [1] - 49:24
**CHARGE** [7] - 8:3, 28:16, 28:19, 34:20, 50:18, 63:8, 63:11
**CHAT** [1] - 81:1
**CHECK** [2] - 13:25, 74:10
**CHECKED** [1] - 74:15
**CHIEF** [2] - 6:5, 62:9
**CHILD** [3] - 33:22, 43:22, 45:23, 46:6
**CHILDREN** [7] - 34:15, 36:20, 38:21, 41:3, 46:3, 56:2, 61:2
**CHOICE** [1] - 84:13
**CHOIR** [1] - 20:7
**CHOOSE** [1] - 31:1
**CHRIS** [1] - 38:17
**CHRISTOPHER** [2] - 29:14, 32:13
**CIRCUMSTANTIAL** [3] - 78:20, 78:23, 79:2
**CITIES** [2] - 48:9, 68:20
**CITIGROUP** [2] - 46:15, 47:16
**CITY** [5] - 21:21, 49:12, 53:3, 59:8, 64:19
**CITY** [32] - 5:3, 21:9, 22:19, 22:20, 25:18, 28:13, 28:15, 28:18, 28:25, 29:1, 29:4, 29:7, 48:13, 48:18, 49:10, 49:17, 49:24, 51:1, 51:8, 51:12, 52:25, 63:5, 63:6, 63:10, 63:17, 63:18, 63:21, 63:24, 77:2
**CIVIL** [7] - 22:18, 44:19, 45:9, 46:25, 47:2, 47:4, 76:2
**CLAIM** [11] - 5:2, 5:9, 5:10, 28:25, 52:1, 63:17, 77:1, 77:7, 77:8, 77:9, 77:11
**CLAIMING** [1] - 14:6
**CLAIMS** [13] - 4:23, 28:17, 37:4, 42:14, 42:15, 42:16, 43:16, 43:21, 44:2, 44:6, 44:7, 46:2, 63:9
**CLARIFYING** [1] - 14:24
**CLASSES** [1] - 39:16
**CLEAN** [1] - 10:23
**CLEAR** [4] - 5:24, 15:21, 16:10, 17:17
**CLERK** [14] - 22:5, 22:12, 32:12, 32:17, 32:25, 71:18, 74:10, 74:14, 75:7, 75:9, 75:14, 75:22, 84:3, 84:20
**CLIENT** [8] - 17:9, 19:11, 20:19, 21:20, 40:17, 61:12, 61:17, 62:2

**CLIENTS** [4] - 61:6, 61:10, 71:9, 78:4
**CLOCK** [3] - 10:10, 10:12
**CLOSE** [70] - 5:16, 6:10, 6:16, 7:7, 7:20, 7:22, 7:25, 8:15, 8:17, 8:21, 9:10, 9:23, 10:5, 10:11, 10:14, 10:18, 11:4, 11:6, 11:8, 11:13, 11:18, 12:6, 12:22, 13:2, 13:6, 13:10, 13:15, 13:24, 14:19, 14:23, 15:4, 16:3, 16:5, 16:23, 16:25, 17:5, 17:22, 18:5, 19:3, 19:11, 19:21, 19:24, 20:3, 20:17, 21:12, 21:18, 21:20, 25:12, 25:20, 69:24, 70:1, 70:7, 72:2, 72:6, 72:12, 72:16, 72:20, 72:23, 73:2, 73:5, 73:10, 73:16, 73:22, 74:5, 74:20, 84:9, 84:12, 84:16, 84:21, 85:2
**CLOSE** [12] - 18:1, 20:4, 25:19, 33:4, 52:17, 64:18, 64:21, 66:4, 67:8, 68:22, 69:25, 82:5
**CLOSE** [2] - 25:12, 74:20
**CLOSE'S** [1] - 21:4
**CLOSELY** [1] - 5:18
**CLOSEST** [2] - 31:21, 31:24
**CLOSING** [2] - 77:24, 83:20
**CLOTHING** [2] - 44:16, 45:25
**COACH** [1] - 27:6
**CODE** [4] - 5:8, 28:24, 63:16, 77:6
**CODES** [1] - 42:18
**COLLEAGUE** [1] - 25:21
**COLLEAGUES** [1] - 20:5
**COLLECTIVELY** [2] - 53:18, 53:19
**COLLEGE** [6] - 39:12, 39:17, 43:15, 43:20, 44:10, 45:23
**COLLEGE** [2] - 43:14, 43:20
**COLONY** [18] - 5:2, 11:23, 22:19, 28:13, 28:16, 28:17, 28:19, 28:21, 29:5, 29:8, 63:4, 63:7, 63:9, 63:11, 63:13, 63:22, 63:25, 77:1
**COMBINED** [1] - 48:6
**COMFORTABLE** [2] - 19:19, 19:22
**COMING** [6] - 8:18, 22:16, 50:5, 50:7, 56:17, 84:1
**COMMENT** [1] - 21:5
**COMMENTARY** [1] - 81:16
**COMMERCIAL** [5] - 38:3, 38:6, 38:8, 48:1, 48:17
**COMMISSION** [3] - 53:2, 53:4, 54:4
**COMMISSIONER** [2] - 53:2, 53:13

**COMMITMENT** [2] - 23:15, 74:3
**COMMON** [2] - 55:16
**COMMONLY** [1] - 67:24
**COMMUNICATE** [2] - 80:22, 80:23
**COMMUNICATING** [2] - 81:3, 81:5
**COMMUNICATION** [1] - 40:9
**COMMUNICATIONS** [2] - 41:6, 41:15
**COMP** [4] - 44:25, 45:5, 45:9, 52:1
**COMPANIES** [1] - 42:11
**COMPANY** [1] - 49:25
**COMPELLING** [1] - 20:20
**COMPENSATION** [4] - 5:6, 28:22, 63:14, 77:5
**COMPLETE** [1] - 31:17
**COMPLETED** [1] - 80:15
**COMPLEX** [3] - 56:6, 58:20, 59:15
**COMPLIANCE** [3] - 41:5, 41:14, 42:7
**COMPROMISE** [1] - 20:13
**COMPTON** [2] - 33:21, 65:3
**COMPUTER** [2] - 46:19, 71:4
**CONCEDED** [1] - 6:3
**CONCENTRATING** [1] - 60:24
**CONCEPT** [3] - 4:16, 16:21, 67:2
**CONCLUSION** [1] - 82:14
**CONDO** [1] - 59:21
**CONDOMINIUM** [2] - 58:19, 59:15
**CONDUCT** [2] - 8:25, 80:12
**CONFER** [4] - 5:20, 9:17, 17:20, 70:5
**CONFERENCE** [6] - 8:4, 9:12, 9:21, 82:22, 83:6, 83:7
**CONFERENCES** [2] - 82:25, 83:4
**CONFIRM** [1] - 8:23
**CONFUSION** [2] - 32:10, 83:2
**CONGEST** [1] - 58:22
**CONNECTING** [1] - 14:12
**CONSIDER** [8] - 77:14, 77:18, 77:20, 78:18, 78:25, 79:18, 81:14, 83:6
**CONSIDERATION** [2] - 29:2, 63:19
**CONSIDERATIONS** [1] - 21:6
**CONSIDERED** [1] - 78:10
**CONSIDERING** [1] - 79:24
**CONSIST** [1] - 77:15
**CONSTITUTED** [2] - 28:21,

63:13
**CONSTITUTION** [2] - 5:7, 28:23
**CONSTITUTION** [2] - 63:15, 77:6
**CONSTRUCTION** [2] - 38:19, 39:5
**CONSULT** [2] - 70:24, 71:21
**CONSULTING** [1] - 81:17
**CONSUMER** [3] - 41:5, 41:15, 56:14
**CONSUMERS** [1] - 42:10
**CONTACT** [5] - 26:4, 51:21, 57:13, 81:12, 83:25
**CONTACTS** [1] - 51:21
**CONTEND** [2] - 29:1, 63:18
**CONTENDS** [4] - 29:4, 29:8, 63:21, 63:24
**CONTENT** [1] - 7:17
**CONTENTS** [1] - 7:12
**CONTEXT** [2] - 13:12, 13:23
**CONTINGENCY** [1] - 16:7
**CONTINUANCES** [1] - 15:21
**CONTINUE** [1] - 46:10
**CONTINUES** [1] - 21:20
**CONTRACTOR** [1] - 36:9
**CONTRADICTED** [1] - 80:5
**CONTROL** [27] - 4:13, 4:16, 4:17, 4:19, 14:9, 28:14, 28:18, 48:19, 52:5, 54:9, 54:14, 59:2, 59:6, 59:13, 59:18, 59:24, 63:6, 63:10, 66:18, 66:22, 66:25, 67:1, 67:12, 68:6, 68:25, 69:3, 79:4
**CONTROLLED** [6] - 49:5, 59:9, 59:13, 66:5, 66:7, 68:25
**CONTROLS** [1] - 78:2
**COPYRIGHT** [4] - 35:10, 35:17, 36:2, 47:10
**COPYRIGHTS** [1] - 35:23
**CORRECT** [9] - 6:9, 21:20, 32:21, 48:8, 50:20, 72:23, 72:24, 82:8, 84:10
**COSMETOLOGIST** [1] - 34:1
**COST** [1] - 50:13
**COSTA** [1] - 49:22
**COSTA-HAWKINS** [1] - 49:22
**COUNSEL** [14] - 5:18, 5:23, 6:1, 6:19, 9:12, 10:2, 25:9, 25:16, 69:15, 69:22, 74:12, 83:14, 83:16, 84:19
**COUNSEL'S** [1] - 74:17
**COUNTY** [1] - 48:12
**COUPLE** [12] - 8:1, 8:22, 13:22, 25:22, 38:10, 46:24, 52:21, 54:11, 57:19, 70:12, 70:16, 84:24

**COURSE** [4] - 28:4, 31:4, 80:20, 83:3
**COURSEWORK** [1] - 39:25
**COURT** [15] - 10:3, 10:18, 22:23, 24:12, 27:25, 33:13, 35:23, 45:1, 46:2, 57:23, 57:24, 69:20, 70:9, 74:22, 75:11
**COURT** [24] - 5:17, 7:17, 8:1, 8:3, 8:17, 8:24, 8:25, 9:11, 9:12, 10:6, 10:19, 10:25, 12:12, 12:14, 13:2, 13:7, 15:10, 17:7, 21:13, 22:9, 31:10, 78:13, 81:12, 82:2
**COURT** [300] - 4:2, 4:5, 4:7, 6:1, 6:12, 6:25, 7:18, 7:21, 7:23, 8:6, 8:16, 8:20, 9:2, 9:13, 10:2, 10:9, 10:13, 10:16, 11:2, 11:5, 11:7, 11:10, 11:16, 11:21, 12:4, 12:16, 12:23, 13:4, 13:8, 13:11, 13:19, 14:5, 14:20, 15:3, 15:6, 16:2, 16:4, 16:13, 16:24, 17:4, 17:20, 17:24, 18:1, 18:6, 19:5, 19:15, 19:22, 20:2, 20:8, 20:22, 21:8, 21:17, 21:19, 21:22, 22:1, 22:13, 24:22, 25:2, 25:5, 25:14, 25:19, 25:22, 26:14, 26:16, 26:19, 26:24, 27:1, 27:3, 27:5, 27:11, 27:13, 27:17, 27:21, 27:24, 28:1, 29:15, 29:19, 29:22, 29:25, 30:3, 30:6, 30:9, 30:12, 30:15, 30:19, 32:2, 32:16, 32:19, 32:21, 32:23, 33:2, 33:24, 34:2, 34:5, 34:8, 34:18, 34:20, 34:22, 34:25, 35:3, 35:6, 35:9, 35:12, 35:15, 35:19, 35:22, 36:1, 36:5, 36:10, 36:12, 36:15, 36:22, 36:25, 37:6, 37:11, 37:15, 37:25, 38:3, 38:5, 38:8, 38:13, 38:16, 38:23, 39:1, 39:7, 39:9, 39:14, 39:16, 39:19, 39:22, 39:25, 40:3, 40:6, 40:13, 40:15, 40:18, 40:22, 41:8, 41:16, 41:19, 41:22, 41:24, 42:2, 42:4, 42:7, 42:13, 42:15, 42:20, 42:23, 43:1, 43:7, 43:11, 43:25, 44:2, 44:5, 44:8, 44:10, 44:13, 44:21, 45:2, 45:6, 45:9, 45:12, 45:14, 45:17, 45:20, 46:6, 46:11, 47:4, 47:7, 47:11, 47:13, 47:16, 47:19, 47:23, 48:2, 48:6, 48:9, 48:14, 48:18, 48:21, 48:25, 49:3, 49:6, 49:9,

50:2, 50:6, 50:9, 50:17, 50:21, 50:25, 51:7, 51:10, 51:13, 51:18, 51:24, 52:3, 52:7, 52:13, 52:23, 52:25, 53:7, 53:12, 53:15, 53:18, 53:20, 53:24, 54:4, 54:8, 54:17, 55:12, 56:11, 56:19, 57:5, 57:22, 58:1, 58:7, 58:9, 58:13, 58:18, 58:25, 59:12, 59:17, 60:1, 60:5, 60:11, 60:17, 60:20, 61:7, 61:9, 61:13, 61:19, 61:24, 62:6, 62:11, 62:14, 62:17, 62:20, 64:12, 64:16, 65:1, 65:4, 65:7, 65:11, 65:16, 65:20, 65:23, 66:2, 66:9, 66:12, 66:16, 66:20, 66:22, 66:24, 67:7, 67:17, 67:19, 67:22, 68:4, 68:14, 68:16, 68:19, 68:24, 69:2, 69:6, 69:12, 69:15, 69:18, 69:25, 70:4, 70:10, 71:20, 71:25, 72:3, 72:5, 72:7, 72:10, 72:13, 72:15, 72:17, 72:21, 72:25, 73:4, 73:7, 73:15, 73:17, 73:25, 74:6, 74:9, 74:12, 74:16, 74:23, 75:8, 75:15, 75:24, 84:5, 84:11, 84:14, 84:19, 84:23
**COURT'S** [7] - 5:21, 9:25, 10:15, 14:2, 14:25, 17:16, 78:6
**COURTROOM** [13] - 21:25, 22:3, 22:22, 23:8, 23:23, 31:15, 54:25, 55:17, 55:18, 69:18, 71:7, 71:16, 82:23
**COURTROOM** [1] - 22:2
**COVE** [1] - 53:9
**COVE** [16] - 5:2, 11:23, 22:19, 28:13, 28:16, 28:17, 28:19, 28:21, 29:8, 63:4, 63:7, 63:9, 63:11, 63:13, 63:25, 77:1
**COVE'S** [2] - 29:5, 63:22
**COVER** [5] - 29:7, 29:9, 53:11, 63:23, 64:1
**COVERED** [2] - 29:17, 29:20
**CPA** [1] - 60:24
**CRASH** [1] - 64:15
**CRAZY** [1] - 19:10
**CRD** [1] - 8:23
**CREATIVE** [1] - 40:11
**CREDIT** [1] - 36:20
**CREDIT** [3] - 36:25, 38:1, 38:9
**CRIMINAL** [7] - 34:16, 34:18, 34:25, 41:3, 41:20, 44:19, 44:21
**CRISTINE** [2] - 32:12, 33:20
**CROSS** [6] - 10:10, 73:14,

73:23, 83:15, 83:17
**CROSS-EXAMINE** [2] - 83:15, 83:17
**CROSSES** [1] - 15:2
**CROSSING** [1] - 14:12
**CROW** [2] - 4:6, 28:8
**CUSTOMERS** [1] - 36:22
**CUTS** [1] - 24:24
**CV** [1] - 12:24

# D

**D-A-N-N-Y** [1] - 4:3
**D.R** [1] - 40:21
**DAD** [2] - 40:12, 40:19
**DAHINTEN** [2] - 32:13, 34:11
**DAMAGES** [4] - 11:12, 11:25, 12:1, 17:2
**DANNY** [5] - 4:1, 4:3, 15:16, 15:21, 28:7
**DATE** [1] - 15:13
**DAUGHTER** [2] - 61:3, 62:12
**DAYS** [2] - 24:9, 24:16
**DC** [2] - 56:1, 66:13
**DEAD** [3] - 13:13, 19:17, 19:19
**DEAL** [5] - 7:23, 41:17, 42:9, 60:3, 84:25
**DEALING** [1] - 42:12
**DECEASED** [1] - 37:4
**DECIDE** [13] - 28:15, 31:3, 31:14, 54:23, 63:7, 76:19, 78:14, 79:2, 79:19, 80:13, 80:16, 82:11, 83:1
**DECIDING** [5] - 45:1, 77:14, 77:20, 79:17, 79:19
**DECISION** [6] - 13:7, 53:15, 53:17, 55:14, 77:12, 82:3
**DECISIONS** [3] - 21:14, 28:21, 63:13
**DEEP** [1] - 73:11
**DEEPER** [1] - 73:24
**DEFENDANT** [4] - 21:15, 64:8, 83:15
**DEFENDANTS** [1] - 5:2
**DEFENDANTS** [8] - 5:5, 5:10, 15:9, 28:15, 63:6, 77:2, 77:4, 77:8
**DEFENDANTS'** [3] - 4:8, 4:10, 12:9
**DEFENSE** [21] - 5:18, 5:23, 6:1, 6:19, 10:21, 11:11, 12:13, 12:25, 14:5, 15:6, 16:7, 17:24, 18:21, 20:22, 21:3, 70:2, 72:3, 72:8, 72:13, 72:14, 74:21
**DEFENSES** [1] - 4:23
**DEGREE** [9] - 34:12, 36:12, 36:18, 39:22, 40:24, 43:3, 43:19, 46:14, 60:23

**DELIBERATE** [2] - 41:24, 83:21
**DELIBERATED** [1] - 45:3
**DELIBERATING** [2] - 70:23, 83:23
**DELIBERATION** [1] - 81:4
**DELIBERATIONS** [5] - 24:11, 74:4, 76:10, 80:15, 82:3
**DEMONSTRATIVES** [3] - 10:20, 10:22, 12:7
**DENIAL** [1] - 15:1
**DENIED** [6] - 12:14, 14:13, 16:15, 29:7, 57:12, 63:24
**DENSITY** [2] - 58:19, 59:15
**DENY** [4] - 5:10, 28:25, 63:17, 77:8
**DENYING** [1] - 83:6
**DEPARTMENT** [8] - 34:14, 35:2, 35:4, 35:14, 36:2, 37:9, 37:12, 41:18
**DEPARTMENT** [3] - 41:4, 41:9, 41:12
**DEPO** [1] - 16:9
**DEPOSITION** [3] - 15:19, 16:6, 17:10
**DEPTH** [1] - 37:21
**DEPUTY** [3] - 22:3, 22:22, 69:18
**DESERT** [1] - 73:12
**DESIGN** [1] - 43:3
**DESIGNATIONS** [1] - 16:9
**DESIGNER** [1] - 27:9
**DESIGNING** [1] - 27:9
**DESPITE** [1] - 16:7
**DESTROY** [1] - 58:21
**DESTROYED** [1] - 82:14
**DETAINER** [1] - 49:20
**DETAINERS** [2] - 51:25, 64:11
**DETERMINE** [4] - 30:24, 31:11, 42:17, 54:24
**DETERMINING** [1] - 50:22
**DETLING** [1] - 28:5
**DEVELOP** [1] - 56:19
**DEVELOPER** [4] - 56:6, 57:13, 57:18, 58:19
**DEVELOPING** [1] - 35:9
**DEVELOPMENT** [8] - 45:23, 46:7, 57:9, 58:3, 58:16, 59:11, 59:14, 59:21
**DEVIN** [2] - 33:1, 55:21
**DICTIONARIES** [1] - 81:17
**DIFFER** [1] - 78:1
**DIFFERENT** [2] - 49:16, 84:24
**DIFFICULTY** [2] - 23:19, 23:21
**DIMITRI** [1] - 25:13

**DIPLOMA** [1] - 39:12
**DIRE** [2] - 4:9, 8:25
**DIRECT** [4] - 78:20, 78:21, 79:1
**DIRECTLY** [2] - 38:13, 62:4
**DIRECTORS** [1] - 36:24
**DISABLED** [1] - 24:24
**DISAGREE** [3] - 54:14, 55:2, 55:4
**DISAGREEMENT** [1] - 51:1
**DISCLOSE** [2] - 12:10, 31:7
**DISCLOSED** [4] - 10:22, 16:6, 16:8, 17:14
**DISCLOSURE** [2] - 31:9, 54:7
**DISCUSS** [5] - 26:17, 33:15, 56:7, 70:18, 81:11
**DISCUSSED** [4] - 50:18, 67:14, 67:16, 67:25
**DISCUSSING** [1] - 80:25
**DISCUSSION** [2] - 11:25, 16:10
**DISCUSSIONS** [4] - 10:7, 18:3, 18:4, 21:4
**DISLIKES** [1] - 76:18
**DISPUTE** [4] - 7:15, 21:14, 30:10, 67:9
**DISPUTED** [5] - 4:22, 5:12, 7:13, 7:17, 11:8
**DISPUTES** [2] - 50:25, 65:17
**DISREGARD** [3] - 78:9, 79:16, 79:18
**DISSERTATION** [2] - 56:24, 60:9
**DISTINCTION** [1] - 79:1
**DISTRACT** [1] - 82:12
**DISTRICT** [1] - 41:2
**DIVISION** [1] - 56:14
**DIVORCED** [1] - 33:22
**DMV** [1] - 46:1
**DOCTOR** [1] - 61:2
**DOCUMENT** [1] - 7:4
**DOCUMENTS** [1] - 37:24
**DOLLARS** [1] - 14:15
**DONE** [3] - 7:6, 20:25, 38:8
**DONOR** [1] - 51:22
**DOUG** [4] - 4:1, 4:2, 15:16, 28:7
**DOWN** [5] - 12:12, 25:24, 41:8, 44:17
**DOWNTURNS** [1] - 46:20
**DOZEN** [1] - 47:25
**DRAWING** [1] - 14:25
**DRIVER** [1] - 34:7
**DROP** [2] - 19:17, 19:19
**DROP-DEAD** [2] - 19:17, 19:19
**DROPPED** [1] - 45:1
**DUE** [2] - 15:11, 45:1

**DURING** [12] - 9:22, 16:12, 24:1, 24:13, 28:4, 30:16, 31:4, 31:10, 46:19, 80:19, 82:3, 82:20
**DUTY** [6] - 31:8, 44:19, 75:25, 76:14, 78:4, 80:20

# E

**E-MAIL** [1] - 81:1
**EAR** [1] - 23:24
**EARLY** [2] - 13:17, 73:15
**EARTHQUAKE** [3] - 50:2, 50:4, 50:14
**EASY** [1] - 84:5
**ECONOMIC** [2] - 56:10, 57:3
**ECONOMICS** [3] - 55:23, 56:23, 67:25
**ECONOMIST** [1] - 56:13
**ED** [2] - 39:17, 44:11
**EDIT** [1] - 4:24
**EDNA** [2] - 32:13, 34:10
**EDUCATION** [6] - 38:18, 40:25, 43:14, 43:19, 46:10, 60:23
**EFFECTED** [2] - 5:5, 77:4
**EFFECTS** [1] - 57:3
**EFFICIENCY** [1] - 6:23
**EFFORTS** [1] - 15:12
**EIGHT** [7] - 9:7, 9:8, 9:9, 9:10, 18:22, 72:22
**EITHER** [8] - 10:3, 13:20, 20:15, 21:9, 38:13, 74:14, 79:1, 82:22
**ELECTED** [1] - 20:15
**ELECTION** [1] - 58:9
**ELECTRONIC** [2] - 71:3, 81:1
**ELEMENTARY** [1] - 38:24
**ELEVATOR** [1] - 25:25
**ELIZABETH** [1] - 32:18
**ELLIS** [1] - 28:6
**EMPHASIZE** [1] - 70:17
**EMPIRICAL** [1] - 68:1
**EMPLOYER** [4] - 34:12, 43:20, 81:6, 81:8
**EMT** [1] - 46:23
**EN** [1] - 84:10
**END** [11] - 6:13, 10:14, 19:4, 20:9, 21:1, 21:10, 73:23, 76:8, 80:15, 80:21, 84:6
**ENDS** [1] - 73:20
**ENGAGED** [1] - 19:4
**ENGINEER** [2] - 34:16, 35:9
**ENGINEERING** [3] - 34:14, 35:13, 46:14
**ENSURE** [1] - 81:21
**ENTER** [1] - 21:25
**ENTIRE** [1] - 81:25
**ENTITIES** [1] - 43:23

**ENTITLED** [3] - 22:19, 30:22, 49:17
**ENTREPRENEUR** [1] - 20:15
**ENVIRONMENT** [1] - 43:10
**ERROR** [1] - 83:3
**ESPINOZA** [3] - 32:12, 33:21, 75:1
**ESSENTIALLY** [2] - 4:23, 6:3
**ESTATE** [9] - 40:1, 40:4, 46:21, 48:1, 48:3, 56:16, 61:6, 61:16, 61:20
**ESTHETICIAN** [1] - 39:12
**ESTIMATED** [1] - 24:8
**ET** [2] - 15:12
**EVANY** [3] - 26:13, 32:13, 36:17
**EVENINGS** [2] - 44:17, 76:7
**EVICTED** [1] - 49:19
**EVIDENCE** [4] - 78:5, 79:4, 79:7, 83:2
**EVIDENCE** [60] - 4:25, 5:13, 5:24, 6:3, 6:4, 6:23, 11:17, 31:4, 31:14, 68:2, 70:21, 75:12, 76:3, 76:12, 76:14, 76:19, 76:24, 77:10, 77:11, 77:12, 77:14, 77:16, 77:19, 77:20, 77:22, 77:25, 78:1, 78:3, 78:9, 78:14, 78:15, 78:16, 78:17, 78:20, 78:23, 78:25, 79:2, 79:3, 79:5, 79:6, 79:15, 79:16, 79:18, 80:5, 80:7, 80:9, 80:17, 81:13, 81:22, 82:4, 82:7, 82:10, 82:17, 83:1, 83:11, 83:12, 83:14, 83:16, 83:18
**EXACTLY** [2] - 10:13, 54:17
**EXAMINE** [2] - 83:15, 83:17
**EXAMINER** [3] - 43:16, 43:21, 44:3
**EXAMINING** [1] - 10:11
**EXAMPLE** [4] - 8:9, 55:5, 59:1, 61:20
**EXCITED** [1] - 57:16
**EXCLUDED** [1] - 78:8
**EXCUSE** [3] - 13:25, 74:18
**EXCUSED** [7] - 74:16, 74:23, 74:25, 75:3, 75:17, 75:18, 75:20
**EXECUTIVE** [1] - 34:13
**EXERCISE** [4] - 9:6, 9:8, 9:18, 9:21
**EXHAUSTS** [1] - 13:25
**EXHIBIT** [6] - 5:23, 5:24, 7:14, 79:6, 79:10, 79:11
**EXHIBIT** [1] - 7:10
**EXHIBITS** [9] - 6:20, 7:3, 7:9, 11:20, 77:16, 77:19, 78:11, 84:5, 84:25
**EXIST** [1] - 26:1
**EXPECT** [2] - 29:8, 63:25

**EXPECTS** [1] - 83:12
**EXPENSES** [5] - 28:20, 52:14, 52:18, 53:11, 63:12
**EXPERIENCE** [3] - 31:11, 49:10, 61:4
**EXPERIENCES** [2] - 54:9, 55:1
**EXPERT** [11] - 7:23, 11:11, 12:14, 12:23, 13:2, 17:2, 17:12, 17:14
**EXPERTISE** [2] - 12:17, 12:18, 12:24, 13:1, 17:21, 40:3, 47:23, 56:20, 56:21, 60:1, 62:7, 62:10
**EXPERTS** [1] - 7:22
**EXPLAIN** [2] - 54:18, 67:4
**EXPLAINING** [1] - 14:8
**EXPOSED** [2] - 80:18, 82:1
**EXPRESS** [1] - 70:19
**EXTENSIVELY** [1] - 6:19
**EXTENT** [1] - 10:6
**EXTRAORDINARY** [1] - 24:17
**EXTREME** [1] - 24:17
**EXTREMELY** [1] - 20:11

# F

**FACEBOOK** [1] - 26:22
**FACT** [7] - 16:7, 31:6, 33:12, 78:21, 78:24, 79:23, 80:9
**FACTOR** [1] - 80:8
**FACTORS** [1] - 19:13
**FACTS** [17] - 5:19, 6:5, 6:6, 6:7, 6:9, 30:24, 31:1, 31:7, 54:24, 76:14, 76:15, 77:15, 77:17, 77:21, 78:1, 78:23, 79:19
**FAIR** [22] - 14:10, 27:15, 27:17, 30:17, 30:22, 31:2, 31:13, 54:11, 54:12, 54:18, 54:19, 54:21, 54:22, 55:9, 64:4, 65:24, 67:3, 67:5, 69:12, 71:5, 81:22
**FAIRNESS** [1] - 81:24
**FAMILIAR** [3] - 27:10, 30:14, 49:25
**FAMILY** [7] - 64:18, 64:21, 66:4, 67:8, 68:8, 81:5, 81:7
**FAN** [2] - 26:20, 27:8
**FANS** [1] - 27:19
**FAR** [3] - 17:3, 18:4, 68:24
**FASHION** [1] - 20:20
**FAST** [2] - 8:8, 45:24
**FATHER** [3] - 44:19, 46:1, 46:5
**FAVOR** [4] - 27:18, 27:21, 59:10, 66:21
**FEATURE** [1] - 81:2
**FEDERAL** [4] - 55:25, 56:12,

60:12, 60:14
FEDERAL [1] - 36:19
FEELINGS [6] - 4:17, 52:5, 52:7, 54:9, 66:18, 66:20
FELLOW [4] - 80:14, 81:3, 82:11, 82:19
FELONY [2] - 41:3, 41:21
FELT [1] - 14:11
FEW [7] - 5:17, 29:18, 29:21, 33:14, 38:4, 65:9, 80:12
FIELD [1] - 41:16
FIFTH [4] - 5:7, 28:23, 63:15, 77:5
FIGURE [2] - 21:1, 71:3
FILES [1] - 42:18
FILL [5] - 31:22, 54:6, 61:17, 73:18
FILLING [2] - 31:24, 32:4
FILM [1] - 40:10
FINAL [3] - 4:6, 76:8, 76:9
FINALLY [1] - 70:20
FINANCIAL [7] - 54:7, 60:25, 61:15, 61:16, 61:24, 62:8, 62:9
FINANCING [3] - 60:2, 60:4, 60:6
FINE [5] - 7:7, 19:23, 73:22, 74:20, 74:21
FINISH [1] - 55:23
FIRED [1] - 27:5
FIRM [1] - 17:9
FIRST [20] - 4:13, 6:14, 9:8, 9:9, 9:22, 16:8, 31:19, 31:20, 32:4, 32:7, 46:3, 48:23, 59:25, 69:20, 72:5, 72:6, 72:22, 73:12, 80:13, 83:9
FITS [1] - 6:12
FIVE [6] - 24:9, 24:16, 44:24, 48:12, 53:14, 80:5
FIX [2] - 65:18, 84:23
FIXING [1] - 65:12
FLOW [1] - 16:21
FOCUS [1] - 40:10
FOCUSED [1] - 59:1
FOCUSES [2] - 56:24, 56:25
FOLKS [1] - 57:13
FOLLOW [18] - 4:25, 24:6, 26:21, 27:8, 32:9, 39:19, 39:20, 41:10, 55:3, 55:7, 63:2, 69:22, 76:16, 76:22, 76:24, 78:12, 84:1
FOLLOWING [13] - 26:4, 26:7, 26:18, 27:25, 28:4, 31:24, 67:4, 69:17, 70:9, 74:13, 74:22, 76:22, 83:9
FOOD [1] - 45:24
FORCE [1] - 16:17
FORECAST [1] - 56:15
FORECASTING [2] - 56:15,

56:16
FORECLOSURE [1] - 52:18
FOREST [1] - 73:24
FOREVER [1] - 17:9
FORGOT [1] - 39:20
FORM [1] - 54:6
FORM [4] - 5:22, 30:10, 54:6, 70:19
FORMALLY [1] - 6:22
FORMAT [1] - 7:16
FORMER [1] - 34:5
FOUNDATION [3] - 12:17, 12:18, 13:1
FOUR [5] - 24:9, 49:15, 68:12, 78:13, 80:3
FOUR-UNIT [1] - 68:12
FRAME [2] - 73:17, 73:18
FRANKLY [1] - 18:10
FREE [1] - 52:11
FRESCHAUF [2] - 4:1, 28:7
FRIDAY [4] - 20:11, 20:15, 24:10, 73:19
FRIENDS [1] - 51:20
FRONT [3] - 12:2, 31:23, 32:5
FULL [1] - 46:20
FUNDAMENTALLY [1] - 55:4
FUNNY [1] - 50:5
FUTURE [1] - 59:11

## G

GAINS [1] - 18:17
GAMA [3] - 32:18, 43:13, 43:18
GAMBLER [2] - 19:8, 19:11
GAMBLING [1] - 19:2
GAME [2] - 10:5, 14:10
GAP [1] - 61:17
GENERAL [3] - 39:17, 44:11, 60:5
GENERALLY [3] - 8:3, 47:7, 62:24
GENRE [1] - 45:18
GENTLEMAN [2] - 29:13, 64:13
GENTLEMEN [6] - 22:6, 22:14, 70:10, 75:9, 75:24, 83:22
GIESE [1] - 25:13
GIORGIO [1] - 43:4
GIVEN [10] - 4:21, 8:20, 18:25, 22:24, 24:15, 33:5, 33:18, 78:12, 79:1, 82:6
GOAL [1] - 31:1
GOD [2] - 22:10, 75:12
GOLDSTEIN [6] - 25:13, 26:15, 26:19, 27:18, 28:5, 84:17
GOOGLE [2] - 70:25

GOVERN [1] - 76:10
GOVERNMENT [2] - 19:13, 36:7
GOVERNORS [2] - 55:25, 56:18
GRADUATE [2] - 44:15, 45:22
GRANT [1] - 83:5
GRANTING [1] - 83:6
GREAT [1] - 60:3
GROUND [1] - 16:10
GROUNDS [1] - 16:5
GROUP [8] - 24:3, 46:16, 46:17, 51:22, 52:4, 58:12, 62:25, 66:17
GUARANTEED [4] - 29:2, 29:3, 63:19, 63:20
GUESS [2] - 68:1, 79:13
GUIDELINES [2] - 28:18, 63:10
GUTIERREZ [1] - 22:22
GUY [1] - 52:12

## H

H&P [1] - 7:19
HALF [2] - 47:25, 50:15
HALLWAY [3] - 25:24, 55:16, 84:2
HAND [16] - 22:5, 23:24, 24:4, 24:19, 28:11, 29:12, 55:15, 63:1, 64:5, 64:17, 64:23, 67:13, 67:23, 68:11, 75:7
HANDLE [5] - 8:3, 9:11, 10:6, 37:10, 37:21
HANDLING [3] - 42:15, 42:16, 50:1
HANDS [7] - 26:11, 28:2, 28:11, 64:6, 64:20, 67:10, 68:7
HANSEN [2] - 4:1, 28:7
HAPPY [2] - 20:11, 84:12
HARDSHIP [2] - 24:17
HAWKINS [1] - 49:22
HEALTH [1] - 40:25
HEAR [12] - 12:19, 54:10, 54:23, 54:25, 55:18, 56:9, 58:10, 69:18, 80:2, 82:6, 84:16, 84:17
HEARD [13] - 17:18, 29:11, 41:11, 54:11, 66:24, 66:25, 67:2, 68:5, 70:20, 70:21, 70:22, 78:13, 78:22
HEARING [4] - 23:19, 23:20, 82:21
HEARS [1] - 23:25
HECK [1] - 58:13
HELD [6] - 26:18, 27:25, 69:17, 70:9, 74:13, 74:22

HELP [13] - 4:25, 22:9, 24:23, 25:1, 31:11, 75:12, 76:1, 76:3, 76:24, 77:25, 82:9, 83:11, 84:15
HEREAFTER [1] - 6:22
HERNANDEZ [6] - 22:23, 24:5, 31:18, 32:11, 83:24, 84:14
HIGH [6] - 38:18, 39:12, 44:15, 45:22, 58:19, 59:15
HIGHEST [3] - 43:14, 43:19, 60:23
HIP [3] - 15:16, 15:17
HIRE [1] - 52:2
HIRED [3] - 51:23, 55:24, 55:25
HISTORICAL [1] - 7:11
HISTORY [2] - 45:19
HOLD [4] - 32:16, 32:19, 61:21, 75:8
HOLDINGS [1] - 48:3
HOME [1] - 5:3
HOME [18] - 14:16, 17:13, 25:1, 25:2, 25:6, 28:13, 28:18, 29:6, 40:20, 53:4, 54:1, 63:5, 63:10, 63:23, 64:22, 64:25, 65:1, 76:6
HONESTLY [1] - 30:2
HONOR [21] - 5:16, 9:1, 11:6, 11:22, 12:6, 15:5, 15:8, 15:22, 16:3, 17:23, 17:25, 20:17, 21:12, 72:2, 72:4, 72:9, 72:20, 73:2, 74:5, 84:20, 85:2
HOPE [1] - 46:9
HORRIBLE [1] - 52:9
HORTON [1] - 40:21
HOURS [1] - 10:6
HOUSE [6] - 40:25, 48:17, 59:23, 65:4, 65:6, 65:13
HOUSEHOLDS' [1] - 59:7
HOUSEKEEPING [3] - 5:17, 8:1, 8:22
HOUSING [16] - 48:14, 56:6, 56:8, 56:15, 56:16, 56:20, 56:23, 57:1, 57:9, 58:2, 59:1, 59:21, 60:2, 62:7, 66:5, 68:2
HUNG [1] - 42:2
HUSBAND [4] - 36:5, 44:18, 45:17, 61:1
HUSBAND'S [1] - 34:15
HYPOTHETICAL [1] - 58:18

## I

IDEA [3] - 18:11, 59:18
IDENTICAL [2] - 33:8, 71:14
IDENTIFIED [2] - 28:10, 50:11

**IDENTIFY** [1] - 50:12
**IGNORE** [4] - 26:6, 76:23, 79:13, 79:16
**ILLUSTRATES** [1] - 55:8
**IMAGE** [2] - 47:9, 47:10
**IMMEDIATE** [1] - 68:8
**IMMEDIATELY** [1] - 82:2
**IMPARTIAL** [10] - 31:2, 31:13, 54:19, 54:20, 54:21, 54:22, 55:10, 64:4, 67:3, 67:5
**IMPARTIALLY** [1] - 54:15
**IMPORTANT** [3] - 23:5, 23:8, 76:24
**IMPROPER** [1] - 78:5
**IMPROVEMENT** [1] - 50:12
**IMPROVEMENTS** [1] - 49:23
**INACTIVE** [1] - 53:2
**INCLUDES** [1] - 80:24
**INCLUDING** [2] - 25:23, 81:5
**INCOMPLETE** [1] - 31:17
**INCONVENIENT** [1] - 22:16
**INCORPORATE** [1] - 13:5
**INCREASE** [9] - 29:9, 49:13, 49:16, 49:17, 49:23, 53:10, 57:9, 63:22, 64:1
**INCREASES** [5] - 29:3, 29:5, 29:6, 63:20, 63:23
**INCREASING** [1] - 69:10
**INDEPENDENT** [1] - 70:24
**INDEX** [1] - 7:12
**INDICATE** [2] - 6:7
**INDICATING** [1] - 76:11
**INDICATION** [1] - 83:7
**INDIO** [1] - 73:11
**INDIVIDUAL** [1] - 14:7
**INDULGE** [2] - 5:17, 8:2
**INDUSTRY** [3] - 17:12, 38:19, 45:24
**INFER** [1] - 76:10
**INFLUENCED** [3] - 76:17, 78:6, 82:18
**INFORMATION** [10] - 14:14, 34:15, 35:7, 35:16, 36:6, 80:19, 82:2, 83:1, 83:24, 83:25
**INHERENTLY** [1] - 12:1
**INQUIRE** [1] - 9:25
**INSTAGRAM** [1] - 26:21
**INSTANCE** [2] - 59:8, 59:24
**INSTEAD** [1] - 73:24
**INSTRUCT** [4] - 55:3, 75:25, 78:17, 83:18
**INSTRUCTED** [1] - 78:9
**INSTRUCTION** [2] - 4:22, 5:12
**INSTRUCTION** [4] - 4:24, 26:4, 26:8, 78:12
**INSTRUCTIONS** [14] - 4:21,

7:1, 8:4, 12:20, 73:8, 76:1, 76:5, 76:9, 76:11, 76:22, 80:17, 81:14
**INSURANCE** [3] - 41:5, 41:10, 41:13
**INSURANCE** [2] - 42:11, 42:12
**INTENDED** [2] - 33:10, 77:25
**INTENT** [1] - 51:4
**INTERACT** [3] - 35:3, 56:7, 56:9
**INTERACTED** [1] - 27:14
**INTERACTION** [1] - 36:1
**INTEREST** [8] - 29:2, 29:7, 29:9, 46:7, 63:19, 63:24, 64:1, 80:4
**INTERESTED** [2] - 59:6, 60:16
**INTERESTING** [2] - 18:6, 18:7
**INTERNET** [3] - 70:25, 81:1, 81:18
**INTERPRET** [1] - 77:25
**INTERPRETER** [2] - 46:1, 46:5
**INTERRUPT** [1] - 16:17
**INTERRUPTED** [2] - 11:3, 16:21
**INTRODUCE** [3] - 25:10, 25:20, 25:22
**INTRODUCED** [2] - 26:9, 28:2
**INVESTED** [1] - 14:15
**INVESTIGATION** [2] - 71:11, 81:19
**INVESTMENT** [4] - 56:16, 61:25, 68:3
**INVESTMENTS** [1] - 46:21
**INVOLVE** [1] - 62:1
**INVOLVED** [13] - 26:9, 35:25, 37:6, 38:5, 47:19, 47:21, 51:8, 52:1, 56:3, 64:7, 65:16, 67:20, 81:7
**INVOLVES** [1] - 80:19
**IP** [2] - 35:7, 35:8
**IRE** [1] - 14:25
**ISSUE** [4] - 7:8, 11:24, 13:2, 17:5
**ISSUES** [6] - 14:4, 42:10, 42:13, 65:9, 65:11, 80:19
**ITEM** [1] - 78:17

## J

**JAMES** [5] - 4:1, 25:13, 28:5, 28:6, 28:7
**JAMIE** [1] - 24:21
**JEFF** [1] - 25:17
**JEOPARDIZES** [1] - 81:24
**JIM** [1] - 84:16

**JOB** [1] - 56:14
**JOBS** [1] - 44:15
**JOHN** [2] - 25:18, 28:6
**JOINT** [1] - 4:4
**JOY** [1] - 32:13
**JUDGE** [3] - 18:3, 20:4, 20:18
**JUDGE** [2] - 22:22, 55:17
**JUDGES** [1] - 30:25
**JUDGMENT** [2] - 21:10, 21:13
**JUDICIAL** [1] - 7:11
**JUDICIALLY** [2] - 7:14, 7:15
**JUNE** [3] - 11:22, 21:3, 25:16
**JURIES** [2] - 44:24, 46:24
**JURISDICTION** [1] - 17:1
**JUROR** [2] - 68:11, 72:6
**JUROR** [36] - 22:25, 31:12, 31:14, 31:23, 32:9, 33:17, 34:9, 36:16, 39:19, 40:7, 41:19, 43:12, 46:12, 55:10, 55:20, 60:21, 64:9, 64:23, 66:6, 66:25, 67:1, 67:5, 67:13, 67:22, 68:5, 68:10, 69:23, 70:14, 74:9, 75:1, 75:2, 81:8, 81:23, 82:1
**JUROR** [204] - 24:21, 24:23, 25:4, 26:13, 26:15, 26:20, 26:25, 27:2, 27:4, 27:7, 27:12, 27:16, 27:20, 27:23, 29:14, 29:17, 29:20, 29:24, 30:2, 30:4, 30:7, 30:11, 30:13, 30:18, 32:1, 32:20, 32:22, 33:20, 34:1, 34:4, 34:7, 34:10, 34:19, 34:21, 34:23, 35:1, 35:5, 35:7, 35:11, 35:13, 35:18, 35:20, 35:24, 36:4, 36:8, 36:11, 36:13, 36:17, 36:23, 37:2, 37:8, 37:13, 37:17, 38:2, 38:4, 38:7, 38:10, 38:15, 38:17, 38:24, 39:3, 39:8, 39:10, 39:15, 39:18, 39:21, 39:24, 40:2, 40:5, 40:8, 40:14, 40:16, 40:20, 40:23, 41:14, 41:17, 41:20, 41:23, 42:1, 42:3, 42:5, 42:9, 42:14, 42:16, 42:22, 42:24, 43:2, 43:9, 43:13, 43:18, 44:1, 44:4, 44:6, 44:9, 44:12, 44:14, 44:23, 45:4, 45:8, 45:11, 45:13, 45:15, 45:19, 45:21, 46:9, 46:13, 47:6, 47:8, 47:12, 47:15, 47:18, 47:21, 47:25, 48:4, 48:8, 48:11, 48:15, 48:20, 48:23, 49:1, 49:4, 49:7, 49:15, 50:4, 50:7, 50:10, 50:20, 50:24, 51:3, 51:8, 51:11, 51:15, 51:19, 51:25,

52:6, 52:8, 52:16, 52:24, 53:1, 53:9, 53:13, 53:17, 53:19, 53:22, 53:25, 54:5, 54:13, 55:11, 55:21, 56:13, 56:22, 57:7, 57:24, 58:6, 58:8, 58:11, 58:14, 58:24, 59:4, 59:16, 59:19, 60:3, 60:8, 60:15, 60:18, 60:22, 61:8, 61:11, 61:15, 61:22, 62:2, 62:8, 62:13, 62:15, 62:19, 64:10, 64:14, 64:24, 65:3, 65:5, 65:9, 65:12, 65:18, 65:21, 66:1, 66:7, 66:11, 66:14, 66:19, 66:21, 66:23, 67:6, 67:15, 67:18, 67:20, 67:24, 68:12, 68:15, 68:18, 68:21, 69:1, 69:4, 69:8, 69:14
**JURORS** [46] - 4:21, 5:15, 6:6, 6:7, 8:13, 8:24, 8:25, 9:3, 9:7, 9:9, 9:14, 9:18, 10:3, 18:7, 20:13, 21:25, 22:9, 23:4, 25:10, 28:9, 31:1, 31:19, 31:22, 31:24, 32:3, 33:3, 33:6, 54:10, 54:18, 70:23, 71:12, 73:1, 73:20, 74:3, 74:7, 74:16, 75:4, 75:5, 75:16, 75:18, 80:12, 80:14, 81:3, 82:11, 82:19
**JURORS** [2] - 72:17, 72:18
**JURY** [67] - 4:24, 5:11, 5:22, 6:18, 7:1, 8:23, 9:10, 12:3, 15:7, 18:2, 21:23, 22:14, 22:15, 22:18, 30:21, 30:23, 31:1, 31:10, 31:19, 31:20, 32:3, 33:2, 33:7, 33:23, 34:16, 36:21, 38:21, 39:13, 40:11, 41:3, 41:22, 42:2, 43:5, 43:24, 43:25, 44:19, 45:6, 45:12, 46:3, 47:1, 47:5, 56:2, 61:4, 71:13, 71:19, 71:24, 72:16, 72:17, 73:7, 74:24, 75:3, 75:17, 75:19, 75:20, 75:25, 76:6, 80:20, 81:10, 82:11, 82:13, 82:22, 82:23, 83:20, 83:23, 84:1, 84:4
**JURY** [1] - 74:8
**JURY** [2] - 22:11, 75:13
**JUSTICE** [1] - 30:25
**JUSTICE** [2] - 13:6, 13:12

## K

**KAISER** [1] - 42:25
**KEEP** [11] - 23:18, 52:14, 52:18, 54:20, 74:2, 76:4, 80:13, 82:10, 82:25, 83:3, 84:15

**KEEPS** [1] - 49:24
**KENNETH** [3] - 4:1, 28:6, 28:7
**KIDS** [1] - 43:5
**KIM** [1] - 60:22
**KIND** [9] - 12:10, 18:19, 18:20, 35:12, 36:7, 37:1, 38:5, 52:11, 55:7
**KINDS** [2] - 27:3, 65:11, 78:25
**KNOWLEDGE** [2] - 67:11, 68:1
**KNOWN** [1] - 47:9
**KOREA** [1] - 68:23

# L

**LA** [1] - 48:12
**LABEL** [1] - 58:4
**LACK** [3] - 12:17, 12:18, 13:1
**LADIES** [6] - 22:6, 22:13, 70:10, 75:9, 75:24, 83:22
**LAID** [1] - 46:19
**LAKERS** [1] - 27:22
**LAKERS** [1] - 27:4
**LAND** [2] - 51:14, 56:25
**LANDLORD** [2] - 65:8, 67:9
**LANDLORDS** [2] - 68:6, 68:8
**LAPD** [1] - 36:21
**LARA** [2] - 25:13, 25:17
**LARGE** [3] - 6:20, 29:8, 63:25
**LAS** [2] - 18:13, 19:10
**LAST** [12] - 15:20, 16:7, 16:9, 17:13, 18:1, 32:14, 48:25, 51:19, 53:7, 53:20, 55:12, 69:8
**LATEST** [2] - 8:10, 8:14
**LAUSD** [1] - 42:23
**LAW** [15] - 40:18, 54:14, 54:16, 55:3, 55:4, 55:7, 67:4, 70:22, 75:25, 76:15, 76:16, 78:25, 80:18, 81:21, 83:19
**LAWS** [1] - 57:3
**LAWSUIT** [1] - 64:8
**LAWYER** [9] - 10:11, 40:12, 52:2, 61:6, 61:7, 61:12, 79:5, 79:6, 79:8
**LAWYERS** [22] - 23:12, 23:17, 23:20, 26:17, 33:15, 35:2, 35:16, 51:20, 51:23, 56:8, 61:9, 61:19, 61:20, 70:21, 70:25, 71:8, 77:17, 77:22, 77:23, 78:2, 78:3
**LEARN** [2] - 71:6, 81:19
**LEARNED** [2] - 15:20, 16:9
**LEAST** [5] - 14:17, 17:7, 17:17, 20:19, 53:22
**LEAVE** [7] - 6:12, 6:14,

55:15, 66:12, 75:22, 76:6, 82:13
**LEAVING** [1] - 84:1
**LEE** [2] - 33:1, 60:22
**LEEWAY** [1] - 14:8
**LEFT** [1] - 82:13
**LEGAL** [17] - 33:23, 35:2, 35:3, 36:2, 38:22, 39:14, 41:6, 41:16, 41:18, 43:6, 44:19, 55:6, 56:3, 56:5, 61:5, 70:22, 81:13
**LEITNER** [1] - 25:17
**LENDING** [7] - 38:3, 38:6, 38:8, 47:20, 47:22, 47:24, 62:10
**LENGTH** [1] - 83:4
**LESS** [3] - 24:16, 59:9
**LETTER** [1] - 57:12
**LETTERS** [1] - 57:10
**LEVEL** [2] - 57:14, 57:20
**LEVIES** [1] - 37:4
**LIABILITY** [2] - 11:25, 42:17
**LIBERTY** [1] - 21:7
**LICENSING** [1] - 37:20
**LIFE** [3] - 55:1, 60:25, 61:14
**LIGHT** [1] - 80:7
**LIKELY** [5] - 9:13, 9:22, 33:5, 58:22, 59:9
**LIMINE** [5] - 12:13, 13:16, 14:3, 15:1
**LIMITED** [5] - 24:18, 78:11, 78:16, 78:18, 78:19
**LIMITING** [1] - 78:12
**LINE** [2] - 8:25, 15:2
**LINES** [1] - 42:12
**LIST** [5] - 5:19, 13:25, 24:6, 77:21
**LISTEN** [2] - 76:3, 81:15
**LITIGANTS** [1] - 18:20
**LIVE** [25] - 15:24, 16:1, 17:6, 17:16, 33:21, 36:18, 38:18, 39:11, 40:8, 40:24, 43:2, 43:14, 43:19, 44:15, 45:22, 46:14, 55:22, 56:1, 59:8, 59:13, 64:18, 64:22, 66:5, 66:7, 66:14
**LIVED** [1] - 66:9
**LIVES** [4] - 33:11, 46:22, 64:24, 73:11
**LIVING** [6] - 40:25, 42:20, 43:22, 45:24, 59:6, 60:23
**LLC** [3] - 5:2, 22:19, 77:1
**LOAN** [2] - 37:9, 37:12, 37:19
**LOANS** [7] - 37:7, 37:8, 37:10, 37:21, 37:24, 37:25, 48:1
**LOCAL** [1] - 56:25
**LOCAL** [1] - 15:11
**LOCATED** [2] - 48:9, 65:2, 68:19

**LOFLAND** [4] - 29:14, 29:15, 32:13, 38:17
**LOOK** [5] - 7:5, 8:6, 13:9, 54:15
**LOOKED** [1] - 18:14
**LOOKING** [2] - 23:23, 23:24
**LOOKS** [1] - 19:7
**LOS** [12] - 36:19, 40:24, 41:2, 43:3, 48:13, 48:16, 48:18, 49:11, 55:22, 66:8, 68:21, 68:22
**LOSE** [3] - 18:11, 20:14, 52:17
**LOSES** [1] - 18:16
**LOST** [2] - 52:9, 52:15
**LOVES** [1] - 45:19
**LOWER** [1] - 51:16
**LUNCH** [7] - 7:2, 73:8, 83:22, 84:6, 84:8, 85:3
**LUNCHTIME** [1] - 70:13

# M

**MAIL** [1] - 81:1
**MAJOR** [1] - 65:10
**MALAWY** [1] - 25:17
**MALE** [2] - 44:24, 45:4
**MALIBU** [4] - 46:14, 51:21, 53:3, 54:1
**MALL** [1] - 38:11
**MANAGEMENT** [6] - 34:12, 36:13, 36:14, 36:19, 39:23, 49:25
**MANAGER** [4] - 40:21, 43:5, 43:8, 44:16
**MANAGING** [1] - 46:20
**MANNER** [1] - 80:3
**MANUFACTURER** [1] - 44:16
**MARGARET** [1] - 25:17
**MARIJUANA** [3] - 55:5, 55:6, 55:7
**MARITAL** [2] - 43:16, 43:21
**MARK** [2] - 4:1, 28:7
**MARK** [1] - 63:1
**MARKET** [12] - 49:21, 50:19, 50:23, 51:2, 51:4, 51:11, 51:15, 52:11, 56:15, 57:1, 59:21, 69:11
**MARKETING** [1] - 46:17
**MARKETS** [2] - 56:23, 68:2
**MARRIED** [6] - 34:14, 38:19, 43:5, 44:18, 46:18, 61:1
**MASSE** [1] - 84:10
**MASTER** [1] - 16:16
**MATERIALS** [2] - 18:9, 81:18
**MATT** [2] - 4:6, 28:8
**MATTER** [4] - 5:11, 15:10, 73:10, 81:11
**MATTERS** [5] - 5:17, 8:1,

8:22, 12:5, 52:22
**MATTHEW** [2] - 25:12, 74:20
**MBA** [4] - 46:15, 47:11, 47:14, 60:24
**MEAN** [10] - 8:8, 13:22, 16:20, 27:17, 51:5, 54:13, 54:18, 54:21, 58:9, 60:15
**MEANING** [1] - 35:10
**MEANS** [10] - 6:8, 28:14, 31:13, 54:22, 63:6, 70:20, 76:19, 77:10, 79:17, 81:1
**MEANT** [1] - 13:7
**MEDIA** [7] - 26:25, 27:1, 27:14, 71:3, 71:4, 81:6, 81:15
**MEDIATION** [3] - 19:16, 20:5, 20:23
**MEDICAL** [3] - 44:7, 44:12, 61:2
**MEDICAL** [2] - 43:15, 43:20
**MEET** [2] - 5:20, 17:20
**MEETINGS** [1] - 40:16
**MEMBER** [4] - 53:2, 53:5, 53:12, 68:8
**MEMBERS** [7] - 36:23, 37:19, 64:18, 64:21, 66:4, 67:8, 81:6
**MEMORY** [4] - 78:2, 80:3, 82:17
**MENTION** [1] - 50:5
**MENTIONED** [4] - 36:5, 39:22, 42:20, 62:11
**MERCHANDISING** [1] - 43:4
**MERITS** [1] - 80:24
**MESSAGE** [1] - 81:1
**MET** [2] - 27:11, 53:4
**METHODS** [1] - 60:6
**MICHAEL** [1] - 33:1
**MICROPHONE** [3] - 24:5, 43:12, 66:17
**MIDDLE** [1] - 38:25
**MIGHT** [5] - 12:17, 31:6, 59:10, 73:23, 79:14
**MILE** [1] - 68:23
**MILLION** [2] - 14:15, 71:1
**MIND** [5] - 13:23, 31:11, 73:17, 74:1, 80:13
**MINIMUM** [1] - 83:4
**MINUTE** [2] - 30:5, 30:7
**MINUTES** [6] - 33:14, 70:5, 70:11, 71:15, 71:16, 71:20
**MIRACLE** [1] - 68:23
**MISS** [2] - 28:1, 66:3
**MISSED** [1] - 69:23
**MISSING** [3] - 23:7, 74:9
**MISTRIAL** [1] - 81:25
**MISUNDERSTOOD** [1] - 51:4
**MIXED** [1] - 48:17
**MOBILE** [13] - 14:16, 17:13, 28:13, 28:18, 29:6, 53:4,

54:1, 63:5, 63:10, 63:23, 64:22, 64:25, 65:1
**MOBILE** [1] - 5:3
**MOBILEHOME** [1] - 22:20
**MOBILEHOME** [1] - 77:3
**MODELS** [1] - 27:9
**MODIFY** [1] - 4:10
**MOM** [1] - 24:23
**MOMENT** [6] - 6:22, 9:4, 24:6, 29:15, 62:21, 63:1
**MOMENTUM** [3] - 18:16, 18:17
**MONDAY** [2] - 8:18, 8:20
**MONDAYS** [1] - 24:12
**MONEY** [2] - 21:6, 21:8
**MONITORING** [1] - 16:8
**MONTEREY** [1] - 44:15
**MONTHLY** [4] - 28:16, 28:20, 63:7, 63:12
**MONTHS** [2] - 29:18, 29:21
**MORNING** [14] - 8:11, 11:22, 12:10, 15:22, 16:12, 22:1, 22:13, 22:18, 25:12, 25:15, 26:2, 26:5, 70:11, 73:12
**MORNINGS** [2] - 12:8, 23:5
**MORTGAGE** [17] - 28:20, 29:2, 29:7, 29:9, 37:19, 37:21, 37:24, 47:19, 47:22, 47:23, 62:3, 62:4, 62:10, 63:12, 63:19, 63:24, 64:1
**MORTGAGES** [5] - 37:16, 37:17, 40:1, 40:4, 62:1
**MOST** [9] - 9:13, 9:21, 19:3, 37:25, 38:1, 38:2, 44:25, 46:24, 49:1
**MOSTLY** [3] - 7:7, 14:24, 69:10
**MOTHER** [1] - 45:25
**MOTION** [8] - 11:19, 12:12, 13:16, 14:3, 14:21, 14:25, 15:1, 38:19
**MOTIONS** [1] - 14:11
**MOVE** [4] - 20:25, 70:12, 74:19, 84:9
**MOVED** [1] - 66:10
**MOVIE** [1] - 36:10
**MOVIES** [1] - 36:11
**MOVING** [1] - 10:19
**MR** [82] - 4:3, 4:6, 5:16, 6:10, 6:16, 7:7, 7:20, 7:22, 7:25, 8:15, 8:17, 8:21, 9:10, 9:23, 10:5, 10:11, 10:14, 10:18, 11:4, 11:6, 11:8, 11:13, 11:18, 12:6, 12:22, 13:2, 13:6, 13:10, 13:15, 13:24, 14:19, 14:23, 15:4, 15:8, 16:3, 16:5, 16:23, 16:25, 17:5, 17:22, 17:25, 18:5, 19:3, 19:11, 19:21, 19:24, 20:3, 20:17, 21:12,

21:18, 21:20, 25:12, 25:15, 25:20, 69:24, 70:1, 70:2, 70:7, 70:8, 72:2, 72:4, 72:6, 72:9, 72:12, 72:14, 72:16, 72:20, 72:23, 72:24, 73:2, 73:5, 73:10, 73:16, 73:22, 74:5, 74:20, 74:21, 84:9, 84:12, 84:16, 84:21, 85:2
**MS** [2] - 11:22, 21:3
**MUNICIPALITY** [2] - 19:2, 19:7
**MURDER** [4] - 34:22, 41:3, 41:21, 44:25
**MUSIC** [2] - 44:17, 45:14
**MUSIC** [1] - 36:10
**MUST** [18] - 31:7, 54:7, 76:6, 76:10, 76:16, 76:17, 76:19, 76:22, 77:10, 78:10, 78:12, 78:18, 79:13, 79:17, 80:16, 80:18, 81:10
**MV** [2] - 43:15, 43:20

### N

**NAGEL** [1] - 18:3
**NAGLE** [2] - 20:4, 20:18
**NAME** [21] - 22:22, 24:6, 24:20, 25:12, 25:15, 31:19, 32:14, 33:20, 34:10, 36:17, 38:17, 39:10, 40:23, 43:13, 43:18, 44:14, 45:21, 46:13, 55:21, 60:22, 69:20
**NAMES** [2] - 26:10, 28:10
**NANCY** [3] - 32:18, 43:13, 43:18
**NATURE** [1] - 12:25
**NAVY** [2] - 39:6, 39:7
**NBA** [1] - 27:4
**NECESSARILY** [5] - 14:7, 59:12, 59:17, 79:23, 80:10
**NECESSARY** [1] - 82:21
**NEED** [4] - 9:24, 23:17, 52:8, 61:18
**NEEDED** [4] - 13:23, 14:8, 40:15, 50:2
**NEEDS** [2] - 61:17, 84:14
**NEGATIVE** [1] - 16:20
**NEGOTIATES** [1] - 20:24
**NEGOTIATIONS** [1] - 19:1
**NEIGHBORHOOD** [3] - 55:22, 57:16, 58:22
**NETWORK** [1] - 30:1
**NEVER** [9] - 13:13, 16:6, 16:8, 17:14, 29:2, 30:13, 47:21, 63:19
**NEW** [7] - 27:6, 57:8, 57:11, 59:20, 67:17, 67:18, 69:10
**NEW** [2] - 60:25, 61:14
**NEWS** [7] - 19:12, 29:18,

29:21, 30:8, 30:16, 50:6, 81:15
**NEWSPAPER** [1] - 29:23
**NEXT** [15] - 20:10, 20:15, 24:12, 32:9, 48:2, 56:17, 57:14, 57:20, 72:8, 72:10, 72:13, 72:15, 73:19
**NIA** [2] - 32:17, 40:23
**NICELY** [1] - 54:22
**NIGHT** [2] - 8:12, 14:12
**NILOUFAR** [2] - 32:14, 39:11
**NIMBY** [2] - 58:14, 58:20
**NINETIES** [1] - 64:15
**NINTH** [2] - 31:23, 32:5
**NOBODY** [1] - 26:3
**NOELLE** [1] - 28:5
**NONE** [5] - 10:22, 18:12, 33:10, 72:2, 79:21
**NONISSUE** [1] - 16:23
**NONPAYMENT** [1] - 49:20
**NONPROFITS** [1] - 52:22
**NOON** [1] - 70:14
**NORMAL** [1] - 10:8
**NORMALLY** [1] - 64:11
**NORTHWEST** [2] - 43:14, 43:19
**NOS** [2] - 75:4, 75:16
**NOTARIZE** [1] - 37:23
**NOTE** [2] - 12:14, 82:12
**NOTES** [7] - 82:9, 82:10, 82:13, 82:14, 82:16, 82:17, 82:18
**NOTHING** [9] - 17:25, 21:9, 26:2, 31:15, 53:24, 65:10, 67:15, 67:18, 70:2
**NOTICE** [1] - 7:11
**NOTICEABLE** [1] - 7:15
**NOTICED** [1] - 7:14
**NOTIFY** [2] - 81:7, 82:2
**NOTWITHSTANDING** [1] - 15:1
**NUMBER** [14] - 5:23, 6:20, 7:4, 19:17, 19:20, 20:2, 20:3, 23:3, 51:20, 51:23, 52:10, 79:23, 80:10, 83:4
**NUMBERS** [5] - 11:10, 11:13, 11:16, 22:24, 23:1
**NURSING** [1] - 46:10

### O

**OATH** [2] - 22:4, 76:20
**OBJECT** [3] - 3:11, 78:4, 79:8
**OBJECTING** [1] - 14:25
**OBJECTION** [1] - 10:7, 10:8, 10:24, 11:21, 12:4, 16:2, 16:14, 78:6, 79:9, 79:10, 79:12
**OBJECTIONS** [4] - 10:20,

10:21, 12:10, 78:3
**OBSERVATION** [1] - 20:23
**OBSERVATIONS** [1] - 20:9
**OBVIOUSLY** [2] - 14:14, 67:21
**OCCASIONALLY** [1] - 57:10
**OCCUPATION** [9] - 33:25, 34:5, 34:13, 34:15, 41:4, 43:15, 43:21, 43:22
**OCTOBER** [1] - 42:6
**ODD** [1] - 13:14
**OFFERS** [1] - 79:6
**OFFICE** [1] - 44:16
**OFFICER** [5] - 41:5, 41:14, 42:8, 44:20, 62:9
**OFFICIALS** [1] - 20:16
**OLD** [5] - 33:22, 39:3, 39:4, 39:5, 43:22
**OLDS** [1] - 39:2
**OLYMPIC** [1] - 68:22
**ONCE** [4] - 7:4, 7:6, 30:14, 46:7
**ONE** [57] - 4:6, 4:12, 4:22, 5:2, 14:1, 15:15, 18:23, 20:3, 23:22, 26:4, 26:7, 29:15, 32:16, 33:6, 33:22, 34:18, 34:19, 41:1, 41:19, 42:23, 42:24, 44:16, 46:19, 48:11, 48:16, 48:23, 48:25, 49:2, 50:17, 52:17, 53:14, 54:9, 57:12, 59:5, 61:2, 62:21, 66:25, 68:5, 68:16, 68:21, 68:22, 68:23, 69:9, 69:10, 72:20, 73:10, 74:9, 74:16, 74:18, 77:1, 77:15, 77:22, 78:23, 80:1, 82:13, 84:7
**ONES** [4] - 11:9, 12:9, 45:2, 74:18
**ONGOING** [3] - 19:1, 21:17, 21:19
**ONSTOT** [4] - 15:8, 25:16, 70:2, 74:21
**ONSTOT** [12] - 4:3, 4:6, 15:8, 17:25, 25:15, 70:2, 70:8, 72:4, 72:9, 72:14, 72:24, 74:21
**OPEN** [7] - 10:3, 27:25, 33:13, 70:9, 74:22, 80:13, 84:12
**OPENING** [9] - 10:23, 11:3, 12:1, 12:7, 77:24, 83:10, 83:13, 85:1
**OPENINGS** [5] - 10:21, 10:23, 73:6, 73:9, 73:14
**OPERATE** [1] - 17:12
**OPERATING** [2] - 28:20, 63:12
**OPERATIONS** [1] - 37:3
**OPINING** [1] - 13:13

OPINION [5] - 17:12, 59:20, 69:5, 76:12, 83:7
OPINIONS [4] - 30:10, 69:2, 70:19, 76:18
OPPORTUNITY [3] - 54:2, 80:1, 81:23
OPPOSITE [1] - 58:14
OPPOSITIONS [1] - 14:11
ORDER [3] - 16:18, 37:20, 79:15
ORDERED [1] - 81:11
ORDERS [1] - 46:1
ORDINANCE [1] - 59:7
ORGANIZATION [2] - 57:8
ORGANIZED [1] - 84:15
ORIGINALLY [1] - 15:11
OTHERWISE [1] - 80:22
OUTCOME [3] - 59:20, 59:23, 80:4
OUTLINE [1] - 83:11
OUTSET [1] - 25:23
OUTSIDE [5] - 9:19, 17:1, 71:15, 71:24, 82:1
OUTSIDE [1] - 84:4
OVERBROAD [2] - 14:6, 14:22
OVERLY [1] - 82:18
OVERRULE [1] - 79:9
OVERRULED [1] - 12:4
OVERSEE [1] - 37:2
OWN [7] - 14:15, 21:20, 48:1, 48:4, 71:11, 81:20, 82:16
OWNER [1] - 51:1
OWNERS [4] - 29:6, 51:14, 53:10, 63:23
OWNS [2] - 28:13, 63:4

P

PACKAGE [1] - 19:21
PAGE [1] - 4:3
PALMS [1] - 55:22
PANEL [3] - 15:7, 18:2, 21:23
PAPER [4] - 6:16, 19:12, 33:18, 33:19
PARADISE [1] - 53:9
PARENTS [1] - 45:25
PARK [3] - 5:3, 22:20, 44:15
PARK [12] - 14:16, 21:21, 28:13, 28:18, 29:6, 63:5, 63:10, 63:23, 64:22, 64:25, 65:1, 77:3
PARKS [2] - 17:13, 54:1
PART [6] - 5:19, 8:13, 48:13, 49:21, 57:7, 79:21
PARTICIPATED [2] - 20:19, 20:20
PARTICULAR [8] - 14:14, 34:3, 36:6, 45:18, 46:7, 47:13, 62:6, 69:23

PARTIES [9] - 5:1, 6:8, 9:6, 16:17, 16:19, 24:8, 76:25, 81:21
PARTNER [2] - 56:1, 66:14
PARTY [6] - 17:1, 77:9, 77:13, 81:22, 83:12
PASADENA [2] - 36:18, 60:23
PASS [6] - 40:6, 43:11, 50:13, 50:15, 72:4, 72:16
PASSES [1] - 72:14
PATENT [2] - 35:19, 36:2
PATENTS [1] - 35:22
PAY [4] - 28:19, 33:3, 63:11, 82:5
PAYMENTS [2] - 29:3, 63:20
PAYS [2] - 21:9
PEDIATRIC [1] - 46:10
PEGGY [4] - 32:17, 32:25, 43:2, 44:14
PEOPLE [9] - 19:9, 57:1, 57:16, 58:15, 64:18, 64:21, 66:4, 67:8, 81:6
PERCENT [2] - 17:11, 69:10
PERCENTAGE [2] - 49:17, 49:18
PEREMPTORIES [5] - 9:5, 9:6, 9:11, 9:21, 71:22
PEREMPTORY [8] - 9:8, 9:18, 70:6, 72:5, 72:8, 72:10, 72:13, 72:15
PERIOD [2] - 24:18, 48:22
PERISON [2] - 32:15, 40:8
PERKINS [4] - 26:13, 32:13, 36:17, 75:2
PERMISSION [1] - 6:6
PERMITTED [1] - 79:7
PERSON [13] - 15:18, 16:15, 19:2, 19:6, 23:8, 31:20, 32:4, 32:5, 32:7, 47:8, 47:9, 47:10, 80:25
PERSONAL [6] - 27:2, 33:11, 33:12, 51:20, 67:3, 76:18
PERSONALLY [3] - 26:22, 27:11, 78:22
PERSONS [2] - 25:10, 28:2
PERSPECTIVE [2] - 14:17, 20:24
PERSPECTIVES [1] - 4:18
PERSUADED [1] - 77:10
PETER [3] - 28:6, 33:1, 46:13
PETITIONING [1] - 53:10
PH.D [3] - 55:23, 61:3, 62:12
PHILLIP [1] - 22:22
PHILLIPS [3] - 32:17, 32:21, 43:2
PHONE [2] - 22:24, 23:1
PHRASE [1] - 54:19
PICK [1] - 7:1
PICO [1] - 45:22

PICO/ROBERTSON [1] - 40:9
PICTURE [1] - 38:19
PICTURES [1] - 12:2
PIGEONHOLE [1] - 58:3
PLACE [1] - 59:25
PLAINTIFF [19] - 5:1, 5:5, 5:9, 12:13, 28:12, 63:4, 64:7, 64:11, 72:1, 72:5, 72:11, 72:12, 72:15, 74:20, 77:1, 77:3, 77:7, 83:14, 83:16
PLAINTIFF'S [6] - 4:8, 4:24, 5:6, 11:11, 69:24, 77:4
PLAN [2] - 10:20, 73:12
PLANNED [1] - 15:19
PLANNING [7] - 15:12, 61:16, 61:22, 62:16, 62:17
PLANS [1] - 61:20
PLAY [1] - 19:25
PLAYWRIGHT [2] - 44:18, 45:17
POINT [5] - 5:14, 6:5, 14:24, 20:3, 23:19, 24:2, 25:9, 30:11, 30:12, 31:18, 37:11, 37:22, 54:17, 55:8, 55:13, 64:3
POLICE [2] - 21:15, 44:20
POLICE [1] - 36:19
POLITE [1] - 26:5
POLITICAL [1] - 57:9
PORTNOI [2] - 13:25, 25:13
POSITION [1] - 17:17
POSITIONS [2] - 5:1, 76:25
POTENTIALLY [1] - 17:7
POWER [1] - 21:15
PRACTICE [4] - 9:25, 12:11, 14:2, 40:19
PRACTICES [1] - 42:17
PREACHING [2] - 20:6, 20:8
PREFER [3] - 4:16, 8:3, 9:16
PREFERENCE [2] - 5:21, 15:25
PREFERENCES [1] - 59:7
PREJUDICE [3] - 12:15, 14:13, 80:5
PREJUDICED [1] - 31:7
PREJUDICES [1] - 76:18
PREJUDICIAL [2] - 12:3, 14:21
PRELIMINARY [6] - 4:20, 7:1, 12:19, 12:20, 73:8, 76:1
PREPARE [1] - 15:13
PREPONDERANCE [2] - 5:13, 77:10
PREREQUISITES [1] - 39:18
PRESENCE [3] - 9:19, 71:24, 84:4
PRESENT [6] - 5:22, 10:4,

82:23, 83:14, 83:16, 84:14
PRESENTATION [1] - 6:15
PRESENTED [9] - 6:11, 17:14, 23:21, 31:3, 31:4, 31:15, 71:10, 77:13, 83:18
PRESIDENT [3] - 36:20, 36:25, 46:16
PRESS [1] - 81:6
PRESSURE [1] - 32:7
PRETRIAL [1] - 15:12
PRETTY [1] - 18:9
PREVENT [3] - 27:14, 30:16, 65:24
PRICE [3] - 51:5, 51:16, 69:11
PRICES [3] - 7:12, 57:2, 59:23
PRICING [2] - 42:13, 42:14
PRINCIPAL [1] - 14:15
PRINCIPLES [1] - 76:2
PRIVATE [2] - 43:15, 43:20
PRO [1] - 58:7
PROBLEM [1] - 82:8
PROCEDURES [1] - 84:1
PROCEED [2] - 74:17, 83:9
PROCEEDINGS [3] - 15:23, 22:25, 81:24
PROCESS [16] - 5:20, 6:24, 20:5, 20:24, 44:6, 49:14, 49:24, 50:11, 50:17, 50:22, 57:21, 57:23, 63:3, 70:12, 70:15, 82:1
PROCESSED [1] - 38:1
PROCESSES [1] - 49:16
PROCESSING [1] - 37:4
PROFESSOR [1] - 61:1
PROGRAMMER [1] - 46:19
PROJECT [1] - 57:12
PROJECTS [2] - 38:14, 57:11
PROOF [5] - 5:13, 77:9, 78:21, 78:23, 79:23
PROPERLY [1] - 81:14
PROPERTIES [8] - 48:5, 48:9, 49:13, 61:21, 68:17, 68:18, 68:19, 68:25
PROPERTIES [5] - 5:2, 22:19, 77:1
PROPERTY [1] - 28:13
PROPERTY [9] - 5:6, 17:8, 28:22, 38:12, 62:3, 63:4, 63:14, 68:16, 77:4
PROPONENT [1] - 6:4
PROPOSAL [1] - 12:8
PROPOSE [2] - 4:14, 6:4
PROPOSED [3] - 4:9, 4:24, 5:23
PROPOSING [1] - 58:19
PROSPECTIVE [205] - 22:11, 24:21, 24:23, 25:4, 26:13,

26:15, 26:20, 26:25, 27:2, 27:4, 27:7, 27:12, 27:16, 27:20, 27:23, 29:14, 29:17, 29:20, 29:24, 30:2, 30:4, 30:7, 30:11, 30:13, 30:18, 32:1, 32:20, 32:22, 33:20, 34:1, 34:4, 34:7, 34:10, 34:19, 34:21, 34:23, 35:1, 35:5, 35:7, 35:11, 35:13, 35:18, 35:20, 35:24, 36:4, 36:8, 36:11, 36:13, 36:17, 36:23, 37:2, 37:8, 37:13, 37:17, 38:2, 38:4, 38:7, 38:10, 38:15, 38:17, 38:24, 39:3, 39:8, 39:10, 39:15, 39:18, 39:21, 39:24, 40:2, 40:5, 40:8, 40:14, 40:16, 40:20, 40:23, 41:14, 41:17, 41:20, 41:23, 42:1, 42:3, 42:5, 42:9, 42:14, 42:16, 42:22, 42:24, 43:2, 43:9, 43:13, 43:18, 44:1, 44:4, 44:6, 44:9, 44:12, 44:14, 44:23, 45:4, 45:8, 45:11, 45:13, 45:15, 45:19, 45:21, 46:9, 46:13, 47:6, 47:8, 47:12, 47:15, 47:18, 47:21, 47:25, 48:4, 48:8, 48:11, 48:15, 48:20, 48:23, 49:1, 49:4, 49:7, 49:15, 50:4, 50:7, 50:10, 50:20, 50:24, 51:3, 51:8, 51:11, 51:15, 51:19, 51:25, 52:6, 52:8, 52:16, 52:24, 53:1, 53:9, 53:13, 53:17, 53:19, 53:22, 53:25, 54:5, 54:13, 55:11, 55:21, 56:13, 56:22, 57:7, 57:24, 58:6, 58:8, 58:11, 58:14, 58:24, 59:4, 59:16, 59:19, 60:3, 60:8, 60:15, 60:18, 60:22, 61:8, 61:11, 61:15, 61:22, 62:2, 62:8, 62:13, 62:15, 62:19, 64:10, 64:14, 64:24, 65:3, 65:5, 65:9, 65:12, 65:18, 65:21, 66:1, 66:7, 66:11, 66:14, 66:19, 66:21, 66:23, 67:6, 67:15, 67:18, 67:20, 67:24, 68:12, 68:15, 68:18, 68:21, 69:1, 69:4, 69:8, 69:14
**PROSPECTIVE** [3] - 8:24, 21:25, 28:9
**PROSPECTIVE** [1] - 71:19
**PROSTITUTION** [3] - 44:24, 45:4, 45:6
**PROTECTION** [2] - 35:17, 35:19
**PROVING** [2] - 5:9, 77:7
**PRY** [1] - 33:10
**PUBLISH** [1] - 7:6

**PUBLISHED** [2] - 6:17, 59:5
**PUENTE** [2] - 43:14, 43:19
**PURCHASE** [3] - 29:5, 46:1, 63:22
**PURCHASED** [3] - 28:17, 63:9, 69:8
**PURPOSE** [6] - 30:23, 78:11, 78:16, 78:18, 78:19, 82:25
**PUSHED** [1] - 57:19
**PUT** [6] - 9:2, 12:2, 19:24, 22:8, 23:24, 51:15
**PUTS** [1] - 8:24
**PUTTING** [1] - 67:3

## Q

**QUALIFICATIONS** [1] - 22:8
**QUALIFIED** [2] - 31:12, 31:13
**QUESTIONING** [1] - 9:14
**QUESTIONNAIRES** [1] - 75:22
**QUESTIONS** [19] - 4:9, 4:10, 4:13, 9:1, 9:3, 22:7, 24:3, 31:3, 33:4, 33:8, 33:9, 33:10, 33:11, 33:18, 49:11, 62:24, 78:3, 82:7
**QUICK** [2] - 7:5, 73:3
**QUICKLY** [2] - 9:20, 70:13
**QUITE** [2] - 20:4, 54:21

## R

**RAISE** [14] - 12:19, 22:5, 23:23, 24:4, 24:18, 26:11, 28:11, 29:12, 49:20, 52:19, 62:25, 64:5, 64:17, 75:7
**RAISED** [10] - 5:23, 28:3, 64:6, 64:20, 64:23, 67:10, 67:13, 67:23, 68:7, 68:10
**RATHER** [3] - 57:17, 58:16, 70:13
**RAYMOND** [1] - 25:18
**REACH** [4] - 41:22, 45:7, 45:12, 47:5
**REACHED** [2] - 34:17, 47:6
**REACHING** [1] - 77:18
**READ** [13] - 4:25, 6:6, 17:10, 18:8, 19:7, 27:13, 29:10, 62:22, 62:23, 73:8, 81:15, 82:14
**READS** [1] - 19:12
**READY** [1] - 7:2
**REAL** [7] - 40:1, 40:4, 46:21, 48:1, 48:3, 49:25, 56:16
**REALISTICALLY** [1] - 8:6
**REALLY** [9] - 5:24, 30:13, 50:10, 51:11, 65:13, 67:15, 70:17, 73:14
**REASON** [8] - 9:7, 13:16,

16:22, 22:25, 23:3, 31:6, 71:1, 71:5
**REASONABLENESS** [1] - 80:6
**REASONS** [2] - 25:22, 31:8
**REASSEMBLE** [1] - 71:15
**RECEIVE** [1] - 81:13
**RECEIVED** [9] - 4:8, 77:16, 77:19, 78:11, 78:15, 79:5, 79:10, 79:12, 80:17
**RECENT** [2] - 46:24, 49:1
**RECESS** [4] - 21:24, 71:23, 82:23, 85:3
**RECOGNIZE** [4] - 26:10, 26:14, 26:22, 28:9
**RECORD** [3] - 5:25, 7:8, 79:16
**RED** [1] - 21:1
**REFER** [2] - 7:18, 76:5
**REFERENCE** [1] - 81:18
**REGARD** [2] - 5:12, 12:16
**REGARDING** [2] - 8:23, 76:12
**REGARDLESS** [1] - 77:13
**REGARDS** [1] - 15:13
**REGULATION** [2] - 51:7, 56:9
**REGULATIONS** [4] - 42:19, 56:25, 57:1, 59:8
**REIMBURSEMENT** [1] - 44:8
**RELATED** [1] - 40:1
**RELATES** [2] - 37:16, 37:17
**RELATING** [1] - 62:4
**RELATIONSHIP** [1] - 65:8
**RELATIONSHIPS** [2] - 21:17, 21:19
**RELATIVELY** [1] - 47:9
**RELEVANT** [2] - 53:3, 82:25
**RELY** [1] - 82:16
**REMAIN** [2] - 75:5, 76:6
**REMEMBER** [9] - 10:16, 10:17, 29:22, 30:1, 34:24, 47:3, 71:13, 78:1, 82:9
**RENDER** [1] - 75:11
**RENT** [56] - 4:13, 4:16, 4:17, 4:18, 14:9, 28:14, 28:16, 28:18, 28:19, 28:21, 29:1, 29:3, 29:5, 29:6, 29:9, 48:18, 49:5, 49:13, 49:20, 49:21, 51:5, 51:16, 52:5, 53:4, 53:10, 54:9, 54:14, 59:2, 59:6, 59:9, 59:12, 59:13, 59:17, 59:24, 63:6, 63:7, 63:10, 63:11, 63:13, 63:18, 63:20, 63:22, 63:25, 65:17, 65:20, 66:5, 66:7, 66:18, 66:22, 66:25, 67:1, 67:12, 68:6, 68:25, 69:3
**RENTAL** [5] - 5:3, 22:20, 28:15, 28:25, 29:1, 63:7,

63:17, 63:18, 77:3
**RENTAL** [3] - 48:4, 48:14, 63:23
**RENTING** [1] - 50:22
**RENTS** [4] - 21:16, 49:18, 52:19, 53:10
**REPEAT** [1] - 32:1
**REPLACEMENT** [2] - 15:16, 15:17
**REPORT** [3] - 13:17, 17:15, 81:11
**REPORTER** [1] - 43:17
**REPORTER** [2] - 22:23, 69:20
**REPORTS** [2] - 11:13, 11:14
**REPRESENT** [1] - 71:9
**REPRESENTATIONS** [1] - 21:4
**REPRESENTED** [1] - 73:20
**REQUEST** [4] - 7:11, 49:23, 83:5, 83:6
**REQUESTS** [2] - 29:5, 63:22
**REQUIRE** [1] - 81:25
**REQUIRED** [1] - 83:13
**REQUIRES** [1] - 81:21
**RESEARCH** [9] - 56:7, 56:8, 56:10, 56:21, 56:24, 59:2, 70:24, 71:11, 81:17
**RESEARCHING** [2] - 56:23, 59:6
**RESEDA** [1] - 39:11
**RESERVE** [4] - 55:25, 56:12, 60:12, 60:14
**RESIDENCE** [1] - 34:11
**RESIDENT** [1] - 61:2
**RESIDENTIAL** [2] - 38:1, 62:3
**RESOLVE** [4] - 7:16, 10:25, 20:10, 42:10
**RESOLVES** [1] - 12:7
**RESOLVING** [1] - 8:18
**RESPECT** [6] - 9:25, 12:13, 14:3, 20:4, 21:15, 23:11
**RESPIRATORY** [1] - 34:4
**RESPOND** [2] - 26:2, 81:10
**RESPONSIBLE** [3] - 37:3, 37:9, 37:18
**REST** [1] - 8:4
**RESTRICTIONS** [3] - 59:10, 81:21, 81:24
**RESTROOM** [3] - 65:19, 74:14, 74:15
**RESULT** [2] - 59:24, 81:25
**RESUME** [1] - 71:15
**RETAIL** [1] - 43:9
**RETIRED** [5] - 41:1, 42:21, 42:22, 46:15, 46:18
**RETIREMENT** [1] - 61:16
**RETROFIT** [3] - 50:3, 50:4, 50:14

RETURN [1] - 81:14
REVIEW [9] - 5:4, 22:20,
28:15, 28:25, 29:1, 63:7,
63:17, 63:18, 77:3
REVIEW [3] - 42:17, 56:5,
57:11
REVIEWS [1] - 45:25
REVISED [2] - 28:18, 63:10
REVOCABLE [1] - 61:23
RISE [3] - 22:2, 71:18, 84:3
RISK [1] - 40:21
RIVERA [1] - 45:22
ROB [1] - 28:5
ROCKET [1] - 35:14
ROCKETDYNE [1] - 34:13
RODRIGUEZ [2] - 32:12,
33:20
ROLE [4] - 53:8, 53:12, 57:6,
58:2
ROLL [1] - 21:2
ROOM [10] - 74:24, 75:3,
75:20, 76:6, 81:2, 82:11,
82:13, 83:21, 83:24, 84:1
ROSE [1] - 25:17
ROULETTE [1] - 21:2
ROW [5] - 26:12, 29:13,
31:21, 31:23, 32:6
RUDE [2] - 26:3, 26:7
RULE [1] - 13:1
RULES [5] - 15:11, 78:5,
79:4, 79:7, 83:2
RULES [3] - 10:5, 29:1,
63:18
RULING [3] - 10:8, 17:16,
78:7
RUN [3] - 30:5, 30:7, 52:11

## S

S&P [2] - 7:12, 7:19
SAILOR [1] - 39:5
SALESMAN [1] - 46:22
SALOMON [1] - 28:6
SAMUEL [2] - 32:25, 45:21
SAW [4] - 17:18, 30:9, 30:16,
78:22
SCENARIO [2] - 9:23, 13:21,
14:20
SCENARIOS [2] - 13:22,
50:18
SCHEDULE [3] - 23:14,
24:13, 24:15
SCHEDULED [1] - 15:16
SCHEDULING [1] - 73:10
SCHOOL [6] - 38:18, 38:25,
39:12, 44:15, 45:22, 65:15
SCHOOL [1] - 41:2
SCHOOLTEACHER [1] -
38:20
SCIENCE [4] - 33:21, 34:2,

35:14, 40:24
SCOTT [1] - 27:5
SCREENS [1] - 23:22
SEARCHING [1] - 81:17
SEAT [9] - 31:20, 31:21,
31:23, 31:25, 32:19, 39:19,
46:12, 60:21, 75:16
SEAT [2] - 31:21, 32:4, 32:5,
32:6, 32:8, 33:17, 34:9,
36:16, 40:7, 43:12, 55:20,
64:9, 64:13, 64:23, 66:6,
67:13, 67:22, 68:10, 75:1,
75:2, 75:4
SEATED [2] - 75:5, 81:8
SEATS [2] - 31:22, 71:14
SEC [1] - 32:2
SECOND [10] - 4:15, 14:1,
16:10, 32:16, 55:2, 73:11,
80:16, 84:21, 84:22, 84:23
SECTION [4] - 5:8, 28:24,
63:16, 77:7
SECTOR [1] - 36:6
SEE [25] - 4:17, 5:18, 13:9,
14:13, 14:20, 19:6, 20:12,
25:23, 25:24, 25:25, 28:11,
38:20, 54:25, 55:18, 58:1,
58:4, 60:13, 64:6, 69:15,
71:12, 80:1, 82:7, 84:2,
84:23, 84:24
SEEING [2] - 23:21, 30:9
SEEM [1] - 19:1
SEES [1] - 23:25
SELECT [1] - 22:18
SELECTED [1] - 4:22, 22:25
SELECTING [1] - 30:21
SELECTION [3] - 8:23, 31:1,
31:10
SELLER [1] - 17:8
SEMINARY [1] - 61:1
SEND [3] - 54:5, 57:10, 65:14
SENDING [2] - 6:2, 57:12
SENIOR [3] - 34:13, 43:4,
43:7
SENSE [3] - 55:16, 55:17,
73:13
SEPARATE [2] - 68:16,
68:18
SEQUENCING [1] - 10:25
SERIOUS [2] - 14:17, 14:18
SERVE [1] - 22:8
SERVED [2] - 43:23, 56:2
SERVICE [15] - 22:14, 22:15,
33:23, 34:16, 36:21, 38:21,
39:13, 40:12, 41:3, 43:5,
43:25, 61:4, 75:17, 75:19,
81:10
SERVICES [1] - 46:4
SERVICING [1] - 40:17
SESSION [1] - 78:14
SESSIONS [1] - 20:19

SET [9] - 15:10, 57:2, 76:4,
76:5, 76:8, 76:9, 84:21,
84:22, 84:23
SETS [2] - 49:17, 84:24
SETTING [1] - 21:15
SEVEN [2] - 10:6, 80:7
SEVERAL [2] - 29:5, 63:22
SHIPS [1] - 14:12
SHOP [1] - 43:10
SHORT [2] - 73:14
SHORTLY [4] - 6:22, 14:19,
28:17, 63:9
SHOW [3] - 8:12, 11:5, 83:12
SIDE [13] - 9:5, 10:6, 18:16,
18:17, 20:5, 20:22, 30:22,
37:23, 60:4, 69:24, 70:3,
79:6, 83:9
SIDEBAR [10] - 9:20, 9:21,
10:4, 26:16, 26:18, 33:14,
69:16, 69:17, 74:12, 74:13
SIDEBARS [2] - 10:7, 10:12
SIDES [6] - 6:17, 18:15,
30:17, 31:2, 55:10, 64:4,
67:5, 69:13, 71:6
SIGNIFICANT [1] - 11:24
SIMILAR [1] - 50:12
SIMPLE [1] - 19:24
SIMPLY [5] - 4:25, 26:3,
26:7, 31:13, 83:11
SINGLE [9] - 36:20, 39:13,
40:10, 40:25, 43:16, 43:21,
45:24, 56:1, 76:23
SINK [1] - 65:19
SISTER [2] - 64:24, 65:24
SIT [6] - 32:3, 32:5, 32:8,
32:9, 33:6, 71:14
SITS [1] - 32:4
SITTING [3] - 13:17, 25:21,
32:6, 33:3, 33:7, 33:8,
62:22, 71:12, 71:13
SIX [6] - 44:24, 48:4, 48:6,
55:23, 56:24, 80:6
SLANT [1] - 58:10
SLIGHTLY [1] - 4:10
SLIP [2] - 33:18, 33:19
SLOGANS [1] - 58:9
SLOW [1] - 41:8
SMALL [2] - 46:2, 48:11
SMILES [1] - 26:2
SMOOTHLY [1] - 23:18
SOCIAL [4] - 26:25, 27:1,
27:14, 71:4
SOCIALIZE [1] - 17:7
SOCIOECONOMICS [1] -
14:9
SOFIA [2] - 32:13, 34:10
SOLE [1] - 30:25
SOLELY [3] - 31:4, 76:19,
78:15
SOLEMNLY [2] - 22:6, 75:9

SOLICIT [1] - 13:20
SOMEONE [6] - 16:18,
20:11, 20:15, 23:7, 57:16,
65:15
SOMETIMES [7] - 19:12,
19:13, 21:5, 22:16, 23:15,
78:10, 79:15
SOON [2] - 11:18, 66:13
SORRY [5] - 4:2, 21:18,
32:20, 51:3, 70:1
SORT [9] - 32:10, 57:1, 57:2,
57:17, 59:19, 59:22, 60:5,
67:24, 68:1
SORTS [2] - 40:14, 59:7
SOUGHT [2] - 29:6, 63:23
SOUNDED [1] - 30:14
SOUNDS [2] - 9:23, 70:7
SOUSA [2] - 32:25, 45:21
SPEAKING [1] - 69:21
SPECIAL [2] - 67:11, 67:25
SPECIALTY [4] - 4:14, 34:3,
47:13, 67:11
SPECIFIC [1] - 69:4
SPECIFICALLY [1] - 51:24
SPECTRUMS [1] - 66:24
SPEND [1] - 60:12
SPENDING [2] - 56:14,
60:13, 60:16
SPORTS [2] - 26:20, 27:3
SPOUSE [1] - 34:6
SPREAD [1] - 50:15
SPRING [1] - 15:15
STABILIZATION [1] - 53:4
STAFF [3] - 37:8, 37:9, 45:16
STAND [5] - 13:11, 17:3,
22:3, 54:24, 75:5
STANDARD [1] - 8:25
STANDING [1] - 12:9
START [6] - 6:10, 11:19,
15:23, 23:13, 74:3, 82:1
STARTED [2] - 23:6, 55:24
STATE [1] - 31:11
STATEMENT [8] - 12:7,
28:12, 29:10, 62:23, 70:22,
83:10, 83:13
STATEMENTS [2] - 77:22,
77:24
STATES [8] - 5:7, 5:8, 28:23,
28:24, 63:15, 63:16, 77:6
STATUS [2] - 43:16, 43:21
STAY [3] - 23:13, 70:14
STAYING [1] - 24:17
STEPHEN [2] - 15:8, 25:16
STEPHENS [1] - 28:5
STEVE [2] - 70:2, 74:21
STILL [8] - 8:21, 53:5, 54:4,
54:5, 55:6, 57:22, 66:14,
73:13
STIPULATE [1] - 16:13

**STIPULATED** [6] - 5:25, 6:5, 6:8, 6:20, 11:14, 11:20
**STIPULATIONS** [1] - 74:17
**STOP** [1] - 25:6
**STORE** [1] - 45:25
**STORY** [3] - 30:3, 30:4, 30:16
**STRANGE** [1] - 18:19
**STRATEGIC** [1] - 16:22
**STRICKEN** [2] - 78:8, 79:15
**STRIKES** [1] - 10:1
**STRIP** [1] - 38:11
**STRONG** [4] - 4:17, 15:25, 52:5, 66:18
**STRONGLY** [1] - 66:21
**STRUGGLE** [1] - 84:17
**STUDENT** [3] - 43:23, 56:2, 66:10
**STUDIED** [1] - 60:4
**STUDIES** [1] - 56:21
**STUDIOS** [3] - 36:9, 36:10, 39:5
**STUDYING** [3] - 57:3, 59:22, 62:14
**STUFF** [2] - 40:14, 73:23
**SUBJECT** [4] - 7:10, 28:14, 52:4, 63:5
**SUBMITTED** [3] - 4:10, 24:11, 70:20
**SUBMITTING** [1] - 37:19
**SUBPOENAS** [1] - 37:4
**SUBSTITUTE** [1] - 33:6
**SUCCESSFUL** [1] - 19:7
**SUFFICIENT** [1] - 8:9
**SUING** [1] - 47:10
**SUMMARIZED** [1] - 54:21
**SUMMARY** [2] - 5:1, 76:25
**SUPERVISE** [1] - 45:15
**SUPERVISOR** [2] - 41:2, 42:23
**SUPPORT** [1] - 57:10
**SURGERY** [3] - 15:16, 15:17
**SURPRISE** [1] - 67:1
**SURPRISED** [1] - 18:25
**SURVEY** [1] - 51:13
**SUSPECT** [2] - 13:12, 18:17
**SUSTAIN** [2] - 79:10, 79:12
**SWEAR** [3] - 22:7, 73:7, 75:10
**SWORN** [3] - 23:4, 75:6, 77:15
**SYMPATHY** [1] - 76:18
**SYNC** [1] - 10:15
**SYSTEM** [14] - 30:25, 33:23, 38:22, 39:14, 41:6, 43:6, 44:19, 56:3, 56:5, 57:9, 57:15, 57:23, 57:24, 61:5

**T**

**TABLE** [5] - 9:12, 10:3, 25:11, 25:16, 84:19
**TARZANA** [1] - 34:11
**TAUGHT** [1] - 38:24
**TEACH** [1] - 38:23
**TEAMS** [1] - 37:18
**TECHNICAL** [1] - 56:5
**TECHNICIAN** [2] - 41:1, 42:25
**TECHNOLOGY** [3] - 34:16, 36:6, 46:16
**TELEPHONE** [1] - 80:25
**TELEVISION** [3] - 29:24, 29:25, 40:10
**TEN** [7] - 18:21, 18:22, 43:22, 47:1, 50:15, 50:16, 71:20
**TENANT** [1] - 49:19
**TENANTS** [4] - 14:7, 68:3, 69:9, 69:11
**TERMS** [10] - 4:20, 5:21, 11:11, 14:8, 21:13, 58:2, 58:6, 58:25, 60:7, 74:2
**TESTIFIED** [1] - 80:2
**TESTIFIES** [2] - 7:23, 17:11
**TESTIFY** [7] - 13:4, 15:18, 16:1, 17:18, 17:21, 79:24, 80:10
**TESTIFYING** [3] - 15:24, 16:15, 80:3
**TESTIMONY** [7] - 12:20, 17:14, 17:16, 73:19, 74:1, 77:15, 77:19, 78:8, 78:10, 78:21, 79:20, 79:25, 80:6, 80:7, 82:6, 82:7
**TEXT** [1] - 81:1
**THE** [316] - 4:2, 4:5, 4:7, 6:1, 6:12, 6:25, 7:18, 7:21, 7:23, 8:6, 8:16, 8:20, 9:2, 9:13, 10:2, 10:9, 10:13, 10:16, 11:2, 11:5, 11:7, 11:10, 11:16, 11:21, 12:4, 12:16, 12:23, 13:4, 13:8, 13:11, 13:19, 14:5, 14:20, 15:3, 15:6, 16:2, 16:4, 16:13, 16:24, 17:4, 17:20, 17:24, 18:1, 18:6, 19:5, 19:15, 19:22, 20:2, 20:8, 20:22, 21:8, 21:17, 21:19, 21:22, 22:1, 22:5, 22:12, 22:13, 24:22, 25:2, 25:5, 25:14, 25:19, 25:22, 26:14, 26:16, 26:19, 26:24, 27:1, 27:3, 27:5, 27:11, 27:13, 27:17, 27:21, 27:24, 28:1, 29:15, 29:19, 29:22, 29:25, 30:3, 30:6, 30:9, 30:12, 30:15, 30:19, 32:2, 32:12, 32:16, 32:17, 32:19, 32:21, 32:23, 32:25, 33:2, 33:24, 34:2, 34:5, 34:8, 34:18, 34:20, 34:22, 34:25, 35:3, 35:6, 35:9, 35:12, 35:15, 35:19, 35:22, 36:1, 36:5, 36:10, 36:12, 36:15, 36:22, 36:25, 37:6, 37:11, 37:15, 37:25, 38:3, 38:5, 38:8, 38:13, 38:16, 38:23, 39:1, 39:7, 39:9, 39:14, 39:16, 39:19, 39:22, 39:25, 40:3, 40:6, 40:13, 40:15, 40:18, 40:22, 41:8, 41:16, 41:19, 41:22, 41:24, 42:2, 42:4, 42:7, 42:13, 42:15, 42:20, 42:23, 43:1, 43:7, 43:11, 43:17, 43:25, 44:2, 44:5, 44:8, 44:10, 44:13, 44:21, 45:2, 45:6, 45:9, 45:12, 45:14, 45:17, 45:20, 46:6, 46:11, 47:4, 47:7, 47:11, 47:13, 47:16, 47:19, 47:23, 48:2, 48:6, 48:9, 48:14, 48:18, 48:21, 48:25, 49:3, 49:6, 49:9, 50:2, 50:6, 50:9, 50:17, 50:21, 50:25, 51:7, 51:10, 51:13, 51:18, 51:24, 52:3, 52:7, 52:13, 52:23, 52:25, 53:7, 53:12, 53:15, 53:18, 53:20, 53:24, 54:4, 54:8, 54:17, 55:12, 56:11, 56:19, 57:5, 57:22, 58:1, 58:7, 58:9, 58:13, 58:18, 58:25, 59:12, 59:17, 60:1, 60:5, 60:11, 60:17, 60:20, 61:7, 61:9, 61:13, 61:19, 61:24, 62:6, 62:11, 62:14, 62:17, 62:20, 64:12, 64:16, 65:1, 65:4, 65:7, 65:11, 65:16, 65:20, 65:23, 66:2, 66:9, 66:12, 66:16, 66:20, 66:22, 66:24, 67:7, 67:17, 67:19, 67:22, 68:4, 68:14, 68:16, 68:19, 68:24, 69:2, 69:6, 69:12, 69:15, 69:18, 69:25, 70:4, 70:10, 71:18, 71:20, 71:25, 72:3, 72:5, 72:7, 72:10, 72:13, 72:15, 72:17, 72:21, 72:25, 73:4, 73:7, 73:15, 73:17, 73:25, 74:6, 74:9, 74:10, 74:12, 74:14, 74:16, 74:23, 75:7, 75:8, 75:9, 75:13, 75:14, 75:15, 75:22, 75:24, 84:3, 84:5, 84:11, 84:14, 84:19, 84:20, 84:23
**THEATER** [2] - 52:22, 52:23
**THEATRE** [2] - 45:16, 51:22
**THEFT** [1] - 34:21
**THEMSELVES** [2] - 25:10, 57:18
**THERAPY** [1] - 34:4
**THEREAFTER** [1] - 6:24
**THEREFORE** [3] - 9:24, 29:7, 63:24
**THEREIN** [1] - 75:11
**THEY'VE** [1] - 10:22
**THINKING** [2] - 12:16, 14:21
**THINKS** [2] - 13:13, 79:7
**THIRD** [2] - 17:1, 17:5
**THOMAS** [1] - 25:21
**THOUGHTS** [2] - 4:18, 59:3
**THREE** [9] - 9:5, 9:6, 33:22, 38:20, 39:8, 49:15, 77:16, 78:8, 80:3
**THROUGHOUT** [2] - 76:4, 80:13
**THROWING** [1] - 54:19
**THURSDAY** [5] - 8:11, 24:10, 24:12
**TIE** [1] - 43:6
**TIED** [1] - 61:4
**TIES** [8] - 33:23, 36:21, 38:21, 39:14, 41:6, 41:16, 46:4, 56:3
**TITLE** [2] - 5:8, 28:24
**TITLE** [2] - 63:16, 77:6
**TODAY** [5] - 19:16, 19:17, 19:20, 73:24, 74:1
**TOGETHER** [3] - 5:19, 48:6, 48:15
**TOMORROW** [1] - 73:12
**TOMPKINS** [3] - 33:1, 46:13, 55:9
**TOOK** [4] - 12:14, 39:17, 44:10, 76:20
**TOP** [2] - 11:8, 13:20
**TOPANGA** [5] - 48:11, 48:16, 49:2, 49:3, 49:4
**TOPIC** [2] - 55:13, 67:25
**TOPICS** [2] - 56:8, 59:5
**TOUCHES** [1] - 56:8
**TOUCHING** [1] - 22:8
**TOWN** [1] - 68:23
**TRADITIONAL** [1] - 58:16
**TRAINING** [3] - 37:14, 37:15, 60:24
**TRANSACTIONS** [1] - 38:6
**TRANSCRIPT** [1] - 82:5
**TRANSCRIPTS** [1] - 6:2
**TRAVEL** [1] - 15:21
**TREAT** [2] - 12:23, 25:25
**TREATED** [1] - 83:2
**TRIAL** [22] - 6:2, 6:24, 15:10, 15:13, 15:20, 20:25, 22:9, 23:18, 24:13, 26:10, 28:5, 30:21, 31:5, 76:4, 76:8, 78:15, 80:13, 81:7, 81:22, 81:25, 82:5, 82:20

**TRIALS** [2] - 76:2, 83:9
**TRIED** [1] - 18:14
**TRUCK** [1] - 34:7
**TRUE** [5] - 6:9, 22:7, 75:11, 77:11, 77:12
**TRULY** [1] - 75:10
**TRUST** [1] - 37:5
**TRUSTS** [2] - 61:23
**TRY** [8] - 18:21, 18:22, 42:10, 57:14, 71:2, 75:10, 81:19, 84:22
**TRYING** [6] - 56:6, 57:8, 57:13, 58:5, 58:10, 84:24
**TUESDAY** [4] - 15:22, 15:23, 16:12, 24:10
**TUESDAYS** [1] - 24:25
**TURNED** [1] - 46:20
**TV** [1] - 29:22
**TWO** [19] - 4:20, 4:22, 10:20, 10:23, 11:8, 14:12, 15:20, 16:5, 18:19, 42:20, 44:15, 54:1, 61:2, 65:5, 66:24, 68:12, 68:18, 77:16, 80:2
**TYPE** [2] - 38:11, 40:18
**TYPES** [3] - 38:8, 39:16, 61:23
**TYPICALLY** [1] - 24:13

## U

**UCLA** [4] - 55:23, 56:2, 56:23, 61:3
**ULTIMATE** [1] - 11:10
**ULTIMATELY** [1] - 53:15
**ULTRASOUND** [2] - 41:1, 42:25
**UNAVAILABLE** [1] - 15:18
**UNBIASED** [1] - 30:22
**UNDER** [6] - 9:24, 13:21, 30:25, 59:6, 78:5, 83:2
**UNDERSTOOD** [2] - 13:24, 14:23
**UNDERWRITING** [1] - 42:16
**UNFAIR** [2] - 4:16, 68:6
**UNHAPPY** [2] - 20:11, 20:16
**UNIFIED** [1] - 41:2
**UNINCORPORATED** [3] - 48:12, 49:3, 49:4
**UNION** [1] - 36:20
**UNION** [3] - 36:25, 38:1, 38:9
**UNIT** [3] - 50:22, 59:9, 68:12
**UNITED** [8] - 5:7, 5:8, 28:23, 28:24, 63:15, 63:16, 77:6
**UNITS** [4] - 48:5, 48:7, 48:14, 56:6
**UNLAWFUL** [4] - 49:20, 51:24, 51:25, 64:11
**UNLESS** [2] - 11:2, 80:21
**UNLIKELY** [1] - 8:20
**UNMARRIED** [1] - 56:1

**UNPREJUDICED** [1] - 30:23
**UNREASONABLE** [2] - 29:8, 63:25
**UP** [20] - 10:15, 12:2, 13:1, 13:11, 21:1, 23:1, 24:7, 30:14, 39:19, 39:20, 41:8, 41:10, 43:17, 50:5, 50:7, 52:14, 52:18, 63:2, 69:22
**UPCOMING** [1] - 57:20
**URBAN** [4] - 56:23, 62:15, 62:17, 67:25
**URGE** [1] - 82:5
**USHERING** [1] - 45:15

## V

**VACATES** [1] - 49:19
**VAGUE** [1] - 49:11
**VARIABLES** [3] - 19:25, 56:15, 59:23
**VARIOUS** [1] - 57:10
**VEGAS** [2] - 18:13, 19:10
**VEHICLES** [1] - 61:25
**VENICE** [4] - 48:13, 48:22, 49:1, 49:12
**VENTURA** [1] - 25:5
**VERDICT** [14] - 18:22, 34:17, 41:22, 45:7, 45:12, 47:5, 47:6, 75:11, 76:12, 77:18, 80:14, 81:14, 83:8, 83:21
**VERSION** [1] - 6:16
**VERSUS** [1] - 22:19
**VIA** [1] - 81:1
**VICE** [3] - 36:20, 36:25, 46:16
**VIEW** [6] - 5:14, 6:21, 16:25, 52:5, 58:21, 59:14
**VIOLATE** [1] - 42:18
**VIOLATES** [1] - 81:23
**VIOLATION** [4] - 5:6, 28:22, 63:14, 77:5
**VISIT** [1] - 65:4
**VOIR** [2] - 4:9, 8:25
**VOLUNTARILY** [1] - 49:19

## W

**WAIT** [1] - 23:7
**WAITING** [2] - 9:18, 82:24
**WANTS** [4] - 7:17, 15:22, 17:1, 69:22
**WASTE** [1] - 23:14
**WATCH** [2] - 30:3, 81:15
**WATCHED** [1] - 30:4
**WATCHES** [1] - 19:12
**WEALTH** [3] - 14:3, 14:7, 14:13
**WEBER** [2] - 24:21, 24:22
**WEBSITE** [1] - 81:2
**WEDNESDAY** [3] - 8:11,

15:20, 24:10
**WEDNESDAYS** [1] - 24:25
**WEEK** [2] - 16:7, 16:9
**WEEKEND** [1] - 8:7
**WEEKENDS** [1] - 44:17
**WEEKS** [1] - 55:23
**WEIGHT** [3] - 79:1, 79:3, 80:9
**WELCOME** [2] - 22:1, 33:2
**WELL-KNOWN** [1] - 47:9
**WENDY** [1] - 84:19
**WHEEL** [1] - 21:2
**WHOLE** [3] - 54:2, 59:22, 66:17
**WIFE** [6] - 38:20, 38:23, 46:18, 48:23, 64:10, 64:14
**WILLING** [1] - 58:15
**WIN** [5] - 18:11, 18:15, 18:22, 18:24, 20:14
**WISH** [1] - 82:9
**WITHHOLD** [1] - 65:20
**WITNESS** [20] - 6:14, 7:18, 7:21, 10:9, 16:5, 17:1, 17:6, 17:8, 17:18, 23:20, 54:24, 73:11, 77:15, 78:21, 78:22, 79:21, 79:25, 80:1, 84:7
**WITNESS'S** [6] - 80:2, 80:3, 80:4, 80:6
**WITNESSES** [8] - 15:14, 15:15, 16:1, 28:4, 28:10, 77:23, 79:24, 80:10
**WOOLRICH** [1] - 22:23
**WORDS** [1] - 80:12
**WORKERS'** [4] - 44:25, 45:5, 45:9, 52:1
**WORKS** [7] - 23:15, 35:9, 35:12, 40:20, 45:18, 45:25, 49:11
**WORRIED** [1] - 25:6
**WORRY** [1] - 32:10
**WORSE** [1] - 12:2
**WORTH** [1] - 52:21
**WRITING** [1] - 80:25
**WRITTEN** [2] - 27:22, 60:9
**WROTE** [1] - 13:7

## Y

**YEAR** [10] - 39:2, 39:3, 39:4, 39:5, 49:2, 50:8, 54:6, 56:17, 69:8, 69:10
**YEARS** [24] - 17:13, 29:4, 33:22, 34:23, 39:8, 43:22, 46:15, 46:25, 47:1, 47:17, 49:22, 50:15, 50:16, 51:23, 52:10, 53:5, 53:8, 53:21, 53:22, 56:17, 56:24, 62:9, 63:21, 67:21
**YIMBY** [1] - 58:12

**YONGHWA** [2] - 33:1, 60:22
**YORK** [2] - 60:25, 61:14
**YOUNGER** [1] - 64:24
**YOURSELF** [2] - 58:1, 60:13
**YOURSELVES** [4] - 70:5, 70:18, 71:21, 82:10

## Z

**ZONING** [4] - 56:5, 57:11, 57:21, 59:10